Bradley T. Hunsicker (Wyo. Bar 7-4579)
**MARKUS WILLIAMS YOUNG & ZIMMERMANN LLC**
106 East Lincolnway Suite 300
Cheyenne, WY 82001
Telephone: 307-778-8178
bhunsicker@markuswilliams.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| POWELL VALLEY HEALTH CARE, INC., | ) | Case No. 16-20326 |
| | ) | |
| Debtor-in-Possession. | ) | |

### DEBTOR'S MOTION FOR EXPEDITED ENTRY OF AN INTERIM AND FINAL ORDER (I) AUTHORIZING USE OF CASH COLLATERAL; (II) PROVIDING FOR ADEQUATE PROTECTION PAYMENTS; AND, (III) GRANTING RELATED RELIEF

Powell Valley Health Care, Inc., the debtor and debtor-in-possession in the above captioned case (the "Debtor"), hereby files this Motion for Expedited Entry of an Interim and Final Order (I) Authorizing Use of Cash Collateral; (II) Providing for Adequate Protection Payments; and, (III) Granting Related Relief (the "Motion") and in support thereof, the Debtor states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D), (G), (K), (M) and (O). Venue of the Debtor's Chapter 11 case and this Motion in this district is proper pursuant to 27 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief

1

requested herein are §§ 105(a), 361, 362, 363 and 507 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## FACTUAL BACKGROUND

2. On May 16, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq*. The Debtor continues to manage its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. No request for the appointment of a trustee or examiner has been made in this bankruptcy case, and no committee has been appointed or designated.

4. A description of the background of the Debtor and the events leading up to the filing of the voluntary petition by the Debtor is provided in the Declaration of Michael L. Long in Support of First Day Motions (the "First Day Declaration"), which is incorporated herein by reference.

## RELIEF REQUESTED

5. By this Motion, the Debtor requests that the Court immediately enter the Interim Order (defined below) (i) authorizing the use of cash collateral as defined in section 363(a) of the Bankruptcy Code; (ii) scheduling a final hearing (the "Final Hearing") on the Motion to consider the entry of the Final Order (defined below); and, providing for adequate protection for the use of cash collateral.

## BANKRUPTCY RULE 4001 STATEMENT

6. Pursuant to Bankruptcy Rule 4001(b), the Debtor provides the following summary of: (i) the name of each entity with an interest in the cash collateral; (ii) the purpose for the use of the cash collateral; (iii) the material terms, including duration, of the use of the cash collateral; and, (iv) any liens, cash payment, or other adequate protection that will be provided to each entity with an interest in the cash collateral.

### a. First Bank of Wyoming has in interest in cash collateral.

On February 17, 2000, the Debtor executed a Promissory Note (the "First Note") in the original principal amount of $1,682,650.00 payable to the order of First National Bank & Trust, k/n/a First Bank of Wyoming, Division of Glacier Bank (*i.e.*, the Bank). On February 17, 2000, the Debtor executed an Assignment of Rents (the "Assignment") whereby the Debtor assigned, granted a continuing security interest in, and conveyed to the Bank all of the Debtor's right and interest in and to rents from property located at 777 Avenue H, Powell, WY 82435 (the "Heartland Assisted Living"). Specifically, the Debtor executed a Mortgage (the "Mortgage") whereby the Debtor mortgaged and conveyed to the Bank all of the Debtor's right and interest in (1) a lease of real property located at 777 Avenue H, Powell, WY 82435 and (2) "all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation any rights [the Debtor] later acquires in

3

the fee simple title to the land, subject to the Lease, and all minerals, oil, gas, geothermal and similar matters."

As of the Petition Date, the amount due and owing under the First Note, as the same has been amended from time to time, is approximately $382,294.45.

Additionally, on April 18, 2012, the Debtor executed a Promissory Note (the "Second Note") in the original principal amount of $1,000,000 payable to the order of the Bank, said note having a maturity date of July 1, 2013. Contemporaneously therewith, the Debtor executed a Commercial Security Agreement (the "Security Agreement") wherein the Debtor granted to the Bank a security interest in "Accounts Receivable" to secure the sums due and owing under the Second Note.

On July 9, 2013, the Debtor and the Bank executed a "Change in Terms Agreement" to extend the maturity date of the Second Note to July 1, 2014. Upon expiration of the term of the Second Note (*i.e.*, on July 21, 2014), the Debtor executed a Promissory Note (the "Third Note") in the original principal amount of $1,000,000 payable to the order of the Bank, which Third Note was secured by the Security Agreement. Last, upon expiration of the term of the Third Note (*i.e.*, on July 13, 2015), the Debtor executed a Promissory Note (the "Fourth Note")[1] in the original principal

---

[1] The First Note, the Assignment, the Mortgage, the Second Note, the Change in Terms, the Security Agreement, the Third Note, the Fourth Note and all other documents executed or obtained in connection therewith shall collectively be referred to herein as the "Loan Documents".

4

amount of $1,000,000 payable to the order of the Bank, which Fourth Note was also secured by the Security Agreement.

As of the Petition Date, the amount due and owing under the Fourth Note is approximately $904,930.40.

By virtue of the Loan Documents, the Bank asserts a perfected security interest in rents associated with the Heartland Assisted Living and the Debtor's account receivables, including without limitation, the products and produce therefrom including cash in any deposit account as of the Petition Date (collectively, the "Cash Collateral").

### b. The purpose for the use of Cash Collateral.

The Debtor requires the use of Cash Collateral to pay its actual, necessary, post-petition expenses, including, but not limited to, post-petition payroll, payroll taxes, inventory, supplies and overhead in accordance with the budget attached hereto at Exhibit A (the "Budget").

### c. The material terms for the use of Cash Collateral.

Prior to the Petition Date, the Debtor and the Bank negotiated an agreed upon order for the use of Cash Collateral on an interim and final basis. The agreed upon interim order (the "Interim Order") and final order (the "Final Order") are attached hereto at Exhibit B and Exhibit C (collectively, the Interim Order and the Final Order shall be referred to herein as the "Cash Collateral Orders").

The material terms of the Cash Collateral Orders are as follows:

5

- The Debtor is authorized to use Cash Collateral for the purpose of preserving and maximizing the value of the Debtor's estate, up to the amounts set forth in the Budget, for the period from May 16, 2016 until September 1, 2016; provided, however, (i) the Debtor shall not exceed the monthly disbursement amounts specified in the Budget by more than 10% in the aggregate on a monthly basis and (ii) the Debtor shall collect no less than 80% of cash receipts specified in the Budget on a monthly basis.

- To the extent of any diminution in value resulting from the user of Cash Collateral, the Bank is granted and provided with a security interest in and lien upon all pre-petition and post-petition accounts, cash in deposit accounts, furniture, fixtures, equipment and general intangibles and all proceeds thereof and all proceeds of the Cash Collateral (the "Adequate Protection Collateral"). Notwithstanding anything to the contrary herein, Adequate Protection Collateral shall not include any of the Debtor's avoidance actions arising under Sections 544, 545, 546, 547, 548, 549, 550 and 551 of the Bankruptcy Code (the "Avoidance Actions") or the proceeds therefrom.

- To the extent that there is a diminution in the value of the Bank's Cash Collateral after the Petition Date that is not offset by the value of the Adequate Protection Collateral, the Bank is granted an allowed super-priority administrative claim pursuant to Section 507(b) of the Bankruptcy Code; provided, however, the Bank's super-priority administrative claim shall be subordinate to all statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); provided, further, however, that the super-priority administrative claim shall not be payable from Avoidance Actions or the proceeds therefrom.

- The Bank's consent to the Debtor's use of Cash Collateral and the Debtor's authority to use Cash Collateral shall terminate upon the earlier of (i) the occurrence of any Event of Default (as hereinafter defined) or (ii) September 1, 2016 (the earlier of which shall be the "Termination Date"), unless otherwise agreed upon by the Bank in writing. In the event that the Bank agrees in writing to extend the Debtor's use of Cash Collateral, the Debtor shall send an updated budget to the Bank, the United States Trustee and any Committee of Unsecured Creditors appointed in this case. An agreed upon extension of use of Cash Collateral need not be approved by the Court.

  - An Event of Default includes the following: the Debtor's failure to perform any of its obligations pursuant to the Cash Collateral Orders; (b) the Debtor's failure to comply with the Budget, subject to the variance; (c) the appointment of a trustee pursuant to either Sections 1104(a)(l) or 1104(a)(2) of the Bankruptcy Code; (d) the

6

appointment of an examiner with expanded powers; (e) the conversion or dismissal of this case; (f) the entry of any order amending, modifying, violating, contradicting, reversing, revoking, staying, rescinding or vacating the Cash Collateral Orders without the express prior written consent of the Bank; or, (g) the creation of a lien or security interest in favor of any person or entity other than the Bank on the Cash Collateral that is equal or greater in priority to the liens granted to the Bank.

### d.  The form of adequate protection to be provided to the Bank.

As part of the adequate protection being provided to the Bank for the Debtor's use of the Cash Collateral, in addition to the adequate protection identified above, the Debtor shall timely make monthly interest only payments in the amount of $3,000.00 (for a thirty-day month) on the First Note and monthly payments in the amount of $12,207.26 on the Fourth Note (calculated at the non-default interest rate as required by the Loan Documents).

### BASIS FOR RELIEF

7.   Section 363(c)(2) of the Bankruptcy Code provides that a debtor in possession may not use cash collateral unless (A) each entity that has an interest in such cash collateral provides consent, or (B) the court approves the use of cash collateral after notice and a hearing. See 11 U.S.C. § 363(c).  Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by the [debtor in possession], the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

8. Neither section 361 nor any other provision of the Bankruptcy Code defines the nature and extent of the "interest in property" of which a secured creditor is entitled to adequate protection under section 361. However, the statute plainly provides that a qualifying interest demands protection only to the extent that the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e); *see also General Elec. Mortgage Corp. v. South Village, Inc.* (*In re South Village, Inc.*), 25 B.R. 987, 989-90 & n.4 (Bankr. D. Utah 1982).

9. The phrase "value of such entity's interest," although not defined in the Bankruptcy Code, was addressed by the Supreme Court in the landmark *Timbers* decision, *United Savings Assn of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S.Ct. 626 (1988). For the meaning of "value of such entity's interest," the Supreme Court was guided by section 506(a), which defines a creditor's allowed secured claim:

> The phrase 'value of such creditor's interest' in § 506(a) means 'the value of the collateral.' H.R. Rep. No. 950-595, pp. 181, 356 (1977); *see also* S. Rep. No. 95-989, p. 68 (1978), U.S. Code Cong. & Admin. News, 1978 pp. 5787, 5854, 6141, 6312. We think the phrase 'value of such entity's interest' in § 361(1) and (2), when applied to secured creditors, means the same.

*Id.* at 630 (emphasis added).

10. *Timbers* teaches that a secured creditor is entitled to "adequate protection" only against diminution in the value of the collateral securing the creditor's allowed

8

secured claim. In this instance, the Debtor's use of the Cash Collateral will result in diminution of the Bank's collateral thereby entitling the Bank to adequate protection.

11. Examples of adequate protection include, but are not limited to: periodic cash payment (11 U.S.C. § 361(1)), additional or replacement liens (11 U.S.C. § 361(2)), or such other relief as will provide the "indubitable equivalent" of the secured creditor's interest in the collateral (11 U.S.C. § 361(3)). Here, the interests of the Bank will be adequately protected under Section 363(c)(2)(B) for the following reasons. First and foremost, the Bank consents to the Debtor's use of Cash Collateral under the terms of the Cash Collateral Orders. Second, the Bank will be adequately protected under the Cash Collateral Orders through post-petition liens and monthly adequate protection payments.

12. The Debtor believes that the proposed adequate protection described herein is fair and reasonable and will compensate the Bank for any possible diminution in value of its respective prepetition liens in the Debtor's Cash Collateral. Given the likely significant value that the Debtor stands to lose in the event that it is denied access to continued use of Cash Collateral, the proposed protections are wholly appropriate and justified.

13. Bankruptcy Rule 4001(b) permits the Court to approve a debtor's request for use of cash collateral during the 14-day period following the filing of a motion requesting authorization to use cash collateral "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Bankruptcy Rule 4001(b)(2). In examining requests for interim relief under this rule, courts apply the

same business judgment standard applicable to other business decisions. *See, e.g., In re Simasko Production Co.*, 47 B.R. 444, 449 (D. Colo. 1985); *In re Ames Dept Stores Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990).

14. As previously noted, in order to address the Debtor's funding needs and to allow the Debtor to continue restructuring its financial affairs, the Debtor requires immediate access to Cash Collateral. The use of Cash Collateral will provide the Debtor with the necessary capital to remain a going concern until such time as a Chapter 11 plan can be proposed, and eventually confirmed. The Debtor does not have any available sources of financing to carry on its operations without the use of Cash Collateral. The Debtor's ability to maximize the value of its estate is dependent on its ability to continue to operate. Use of the Cash Collateral is essential to the Debtor's continued viability and the value of its assets; indeed, if interim relief is not obtained, the Debtor's going concern value will be immediately and irreparably jeopardized, to the detriment of its estate. Simply stated, unless the Debtor is authorized to use its Cash Collateral, it will be unable to continue operations, pay vendors for ongoing materials and services, pay employees, and pay for other operational expenses. Hence, for the reasons set forth herein, immediate use of Cash Collateral in accordance with the Budget upon entry of the Interim Order is necessary to avert immediate and irreparable harm.

15. Similar relief as to the relief requested herein has been routinely granted in the Tenth Circuit and by this Court. *See In re D.J. Simmons Company Limited Partnership,* Case No. 16-11763-JGR, <u>Agreed Interim Order (I) Authorizing the Debtor</u>

To Use Cash Collateral Of Existing Secured Lender, (II) Granting Adequate Protection For Use Thereof, (III) Modifying The Automatic Stay To Allow For the Relief Requested Herein, and (IV) Scheduling Final Hearing [ Doc 77] (Bankr. D. Colo. April 15, 2016); *In re Cascade Integrated Services, LLC*, Case No. 15-23704-HRT, Agreed Order Authorizing Interim Use of Cash Collateral and Providing for Adequate Protection [Doc. 23] (Bankr. D. Colo. December 23, 2015); *In re Fresh Produce Holdings, LLC, et al.*, Case No. 15-13485-MER, Agreed Order Authorizing Interim Use of Cash Collateral and Providing for Adequate Protection [Doc. 58] (Bankr. D. Colo. April 10, 2015); *In re Coupounas, LLC d/b/a GOLITE, LLC*, Case No. 14-23906-EEB , Order Authorizing Interim Use of Cash Collateral and Providing Adequate Protection [Doc. 34] (Bankr. D. Colo. Oct. 23, 2014); *In re Red Eagle Oil, Inc.*, Case No. 11-20857, Order Authorizing Use of Cash Collateral Pursuant to Sections 361 and 363 [Doc. 48] (Bankr. D. Wyo. August 9, 2011).

## **NOTICE**

16.     The Debtor will provide notice of this Motion to (collectively, the "Notice Parties"): (a) the United States Trustee; (b) all creditors known to Debtor who may have liens against the Debtor's assets; (c) the twenty (20) largest unsecured creditors of the Debtor; (d) the Tort Claimants (as defined in the First Day Declaration); and, (e) all other creditors and parties in interest requesting notice under Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

17. Pursuant to Bankruptcy Rule 4001, the Debtor requests that it be authorized to provide notice of the Final Hearing by serving, or causing to be served, by first class mail or other appropriate method of service, a copy of the Interim Order on the Notice Parties. The Debtor submits that such notice is sufficient and requests that this Court find that no further notice of the Final Hearing and Final Order is required.

**WHEREFORE**, for the reasons set forth herein and in the First Day Declaration, the Debtor requests that the Court immediately enter the Interim Order effective as of the Petition Date, and following the Final Hearing, enter the Final Order, granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:   Cheyenne, Wyoming

May 16, 2016

        MARKUS WILLIAMS YOUNG AND ZIMMERMANN LLC

        By:  /s/ *Bradley T. Hunsicker*
Bradley T. Hunsicker (WY Bar No 7-4579)
106 East Lincolnway Suite 300
Cheyenne, WY 82001
Telephone: 307-778-8178
Facsimile: 307-638-1975
Email: bhunsicker@markuswilliams.com

Proposed Counsel for the Debtor and Debtor-in-Possession