Bradley T. Hunsicker (Wyo. Bar 7-4579)
Jennifer Salisbury (Wyo. Bar. 7-5218)
**MARKUS WILLIAMS YOUNG & ZIMMERMANN LLC**
106 East Lincolnway Suite 300
Cheyenne, WY  82001
Telephone: 307-778-8178
bhunsicker@markuswilliams.com
jsalisbury@markuswilliams.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| In re: | ) |
| | ) Case No.: 16-20326 |
| POWELL VALLEY HEALTH CARE, INC., | ) Chapter 11 |
| | ) |
| Debtor. | ) |

### DEBTOR'S MOTION TO ENFORCE SCOPE OF THE AUTOMATIC STAY, OR IN THE ALTERNATIVE, MOTION TO EXTEND AUTOMATIC STAY AND NOTICE OF OPPORTUNITY TO OBJECT

Undersigned counsel for Powell Valley Health Care, Inc. ("PVHC"), debtor, hereby files this Motion to Enforce Scope of the Automatic Stay, or in the Alternative, to Extend Automatic Stay, and in support thereof would show the Court as follows:

### FACTUAL BACKGROUND

1.      On May 16, 2016 (the "Petition Date"), PVHC commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Wyoming (the "Bankruptcy Court").

{Z0115095/1 }

2.      PVHC has continued in the possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

3.      PVHC is a non-profit corporation, which is a component unit of the Powell Hospital District, which is a political subdivision of Park County, Wyoming (the "**District**").  PVHC rents its buildings, land, and certain equipment from the District. Under the Lease Agreement between the District and PVHC, PVHC agreed to indemnify the District as follows:

> 13.  **Indemnification of DISTRICT**.  DISTRICT shall not be held liable for any loss, injury, death or damage to persons or property which at any time may be suffered or sustained by PVHC or by any person whosoever may at any time be using, occupying or visiting the demised premises or be in, on or about the same, whether such loss, injury, death or damage shall be caused by or in any way result from or arise out of any act, omission, or negligence of PVHC or of any occupant, visitor, or user of any portion of the premises, or shall result from or be caused by any other matter or thing whether of the same kind as or of a different kind than the matters or things above set forth.  PVHC shall indemnify and hold harmless DISTRICT against all claims, liability, loss or damage whatsoever on account of any such loss, injury, death, or damage arising by reason of the negligence or misconduct of PVHC.

4.      PVHC has an Agreement for Management Services with Health Tech Management Services, Inc. ("**Healthtech**"), under which Healthtech was responsible for selecting and employing the chief executive officer of PVHC.  William D. Patten was the chief executive officer of PVHC from 2012 to 2015, and he was selected by Healthtech

for this position. Under the Management Services Agreement, PVHC agreed to indemnify Healthtech as follows:

> 10.2 <u>By Hospital</u>. Hospital shall indemnify, defend and hold HTMS, its officers, employees and agents harmless from and against any and all expense (including but not limited to reasonable attorney fees and court costs), loss, liability, and claims of any kind whatsoever directly or indirectly arising from or alleged to arise from or in any way connected with the ownership or operation of the Hospital or the performance by the Board and/or Hospital of their respective obligations under this Agreement (including but not limited to errors or omissions in the Hospital's cost reports), unless such claim is caused primarily as a result of (a) the grossly negligent acts or omissions of HTMS or (b) the willful and wanton misconduct of HTMS.

5. From 2006 to 2014, Dr. Jeffery Hansen was an orthopedic surgeon employed by PVHC.

6. Pursuant to an "Employment Agreement – Orthopedic Surgery" between PVHC and Dr. Hansen dated July 1, 2010, as amended, PVHC agreed to the following with respect to Dr. Hansen:

> 3.7 <u>Liability Insurance.</u> PVHC agrees to provide Physician with professional liability (malpractice) insurance coverage during the term of this agreement. The limits of coverage under said insurance shall be not less than one million dollars ($1,000,000) per occurrence and three million dollars ($3,000,000) in the aggregate annually. Upon termination of this Agreement, PVHC agrees to provide Physician with professional liability insurance tail coverage for all professional services rendered by Physician under this Agreement.

7. Additionally, pursuant to a "Vice-Chief of Staff Agreement" between PVHC and Dr. Hansen dated January 19, 2012, PVHC agreed to the following with respect to Dr. Hansen:

> 2.2 <u>Insurance and Indemnification</u>. PVHC agrees to provide liability insurance coverage which is applicable to the services rendered under this Agreement.

8. Prior to the Petition Date, twenty civil lawsuits were pending against PVHC stemming from a series of procedures performed at PVHC by Dr. Hansen (who is no longer employed by PVHC) and in addition a declaratory judgment action was filed by certain insurance carriers seeking a determination as to the scope of liability surrounding the above-reference civil lawsuits (collectively the twenty civil lawsuits and the declaratory judgment action will be referred to herein as the "Lawsuits"). The defendants in the Lawsuits include PVHC, Dr. Hansen, Healthtech, the District and Mr. Patten (collectively, the "Defendants"). In each of the cases, the plaintiffs allege damages caused by Dr. Hansen's alleged malpractice, with associated claims for vicarious liability against PVHC, along with claims for negligent hiring and supervision/negligent training and supervision against PVHC, the District, Mr. Patten and Healthtech. The Lawsuits seek to recover from the Defendants over $70 million in alleged damages suffered by the plaintiffs.

9. PVHC is the named insured on several liability insurance policies the proceeds of which are insufficient to cover the liability claims asserted in the Lawsuits. At best, the insurance policies provide total coverage capped at approximately $30 million against claims of over $70 million.

10. The costs, fees and work needed to litigate the Lawsuits have and will continue to consume considerable time from staff at PVHC. Although Dr. Hansen is no longer with PVHC, PVHC's potential exposure in connection with the Lawsuits remains and poses a significant threat to its ability to effectively carry out its mission. PVHC faces significant uncertainty as well as administrative and financial burdens in defending

{Z0115095/1}  4

the Lawsuits. PVHC voluntarily filed its Petition with the objective of resolving the Lawsuits in a fair, reasonable, and efficient manner while ensuring its long-term stability for the benefit of the community it serves.

## ARGUMENTS AND AUTHORITIES

**A. The Lawsuits are Stayed in Their Entirety Under 11 U.S.C. § 362(a)(3).**

11. The automatic stay applies to all actions taken in the Lawsuits because each of the claims therein is "an act to obtain possession or property of the estate . . . or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Specifically, PVHC has several insurance policies (the "Policies") the proceeds of which are property of the estate. Specifically, PVHC, Healthtech and Dr. Hansen[1] are "insureds" under the Policies. Furthermore, the Policies also provide PVHC with indemnification coverage. Accordingly, each of the claims asserted in the Lawsuits, even those claims against the co-defendants, implicates a right to the proceeds of those policies.

12. The liability coverage provided by the Policies is not enough to cover the claims asserted in the Lawsuits. Each claim asserted against Dr. Hansen, Healthtech, and/or the District subjects the proceeds of these Policies to depletion and such depletion adversely effects the bankruptcy estate as the Polices protect the estate's other assets from diminution. *See In re Allied Digital Technologies, Corp.*, 306 B.R. 505, 511-12 (Bankr.D.Del. 2004). Accordingly, the claims of all defendants in the Lawsuits are

---

[1] Although Dr. Hansen is not listed on the coverage page as an "insured", each policy has attached to it a list of professionals employed by the hospital for which it provides coverage. Dr. Hansen is on each list.

{Z0115095/1}                                    5

actions to "exercise control over property of the estate" and are subject to the automatic stay.

### B. The Automatic Stay Under 11 U.S.C. § 326(a)(1) Applies to or Should Be Extended to Cover the Claims Against All Defendants Because PVHC is the Real Party Defendant in Each Case.

13. Although the automatic stay under 11 U.S.C. § 362(a)(1) would normally be applicable only to PVHC, this case exemplifies the "unusual circumstances" under which the automatic stay extends to non-debtors or co-defendants. These circumstances were annunciated in the seminal case of *A.H. Robins Co., Inc. v. Piccinin*, wherein the Fourth Circuit held that the automatic stay could and should be extended to cover non-debtors when the debtor and non-debtor are "so bound by statute or contract that the liability of the non-debtor is imputed to the debtor by operation of law" or when the "Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code." *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).

14. As further stated by the *A.H. Robins* court, "while the automatic stay ordinarily applies only to actions against the debtor itself, it is properly extended to actions against non-debtors where an identity of interest exists between the debtor and nondebtor defendant such that the debtor is the real party defendant and the litigation will directly affect the debtor and, more particularly, the debtor's assets or its ability to pursue a successful plan of reorganization under Chapter 11." *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 998 (4th Cir. 1986).

15. The rule in *A.H. Robbins* has been recognized in the Tenth Circuit. In

*Oklahoma Federated Gold & Numismatics, Inc. v. Blodget*, 24 F.3d 136 (10th Cir. 1994), the Tenth Circuit found that the stay should be extended where the "debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Id.* at 1471. In one case before the federal District Court for the District of Colorado, Judge Wiley Daniel found the unusual circumstances test required a stay where the fraud case against the debtor could not proceed against the non-debtor co-defendant without affecting the bankruptcy action. *Thomas v Inland Pacific Colorado, LLC*, 2013 WL 708493 (D. Colo. 2013).

16. One bankruptcy court has described the unusual circumstances test as including the following: "(1) Existence of an indemnity provision between the non-debtor and the debtor; (2) the possibility that liability established against the non-debtor would be imputed to the debtor; (3) the fact that the issues between debtor and non-debtor and the opposing party were "intimately intertwined;" (4) the possibility of inconsistent results if both cases were allowed to proceed on parallel tracks; (5) such identity of the parties as would make the debtor the real party in interest; and (6) considerations of judicial economy." *In re Friedman's, Inc.*, 336 B.R. 896, 897-98 (Bankr. S. D. Ga. 2005).

17. The present case meets the "unusual circumstance" test. First, any judgment or actions taken to continue of the Lawsuits against Dr. Hansen would be automatically imputed to PVHC under the doctrines of respondeat superior; indeed, a judgment against Dr. Hansen is a judgment against PVHC. *See Turman v. Ameritruck Refrigerated Transport, Inc.*, 2001 WL 135843 *2 (D. Kan. 2001)(concluding bankruptcy

court properly extended automatic stay to non-debtor who would be liable for actions of debtor under the legal doctrine of respondeat superior); *In re Wolf Fin. Group, Inc*., 1994 WL 913278, at *5 (Bankr.S.D.N.Y. 1994) (recognizing that bankruptcy courts may stay "prosecution of civil actions against non-debtor employees of a chapter 11 debtor-in-possession on the grounds that by application of principles of respondeat superior, a judgment against the employees could collaterally estop the debtor in future litigation").

18. Second, the actions against the District, Healthtech and Mr. Patten must also be subject to the automatic stay for two reasons. First, PVHC, has contractually agreed to indemnify these entities from liability. *See Landsing Diversified Prop. V. First Nat'l Bank and Trust Co. of Oklahoma (In re Western Real Estate Fund)*, 922 F.2d 592, 599 (10th Cir. 1991) (recognizing that stay against non-debtor where debtor's assets would be subject to indemnification may be warranted during the pendency of the bankruptcy); *see also In re Family Health Services, Inc*., 105 B.R. 937 (Bankr. C.D. Cal. 1989), rev'd on other grounds, 143 B.R. 232 (C.D. Cal. 1992) (Action against nondebtor that will result in claims against the estate for reimbursement or indemnification creates identity of interest such that debtor becomes the real party defendant).

19. Additionally, the non-debtor defendants are only secondarily liable. Indeed, only if PVHC/Dr. Hansen are first found liable of malpractice will the District/Healthtech/Mr. Patten be found liable for negligent supervision, negligent hiring, etc. *See F.M., et al v. Walden*, 213 WL 8481607 (D.N.M. 2013) (staying actions against co-defendants of debtor for negligent hiring, respondeat superior which were based upon secondary liability to the debtor's primary liability*); In re North Star Contracting Corp*.,

125 B.R. 368 (Bankr. S.D. N.Y. 1991) (applying stay to claims against debtor's president due to president's indemnification rights against the debtor); *In re Lomas Financial Corp.*, 117 B.R. 64 (S.D. N.Y. 1990) (same); *Sudbury, Inc. v. Escott*, 140 B.R. 461 (Bankr. N.D. 1992) (imposing stay as to non-debtor defendants because "it is not plausible that the defendants could be found liable . . . except on facts that would impose liability on the Debtor"); *In re Circle K Corp.*, 121 B.R. 257 (Bankr. D. Ariz. 1990); *In re Calpine Corp.*, 354 B.R. 45, 50 (Bankr. S.D.N.Y. 2006) (claims against nondebtor were sufficiently tied to claims against debtor such that risks of collateral estoppel and evidentiary prejudice existed, demanding automatic stay apply to nondebtor). Thus, the litigation should not go forward as each district court will have to make a determination that PVHC is liable before it can assess liability against the District/Healthtech/Mr. Patten.

20. Finally, if the Lawsuits are not stayed against all defendants, the ability of PVHC to pursue a successful plan of reorganization under Chapter 11 will suffer and the personal injury claimants will suffer disparate and unequal treatment in the race to dismember the debtor. First, as stated above, PVHC voluntarily filed its chapter 11 petition to obtain the time and space needed to resolve the Lawsuits in a fair, reasonable, and efficient manner while ensuring its long-term stability for the benefit of the community it serves. The automatic stay is designed "to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite

from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor." *Robins*, 788 F.2d at 998. If the Lawsuits are permitted to proceed, management of the debtor will be forced to devote substantial time and energy in connection with their defense through ongoing depositions and discovery. Absent relief from the automatic stay, PVHC's officers may be faced with a choice of spending time defending twenty separate actions or overseeing the plan process. *See A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 996, (4th Cir. 1986) ("avalanche of actions*"); Matter of Rickel Home Centers, Inc.*, 199 B.R. 498, 501–02, 29 (Bankr. D. Del. 1996); *In re Steven P. Nelson, D.C., P.A.*, 140 B.R. 814, 816–17 (Bankr. M.D. Fla. 1992*); In re Circle K Corp.*, 121 B.R. 257, 262, (Bankr. D. Ariz. 1990); *In re TRS, Inc.*, 76 B.R. 805 (Bankr. D. Kan. 1987). Furthermore, without the automatic stay the creditors winning the race to judgment would likely be paid in full while those creditors who are delayed in obtaining a judgment will receive little or no recovery on their claims. PVHC through its bankruptcy filing wishes to prevent this type of unjust result. For the forgoing reasons, this Court should extend the automatic stay under § 362(a)(1) to the entirety of the Lawsuits against all defendants.

### C. The Court Should Stay The Lawsuits In Their Entirety Under 11 U.S.C. § 105 to Enhance the Prospects of a Successful Reorganization.

21. Alternatively, "[c]ourts consistently have found that § 105 may be used to stay actions against non-debtors", considering § 105 grants broader authority to courts than § 362. *Calpin*e, 365 B.R. at 409, n. 20 (*citing Queenie v. Nygard Intern.*, 321 F.3d 282, 288 (2nd Cir. 2003)). "Under certain circumstances, a bankruptcy court has

discretion to enjoin a civil proceeding against a non-debtor under § 105. A request by a debtor for an injunction under § 105(a) pending confirmation of the debtor's plans for reorganization is regarded as a request for a preliminary injunction." *Calpine*, 365 B.R. at 409. In particular, a section 105 injunction may be used "to enhance the prospects of a successful resolution of the disputes attending [the debtor's] bankruptcy." *In re Caesars Entertainment Op. Co., Inc.*, 808 F.3d 1186, 1188 (7th Cir. 2015).

22. A section 105 injunction should be granted to stay the Lawsuits against all defendants. First, given the significant amount of revenue generated by PVHC, PVHC is a promising candidate for a successful reorganization, *if* it has the time and space to resolve the claims asserted against it in the Lawsuits. Second, in *Calpine*, the court determined that irreparable harm exists if there is "a significant burden and distraction of key employees from its restructuring efforts." *Id*. at 410. As discussed above, the key determination in each of the Lawsuits is whether Dr. Hansen committed malpractice while an employee of PVHC; the liability of *all* of the defendants in each of the twenty lawsuits is dependent upon this factual and legal determination. If the PVHC's officers, directors, and employees are required to defend the Lawsuits, attend depositions, respond to discovery, attend twenty different trials/mediations, etc., they will not be capable of putting forth their best efforts in making the reorganization successful. *See In re PTI Holding Corp.*, 346 B.R. 820, 827 (Bankr. D. Nev. 2006) ("Any material diversion of [officers] time and energies would result in a loss to the estate"); *In re Zenith Laboratories, Inc.*, 104 B.R. 659, 664–66 (Bankr. D. N.J. 1989) (stay of claims against debtor's principals under 105 appropriate in order to give debtor space it needs to

rehabilitate).

23.     Third, when balancing the irreparable harm PVHC stands to suffer in the absence of a stay against the harm suffered by those entities that would not be permitted to proceed, the balance of the equities weigh in PVHC's favor.  The purpose of PVHC's bankruptcy petition was to marshal its asset and to resolve the Lawsuits equitable and fairly; without the stay, all plaintiffs are still in a scramble for assets and in a race for judgments.  Lastly, the public interest factor weighs in favor of an injunction. The full attention of PVHC's officers, directors and employees promotes a successful reorganization, the continued employment of 360 employees, and the continued provision of a hospital for the Powell area of northwestern Wyoming.  Consequently, this Court should impose injunctive relief under 11 U.S.C. § 105(a) and extend the automatic stay as to all of the Defendants in the Lawsuits.  *See In re Thorbardin Ranch, LLC*, Case No. 09-21157, Order Granting Debtor's Motion to Extend Automatic Stay for a Limit Time, (Bankr. D. Wyo. November 2, 2010).

For the forgoing reasons, PVHC respectfully requests that the Court determine that the automatic stay applies to the Lawsuits in their entirety, *i.e.*, it applies to all claims against all defendants in the Lawsuits, and for such other and further relief as the Court deems proper.

Dated: Cheyenne, Wyoming
May 24, 2016

        MARKUS WILLIAMS YOUNG AND ZIMMERMANN LLC

        By: /s/ *Bradley T. Hunsicker*
        Bradley T. Hunsicker (WY Bar No 7-4579)
        Jennifer Salisbury (WY Bar No. 7-5218)
        106 East Lincolnway Suite 300
        Cheyenne, WY 82001
        Telephone: 307-778-8178
        Facsimile: 307-638-1975
        Email: bhunsicker@markuswilliams.com;
        jsalisbury@markuswilliams.com

        Proposed Counsel for the Debtor and Debtor-in-Possession

## NOTICE OF TIME TO OBJECT

**YOU ARE HEREBY NOTIFIED** that if you desire to oppose the Debtor's **Motion to Enforce Scope of the Automatic Stay, or in the Alternative, Motion to Extend Automatic Say and Notice of Opportunity to Object** filed on behalf of Powell Valley Health Care, Inc., you are required to file with the Court and serve on Bradley T. Hunsicker, attorney for the Debtor, whose address is shown above, a written objection to the motion on or before **June 10, 2016,** or the relief requested may be granted by the Court.

        ___/s/_____
        Bradley T. Hunsicker

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 24th day of May, 2016, by placing a copy in the U.S. mail, first class postage prepaid, upon those listed on the attached mailing list and those listed below:

**Chris C. Voigt**
*Crowley and Fleck, PLLP*
P.O. Box 10700
Billings, MT 59103-2529
*Attorney for Defendant Jeffrey Hansen, M.D.*

**Paul Kapp**
**George E. Powers, Jr.**
Sundahl, Powers, Kapp & Martin, LLC
1725 Carey Avenue
P.O. Box 328
Cheyenne, Wyoming 82003
*Attorneys for Defendant HealthTech and William D. Patten*

**Judith Struder**
Schwartz, Bon, Walker & Studer, LLC
141 South Center Street, Suite 500
Casper, Wyoming 82601
*Attorney for Plaintiff Homeland Insurance Company of New York*

**Charles E. Spevacek**
**Tiffany M. Brown**
Meagher & Geer, PLLP
33 South Sixth Street, Suite 4400
Minneapolis, MN 55402
*Attorneys for Plaintiff Homeland Insurance Company of New York*

**Joanna R. Vilos**
Holland and Hart LLP
P.O. Box 1347
Cheyenne, Wyoming 82003-1347
*Attorney for Defendants HealthTech Management Services, Inc. and William D. Patten*

**Jose A. Ramirez**
Holland and Hart LLP
8390 E. Crescent Parkway, Suite 400
Greenwood Village, Colorado 80111
*Attorney for Defendants HealthTech Management Services, Inc. and William D. Patten*

**Julie Nye Tiedeken**
McKellar, Tiedeken & Scoggin, LLC
P.O. Box 748
Cheyenne, Wyoming 82003-0748
*Attorney for CounterClaim Defendant UMIA Insurance, Inc.*

**John F. Sands**
Sweetbaum Sands Anderson PC
1125 Seventeenth Street, Suite 2100
Denver, Colorado 80202
*Attorney for CounterClaim Defendant UMIA Insurance, Inc.*

| | |
|---|---|
| **R. Jeff Carlisle**<br>**Catherine A. Naltsas**<br>**Farah Naz A. Namvar**<br>Lynberg & Watkins, APC<br>888 South Figueroa Street, 16th Floor<br>Los Angeles, California 90012<br>*Attorneys for Lexington Insurance Company* | **Deborah M. Kellam**<br>Hall & Evans, LLC<br>2015 Central Avenue, Suite C<br>Cheyenne, Wyoming 82001<br>*Attorney for Lexington Insurance Company* |

**W. Henry Combs, III**
**Andrew Sears**
Murane & Bostwick, LLC
201 North Wolcott Street
Casper, Wyoming 82601
*Attorneys for Defendant Jeffrey Hansen, M.D.*

**Scott E. Ortiz**
**Brian J. Marvel**
Williams Porter Day & Neville, P.C.
P.O. Box 10700
Casper, WY 82602
*Attorneys for Pre-Petition Debtor*

                                                */s/ Jenny F. Tokuoka*
                                                 Jenny F. Tokuoka