Jamie N. Cotter (Wyoming Bar No. 74721)
Philip A. Pearlman (Colorado Bar No. 11426)
Scott J. Goldstein (Missouri Bar No. 28698)
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Telephone: (303) 839-3800
Facsimile: (303) 839-3838
jcotter@spencerfane.com
*Counsel to Official Committee of
Unsecured Creditors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | Case No. 16-20326 |
| **POWELL VALLEY HEALTH CARE, INC.,** | ) | |
| | ) | |
| **Debtor-in-possession.** | ) | |

**LIMITED OBJECTION TO DEBTOR'S APPLICATION TO
EMPLOY HAMMOND HANLON CAMP, LLC**

The Official Committee of Unsecured Creditors (the "UCC"), for its Limited Objection to Debtor's Application to Employ Hammond Hanlon Camp, LLC ("Objection"), states as follows:

**I.       Introduction.**

1.      On August 25, 2016, the Debtor filed its Application to Employ Hammond Hanlon Camp, LLC as Financial Advisor and Investment Banker (the "Application"). (Docket #259). The U.S. Trustee filed its Notice of No Objection to the Application on August 26, 2016. (Docket #262). The Court granted the UCC's request to have until September 2, 2016 to consider the Application. (Docket #273).

2.      The UCC objects to the Application on the basis that it is premature, and that the UCC, who should be involved in the process, has not had a sufficient opportunity to discuss with the Debtor and H2C the nature and extent of its employment and the valuations to be performed.

The UCC believes that H2C is qualified to provide services as a financial advisor.[1] However, for the reasons discussed below, the Application should be denied without prejudice.

## II.     Context and Status of Bankruptcy Case.

3. The Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on May 16, 2016. On June 21, 2016, the U.S. Trustee appointed the UCC. Since July, the UCC, the Debtor, and the tort claimants have been communicating with each other concerning this case with the goal of negotiating a framework for a consensual plan of reorganization. To date, no such framework has been agreed to, although the parties continue to work diligently to accomplish that goal.

4. Despite the fact that the parties have been discussing the framework for a consensual plan for many weeks, the UCC was first told about the requested retention of H2C through the Debtor's filing of its Application. The UCC was not consulted about the retention. This is important in a case such as this where the Debtor is currently asking the UCC to agree to a framework for a consensual plan.

5. It may be important if the parties cannot reach consensus on a plan, to have valuations performed on the Debtor's assets and, based on rulings by the Court which by necessity must be obtained first, exactly what those assets consist of.

6. Despite the fact that the parties are currently involved in these negotiations, the Debtor is asking the Court to approve the retention of H2C to perform critical valuations without

---

[1] The UCC informs the Court that Debtor's counsel did hurriedly arrange a telephone meeting with H2C representatives on September 1, 2016, upon which the UCC concludes H2C is qualified. However, H2C did say on the call it did not yet have sufficient facts to answer important questions of the UCC and counsel for the tort claimants relating to assets to be valued and valuation methodologies. Counsel for the UCC also sought information about Chapter 11 cases in which H2C has provided valuations for entities such as the Debtor. While the UCC believes this information will be forthcoming, as of the filing of this Objection, it has not been received.

the input of any other party. Based on the current status of the negotiations, the Application is premature and should be denied.

**A.      The Court Should Deny the Application Because It Is Premature.**

7.      If the parties are unable to reach consensus as to a plan, there are preliminary rulings which the UCC will seek (and which it believes must be ruled upon) before a plan on a contested basis may go forward.

8.      First, this Debtor may not qualify for bankruptcy. As has been pointed out to Debtor and the Powell Hospital District (the "District") (which cannot file bankruptcy under Wyoming law of any sort), if the Debtor is found to be an instrumentality of the District, it may not qualify for bankruptcy and a motion to dismiss its case may be filed in order to determine that issue. While the UCC may not wish to proceed on this basis, it may if no consensus can be reached. If such a motion is filed and ruled upon in the affirmative, there is no need for a financial advisor.[2]

9.      Even assuming that such motion is not filed, the UCC may seek, among other things, a ruling from this Court for substantive consolidation of the District, or that the District is the alter-ego of the Debtor, to pierce the corporate veil of the District and hold it liable and responsible for the Debtor's debts, or that the Debtor was the agent of the District for liability purposes. Any of these findings in the affirmative may result in different assets being subject to valuation (real property and personal property) (total enterprise versus only operating assets),

---

[2] See the Bylaws of the Debtor, Article I: "**1. Powell Valley Health Care, Inc. is a Wyoming non-profit corporation and is classified as a mutual benefit corporation. It is organized and acts as an agent of Powell Hospital District and is considered an instrumentality thereof with the purpose and authority to operate Powell Valley Hospital, Powell Valley Care Center, Powell Valley Clinic, The Heartland, Home Health/Hospice services, and to provide such other services, operations and/or facilities as are related thereto and/or otherwise serve the health needs of persons in Powell, Wyoming and the surrounding communities. As a Wyoming non-profit corporation, it has no members and no corporate stock.**" (emphasis added) (Bylaws of Debtor attached hereto as Exhibit A). (This is only one indicia that dismissal of the case is a real possibility).

and the parties currently do not know what to tell H2C to value at this point in time, or how to do so, until such rulings are made. Therefore, for these reasons alone, the Application is premature.

**B.    There Has Been No Agreement (or Even Substantive Discussion) on Assets to be Valued or Appropriate Valuation Methodologies.**

10.    Notwithstanding the above, while the UCC may ultimately agree to use H2C, the UCC does not agree to its employment at this time. The current proposed framework calls for the retention of a financial advisor to value the Debtor's assets, and then that valuation apparently serves as the basis for a contested plan. Given the important role that any financial advisor is going to play in any proposed plan, the UCC believes that the Debtor should consult with, and reach an agreement with the UCC and other creditors with respect to what assets are going to be valued and the valuation methodologies employed before moving forward with the retention of any financial advisor.

11.    This approach will ensure that valuable estate assets are not wasted. If the Court approves the Application and H2C moves forward with its valuation (without input from the UCC), it is likely an additional financial advisor will have to be selected and employed by the UCC, and this case (if it proceeds) may then become one of expensive dueling experts (at the cost of the injured tort claimant creditors). The Debtor is putting the proverbial cart before the horse by requesting authority to retain H2C at this point given the status of the case.

12.    Further, the UCC is informed and understands that the Debtor plans to request an extension of the exclusivity period. The UCC will likely have no objection to that request, and such request highlights the fact that the Debtor will have time to systematically reach an agreement on the critical issues affecting valuation before moving forward with the retention of a financial advisor. Therefore, the Debtor's request is premature.

**C.     It is Not Clear that the Scope of the Employment is Legally Permissible.**

13.     The Application recites that H2C is being hired to potentially conduct a sale of the Debtor's assets as described in the Phase II services.  The UCC is not convinced that the Debtor's assets may legally be sold pursuant to Wyoming Law.

14.     As the Court is aware, this case involves a bankruptcy filing by an entity that "is organized and acts as an agent of the Powell Hospital District and is considered an instrumentality thereof with the purpose and authority to operate Powell Valley Hospital…" (Bylaws Exhibit A).  The District "exercise[s] ultimate control and authority over [the Debtor's] operations."  (Affidavit of William D. Patten, Jr., attached hereto as Exhibit B).  Further, given this relationship between the Debtor and the District, the Debtor "is deemed an instrumentality, institution and component of [the District]." Id.

15.     As relevant to the Application, under Wyoming law, a hospital district cannot be dissolved or terminated without putting that question to a vote of the qualified electors of the hospital district.  See W.S. §35-2-438. While there has been preliminary discussion about this issue and the Debtor may take a different position, to the extent that the District and Debtor are alter-egos of each other, there is certainly a question regarding whether the assets of the Debtor can be liquidated without a termination of the District and therefore a resulting violation of Wyoming law. This is clearly a question that needs to be examined and determined as between the Debtor, the UCC and the creditors.  It is premature to approve the retention of a financial advisor to potentially analyze and conduct a sale that violates Wyoming law.

16.     As stated above, the UCC has no objection to H2C's qualifications, and the UCC can certainly envision a situation where it would support the retention of H2C to perform valuation services for the Debtor.  However, for the reasons set forth herein, the Application is premature and should be denied.

WHEREFORE, the Committee respectfully objects to the Application to Employ Hammond Hanlon Camp, LLC and requests that the Court deny the Application without prejudice.

Respectfully submitted,

SPENCER FANE LLP
/s/ Jamie N. Cotter
Jamie N. Cotter          WY #74721
Philip A. Pearlman       CO #11426
Scott J. Goldstein       MO #28698
1700 Lincoln Street, Suite 2000
Denver, CO 80203-4554
(303) 839-3800
(303) 839-3838—Fax
jcotter@spencerfane.com
ppearlman@spencerfane.com


COUNSEL TO OFFICIAL COMMITTEE OF
UNSECURED CREDITORS