Jamie N. Cotter (Wyoming Bar No. 74721)
Phillip A. Pearlman        CO #11426
Scott J. Goldstein         MO #28698
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Telephone: (303) 839-3800
Facsimile: (303) 839-3838
jcotter@spencerfane.com
*Counsel to the Official Committee of
Unsecured Creditors*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In Re: ) | Chapter 11 |
| ) | Case No. 16-20326 |
| **POWELL VALLEY HEALTH CARE, INC.,** ) | |
| ) | |
| **Debtor-in-possession.** ) | |

### OBJECTION TO MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO ASSUME UNEXPIRED NON-RESIDENTIAL REAL PROPERTY LEASES PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6006 AND (II) ESTABLISHING CURE AMOUNT, AND <u>REQUEST FOR EVIDENTIARY HEARING</u>

The Official Committee of Unsecured Creditors (the "UCC"), for its Objection to Motion for Entry of an Order (I) Authorizing the Debtor to Assume Unexpired Non-Residential Real Property Leases Pursuant to Section 365 of the Bankruptcy Code and Bankruptcy Rule 6006 and (II) Establishing Cure Amount, and Request for Evidentiary Hearing (the "Objection"), states as follows:

I.     <u>INTRODUCTION</u>.

The Debtor filed its Motion for Entry of an Order (I) Authorizing the Debtor to Assume Unexpired Non-Residential Real Property Leases Pursuant to Section 365 of the Bankruptcy Code and Bankruptcy Rule 6006 and (II) Establishing Cure Amount (the "Motion") on August 18, 2016 with regard to five (5) agreements which the Debtor characterizes as leases (the "Leases"). Numerous unanswered questions regarding the Leases exist, as will be described

herein. Assumption is not necessary at the stage of this case and is premature.[1] The proposed assumption of the Leases appears to be solely to benefit the interests of the Powell Hospital District (the "District"), the lessor under all of the Leases, and an insider who controls the Debtor, to the potential detriment of the tort creditors (the substantial creditors in this case). The UCC, therefore, objects to the assumption of any of the Leases with the District at this time for all of the reasons set forth herein.

    A.    <u>The District Is An Insider And The Leases Should Be Subject to a Higher Level of Scrutiny</u>.

The Motion does not disclose that the District is clearly and without question an insider who controls the Debtor.[2] Thus, the proposed assumption merits special attention and consideration by the Court, and should be subject to a higher level of scrutiny.

While the business judgment standard may be appropriate for most assumptions under Section 365 which normally involve a contract or lease with an unrelated third-party, it is not appropriate in the context of insider transactions. <u>Westship, Inc. v. Trident Shipworks, Inc.</u>, 247 B.R. 856, 865 (M.D. Fla. 2000) (prudent for the court to look closely at assumption when the

---

[1] Under 11 U.S.C. § 365(d)(4), assuming the Leases are leases of non-residential real property, they must be assumed within 120 days, or an extension can be obtained of an additional 90 days (which is commonly requested and was not sought here). So, the Debtor could have simply sought a 90-day extension. After that, extensions are at the discretion of the lessor. As described herein, the lessor, the District, is an insider that created the Debtor and controls the Debtor. Thus, any suggestion the Debtor is at "risk" of having its Leases rejected is a red herring. The motivation by the Debtor to assume these Leases now seems designed to protect the District without due regard for the tort creditors, for which the Debtor acts as a fiduciary. The UCC reserves all rights, should it be necessary to seek the appointment of a trustee or examiner under 11 U.S.C. § 1104, in order for independent decisions to be made with respect to the Leases.

[2] 11 U.S.C. § 101(31)(B). Among other things, as noted in other pleadings, the Debtor has admitted that it was organized, and acts as an agent of the District and is considered an instrumentality thereof, with the purpose and authority to operate the hospital and related health care facilities. It has no members and no corporate stock. The Debtor's Board of Directors consists of ten (10) members, seven (7) of whom must be members of the District Board of Trustees. Bylaws of Powell Valley Health Care, Inc. (Article I.1 and Article III.2); See also Lease Agreement dated August 1, 2012 (Debtor's Exhibit C) ("WHEREAS, PVHC is a Wyoming non-profit corporation formed for the purpose of acting as an instrumentality of Powell Hospital District for the purpose of operating and managing the facilities known as Powell Valley Hospital and Powell Valley Care Center").

landlord has some connection with the debtor/tenant); In re Tidal Const. Co., Inc., 446 B.R. 620, 624 (Bankr. S.D. Ga. 2009) (holding that 363 sales to insiders are subject to a higher scrutiny because of the opportunity for abuse); Pepper v. Litton, 308 U.S. 295, 306 (1939) (holding insider transactions are subject to rigorous scrutiny); In re Papercraft Corp., 211 B.R. 818, 823 (W.D. Pa. 1997) (insider transactions are subjected to rigorous scrutiny and when challenged, the burden is on the insider not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoints of the corporation and those with interests therein.).

Upon information and belief, the District created the Debtor to (i) borrow money it may not have been able to borrow under Wyoming law;[3] (ii) operate the hospital and related hospital facilities; and (iii) transfer the risk of liability associated with operating a hospital and related hospital facilities to the Debtor. All of the Leases, therefore, relate to transactions wholly between the District and the entity it created to fulfill the District's functions. Under the circumstances, each Lease should be subject to careful scrutiny which the UCC has not had an opportunity to do because it is in the early stages of this case, and apparently the Debtor has no intention of doing. For these reasons alone, the proposed assumption should not be granted at this time.

---

[3] It is not clear whether the borrowings by the Debtor were in compliance with Wyoming law. Gronberg v. Teton County Housing Authority, 247 P.3d 35, 46 (Wy. 2011) (finding that under Wyoming law, an agent of a municipality is subject to the same debt limits under the Wyoming Constitution.).

WA 8654387.2

B.  **The Leases Are Not Arms-Length Transactions (or Even Leases in Some Instances), and Investigation and Evidence are Necessary Before Assumption is Appropriate.**

As the court is well aware, pre-petition transfers made pursuant to a contract that has been assumed may not be avoided as preferential under 11 U.S.C. § 547, and assumption may affect other avoidance and/or recharacterization proceedings. See, e.g., In re Kiwi Int'l Air Lines, Inc., 344 F.3d 311, 317-21 (3d Cir. 2003); Matter of Superior Toy & Mfg. Co., Inc., 78 F.3d 1169, 1173-74 (7th Cir. 1996); In re LCO Enterprises, 12 F.3d 938, 943-44 (9th Cir. 1993); In re Network Access Solutions Corp., 330 B.R. 67, 75 (Bankr. D. Del. 2005) (finding assumption of contract barred creditor's action to recover transfers); In re Vision Metals, Inc., 327 B.R. 719, 722 (Bankr. D. Del. 2005) (holding debtor's assumption of a contract barred constructive fraud claims with respect to transfers made pursuant to that contract).

The Leases are not arm's length lease transactions, and have indicia of management agreements and/or real estate sale transactions. Under the circumstances, a premature assumption could substantially benefit the District and harm the tort creditors to the extent that avoidance and/or recharacterization claims exist. While the UCC has not had an opportunity to do any investigation, a few examples are set forth below (and where there is a reference to an Exhibit, it is the Lease to which the Debtor referred in its Motion):

- Exhibits A and D, on information and belief, related to "The Heartland" assisted living facility. Pursuant thereto, it appears in 1992 all of the assets with respect to the facility were transferred to the Debtor for the Debtor to borrow money and/or fund the costs to demolish the facility and build a new facility. Apparently, the Debtor did so. The Debtor admits in its pleadings that, "By virtue of the Heartland Lease, PVHC became the owner of the improvements, including the

Heartland assisted living facility, together with [sic] all of the necessary equipment, furniture and furnishings to operate the facility."

Apparently, however, at the end of 2013, pursuant to Exhibit D, the District purchased The Heartland, but there is no rent being paid and the Debtor is operating and managing the facility and paying the remaining debt thereon. These transactions merit a high level of scrutiny. Under the circumstances, it may be that the Debtor has ownership rights in The Heartland and/or that the District should be paying the Debtor to manage it, among other things.

- Exhibit B relates to medical office buildings, a medical clinic and a parking garage. It is unclear how any of these facilities were constructed or paid for, and the Debtor operates and manages the facilities. The Debtor pays the District in excess of $800,000 a year under Exhibit B. There has been no disclosure how this amount was calculated or the economics concerning the same. Given that the District created and controls the Debtor, an expenditure of the Debtor in an amount in excess of $800,000 to an insider should be the subject of substantial investigation, but there has been none by the Debtor.

- Exhibit C relates to the hospital and nursing home, and to all improvements, equipment, furnishings and fixtures. The Debtor manages the facilities, operates them, and obviously accepts the risk of all matters relating thereto for which it pays to the District the sum of $10.00 for the full term of the Lease. It is unclear what the real nature of this transaction is, whether there are avoidance and/or

- recharacterization issues relating thereto, and to the knowledge, information and belief of the UCC, the Debtor has done no investigation relating thereto.

- Exhibit E is a one-page lease agreement on a property at 428 Alan Road in Powell, Wyoming, for which there is no further information in the Motion. It is described as an "Addendum to Lease B", and includes a provision for "forgiveness of rent" of $56,250 for a prior period, without explanation. Given the transaction is essentially between the same parties, an investigation is necessary.

In sum, the Debtor pays the District, an insider, almost $900,000 a year, from the face of the Leases, and there has been no investigation concerning the propriety of the same done by the Debtor. The UCC reserves all rights to make further objections after discovery, and based on additional information.

C. <u>An Early Assumption Creates A Risk of Turning Pre-Petition Claims Into Administrative Claims Under 11 U.S.C. § 503(b)(7)</u>.

If an executory contract or unexpired lease is assumed by the debtor-in-possession or trustee, the debtor's obligations under such contract or lease become administrative obligations, which affords a significant priority of payment to the non-debtor party to the contract or lease. Debtors-in-possession usually try to delay making decisions as to whether to assume or reject executory contracts and unexpired leases as long as possible, as a result of such possibilities. With respect to leases of non-residential real property, the administrative claim arising from the rejection is capped at two years' rent and other obligations under the lease under 11 U.S.C. § 503(b)(7), and the balance of the rejection claim is treated as an unsecured claim. The

remainder of the damages claimed resulting from such rejection is capped under 11 U.S.C. § 502(b)(6).

The Debtor has ignored this consideration, and as evidenced by Proof of Claim 75-1 filed by the District on September 7, 2016, the District is asserting potential pre-petition claims under the Leases which have not been taken into account by the Debtor. The UCC objects to assumption at this time for this reason as well.

D.   Requests for Information.

On September 2, 2016, and thereafter, the UCC has sought information to better understand the lease issues. These requests include, but are not limited to the following:

- "Appraisals of any real or personal property which make up the Hospital enterprise and/or are covered by the leases in any manner. I assume this includes the nursing home, assisted living center, hospital, any office or medical/clinical properties and all equipment. If you know there are appraisals but they are held by the District or bank and you don't have them, please let me know so I can ask them for copies."

- "With regard to the Heartland Purchase and Operation Agreement, please provide a list of all property transferred by Debtor to the District and all property transferred by the District to the Debtor, including but not limited to the $1,000,000. Please tell us how the million dollars was used."

- "Please provide a listing of all payments and/or transfers of real and/or personal property of any kind made by the Debtor to the District for the years 2011 forward to the petition date, and provide the reasons for the payment. I am assuming there is a ledger which includes this information and that this won't be too onerous a task, but if it is, let me know timing on same."

- "Any loans by Debtor to District or vice versa, 2011 to present and loan documents."

- "Regarding Exhibit A to the lease motion—costs to demolish and build the new facility and purchase all equipment and personalty therein by the Debtor."

- "Exhibit B—How was rent of $67,500 calculated?"

- "Who prepared these leases? Did the Debtor have separate counsel?"

WA 8654387.2

To date, none of this information has been provided.

In order for the UCC to fulfill its obligations in this case, it will require not only the above information, but facts relating to what Debtor paid for the construction, improvements, buildings and equipment relating to all properties which make up Exhibits A – E, and in particular "The Heartland" in which Debtor apparently paid for demolishing and building a new facility and equipment, but then transferred all of the property in 2013, and continues to pay debt relating to all of the above.

If the Debtor operates, funds and borrows money to fund all of the operations, and accepts all of the risk relating to the hospital and its facilities, the UCC questions whether any payment, let alone almost $900,000, should be paid to the District for the right to accept such onerous obligations, which should include an analysis of what rights the Debtor may have in these facilities.

WHEREFORE, the UCC respectfully objects to the Motion and requests an evidentiary hearing thereon.

WA 8654387.2

Dated September 12, 2016

                Respectfully submitted,

                SPENCER FANE LLP

                /s/ Jamie N. Cotter
| | |
|---|---|
| Jamie N. Cotter | WY #74721 |
| Phillip A. Pearlman | CO #11426 |
| Scott J. Goldstein | MO #28698 |

                COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS