Bradley T. Hunsicker (Wyo. Bar 7-4579)
Jennifer Salisbury (Wyo. Bar 7-5218)
**MARKUS WILLIAMS YOUNG & ZIMMERMANN LLC**
106 East Lincolnway Suite 300
Cheyenne, WY  82001
Telephone: 307-778-8178
bhunsicker@markuswilliams.com
jsalisbury@markuswilliams.com

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| POWELL VALLEY HEALTH CARE, INC., | ) Case No. 16-20326 |
| | ) |
| Debtor-in-Possession. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF THE DEBTOR'S APPLICATION TO EMPLOY HAMMOND HANLON CAMP, LLC AS FINANCIAL ADVISORS AND INVESTMENT BANKER**

Powell Valley Health Care, Inc., the debtor and debtor-in-possession in the above captioned case (the "**Debtor**", or "**PVHC**"), hereby files its *Memorandum of Law in Support of the Application to Employ Hammon Hanlon Camp, LLC as Financial Advisors and Investment Banker*, and would respectfully show the Court follows:

### I.    INTRODUCTION

As the debtor-in-possession, the Debtor has a statutory and fiduciary obligation to comply with its duties and responsibilities under the Bankruptcy Code.  First and foremost among its duties, the Debtor must propose a plan of reorganization that is

{Z0134428/1 }                                    1

feasible and capable of being confirmed. In order to do so, the Debtor must have the services of a financial advisor and investment banker to assist it in determining an evidence-based valuation of PVHC's business, formulating and negotiating a chapter 11 plan of reorganization and providing expert support to demonstrate the viability of any proposed chapter 11 plan. Specifically, in support of a proposed plan, the Debtor will require a liquidation analysis, a feasibility analysis and financial projections. *See* 11 U.S.C. §§ 1129(a)(7)(A)(ii), 1129(a)(11), 1129(b)(2)(A) and 1129(b)(2)(B). It is also conceivable that a financial advisor may be utilized to identify opportunities for profit enhancements and cost reductions, as well as conduct a sale process of PVHC's assets pursuant to § 363 of the Bankruptcy Code. Said services are crucial to the success of this chapter 11 case.

As is the standard operating procedure in virtually *every* chapter 11 bankruptcy case, the Debtor has filed a motion seeking this Court's authorization for the Debtor to employ a financial advisor in order to comply with the Debtor's statutory duties. However, notwithstanding the routine and necessary nature of the Debtor's request[1], the Committee filed a "limited" objection to the Debtor's retention of a financial advisor.

The Committee does not, however, object based upon any of the statutory standards under which an interested party could (and should) object to the employment of a professional. Instead, the Committee complains that the request for a financial advisor

---

[1] The request for employment of a professional person by a debtor is such a routine matter that the Local Rules provide that an application may be granted by this Court on an *ex parte* basis so long as the U.S. trustee has the opportunity to determine that the statutory standards under 11 U.S.C. § 327 have been met. See Wyoming LBR 2002-1(D) and 2014-1.

{Z0134428/1}                                    2

is "premature." The Committee's objection has no support under the Bankruptcy Code, case law or common sense. More important, the delay being caused by the Committee's objection will result in significant prejudice and damage to PVHC if it is not promptly overruled. As further explained below, it is estimated that each month PVHC remains in bankruptcy its revenues will decline. Furthermore, each month PVHC remains in bankruptcy, the more fees and expenses it incurs to the professionals employed by PVHC and the Committee. PVHC simply cannot survive for long with this ever increasing burden on its finances.

Indeed, it appears that the primary purpose of the Committee's objection is to hamstring the Debtor's ability to craft a confirmable plan of reorganization by denying the Debtor the use of a "qualified" financial advisor. Such gamesmanship should not be encouraged; PVHC requests that the Court approve its application to employ Hammond Hanlon Camp, LLC ("**H2C**") forthwith.

## II. BACKGROUND INFORMATION

1. PVHC is a Wyoming non-profit corporation qualified to do business pursuant to section 501(c)(3) of the United States Internal Revenue Code as a public charity. Its mission is to provide healthcare services to the greater-Powell, Wyoming community. In fulfilling its mission statement, PVHC serves a total population of approximately 7,500 people with the highest concentration of the population in Powell, with over 7,000 residents.

2. PVHC employs approximately 400 people in Wyoming.

3. On May 16, 2016 (the "**Petition Date**"), PVHC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq*.

4. PVHC has continued in the possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

5. On June 21, 2016, the Office of the United States Trustee for Region 19 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors for the Chapter 11 case (the "**Committee**") [D.E. 145].

6. On July 26, 2016, PVHC submitted its draft Chapter 11 Plan to the Committee.

7. On August 25, 2016, PVHC filed its Application to Employ Hammond Hanlon Camp, LLC as Financial Advisor and Investment Banker (the "**Application**") [D.E. 259].

8. The Committee filed its Limited Objection to the Application on September 2, 2016 [D.E. 276] (the "**Limited Objecti**on").

### III.   ARGUMENTS AND AUTHORITIES

*A. Standards for the Employment of Professional Persons by the Debtor-in-Possession.*

Section 327(a) of the Bankruptcy Code provides that the debtor-in-possession may with court approval employ "one or more attorneys, accountants, appraisers, auctioneers, or other professional persons." 11 U.S.C. § 327(a). Section 327(a) lists only two standards for employment of an estate professional: the professional must be disinterested

and may not hold or represent an interest adverse to the estate. *See In re Interwest Bus. Equip., Inc.*, 23 F.3d 311, 317 (10th Cir. 1994). Section 328 of the Bankruptcy Code then imposes a further requirement that the terms and conditions of the professional's employment be "reasonable." 11 U.S.C. § 328(a).

If these standards are satisfied, the party objecting to the professional's employment bears the burden of showing the impropriety of such employment. *In re Great Lakes Factors, Inc.*, 337 B.R. 657, 660 (Bankr.N.D. Ohio 2005). Specifically, so long as the professional is disinterested, does not hold an interest adverse to the estate and the employment terms are "reasonable", bankruptcy courts interfere with the debtor-in-possession's choice of professionals in only the "rarest" of circumstances. *In re Hash*, 472 B.R. 866, 868 (Bankr.W.D.Ky. 2010); *Great Lakes*, 337 B.R. at 660 ("a bankruptcy trustee is afforded wide latitude in their decision on how best to manage the estate, including the propriety of employing a professional.") Thus, if the debtor-in-possession believes that the employment of a financial advisor is in the best interest of the estate and that the particular advisor has the expertise and skill to act on the estate's behalf, such judgment should be respected. *See In re Kirchner*, 2010 WL 1855861 *5 (Bankr.E.D. Pa. 2010) ("It is the trustee who decides, in her own business judgment, what is best for creditors, and the retention of a particular attorney as the right person to try a case is the trustee's to make."); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr.D.Utah 1981) ("the court will not entertain objections to a trustee's conduct of the estate where that conduct involves a business judgment made in good faith, upon a reasonable basis,

and within the scope of his authority under the Code."); Collier on Bankruptcy ¶ 327.04[1] ("Trustees may select their own attorneys, accountants and other professional persons without interference from creditors.")[2]

  *B.  Application of These Standards to This Case.*

The Committee's Objection concedes that H2C meets the statutory requirements for employment under the Bankruptcy Code.  In other words, the Committee does not claim that H2C is not disinterested or that it holds an interest adverse to the estate. Undeniably, the Committee does not even quibble with the terms and conditions of H2C's employment agreement with the Debtor.  Instead, the Committee claims that the employment of a financial advisor is "premature."  In that regard, the Committee's Limited Objection does not meet the high standard required to overrule a debtor-in-possession's business judgment in administering its estate.

The Committee asserts that if the Committee and the Debtor agree upon a consensual plan, a financial advisor would not be needed.  The Committee is wrong.  The Debtor will need the services of a financial advisor even if the Debtor and the Committee agree upon a plan.  Section 1129 of the Bankruptcy Code requires that any plan proposed contain a liquidation analysis, a feasibility analysis, and an explanation as to how the plan meets the best interests of creditors test.  Without a financial advisor, the Debtor will be unable propose a confirmable plan of reorganization.  Without a proper evidentiary basis

---

[2] The Debtor was not able to find a single reported case in which a bankruptcy court denied a debtor-in-possession's request to employ a financial advisor who met the requirements of 11 U.S.C. §§ 327 and 328.

{Z0134428/1 }                                        6

as provided by a financial advisor, this Court will not be able to make its independent determination that the proposed plan meets the requirements of 11 U.S.C. § 1129.[3] Simply stated, the Committee is not the only party with standing to object to the Debtor's plan of reorganization. The Debtor has creditors whose interests are not aligned with those of the tort claimants who comprise the Committee.[4] A plan must be capable of overcoming all creditors' objections, not just those of the Committee. Accordingly, regardless of whether the Debtor and the Committee agree to the terms of a plan of reorganization, the Debtor needs a financial advisor to propose a confirmable plan of reorganization.

The Debtor's motion is not premature. If anything, it is late. Every passing day as a chapter 11 debtor costs the Debtor money, funds and time. The Debtor's bankruptcy petition has received publicity throughout Wyoming, creating uncertainty and worry among the Debtor's employees, patients, and the Powell community. Upon information and belief, each month under this Court's protection reduces the Debtor's revenues by 1-2% (see correspondence from H2C attached hereto at **Exhibit A**). In the most simple of terms, delay could be fatal to the Debtor's ability to reorganize.[5] The sooner the Debtor

---

[3]  Setting aside the fact that a financial advisor will be necessary to ensure the Debtor's plan can satisfy the requirements of the Bankruptcy Code, the financial advisor's assessment of the Debtor's current and future financial viability will be critical in order for the Debtor to determine, with a reasonable degree of certainty, whether or not its finances can support any obligations it may be required to pay into a plan (to comply with the confirmation requirements under the Bankruptcy Code).

[4]  The Powell Valley Hospital District No. 1, as the Debtor's landlord, and the Debtor's secured lender are examples of creditors whose interests are independent and potentially adverse to the Debtor and the Committee.

[5]  The Committee's Limited Objection presumes that the administration of a chapter 11 bankruptcy case follows a single track (first you do this, then you do this, and then this). In fact, the Debtor is capable of working with the Committee on a consensual plan while at the same time working on contingencies if a consensual plan is

{Z0134428/1 }                                                  7

has the support of H2C, the sooner it will be able to propose and confirm a plan of reorganization.

Finally, the Committee confuses and obscures the issues that are currently before this Court. First, the Committee hints that the Debtor may be an "instrumentality" of the Powell Valley Hospital District No. 1 (the "**District**").[6] What the Committee neglects to mention is that the Wyoming District Court has already addressed this issue. In analyzing whether PVHC was a governmental entity, the District Court judge listed the multitude of the factors demonstrating that PVHC was not a governmental entity, but was instead separate and distinct from the District. (**Exhibit B**, State Court Order at 5-6.) Furthermore, if the Debtor were an "instrumentality" of the District, the Debtor would not have been authorized to file a bankruptcy petition under 11 U.S.C. § 109(c)(2). If the Committee truly believes this is a meritorious issue, it should have already filed a motion to dismiss this case. The fact that it has not speaks volumes as to the meritless nature of these claims.

The Committee also complains that it does not have an agreement with the Debtor as to what assets of the Debtor are to be valued or what the appropriate valuation

---

not possible. Likewise, the Debtor cannot simply sit by and do nothing while the Committee threatens to file amorphous pleadings in the future. The Debtor has an obligation to keep this Chapter 11 Case moving along, and can do so even if the case takes dual or even triple tracks. As indicated above, a draft plan has already been shared with the Committee. The only thing keeping the Debtor from filing that plan is the use of a financial advisor to perform the services described herein. The Committee knows this fact, and accordingly, is using process (*i.e.*, its Limited Objection) to prevent that plan from moving forward. Such actions are irresponsible given the potential impact on the Powell community if this case does not swiftly move towards confirmation.

[6] The Committee attached the Affidavit of William Patten to its Limited Objection. The Affidavit is not an admissible piece of evidence: among other things, it is hearsay, it lacks foundation, it is improper expert testimony, and it is irrelevant.

methodology would be.[7] With respect to "what" assets, the Debtor will request that H2C value *all* of the Debtor's assets. With respect to methodology, the Committee is putting the cart before the horse. Why would the Committee seek to box the Debtor and H2C into agreeing to a valuation methodology before H2C is even hired? Indeed, when determining the fair market value of an organization, best practices require a financial advisor to apply two to three different methodologies in order to arrive at a value (see correspondence from H2C attached hereto at Exhibit A). The Committee's Objection makes no practical sense.

The bottom line is that the Committee has no valid basis for challenging the Debtor's application to employ a financial advisor. The Debtor believes that the employment of H2C is in the best interest of the estate, and that H2C has the expertise and skill to act on the estate's behalf. The Debtor's judgment should be respected, and the application should be approved.

## IV. CONCLUSION

The Debtor is seeking to employ a financial advisor in order to expeditiously and economically file a plan of reorganization in order to exit the Bankruptcy Court's protection as soon as possible. The Committee should not erect artificial barriers to the

---

[7] The Committee also asserts that the Debtor may be prevented from selling its assets pursuant to Wyoming law. In that regard, W.S. § 17-19-1202 states "[a] [non-profit] corporation may sell . . . all, or substantially all, of its property . . . other than in the usual and regular course of its activities." Consequently, this argument is equally without merit.

{Z0134428/1 }  9

Debtor's reorganization with baseless objections to routine administrative matters, the filing of which causes additional delay, costs and uncertainty.

**WHEREFORE**, for the reasons described herein, PVHC respectfully requests that the Court enter the revised proposed order submitted in connection with the Application [D.E. 261] approving the retention and employment of H2C as financial advisor and investment banker to PVHC, and grant other relief as is just and proper.

Dated: September 21, 2016.

**MARKUS WILLIAMS YOUNG & ZIMMERMANN LLC**

By: */s/ Jennifer Salisbury*
Bradley T. Hunsicker (WY Bar No 7-4579)
Jennifer Salisbury (WY Bar No. 7-5218)
106 East Lincolnway, Suite 300
Cheyenne, WY 82001
Telephone: 307-778-8178
Facsimile: 307-638-1975
Email: jsalisbury@markuswilliams.com

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 21st day of September, 2016, by placing a copy in the U.S. mail, first class postage prepaid, upon those listed below:

**United States Trustee**
c/o Daniel J. Morse
308 W. 21st St., Ste. 203
Cheyenne, WY 82001

*Darcy Ronne, Jan and Bart Brinkerhoff, Jody and Jerry Sessions, Joetta Johnson, Keela and Brock Meier, Lynn and Janet Snell, Martha and Richard McMillen, Michelle Oliver, Nathaniel and Sheena Bates, Shannon Eller, Veronica and William Sommerville, Anthony and Laurie DiPilla, Kalan Nicholson, Nancy and Earl Crawford, III, Nancy and Larry Heiser, Sheryl and Darin Henderson, Susan and Scot Stambaugh, Beverley Curtis, Harry and Jo Ann Knopp, Mark Bonamarte, Shane and Jayme Wilson and Susan and Doug Scott, Nanette Nofzinger, Kelly Hatcher*
c/o Randy L. Royal
P.O. Box 551
524 5th Ave. S.
Greybull, WY 82426

Jamie N. Cotter (Wyoming Bar No. 74721)
Philip A. Pearlman
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203

Bryant T. Lamer
Eric L. Johnson
Lisa A. Epps
Scott J. Goldstein
Spencer Fane LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106

/s/ Jessica A. Anderson
Jessica A. Anderson

{Z0134428/1 }                                11