

ATLANTA   CHICAGO   NEW YORK   SAN DIEGO

311 S Wacker Drive, Suite 5425
Chicago, IL 60606

h2c.com
T 312 508 4200

September 21, 2016

Mr. Bradley T. Hunsicker
Markus Williams Young & Zimmerman LLC
106 East Lincolnway, Suite 300
Cheyenne, Wyoming 82001

Dear Brad,

In response to the Official Committee of Unsecured Creditors ("UCC") objection to our retention to provide financial advisory services to Powell Valley Healthcare ("PVHC"), this letter provides further clarity to the issues raised. In addition, we have general concerns regarding the timing and progress in this case and its impact on the viability of PVHC.

Two weeks ago, both Tom Barry and I participated in a call you organized with counsel to the UCC. We covered a wide range of topics pertaining to the methods of valuing PVHC. On that call we discussed traditional valuation methodologies with respect to PVHC, ones that are used throughout the industry and are considered "best practice" methodologies when providing evidence to regulatory agencies including State Attorneys General across the nation involving change of control transactions for not for profit hospitals. We also discussed the possibility of a 363 sale of PVHC's assets. Our engagement contemplates that the parties agree that a sale of the assets is legally appropriate. Valuations are estimates based on a set of assumptions. A sale process is the true test of market value in an arm's length transaction.

H2C's approach to valuing PVHC is based on the premise of estimating the "Fair Market Value" of the organization as a going concern. This premise, consistent in the industry, assumes that PVHC is an ongoing business enterprise with management operating in a rational way with a goal of maximizing value. Fair Market Value is defined according to Revenue Ruling 59-60, Section 2.02, as, "The price at which the property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge of the relevant facts." Additionally, the Ruling states that, "Court decisions frequently state in addition that the hypothetical buyer and seller are assumed to be able, as well as willing, to trade and to be well informed about the property and concerning the market for such property."

H2C's approach would apply two of three possible valuation methodologies in arriving at an estimate of value for PVHC: (1) The "Market Approach" which is a method of determining the value of an asset or business based on the selling price of similar assets or businesses; and (2) The "Income Approach" which is a method of determining value based on the discounting at the appropriate rate of future income that the asset or business would reasonably be expected to produce over its useful life.

The "Cost Approach" is typically not utilized as we assume that the business and operations of PVHC are valued as a going concern and not a valuation of hard assets which requires estimating the amount of capital required to replace existing assets with others of equivalent utility.  PVHC's highest and best use is a going concern providing healthcare services to residents of Powell and surrounding communities and, therefore, the market approach and income approach valuation methodologies are most appropriate.

Standard valuation methodologies do not support use of liquidation value as an appropriate methodology.  Liquidation value should be considered the lower end or floor value of PVHC assets.  We want to reiterate that the market for used medical equipment is not robust.  PVHC's assets highest and best use and value is in a hospital environment with operations that are dependent on use of such asset.  This supports why the enterprise value approach almost always is used instead of the liquidation value approach save those instances when the underlying value of the organization's real estate has unusual value. Examples of that would include a hospital sited in Miami Beach, downtown Los Angeles, Manhattan or San Francisco.

In considering the value of equipment and inventory, I discussed liquidation values with an experienced liquidation advisor with considerable hospital experience.  He confirmed my experience that used hospital equipment has little and often no value in a liquidation.  Radiology, nuclear medicine and lab equipment have the highest initial cost of equipment used in a hospital but these assets depreciates quickly. They are often sold outside the U.S. given the potential liability from a false reading that could lead to a poor patient outcome.  In the case of the CT Scanner at PVHC, a 16 slice unit, I was informed by the above mentioned liquidation advisor that it had limited value as the cost of removing the equipment would likely exceed any payment they could receive from a buyer, often representing a third world operator.  Consistent with my experience, there is little or no value for old CT Scanners in the U.S.

Finally, we would like to stress our concern over the progress and timing of the case.  Prolonged bankruptcy cases for hospitals will have a negative impact on the operations. It is not uncommon during the initial months of a bankruptcy to realize deteriorated utilization and revenue.  It would not be unusual to see a monthly reduction of revenue approximating 1-2% during the bankruptcy.  Loss of revenue and deteriorated earnings will only result in declining value of the organization which will make a sale process more difficult given greater operational uncertainty.  In this bankruptcy case, quick and expedited analysis and reaching a consensual plan will provide the greatest benefit to all stakeholders.  Deteriorated financial position and possibly loss of the hospital through liquidation provides no benefit to any stakeholder in this case.

I hope this helps in your discussions with the UCC. I am happy to get on a call with them and attend the Court hearing at the end of this month to discuss our retention application.

Sincerely,

*[signature: Michael Lane]*

Managing Director


cc:  Thomas Barry