Jamie N. Cotter (Wyoming Bar No. 74721)
Philip A. Pearlman (Colorado Bar No. 11426)
Scott J. Goldstein (Missouri Bar No. 28698)
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Telephone: (303) 839-3800
Facsimile: (303) 839-3838
jcotter@spencerfane.com
*Counsel to Official Committee of
Unsecured Creditors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | Case No. 16-20326 |
| **POWELL VALLEY HEALTH CARE, INC.,** | ) | |
| | ) | |
| **Debtor-in-possession.** | ) | |

### RESPONSE TO DEBTOR'S MEMORANDUM OF LAW
### IN SUPPORT OF THE APPLICATION TO
### EMPLOY HAMMOND HANLON CAMP, LLC

The Official Committee of Unsecured Creditors (the "UCC"), for its Response to the Debtor's Memorandum of Law in Support of the Application to Employ Hammond Hanlon Camp, LLC, states as follows:

**I.     Introduction.**

Through its Application to Employ Hammond Hanlon Camp, LLC ("H2C") as Financial Advisor and Investment Banker (the "Application"), the Debtor seeks to employ H2C as the financial advisor for the Debtor's bankruptcy estate. The UCC filed a Limited Objection to the Application (the "Objection") explaining that it believed the Application was premature, given that many questions remain unanswered with respect to the scope of H2C's employment and identification of the Debtor's assets. The Debtor filed its Memorandum of Law in Support of its Application ("Memorandum"). The Debtor appears to blame the injured tort victims for the fact that the Debtor has filed for bankruptcy. It is well-known that the Debtor sought the protection

of this Court in the face of more than twenty lawsuits from tort claimants who were severely injured by one of the Debtor's doctors. It is not the fault of the tort claimants Debtor is in bankruptcy. It voluntarily chose to file the petition.

Frankly, the UCC is surprised with the vitriol of the Memorandum. Prior to the filing of the Application, the UCC believed all parties were working together to negotiate a plan. Then, and without any consultation with the UCC whatsoever, the Debtor requested permission to hire H2C, whose analysis the Debtor says is vital to the proposed framework of a plan. The Debtor's path now appears to be a contested confirmation hearing. Therefore, the UCC will likely have no choice but to seek approval to hire its own financial advisor and prepare for a contested confirmation hearing, thus seemingly creating the delay and expense which the UCC thought the Debtor was trying to avoid.[1]

## II. Response to Memorandum.

### A. The Debtor's Unilateral Choice of H2C.

The Debtor recites that hiring a financial advisor "is the standard operating procedure in virtually *every* chapter 11 bankruptcy case." (Memorandum, p. 2). However, it is also true that working cooperatively with the UCC in an effort to hire a financial advisor as part of the negotiation of a plan is also "standard operating procedure" in chapter 11 cases. The UCC is not alleging that the Debtor cannot hire a financial advisor. The UCC is merely suggesting that the unilateral hiring of a financial advisor, given the status of the parties' negotiation of a plan of reorganization, was not prudent in this case at this time.

With respect to the Application, the UCC raised two primary questions of H2C to which no answers have been provided. The first is that the UCC asked H2C to provide bankruptcy

---

[1] The draft plan circulated by the Debtor lacks any substantive treatment of any of the issues raised by the UCC. The suggestion, therefore, that the UCC is dilatory because it has had a plan since July 26, 2016 is meritless.

cases where they rendered valuation opinions in the context of a not-for-profit hospital or healthcare facility. To date, no cases have been provided. Second, the UCC asked for information concerning what assets would be valued and what valuation methodologies would be used. The UCC's intent in asking these questions was not to limit H2C's analysis but to understand the scope of the employment in light of the framework the parties have discussed for a plan. The Debtor asserts that these questions make no "practical sense," and the UCC is left with no answers, and in a place where it will hire its own financial advisor given the issues in this case.[2]

**B.    The Impact of the District on the Application and this Case.**

A key concern raised by the UCC in its Objection relates to the scope of H2C's proposed employment in light of the relationship between the Debtor and the Powell Hospital District (the "District"), which is an insider and controls the Debtor. It appears the Debtor's proposed employment of H2C and the valuations to be provided assume the District's assets cannot be reached in this bankruptcy case. This is important because resolution of that issue bears directly on the value of the Debtor's assets, what comprises the Debtor's assets, and whether the Debtor qualified for bankruptcy protection in the first place. These are clearly issues the Debtor will not be able to independently address, which is a reason why the UCC must hire its own financial advisor.

The Debtor's only response to these issues is to attach a copy of an interlocutory Order Denying Defendants' Motion for Summary Judgment (the "Order") with a representation to this Court that the Order "listed the multitude of the factors demonstrating that PVHC was not a

---

[2] H2C's letter attached to the Memorandum provides some additional information, but does not disclose whether the hospital facilities as an enterprise (including properties alleged to be owned by the District) will be valued as a part of any analysis. It should be noted, too, that this letter was oddly filed as a part of the Memorandum, rather than being provided to the UCC for further discussion.

3

WA 8723707.1

governmental entity, but was instead separate and distinct from the District." (Memorandum, p. 8). A cursory reading of the Order reveals that not to be the case. In the Order, the Fifth Judicial District Court in and for Park County Wyoming held that it could not decide as a matter of law whether the Debtor was an instrumentality of the District or not. In fact, much of the Order explains the interrelated nature of the District and Debtor and concludes that a reasonable person may or may not have believed that the Debtor was an instrumentality of the District (Memorandum, Exhibit B, p. 8).

The Debtor attacks the UCC's suggestion that the Debtor may not qualify for bankruptcy as a "meritless" claim. While the UCC has not concluded that a motion to dismiss is in the best interests of creditors, many of the tort victims believe that a motion to dismiss should have been filed months ago. Taunting the tort victims about seeking dismissal has only made the UCC's goal of reaching a consensus between all parties more difficult.

The UCC is not erecting artificial barriers to a reorganization. The entire purpose of this case and a reorganization with respect to this case is to resolve the claims of the tort claimants.[3] Therefore, it would seem that since the tort claimants comprise the substantial majority of the creditors in this case, they should be given some consideration and not be subjected to assertions that their concerns are "baseless objections to routine administrative matters."

---

[3] The UCC does not agree as suggested by H2C's letter that this particular Debtor, given its geographic location, will consistently continue to lose revenues because of the mere filing of bankruptcy, so an emergency exists and parties should not have a reasonable opportunity to investigate matters. The UCC does agree, however, that the costs attendant to bankruptcy will ultimately take a toll on the entity (keeping in mind, again, that the Debtor voluntarily chose this path).

Respectfully submitted,

SPENCER FANE LLP
/s/ Jamie N. Cotter
Jamie N. Cotter          WY #74721
Philip A. Pearlman       CO #11426
Scott J. Goldstein       MO #28698
1700 Lincoln Street, Suite 2000
Denver, CO 80203-4554
(303) 839-3800
(303) 839-3838—Fax
jcotter@spencerfane.com
ppearlman@spencerfane.com

COUNSEL TO OFFICIAL COMMITTEE OF
UNSECURED CREDITORS