Bradley T. Hunsicker (Wyo. Bar 7-4579)
Jennifer Salisbury (Wyo. Bar. 7-5218)
**MARKUS WILLIAMS YOUNG & ZIMMERMANN LLC**
106 East Lincolnway, Suite 300
Cheyenne, WY  82001
Telephone: 307-778-8178
bhunsicker@markuswilliams.com
jsalisbury@markuswilliams.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| In re: | ) |
| | ) Case No.: 16-20326 |
| POWELL VALLEY HEALTH CARE, INC., | ) Chapter 11 |
| | ) |
| Debtor. | ) |

### DEBTOR'S OBJECTION TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION OF EISNERAMPER LLP AS ACCOUNTANT AND FINANCIAL ADVISOR

Powell Valley Health Care, Inc. ("PVHC", or the "Debtor"), the debtor and debtor in possession in the above captioned case, hereby files its Objection to the Official Committee of Unsecured Creditors' Application for an Order Authorizing the Retention of EisnerAmper LLP as Accountant and Financial Advisor, and in support thereof would show the Court as follows:

### FACTUAL BACKGROUND

1.  On August 25, 2016, the Debtor filed its application to employ Hammond Hanlon Camp, LLC ("H2C") as a financial advisor to the Debtor.  The Official

Committee of Unsecured Creditors (the "Committee") filed a limited objection to the retention of H2C claiming that the employment of H2C would be "premature."

2. On September 28, 2016, the Court held a hearing on the Committee's limited objection. At that hearing, the Committee stated that it was considering selecting its own financial advisor. In response, the Court cautioned the Committee as follows: "look at what H2C is going to do before you start creating issues over valuation experts . . . that may be a little premature" and "take some time and determine what can and can't be agree on before . . . so we aren't unnecessary spending in this case." Audio Recording 9/28/16 Hearing.

3. On September 29, 2016, the Court granted the Debtor's application to hire H2C. Since then, H2C has been preparing a valuation of the Debtor's assets to be used in connection with a plan of reorganization. That valuation should be completed soon, and the Debtor plans to share H2C's report with the Committee as early as November 11, 2016, when the parties expect to conduct an in-person meeting in Denver, Colorado to address, among other topics, the filing of a consensual Chapter 11 Plan.

4. Additionally, the Committee has requested information from the Debtor regarding its assets and its financial condition. The Debtor has, and is in the process of, complying with the Committee's request. Specifically, the Debtor and the Committee (including its members and its counsel) negotiated a Confidentiality and Nondisclosure Agreement for purposes of sharing various confidential and financial information. The final Committee signature was received by the Debtor on October 25, 2016. To date, the Debtor has provided the Committee with substantial documentation through a file share

program administered through counsel for the Committee. More documentation will be provided in the very near future.

5. On October 24, 2016, the Committee filed its Application for Order Authorizing Retention of EisnerAmper LLP as Accountant and Financial Advisor (the "Application") in which the Committee delineated the following roles for EisnerAmper:

a. Assist the Committee with the interpretation and analysis of the Debtor's financial records;

b. Advise the Committee with respect to a plan;

c. Prepare a valuation of the Debtor's assets, and a valuation of assets owned by the District and leased to the Debtor.

## OBJECTION TO RETENTION

**A. The Proposed Engagement Is Premature and Unnecessarily Duplicates H2C's Efforts on Behalf of the Estate**.

6. The Debtor is a small community hospital that serves the Powell valley region in Northwestern Wyoming. The Debtor's first and primary responsibility is to the health, safety and welfare of its current patients; its second responsibility is its fiduciary responsibility to all of its creditors and to this Court, pursuant to which it is working on a plan of reorganization. The Debtor has limited resources, and those resources are strained by the burdens of operating healthcare facilities while under this Court's protection under chapter 11.

7. Rule 2014 requires that the Committee articulate the necessity for employing each professional; and, in order to control administrative costs, gives this

Court the right to approve all requests for employment. As the Tenth Circuit has explained:

> [The Bankruptcy Code] gives broad discretion to the bankruptcy court over the appointment of professionals ... in part by empowering the court to approve candidates so selected. If the bankruptcy court lacked such discretion, it would simply be a rubber stamp for the selections of counsel or other professionals by participants in bankruptcy proceedings.... The purpose of the rule requiring court approval of employment is to enable the court to control administrative expenses.  Further, absent extraordinary circumstances, bankruptcy estates should not be consumed by the fees and expenses of court-appointed professionals.

*Official Comm. of Unsecured Creditors v. Harris (In re Southwest Food Distribs., LLC)*, 561 F.3d 1106, 1112 (10th Cir. 2009) (internal citations omitted).  Thus, within the Court's discretion over the appointment of professionals, this Court must consider factors such as the efficient, expeditious, and economical resolution of the case. *See In re Albrecht* 245 B.R. 666, 671 (10th Cir. BAP 2000), *aff'd* 233 F.3d 1258 (10th Cir. 2000); *In re Bechuk* 472 B.R. 371, (Bankr. S.D. Tex. 2012).

8.    There is currently no need for the Committee to retain EisnerAmper. First, the Committee has asserted in Court that the Debtor's bankruptcy case may be subject to a motion to dismiss. Dismissal of this case will dissolve the Committee and obviate the need for any of the services that EisnerAmper may provide.

9.    If the Committee is planning on filing a motion to dismiss, it should do so forthwith. The Committee cannot affirmatively assert that the Debtor is ineligible for the protections and benefits afforded by the Bankruptcy Code, while at the same time seek to obtain the benefits provided by the Code for itself.  Accordingly, the Debtor requests that

{Z0140421/1 }                                  4

the Court withhold approval of EisnerAmper's employment until the Committee files its motion to dismiss and that motion is decided, or alternatively, until the Committee affirmatively asserts that it, and its members, have no intentions of filing such a motion (or the parties acknowledge that the issue has since been waived due to the passage of more than five (5) months since the case has been pending). Simply stated, the Committee cannot have its cake and eat it too.

10. However, even if the Committee decides not to file a motion to dismiss, the Committee's Application is still premature. First, H2C, the Debtor's financial advisor, has not yet completed its initial financial report (which is intended to be used to gain the Committee's support of the Debtor's proposed plan of reorganization). Instead of waiting to see if it disagrees with H2C's methodologies or conclusions, the Committee has jumped the gun and requested that the estate bear the financial burden of two financial advisors. As stated by one court, "the intention [of eliminating the duplication of services being provided by another investment banker/financial advisor] is to avoid accountants and investment bankers/advisors massaging the same numbers twice when one trip to the masseuse would generally suffice." *In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13, 26 (Bankr. S.D.N.Y. 1991). Indeed, the Application requests the Court approve the costs for EisnerAmper to prepare its own independent valuation of the Debtor's assets (and the assets of non-debtor Powell Hospital District).[1] The

---

[1] With respect to the fees and costs, the Debtor is currently can only use its cash collateral in accordance with an agreed upon budget with the Debtor's primary lender. That budget does not include any provisions for payment of a Committee financial advisor.

Committee has expressly ignored this Court's request that it "look at what H2C is going to do before you start creating issues over valuation experts."

11.     Further, the Debtor fully intends to share information provided to it by H2C with the Committee.  The Debtor also intends (and has) to share with the Committee any and all information that it has concerning its finances and its assets.  Furthermore, to the extent the Committee has any questions or needs to "interpret and analyze" the financial information provided to it, the Debtor will certainly allow the Committee to discuss its financial condition directly with H2C.  Under these circumstances, there is simply no need to burden the estate with the duplicative work of two advisors.  *See In re Bashas' Inc.*, 2010 WL 6466571 *7-8 (9th Cir. BAP 2010) (affirming bankruptcy court's order denying committee's application to retain financial advisor because committee could utilize the information and analyses prepared by the debtor's advisor).

**B.  The Proposed Scope of the Engagement is Overly Broad.**

12.     Finally, in its Application, the Committee requests that this Court permit it to employ EisnerAmper in order to prepare a "valuation of assets that are alleged to be owned by the District."  Section 1103(c)(2) provides that a Committee may "investigate the acts, conduct, assets, liabilities, and financial condition of the *debtor*" (emphasis added).  The Code contains no indication that the Committee has the power or the ability to investigate the assets and financial condition of a third party even if that third party is

an insider of the Debtor.[2] Further, there is no reason why the Debtor should have to bear the cost for the Committee to prepare a valuation of a third party's assets.

13. It appears that the Committee is putting the cart before the horse. The District and the Debtor are separate legal entities. To the extent the Committee believes that the Debtor has potential claims against the District, the Committee should certainly evaluate those claims. However, the Committee does not need a financial advisor to assist it in its evaluation of *legal* claims; indeed, if there is a question as to who *owns* certain assets, the Committee's counsel, rather than a financial advisor, should be able to provide such an analysis. The *value* of the District's assets would be relevant to the Committee if and only if it first obtained a judgment against the District on behalf of the Debtor. At this point in the process, when the Committee has not yet articulated the nature of any legal claims that the Debtor may hold against the District, much less prosecuted those claims and obtained a judgment, any valuation of the District's assets is premature and an improper use of the Debtor's limited financial resources.

**WHEREFORE**, the Debtor objects to the Committee's application for the employment of EisnerAmper and to the proposed scope of the engagement, and requests that the Court deny the application without prejudice, and for such other relief as the Court deems proper.

---

[2] As a matter of law, however, the District is not an "insider" of the Debtor. "Insider" is a defined term under the Bankruptcy Code and the definition of who may be an "insider" excludes governmental entities such as the District. Specifically, section 101(30)'s definition of "insider," insofar as it encompasses a "person in control" of a debtor, cannot apply to the government since it is expressly excluded from the definition of "person" in 101(33). *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427 (Bankr. S.D. N.Y. 1982). Accordingly, even if the District did "control" the Debtor (which the Debtor vehemently disputes), the District would still not be an "insider" under the Bankruptcy Code.

Dated: Cheyenne, Wyoming
November 1, 2016

        MARKUS WILLIAMS YOUNG AND ZIMMERMANN LLC

        By: */s/ Jennifer Salisbury*
        Bradley T. Hunsicker (WY Bar No 7-4579)
        Jennifer Salisbury (WY Bar No. 7-5218)
        106 East Lincolnway Suite 300
        Cheyenne, WY 82001
        Telephone: 307-778-8178
        Facsimile: 307-638-1975
        Email: bhunsicker@markuswilliams.com;
               jsalisbury@markuswilliams.com

        Counsel for the Debtor and Debtor-in-Possession

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 1st day of November, 2016, by placing a copy in the U.S. mail, first class postage prepaid, upon those listed parties indicated below:

**Scott J. Goldstein**
Spencer Fane Britt & Browne LLP
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
*Attorney for Official Committee of Unsecured Creditors*

**Philip A. Pearlman**
**Jaime N. Cotter**
Spencer Fane Britt & Browne LLP
1700 Lincoln St., Suite 2000
Denver, CO 80203
*Attorney for Official Committee of Unsecured Creditors*

        *s/Jessica M. Anderson*
        Jessica M. Anderson