Bradley T. Hunsicker (Wyo. Bar 7-4579)
**MARKUS WILLIAMS YOUNG & ZIMMERMANN LLC**
106 East Lincolnway, Suite 300
Cheyenne, WY  82001
Telephone: 307-778-8178
bhunsicker@markuswilliams.com

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF WYOMING

| | |
|---|---|
| In re: | ) |
| | )   Case No.: 16-20326 |
| POWELL VALLEY HEALTH CARE, | )   Chapter 11 |
| INC., | ) |
| Debtor. | ) |

---

## FIRST APPLICATION OF MARKUS WILLIAMS YOUNG & ZIMMERMANN LLC FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES PURSUANT TO 11 U.S.C. §§ 330 AND 331 OF THE BANKRUPTCY CODE FOR THE PERIOD MAY 16, 2016 – SEPTEMBER 30, 2016

---

Markus Williams Young & Zimmermann LLC ("MWYZ"), bankruptcy counsel to

Powell Valley Health Care, Inc. ("PVHC", or the "Debtor"), the debtor and debtor in

possession in the above captioned case, files this application (the "Application") pursuant

to 11 U.S.C. §§ 330 and 331, Federal Rule Bankruptcy Procedure 2016, the Fee

Guidelines of the United States Trustee and Local Bankruptcy Rule 2016-1 for allowance

and payment of: (i) interim compensation in the total amount of $275,872.00 (which

includes a voluntary reduction of $11,603.80) for services rendered herein; and (ii)

interim reimbursement in the total amount of $13,593.53 for expenses incurred for the

period from May 16, 2016 through September 30, 2016 (the "Application Period"), for a total award of $289,465.53.

## I.  PROCEDURAL BACKGROUND

1. On May 16, 2016 (the "Petition Date"), PVHC filed with this Court a voluntary petition (the "Petition") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy case (the "Bankruptcy Case" or the "Chapter 11 Case").

2. A description of the background of PVHC and the events leading up to the filing of the voluntary petition by PVHC is provided in the *Declaration of Michael L. Long in Support of First Day Motions* (the "First Day Declaration") [Doc. 9], which is incorporated herein by reference.

3. PVHC is authorized to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On May 16, 2016, MWYZ filed its *Application for Order Approving Employment of Markus Williams Young & Zimmermann LLC as Counsel for Debtor-in-Possession Nunc Pro Tunc to the Petition Date and Approving Security Retainer* (the "Application to Employ MWYZ") [Doc. 7].

5. On June 8, 2016, this Court entered its *Order Approving Application for Order Approving Employment of Markus Williams Young & Zimmermann LLC as Counsel for Debtor-in-Possession Nunc Pro Tunc to the Petition Date and Approving*

*Security Retainer* [Doc. 124] wherein the Court approved the Application to Employ MWYZ.

6.       On June 15, 2016, PVHC filed its *Motion to Establish Interim Compensation Procedures* (the "Motion for Interim Compensation Procedures") [Doc. 140] wherein it requested that the Court approve certain procedures which would permit MWYZ to request interim allowance and payment of its respective fees and expenses on a monthly basis, subject to a 25% "holdback" provision (the "Interim Compensation Procedures").

7.       On June 21, 2016, the United States Trustee appointed an Official Unsecured Creditors Committee (the "Committee").

8.       On July 11, 2016, this Court entered its *Order on Debtor's Motion to Establish Interim Compensation Procedures* [Doc. 211] wherein it granted the Motion for Interim Compensation Procedures and approved the Interim Compensation Procedures.

9.       Pursuant to the approved Interim Compensation Procedures, MWYZ sought, and received, interim payment for the following fees and expenses during the Application Period:

### PVHC - Interim Monthly Fee Summary

| May 16- June 30 | | |
|---|---|---|
| | Total Fees | $ 117,394.50 |
| | 25% Holdback | $ 29,348.63 |
| | Requested Fees | $ 88,045.87 |
| | Requested Expenses | $ 8,007.18 |
| | Total Payment | $ 96,053.05 |

| July 1-<br>July 30 | Total Fees | $ | 52,383.50 |
|---|---|---|---|
| | 25% Holdback | $ | 13,095.88 |
| | Requested Fees | $ | 39,287.62 |
| | Requested Expenses | $ | 603.83 |
| | Total Payment | $ | 39,891.45 |

| Aug 1-<br>Aug 31 | Total Fees | $ | 60,078.00 |
|---|---|---|---|
| | 25% Holdback | $ | 15,019.50 |
| | Requested Fees | $ | 45,058.50 |
| | Requested Expenses | $ | 3,014.38 |
| | Total Payment | $ | 48,072.88 |

| Sept 1-<br>Sept 30 | Total Fees | $ | 46,016.00 |
|---|---|---|---|
| | 25% Holdback | $ | 11,504.00 |
| | Requested Fees | $ | 34,512.00 |
| | Requested Expenses | $ | 1,968.14 |
| | Total Payment | $ | 36,480.14 |

| TOTAL | Total Requested Fees | $ | 275,872.00 |
|---|---|---|---|
| | Total Holdback | $ | 68,968.01 |
| | Total  Fees Paid | $ | 206,903.99 |
| | Total  Expenses Paid | $ | 13,593.53 |
| | Total Payments | $ | 220,497.52 |

10.    In accordance with the Interim Compensation Procedures, parties in interest, including the United States Trustee and the Committee, were given at least fourteen (14) days from receiving an interim monthly billing statement from MWYZ to advise MWYZ if it objected to the payment of interim fees and expenses in amounts over and above the 25% holdback.  MWYZ did not receive notification from any party in interest indicating they objected to the requested payments for interim fees and expenses.

## II.    THE APPLICATION

A.    <u>Billing Methodology</u>

11.     In this Application, MWYZ is requesting approval and allowance of the fees incurred for services provided and the expenses paid by MWYZ during the Application Period.  A summary of the fees and expenses requested, as required by the Fee Guidelines of the United States Trustee and Local Rule 2016-1, is attached hereto. More specifically, invoices detailing the services rendered and fees billed are attached hereto as Exhibits 1-4 (which also include the summary page from each interim monthly billing statement).

12.     MWYZ's services in this case are billed on an hourly-rate basis, consistent with customary charges by comparably skilled practitioners in non-bankruptcy cases. Outside costs are billed by MWYZ at the amount charged to the firm by the outside vendor.  MWYZ charges its client $0.20 per page for copies.  The hourly rates for the MWYZ professionals working on this matter during the Application Period are as follows:

    a.  James T. Markus, Attorney: $425

    b.  John F.  Young, Attorney: $395

    c.  Steven R. Rider, Attorney: $375

    d.  Donald D. Allen, Attorney: $310

    e.  Jennifer M. Salisbury, Attorney: $310

    f.  Jeffrey O. McAnallen, Attorney: $295

    g.  Bradley T. Hunsicker, Attorney: $295

    h.  Matthew T. Faga, Attorney: $295

    i.  Robert B. Little, Paralegal: $125

{Z0143237/1 }                                5

      j.   Jenny F. Tokuoka, Paralegal Work: $95

13.    In rendering services and incurring expenses on behalf of PVHC's estate, MWYZ made reasonable efforts to use the most economical means and methods that are available and appropriate under the circumstances.  In preparing this Application and reviewing the attached invoices, MWYZ has carefully reviewed the fees and expenses thereon and has deducted any expenses and fees which it believes were duplicative or inappropriate.  In addition to these deductions, MWYZ is voluntarily reducing its fees by an additional $11,603.80.

14.    Given the education, experience and expertise of the MWYZ attorneys and other professionals rending services in this case, the rates charged are reasonable and are the same as or lower than rates MWYZ typically charges to clients for similar services.

B.    <u>Services Performed on Behalf of the Estate</u>

15.    During the Application Period, MWYZ has rendered services to the estate for which it seeks compensation in the total amount of $275,872.00 (which includes a voluntary reduction of $11,603.80), plus an additional $13,593.53 for expenses.  Such services and expenses are fully detailed in the monthly invoices attached hereto as Exhibits 1-4.

16.    MWYZ has categorized the time spent performing services for the estate into the following project categories.   Each invoice contains a chronological listing of tasks performed in each project category in which services were performed during the billing period covered by the invoice.  The total amount MWYZ incurred (fees and expenses) for each project category during the Application Period is as follows:

| Billing Category | Matter Name | Amount |
|---|---|---|
| 11278.002 | Restructure/Reorganization | $91,385.26 |
| 11278.003 | General Administration | $19.30 |
| 11278.004 | Cash Collateral | $7,441.00 |
| 11278.005 | Schedules and SOFA | $28,141.50 |
| 11278.006 | Required Meetings | $767.00 |
| 11278.007 | Required Reports | $3,038.50 |
| 11278.008 | Claims | $16,883.90 |
| 11278.009 | Executory Contracts | $5,676.50 |
| 11278.010 | Creditors Committee | $4,738.50 |
| 11278.011 | Employee Matters | $0.00 |
| 11278.012 | Tort Litigation | $39,276.00 |
| 11278.013 | Insurance Issues | $32,395.07 |
| 11278.014 | Plan and Disclosure Stmt | $28,136.50 |
| 11278.015 | Employment and Fee Apps | $30,453.00 |
| 11278.016 | Extension of Stay AP | $1,113.50 |

## III.    SUMMARY OF SERVICES IN EACH PROJECT CATEGORY

17.    A summary of the nature of the services in each project category is provided below.   In accordance with Local Bankruptcy Rule 2016-1, the following summary also includes the results obtained, the benefit to the estate, a general description of what additional work remains to be done with respect to the matter and an estimate of the time and cost associated therewith, and a statement regarding the feasibility of the requested interim distribution.

A.    11278.002 – Restructure/Reorganization

18.    In regard to the Application Period, MWYZ incurred fees and expenses totaling $91,385.26 for services relating to the Debtor's general restructuring and reorganization efforts.   These fees and costs are set forth in greater detail in the billing records attached hereto as Exhibit 1-4. These fees and costs were largely incurred relative

to MWYZ's efforts surrounding the drafting, review, analysis and resolution of pleadings filed during the Application Period.  Many of the fees represent time associated with the filing of first day motions, seeking (and receiving) a waiver of the requirement for a patient care ombudsman, and obtaining an order to retain ordinary course professionals. Significant time was also dedicated to advising the Debtor's officers and board of directors regarding pending matters and filings in the case, and formulating strategies to address various issues presented in the case (e.g., issues related to insurance coverage, possible retention of a financial advisor, extension of exclusivity period, continued use of cash collateral, etc.).

19.    Said services were essential to the Debtor's efforts to reorganize and have allowed the Debtor to continue to operate post-petition with very little interference to its day-to-day operations.  At this point it is difficult to determine what additional work remains to be done with respect to this particular project category.  Undoubtedly, work will continue to be performed by MWYZ in assisting the Debtor with its efforts to reorganize.  Last, considering that 75% of the requested fees and 100% of the requested expenses have already been satisfied pursuant to the approved Interim Compensation Procedures, feasibility of the requested interim distribution does not appear to be an issue.

B.    11278.003 – General Administration

20.    In regard to the Application Period, MWYZ incurred expenses totaling $19.30 for services relating to the general administration of the Debtor's case (no fees were incurred under this billing category).  These expenses are set forth in greater detail

in the billing record attached hereto as Exhibit 3.  This billing category is essentially a "catch call" category for services not included in another category.  Considering that MWYZ has implemented fourteen (14) other billing categories, this category will rarely, if ever, be used.  In this instance, the expenses relate to online research regarding the Wyoming Governmental Claims Act for purposes of analyzing certain claims in the Debtor's case.

21.     Said expenses were essential in order to better understand the foundation and context for certain claims in the Debtor's case.  At this point it is difficult to determine what additional work remains to be done with respect to this particular project category.  That said, MWYZ does not expect to utilize this billing category on a consistent basis as the majority, if not all, of the services being provided by MWYZ fall under a more appropriate billing category.  Last, considering that 100% of the requested expenses have already been satisfied pursuant to the approved Interim Compensation Procedures, feasibility of the requested interim distribution does not appear to be an issue (in other words, this expense has already been satisfied).

C.     11278.004 – Cash Collateral

22.     In regard to the Application Period, MWYZ incurred fees totaling $7,441.00 for services relating to cash collateral (no expenses were incurred under this billing category).  These fees are set forth in greater detail in the billing records attached hereto as Exhibit 1-4. These fees were largely incurred relative to MWYZ's efforts to obtain consent from the Debtor's primary secured lender (the "Bank") for the continued use of cash collateral.  MWYZ was successful in negotiating an agreed upon budget with

the Bank.  Many of the fees represent time associated with ensuring the Debtor remained in compliance with the budget.

23.    Said services were essential to the Debtor's efforts to reorganize and have allowed the Debtor to continue to operate post-petition with the use of its cash, without which the Debtor would be forced to seek Court approval for the use of its cash or would otherwise be unable to operate.  At this point it is difficult to determine what additional work remains to be done with respect to this particular project category.  Undoubtedly, work will continue to be performed by MWYZ in assisting the Debtor with continued negotiations with the Bank as the budget is subject to review in the very near future. Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures, feasibility of the requested interim distribution does not appear to be an issue.

D.    <u>11278.005 – Schedules and SOFA</u>

24.    In regard to the Application Period, MWYZ incurred fees totaling $28,141.50 for services relating to the Debtor's bankruptcy schedules and Statement of Financial Affairs (no expenses were incurred under this billing category).  These fees are set forth in greater detail in the billing records attached hereto as Exhibit 1-4. These fees were incurred relative to MWYZ's efforts to draft, revise and finalize the Debtor's bankruptcy schedules and Statement of Financial Affairs.  The majority of said fees surrounded the review of the Debtor's prepetition contracts and leases for purposes of drafting the Debtor's Schedule G: Executory Contracts and Unexpired Leases. Additional fees were associated with drafting, finalizing and filing (under seal) the

Debtor's Schedule E/F: Creditors Who Have Unsecured Claims (in order to comply with this Court's *Order Granting Debtor's Motion to Authorize Certain Procedures to Maintain the Confidentiality of Patient Information as Required by Law* [Doc. 78]).

25.     Said services were essential to ensure that the Debtor complied with its obligations to timely file its bankruptcy schedules and Statement of Financial Affairs, and acted in accordance with orders of the Court.    While it is difficult to determine what additional work remains to be done with respect to this particular project category, MWYZ does not anticipate significant additional time will fall under this billing category considering that the Debtor's bankruptcy schedules and Statement of Financial Affairs have been completed, and minimal to no revisions are anticipated .  Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures, feasibility of the requested interim distribution does not appear to be an issue.

E.     11278.006 – Required Meetings

26.     In regard to the Application Period, MWYZ incurred fees totaling $767.00 for services relating to the Debtor's participation in required meetings (no expenses were incurred under this billing category).  Specifically, the Debtor was required to attend the initial interview with the US Trustee and the Section 341 Meeting of Creditors.  These fees are set forth in greater detail in the billing record attached hereto as Exhibit 1.

27.     Said services were essential to ensure that the Debtor complied with its obligations to participate in such meetings.  MWYZ does not anticipate additional time will fall under this billing category.  Last, considering that 75% of the requested fees

have already been satisfied pursuant to the approved Interim Compensation Procedures, feasibility of the requested interim distribution does not appear to be an issue.

F.    11278.007 – Required Reports

28.    In regard to the Application Period, MWYZ incurred fees totaling $3,038.50 for services relating to the drafting, reviewing and filing of the Debtor's required reports (no expenses were incurred under this billing category).  Specifically, the Debtor was required to file an Initial Financial Report and is under a continuing obligation to file monthly operating reports.  In that regard, the Debtor has timely filed all required monthly operating reports.  These fees are set forth in greater detail in the billing records attached hereto as Exhibit 1-4.

29.    Said services were essential to ensure that the Debtor complied with its obligations to timely file its Initial Financial Report and its monthly operating reports. MWYZ anticipates 2-3 hours will fall under this billing category each month until such time as a final decree is entered.  Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures, feasibility of the requested interim distribution does not appear to be an issue.

G.    11278.008 – Claims

30.    In regard to the Application Period, MWYZ incurred fees totaling $16,883.90 for services relating to various claims administration issues (no expenses were incurred under this billing category).  These fees are set forth in greater detail in the billing records attached hereto as Exhibit 1-3.  These fees were largely incurred relative to MWYZ's review of filed proof of claims, and MWYZ's efforts surrounding the

drafting of a claims estimation motion to address claims filed by various tort claimants. At this juncture, the Debtor has been successful in avoiding the need for filing the motion in light of continued settlement negotiations with the Committee (whose members consist solely of tort claimants).

31.    Said services were essential in order for the Debtor to better understand the claims against the estate for purposes of setting forth a viable Chapter 11 Plan.  At this point it is difficult to determine what additional work remains to be done with respect to this particular project category.  Undoubtedly, work will continue to be performed by MWYZ in assisting the Debtor with evaluating the validity and allowability of various claims and potentially pursuing objections to claims which are overstated or lack merit. Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures, feasibility of the requested interim distribution does not appear to be an issue.

H.    11278.009 – Executory Contracts

32.    In regard to the Application Period, MWYZ incurred fees totaling $5,676.50 for services relating to the Debtor's prepetition executory contracts and unexpired leases (no expenses were incurred under this billing category).  These fees are set forth in greater detail in the billing records attached hereto as Exhibit 1-4.  These fees were largely incurred relative to MWYZ's efforts surrounding the review and analysis of various executory contracts and advising the Debtor's officers and board of directors regarding various issues related thereto.  Many of the fees represent time associated with the review of the Debtor's unexpired leases of nonresidential real property with the

Powell Hospital District, and the filing of the Debtor's *Motion for Entry of an Order (I) Authorizing the Debtor Assume Unexpired Non-Residential Real Property Leases Pursuant to Section 365 of the Bankruptcy Code and Bankruptcy Rule 6006 and (II) Establishing Cure Amount* [Doc. 248]. Said matter is currently pending before the Court.

33.    Said services were essential to the Debtor's efforts to reorganize considering that without the assumption of the Debtor's leases with the Powell Hospital District the leases will automatically be deemed rejected. Furthermore, rejection would result in, at best, the temporary shutdown, and at worst, the permanent closure, of the Debtor's hospital and assisted living facility as the properties would have to be immediately vacated. At this point it is difficult to determine what additional work remains to be done with respect to this particular project category. Undoubtedly, work will continue to be performed by MWYZ in assisting the Debtor with the assumption of its leases with the Powell Hospital District. Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures, feasibility of the requested interim distribution does not appear to be an issue.

I.    11278.010 – Creditors Committee

34.    In regard to the Application Period, MWYZ incurred fees totaling $4,738.50 for services relating to the Debtor's involvement in meaningful settlement negotiations with the Committee (no expenses were incurred under this billing category). These fees are set forth in greater detail in the billing records attached hereto as Exhibit 1, 3 and 4. These fees were largely incurred relative to MWYZ's efforts to comply with

various document requests from the Committee, and conferring with counsel to the Committee on matters related to insurance coverage, cash collateral, the Debtor's retention of a financial advisor and issues related to Powell Hospital District.

35.    Said services were essential to the Debtor's efforts to reorganize considering that all parties will benefit if the Debtor is successful in negotiating a consensual Chapter 11 Plan with the Committee.  At this point, it is certain that work will continue to be performed by MWYZ in assisting the Debtor in working with the Committee towards consensual resolution of matters in this case. Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures, feasibility of the requested interim distribution does not appear to be an issue.

J.    11278.011 – Employee Matters

36.    In regard to the Application Period, MWYZ incurred fees and expenses totaling $0.00 for services relating to employee matters.  At this point it is difficult to determine if MWYZ will be required to assist the Debtor with employee matters in the future.  Specifically, on August 24, 2016, the Court entered its *Order Granting in Part and Denying in Part, Debtor's Motion for Authority to Employ Professionals Used in the Ordinary Course of Business* [Doc. 257].  Pursuant to that Order, the Debtor is authorized to employ the law firm Copenhaver, Kath, Kitchen & Kolpitche, LLC for purposes of addressing employment and labor law matters.  Notwithstanding said Order, in the event that employee matters relate to the administration of the Debtor's bankruptcy estate, MWYZ fully intends to advise the Debtor on said matters.

K.    11278.012 – Tort Litigation

37.    In regard to the Application Period, MWYZ incurred fees totaling $39,276.00 for services relating to addressing the onslaught of personal injury lawsuits filed against the Debtor prior to the Petition Date stemming from a series of procedures performed at the hospital between 2011 and 2014 (the "Lawsuits") (no expenses were incurred under this billing category).  Approximately twenty individuals who underwent such procedures have filed the Lawsuits against the Debtor and their treating physician, Dr. Hansen, who is no longer employed by the Debtor.  It is believed that three additional personal injury lawsuits have been filed against the Debtor unrelated to Dr. Hansen (collectively, the above-referenced tort claimants shall be referred to herein as the "Tort Claimants").  These fees and costs are set forth in greater detail in the billing records attached hereto as Exhibit 1-4.

38.    These fees and costs were largely incurred relative to MWYZ's efforts to research, analyze and understand the Lawsuits and the claims of the Tort Claimants. Many of the fees represent time associated with the filing of the Debtor's *Motion to Enforce Scope of the Automatic Stay, Or in the Alternative, Motion to Extend Stay and Notice of Opportunity to Object* [Doc. 60] – a motion the Debtor was forced to file to prevent the continuation of the Lawsuits from thwarting the Debtor's efforts to reorganize.  MWYZ was required to address various objections to that Motion, and ultimately draft and file an adversary proceeding seeking an injunction against the Tort Claimants (addressed in more detail below).  Significant time was also dedicated to researching and addressing the removal of the Lawsuits from state court to federal court.

{Z0143237/1 }                                                      16

39.     Said services were essential in order to prevent the Tort Claimants from interfering with the Debtor's efforts to reorganize.   Stated differently, said services allowed the Debtor to focus its efforts on this case rather than continuing to defend the Lawsuits. To date, MWYZ have been successful in staying the Lawsuits.   At this point it is difficult to determine what additional work remains to be done with respect to this particular project category.   Undoubtedly, work will continue to be performed by MWYZ in assisting the Debtor with its efforts to stay the Lawsuits until such time as the Debtor can confirm a Chapter 11 Plan.   Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures, feasibility of the requested interim distribution does not appear to be an issue.

L.      11278.013 – Insurance Issues

40.     In regard to the Application Period, MWYZ incurred fees and expenses totaling $32,395.07 for services relating to insurance issues.   These fees and costs are set forth in greater detail in the billing records attached hereto as Exhibit 1-4.

41.     Specifically, UMIA Insurance, Inc. ("UMIA"), Lexington Insurance Company ("Lexington"), and Homeland Insurance Company of New York ("Homeland") (collectively, the "Insurance Companies") issued liability policies, including for professional responsibility, prior to the Petition Date (the "Malpractice Policies").   For certain claims, the Insurance Companies have failed to comply with the provisions of the Malpractice Policies, leaving the Debtor to defend against numerous malpractice claims made by the Tort Claimants.   As a result, fees were largely incurred relative to MWYZ's efforts surrounding the review and analysis of the Malpractice Policies and the actions of

the Insurance Companies to better understand the Debtor's ability to recover on the Malpractice Policies and the funds which may be available to pay the legitimate claims of the Tort Claimants.  Many of the fees represent time associated with the filing of the Debtor's *Motion of the Debtor for Authorization to Conduct Rule 2004 Examination of the Malpractice Insurance Companies* [Doc. 353] wherein the Debtor seeks an order allowing for the 2004 examination of the Insurance Companies in order to acquire information and documentation that will be necessary for the Debtor to formulate a Chapter 11 Plan and adequately prepare a Disclosure Statement. Significant time was also dedicated to researching coverage and bad faith issues related to the Malpractice Polices under Wyoming law.

42.    Said services were essential and have allowed the Debtor to better understand the issues surrounding the Malpractice Policies, and how those issues may be addressed in a Chapter 11 Plan.  At this point it is difficult to determine what additional work remains to be done with respect to this particular project category.  Undoubtedly, work will continue to be performed by MWYZ in assisting the Debtor with its efforts to obtain information and documentation from the Insurance Companies.  Last, considering that 75% of the requested fees and 100% of the requested expenses have already been satisfied pursuant to the approved Interim Compensation Procedures, feasibility of the requested interim distribution does not appear to be an issue.

M.    11278.014 – Plan and Disclosure Statement

43.    In regard to the Application Period, MWYZ incurred fees totaling $28,136.50 for services relating to the Debtor's draft Chapter 11 Plan and Disclosure

Statement (no expenses were incurred under this billing category).  These are set forth in greater detail in the billing records attached hereto as Exhibit 1-4.  These fees were largely incurred relative to MWYZ's efforts surrounding the drafting of the Debtor's proposed Chapter 11 Plan (yet to be filed) and reviewing and analyzing liquidation value issues, claims classification matters and plan confirmation issues.   Significant time was also dedicated to negotiating the terms of the Debtor's proposed Chapter 11 Plan with the Committee and advising the Debtor's officers and board of directors regarding plan confirmation matters.

44.    Said services were essential to the Debtor's efforts to reorganize considering that a Chapter 11 Plan is the only viable alternative to address the claims of the Tort Claimants and ensure that the Debtor is financially capable of operating in the future.  While a proposed Chapter 11 Plan has already been drafted, at this point it is difficult to determine what additional work remains to be done to finalize that Plan. Further, additional time is required to complete the Debtor's Disclosure Statement.  Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures, feasibility of the requested interim distribution does not appear to be an issue.

N.    <u>11278.015 – Employment and Fee Applications</u>

45.    In regard to the Application Period, MWYZ incurred fees totaling $30,453.00 for services relating to the Debtor's retention of professionals and associated professional fee applications (no expenses were incurred under this billing category). These fees are set forth in greater detail in the billing records attached hereto as Exhibit

1-4. These fees were largely incurred relative to MWYZ's efforts surrounding the approval of the Interim Compensation Procedures and the *Debtor's Motion for Authority to Employ Professionals Used in the Ordinary Course of Business* [Doc. 146]. Many of the fees represent time associated with MWYZ's compliance with the Interim Compensation Procedures. Significant time was also dedicated to researching and interviewing potential financial advisors to the Debtor which eventually resulted in the approval of the Debtor's *Application to Employ Hammond Hanlon Camp, LLC as Financial Advisor and Investment Banker* [Doc. 259] (granted over the objection of the Committee).

46.    Said services were essential to the Debtor's efforts to reorganize. First, the Interim Compensation Procedures allow the Debtor to streamline the payment of professional fees with the least amount of disruption to the Debtor's monthly cash flows. Further, in light of the Debtor's ability to employ ordinary course professionals necessary for day-to-day operations (matters unrelated to the administration of the bankruptcy estate), the Debtor is able to avoid the filing of additional employment applications and the fees associated therewith. Last, the employment of a financial advisor will ensure the Debtor can propose a feasible Chapter 11 Plan that complies with the Bankruptcy Code. At this point it is difficult to determine what additional work remains to be done with respect to this particular project category. Undoubtedly, work will continue to be performed by MWYZ in order to comply with the Interim Compensation Procedures. Last, considering that 75% of the requested fees have already been satisfied pursuant to

the approved Interim Compensation Procedures, feasibility of the requested interim distribution does not appear to be an issue.

O.     11278.016 – Extension of Stay AP

47.     In regard to the Application Period, MWYZ incurred fees totaling $1,113.50 for services relating to the filing of the Debtor's *Complaint for Declaratory Judgment and for Injunction Relief* [Doc. 1; Adv. No. 16-02033] (no expenses were incurred under this billing category).   These fees are set forth in greater detail in the billing records attached hereto as Exhibit 3 and 4. These fees were largely incurred relative to MWYZ's efforts surrounding the review and analysis of issues involving the extension of the automatic stay and the filing of the above-referenced Complaint to halt the efforts of the Tort Claimants that continued to pursue the Lawsuits even after the Debtor filed for protection under the Bankruptcy Code.   Considering that this matter is still in its infancy, significant time has not yet been dedicated to this project category.

48.     Said services were essential to stay the Lawsuits, which in turn has allowed the Debtor to continue to operate post-petition with little to no interference to its day-to-day operations.   At this point it is difficult to determine what additional work remains to be done with respect to this particular project category.   Undoubtedly, work will continue to be performed by MWYZ in assisting the Debtor with its efforts to stay the Lawsuits while the Debtor attempts to reorganize its financial affairs.   Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures, feasibility of the requested interim distribution does not appear to be an issue.

## VI.      REQUEST FOR RELIEF

49.      In total, professionals at MWYZ have expended approximately 882 hours in assisting and advising the Debtor in this matter.  As explained previously, MWYZ is voluntarily taking an $11,603.80 reduction (miscellaneous deduction) in the amount of fees incurred by MWYZ in this matter.  After applying such deduction, MWYZ seeks to have its fees and expenses allowed in the total amount of $289,465.53, representing fees incurred of $275,872.00 and costs and expenses incurred of $13,593.53.  Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures and that MWYZ continues to hold a retainer of $228,501.20, feasibility of the requested interim distribution does not appear to be an issue.

**WHEREFORE**, MWYZ respectfully requests that this Court enter an order:

A. Awarding interim compensation and reimbursement to MWYZ in the total amount of $289,465.53, which includes $275,872.00 for professional services rendered and $13,593.53 for expenses incurred during the Application Period;

B. Declaring such amounts be allowed as priority administrative expenses of the estate pursuant to 11 U.S.C. §§ 503(b)(2) and 507(a)(2);

C. Authorizing the Debtor, pursuant to 11 U.S.C. §§ 330 and 331, to immediately pay such amounts from the Debtor's estate (after crediting for those amounts previously paid to MWYZ in accordance with the Interim Compensation Procedures); and,

D. Granting such other and further relief as this Court deems just and

appropriate.

Dated:  Cheyenne, Wyoming
November 22, 2016

MARKUS WILLIAMS YOUNG AND
ZIMMERMANN LLC

By: /s/ *Bradley T. Hunsicker*
Bradley T. Hunsicker (WY Bar No 7-4579)

106 East Lincolnway Suite 300
Cheyenne, WY 82001
Telephone: 307-778-8178
Facsimile: 307-638-1975
Email: bhunsicker@markuswilliams.com;

Counsel for the Debtor and Debtor-in-
Possession