Bradley T. Hunsicker (Wyo. Bar 7-4579)
**MARKUS WILLIAMS YOUNG & ZIMMERMANN LLC**
106 East Lincolnway, Suite 300
Cheyenne, WY  82001
Telephone: 307-778-8178
bhunsicker@markuswilliams.com

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No.: 16-20326 |
| POWELL VALLEY HEALTH CARE, | ) | Chapter 11 |
| INC., | ) | |
| Debtor. | ) | |

---

### SECOND APPLICATION OF MARKUS WILLIAMS YOUNG & ZIMMERMANN LLC FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES PURSUANT TO 11 U.S.C. §§ 330 AND 331 OF THE BANKRUPTCY CODE FOR THE PERIOD OCTOBER 1, 2016 – FEBRUARY 28, 2017

---

Markus Williams Young & Zimmermann LLC ("MWYZ"), bankruptcy counsel to Powell Valley Health Care, Inc. ("PVHC", or the "Debtor"), the debtor and debtor in possession in the above captioned case, files this application (the "Application") pursuant to 11 U.S.C. §§ 330 and 331, Federal Rule Bankruptcy Procedure 2016, the Fee Guidelines of the United States Trustee and Local Bankruptcy Rule 2016-1 for allowance and payment of: (i) interim compensation in the total amount of $162,389.00; and (ii) interim reimbursement in the total amount of $7,091.36 for expenses incurred for the period from October 1, 2016 through February 28, 2017 (the "Application Period"), for a total award of $169,480.36.

# I.   **PROCEDURAL BACKGROUND**

1.      On May 16, 2016 (the "Petition Date"), PVHC filed with this Court a voluntary petition (the "Petition") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy case (the "Bankruptcy Case" or the "Chapter 11 Case").

2.      A description of the background of PVHC and the events leading up to the filing of the voluntary petition by PVHC is provided in the *Declaration of Michael L. Long in Support of First Day Motions* (the "First Day Declaration") [Doc. 9], which is incorporated herein by reference.

3.      PVHC is authorized to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On May 16, 2016, MWYZ filed its *Application for Order Approving Employment of Markus Williams Young & Zimmermann LLC as Counsel for Debtor-in-Possession Nunc Pro Tunc to the Petition Date and Approving Security Retainer* (the "Application to Employ MWYZ") [Doc. 7].

5.       On June 8, 2016, this Court entered its *Order Approving Application for Order Approving Employment of Markus Williams Young & Zimmermann LLC as Counsel for Debtor-in-Possession Nunc Pro Tunc to the Petition Date and Approving Security Retainer* [Doc. 124] wherein the Court approved the Application to Employ MWYZ.

6.      On June 15, 2016, PVHC filed its *Motion to Establish Interim Compensation Procedures* (the "Motion for Interim Compensation Procedures") [Doc. 140] wherein it requested that the Court approve certain procedures which would permit MWYZ to request interim allowance and payment of its respective fees and expenses on a monthly basis, subject to a 25% "holdback" provision (the "Interim Compensation Procedures").

7.      On June 21, 2016, the United States Trustee appointed an Official Unsecured Creditors Committee (the "Committee").

8.      On July 11, 2016, this Court entered its *Order on Debtor's Motion to Establish Interim Compensation Procedures* [Doc. 211] wherein it granted the Motion for Interim Compensation Procedures and approved the Interim Compensation Procedures.

9.      On November 22, 2016, MWYZ filed its *First Application of Markus Williams Young & Zimmermann LLC for Interim Compensation and Reimbursement of Expenses Pursuant to 11 U.S.C. §§ 330 and 331 of the Bankruptcy Code for the Period May 16, 2016 – September 30, 2016* [Doc. 384] (the "First MWYZ Fee Application") wherein MWYZ sought, and received, the Court's approval of fees in the amount of $275,872.00 and expenses in the amount of $13,593.53, for a total amount of $289,465.53 for the period of May 16, 2016 through September 30, 2016 [Doc. 416].

10.     Pursuant to the approved Interim Compensation Procedures, MWYZ has sought interim payment for the following fees and expenses during the Application Period:

## PVHC – Interim Monthly Fee Summary

| October | | |
|---|---|---|
| Total Fees | $ | 38,748.00 |
| 25% Holdback | $ | 9,687.00 |
| Requested Fees | $ | 29,061.00 |
| Requested Expenses | $ | 1,538.65 |
| Total Payment | $ | 30,599.65 |

| November | | |
|---|---|---|
| Total Fees | $ | 63,366.00 |
| 25% Holdback | $ | 15,841.50 |
| Requested Fees | $ | 47,524.50 |
| Requested Expenses | $ | 3,586.51 |
| Total Payment | $ | 51,111.01 |

| December | | |
|---|---|---|
| Total Fees | $ | 18,512.00 |
| 25% Holdback | $ | 4,628.00 |
| Requested Fees | $ | 13,884.00 |
| Requested Expenses | $ | 869.06 |
| Total Payment | $ | 14,753.06 |

| January | | |
|---|---|---|
| Total Fees | $ | 19,423.00 |
| 25% Holdback | $ | 4,855.75 |
| Requested Fees | $ | 14,567.25 |
| Requested Expenses | $ | 492.01 |
| Total Payment | $ | 15,059.26 |

| February | | |
|---|---|---|
| Total Fees | $ | 22,340.00 |
| 25% Holdback | $ | 5,585.00 |
| Requested Fees | $ | 16,755.00 |
| Requested Expenses | $ | 605.13 |
| Total Payment **(not yet received)** | $ | 17,360.13 |

| | | |
|---|---|---:|
| Total Requested Fees | $ | 162,389.00 |
| Total Holdback | $ | 40,597.25 |
| Total Fees Paid | $ | 105,036.75 |
| Total Expenses Paid | $ | 6,486.23 |
| Total Payments | $ | 111,522.98 |

11.    In accordance with the Interim Compensation Procedures, parties in interest, including the United States Trustee and the Committee, were given at least fourteen (14) days from receiving an interim monthly billing statement from MWYZ to advise MWYZ if it objected to the payment of interim fees and expenses in amounts over and above the 25% holdback.  MWYZ did not receive notification from any party in interest indicating they objected to the requested payments for interim fees and expenses.

## II.    THE APPLICATION

A.    <u>Billing Methodology</u>

12.    In this Application, MWYZ is requesting approval and allowance of the fees incurred for services provided and the expenses paid by MWYZ during the Application Period.  A summary of the fees and expenses requested, as required by the Fee Guidelines of the United States Trustee and Local Rule 2016-1, is attached hereto. More specifically, invoices detailing the services rendered and fees billed are attached hereto as Exhibits 1-5 (which also include the summary page from each interim monthly billing statement).

13.    MWYZ's services in this case are billed on an hourly-rate basis, consistent with customary charges by comparably skilled practitioners in non-bankruptcy cases.

Outside costs are billed by MWYZ at the amount charged to the firm by the outside vendor.  MWYZ charges its client $0.20 per page for copies.  The hourly rates for the MWYZ professionals working on this matter during the Application Period are as follows:

      a.  James T. Markus, Attorney: $425

      b.  John F.  Young, Attorney: $395

      c.  Steven R. Rider, Attorney: $375

      d.  Jennifer M. Salisbury, Attorney: $310

      e.  Bradley T. Hunsicker, Attorney: $295

      f.  Robert B. Little, Paralegal: $125

14.     In rendering services and incurring expenses on behalf of PVHC's estate, MWYZ made reasonable efforts to use the most economical means and methods that are available and appropriate under the circumstances.  In preparing this Application and reviewing the attached invoices, MWYZ has carefully reviewed the fees and expenses thereon and has deducted any expenses and fees which it believes were duplicative or inappropriate.

15.     Given the education, experience and expertise of the MWYZ attorneys and other professionals rending services in this case, the rates charged are reasonable and are the same as or lower than rates MWYZ typically charges to clients for similar services.

B.     <u>Services Performed on Behalf of the Estate</u>

16.     During the Application Period, MWYZ has rendered services to the estate for which it seeks compensation in the total amount of $162,389.00, plus an additional

$7,091.36 for expenses.  Such services and expenses are fully detailed in the monthly invoices attached hereto as Exhibits 1-5.

17.    MWYZ has categorized the time spent performing services for the estate into the following project categories.   Each invoice contains a chronological listing of tasks performed in each project category in which services were performed during the billing period covered by the invoice.   The total amount MWYZ incurred (fees and expenses) for each project category during the Application Period is as follows:

| Billing Category | Matter Name | Amount |
|---|---|---|
| 11278.002 | Restructure/Reorganization | $34,708.36 |
| 11278.003 | General Administration | $0.00 |
| 11278.004 | Cash Collateral | $2,124.00 |
| 11278.005 | Schedules and SOFA | $0.00 |
| 11278.006 | Required Meetings | $0.00 |
| 11278.007 | Required Reports | $1,888.00 |
| 11278.008 | Claims | $2,460.50 |
| 11278.009 | Executory Contracts | $2,094.50 |
| 11278.010 | Creditors Committee | $19,804.00 |
| 11278.011 | Employee Matters | $0.00 |
| 11278.012 | Tort Litigation | $6,905.50 |
| 11278.013 | Insurance Issues | $22,689.50 |
| 11278.014 | Plan and Disclosure Stmt | $57,181.50 |
| 11278.015 | Employment and Fee Apps | $17,295.00 |
| 11278.016 | Extension of Stay AP | $2,329.50 |
| | **TOTAL** | $169,480.36 |

## III.    SUMMARY OF SERVICES IN EACH PROJECT CATEGORY

18.    A summary of the nature of the services in each project category is provided below.   In accordance with Local Bankruptcy Rule 2016-1, the following summary also includes the results obtained, the benefit to the estate, a general description

of what additional work remains to be done with respect to the matter and an estimate of the time and cost associated therewith, and a statement regarding the feasibility of the requested interim distribution.

A.    <u>11278.002 – Restructure/Reorganization</u>

19.    In regard to the Application Period, MWYZ incurred fees and expenses totaling $34,708.36 for services relating to the Debtor's general restructuring and reorganization efforts.  These fees and costs are set forth in greater detail in the billing records attached hereto as Exhibit 1-5. These fees and costs were largely incurred relative to MWYZ's efforts surrounding the drafting, review, analysis and resolution of pleadings filed during the Application Period.  Many of the fees represent time associated with advising the Debtor's officers and board of directors regarding settlement discussions with the Committee, and formulating strategies to address various issues presented in the case (e.g., extension of exclusivity period, continued use of cash collateral, etc.).

20.    Said services were essential to the Debtor's efforts to reorganize and have allowed the Debtor to continue to operate post-petition with very little interference to its day-to-day operations.  At this point it is difficult to determine what additional work remains to be done with respect to this particular project category.  Undoubtedly, work will continue to be performed by MWYZ in assisting the Debtor with its efforts to reorganize.  Last, considering that 75% of the requested fees and 100% of the requested expenses have already been satisfied pursuant to the approved Interim Compensation Procedures (except for requested fees for February 2017 which MWYZ expects to

receive on or around April 7, 2017), feasibility of the requested interim distribution does not appear to be an issue.

B.    11278.003 – General Administration

21.    In regard to the Application Period, MWYZ did not incur any fees or expenses for services relating to the general administration of the Debtor's case. This billing category is essentially a "catch call" category for services not included in another category.    Considering that MWYZ has implemented fourteen (14) other billing categories, this category will rarely, if ever, be used.    MWYZ does not expect to utilize this billing category on a consistent basis as the majority, if not all, of the services being provided by MWYZ fall under a more appropriate billing category.

C.    11278.004 – Cash Collateral

22.    In regard to the Application Period, MWYZ incurred fees totaling $2,124.00 for services relating to cash collateral (no expenses were incurred under this billing category).    These fees are set forth in greater detail in the billing records attached hereto as Exhibit 1-5. These fees were largely incurred relative to MWYZ's efforts to obtain continued consent from the Debtor's primary secured lender (the "Bank") for the continued use of cash collateral.    MWYZ was previously successful in negotiating an agreed upon budget with the Bank.    Many of the fees represent time associated with ensuring the Debtor remained in compliance with the budget by submitting monthly financial reports to the Bank.

23.    Said services were essential to the Debtor's efforts to reorganize and have allowed the Debtor to continue to operate post-petition with the use of its cash, without

which the Debtor would be forced to seek Court approval for the use of its cash or would otherwise be unable to operate.  At this point it is difficult to determine what additional work remains to be done with respect to this particular project category.  Undoubtedly, work will continue to be performed by MWYZ in assisting the Debtor with continued negotiations with the Bank as the budget is subject to continual review.  Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures (except for requested fees for February 2017 which MWYZ expects to receive on or around April 7, 2017), feasibility of the requested interim distribution does not appear to be an issue.

D.    11278.005 – Schedules and SOFA

24.    In regard to the Application Period, MWYZ did not incur any fees or expenses for services relating to the Debtor's Schedules and SOFA.  While it is difficult to determine what additional work remains to be done with respect to this particular project category, MWYZ does not anticipate significant additional time will fall under this billing category considering that the Debtor's bankruptcy schedules and Statement of Financial Affairs have been completed, and minimal to no revisions are anticipated.

E.    11278.006 – Required Meetings

25.    In regard to the Application Period, MWYZ did not incur any fees or expenses for services relating to the Debtor's participation in required meetings.  MWYZ does not anticipate additional time will fall under this billing category.

F.    11278.007 – Required Reports

26.    In regard to the Application Period, MWYZ incurred fees totaling $1,888.00 for services relating to the drafting, reviewing and filing of the Debtor's required reports (no expenses were incurred under this billing category). Specifically, the Debtor is under a continuing obligation to file monthly operating reports. In that regard, the Debtor has timely filed all required monthly operating reports. These fees are set forth in greater detail in the billing records attached hereto as Exhibit 1-5.

27.    Said services were essential to ensure that the Debtor complied with its obligations to timely file its monthly operating reports. MWYZ anticipates 1-2 hours will fall under this billing category each month until such time as a final decree is entered. Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures (except for requested fees for February 2017 which MWYZ expects to receive on or around April 7, 2017), feasibility of the requested interim distribution does not appear to be an issue.

G.    11278.008 – Claims

28.    In regard to the Application Period, MWYZ incurred fees totaling $2,460.50 for services relating to various claims administration issues (no expenses were incurred under this billing category). These fees are set forth in greater detail in the billing records attached hereto as Exhibit 1-5. These fees were largely incurred relative to MWYZ's review of filed proof of claims, and analysis of issues surrounding various tort claims unrelated to Dr. Hansen.

29.    Said services were essential in order for the Debtor to better understand the claims against the estate for purposes of setting forth a viable Chapter 11 Plan. At this

point it is difficult to determine what additional work remains to be done with respect to this particular project category.  Undoubtedly, work will continue to be performed by MWYZ in assisting the Debtor with evaluating the validity and allowability of various claims and potentially pursuing objections to claims which are overstated or lack merit. Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures (except for requested fees for February 2017 which MWYZ expects to receive on or around April 7, 2017), feasibility of the requested interim distribution does not appear to be an issue.

H.      11278.009 – Executory Contracts

30.      In regard to the Application Period, MWYZ incurred fees totaling $2,094.50 for services relating to the Debtor's prepetition executory contracts and unexpired leases (no expenses were incurred under this billing category).  These fees are set forth in greater detail in the billing records attached hereto as Exhibit 1-5.  These fees were largely incurred relative to MWYZ's efforts surrounding the review and analysis of various executory contracts and advising the Debtor's officers and board of directors regarding various issues related thereto.  Many of the fees represent time associated with the review of the Debtor's unexpired leases of nonresidential real property with the Powell Hospital District, and filing various motions to continue the hearing set on the Debtor's *Motion for Entry of an Order (I) Authorizing the Debtor Assume Unexpired Non-Residential Real Property Leases Pursuant to Section 365 of the Bankruptcy Code and Bankruptcy Rule 6006 and (II) Establishing Cure Amount* [Doc. 248].  Said matter is currently pending before the Court.

31.     Said services were essential to the Debtor's efforts to reorganize considering that without the assumption of the Debtor's leases with the Powell Hospital District the leases will automatically be deemed rejected.  Furthermore, rejection would result in, at best, the temporary shutdown, and at worst, the permanent closure, of the Debtor's hospital and assisted living facility as the properties would have to be immediately vacated.  At this point it is difficult to determine what additional work remains to be done with respect to this particular project category.  Undoubtedly, work will continue to be performed by MWYZ in assisting the Debtor with the assumption of its leases with the Powell Hospital District.  Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures (except for requested fees for February 2017 which MWYZ expects to receive on or around April 7, 2017), feasibility of the requested interim distribution does not appear to be an issue.

I.      11278.010 – Creditors Committee

32.     In regard to the Application Period, MWYZ incurred fees totaling $19,804.00 for services relating to the Debtor's involvement in meaningful settlement negotiations with the Committee (no expenses were incurred under this billing category). These fees are set forth in greater detail in the billing records attached hereto as Exhibit 1-5. These fees were largely incurred relative to MWYZ's efforts to comply with various document requests from the Committee, and conferring with counsel to the Committee on matters related to a consensual Chapter 11 Plan, insurance coverage, the Committee's

retention of a financial advisor, cash collateral and issues related to Powell Hospital District.

33.    Said services were essential to the Debtor's efforts to reorganize considering that all parties will benefit from the fact that the Debtor has been successful in negotiating a consensual Chapter 11 Plan with the Committee.  The Debtor expects to file the consensual Plan on or before April 10, 2017.  At this point, it is certain that work will continue to be performed by MWYZ in assisting the Debtor in working with the Committee towards consensual resolution of matters in this case. Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures (except for requested fees for February 2017 which MWYZ expects to receive on or around April 7, 2017), feasibility of the requested interim distribution does not appear to be an issue.

J.    11278.011 – Employee Matters

34.    In regard to the Application Period, MWYZ did not incur any fees or expenses for services relating to employee matters.  At this point it is difficult to determine if MWYZ will be required to assist the Debtor with employee matters in the future.  Specifically, on August 24, 2016, the Court entered its *Order Granting in Part and Denying in Part, Debtor's Motion for Authority to Employ Professionals Used in the Ordinary Course of Business* [Doc. 257].  Pursuant to that Order, the Debtor is authorized to employ the law firm Copenhaver, Kath, Kitchen & Kolpitche, LLC for purposes of addressing employment and labor law matters.  Notwithstanding said Order, in the event

that employee matters relate to the administration of the Debtor's bankruptcy estate, MWYZ fully intends to advise the Debtor on said matters.

K.    11278.012 – Tort Litigation

35.    In regard to the Application Period, MWYZ incurred fees totaling $6,905.50 for services relating to the onslaught of personal injury lawsuits filed by various tort claimants (the "Tort Claimants") against the Debtor prior to the Petition Date (the "Lawsuits") (no expenses were incurred under this billing category).  These fees and costs are set forth in greater detail in the billing records attached hereto as Exhibit 1-5.

36.    These fees and costs were largely incurred relative to MWYZ's efforts to research, analyze and understand the Lawsuits and the claims of the Tort Claimants. Many of the fees represent time addressing procedural matters related to the Debtor's *Motion to Enforce Scope of the Automatic Stay, Or in the Alternative, Motion to Extend Stay and Notice of Opportunity to Object* [Doc. 60] – a motion the Debtor was forced to file to prevent the continuation of the Lawsuits from thwarting the Debtor's efforts to reorganize.

37.    Said services were essential in order to prevent the Tort Claimants from interfering with the Debtor's efforts to reorganize.  Stated differently, said services allowed the Debtor to focus its efforts on this case rather than continuing to defend the Lawsuits. To date, MWYZ have been successful in staying the Lawsuits.  At this point, the Debtor does not expect to incur additional fees in this particular project category considering that the Debtor believes the Tort Claimants will support the consensual Plan that the Debtor expects to file with the Committee. Last, considering that 75% of the

requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures (except for requested fees for February 2017 which MWYZ expects to receive on or around April 7, 2017), feasibility of the requested interim distribution does not appear to be an issue.

L.    11278.013 – Insurance Issues

38.    In regard to the Application Period, MWYZ incurred fees and expenses totaling $22,689.50 for services relating to insurance issues.  These fees and costs are set forth in greater detail in the billing records attached hereto as Exhibit 1-5.

39.    Specifically, UMIA Insurance, Inc. ("UMIA"), Lexington Insurance Company ("Lexington"), and Homeland Insurance Company of New York ("Homeland") (collectively, the "Insurance Companies") issued liability policies, including for professional responsibility, prior to the Petition Date (the "Malpractice Policies").  Fees were largely incurred relative to MWYZ's efforts surrounding the review and analysis of the Malpractice Policies and the actions of the Insurance Companies to better understand the Debtor's ability to recover on the Malpractice Policies and the funds which may be available to pay the legitimate claims of the Tort Claimants.  Many of the fees represent time associated with addressing procedural matters regarding the Debtor's *Motion of the Debtor for Authorization to Conduct Rule 2004 Examination of the Malpractice Insurance Companies* [Doc. 353], and objecting to the *Insurance Companies' Joint Motion for Relief from Automatic Stay to Permit Prepetition Litigation to Continue in the United States District Court for the District of Wyoming, and Notice of Opportunity to*

*Object* [Doc. 354].  Both matters are currently pending before the Court and several hearings thereon have been continued by agreement of the parties.

40.    Said services were essential and have allowed the Debtor to better understand the issues surrounding the Malpractice Policies, and how those issues may be addressed in a Chapter 11 Plan.  At this point it is difficult to determine what additional work remains to be done with respect to this particular project category.   Last, considering that 75% of the requested fees and 100% of the requested expenses have already been satisfied pursuant to the approved Interim Compensation Procedures (except for requested fees for February 2017 which MWYZ expects to receive on or around April 7, 2017), feasibility of the requested interim distribution does not appear to be an issue.

M.    11278.014 – Plan and Disclosure Statement

41.    In regard to the Application Period, MWYZ incurred fees totaling $57,181.50 for services relating to the Debtor's draft Chapter 11 Plan and Disclosure Statement (no expenses were incurred under this billing category).  These fees are set forth in greater detail in the billing records attached hereto as Exhibit 1-5.  Fees under this category represent a substantial amount of fees incurred by the Debtor during the Application Period.  Fees were largely incurred relative to MWYZ's efforts surrounding the drafting of the Debtor's proposed Disclosure Statement, Chapter 11 Plan, related Plan documents and reviewing and analyzing liquidation value issues, notice issues, claims classification matters and plan confirmation issues.  Significant time was also dedicated to negotiating the terms of the Debtor's proposed Chapter 11 Plan with the Committee

and advising the Debtor's officers and board of directors regarding plan confirmation matters.

42.     Said services were essential to the Debtor's efforts to reorganize considering that a Chapter 11 Plan is the only viable alternative to address the claims of the Tort Claimants and ensure that the Debtor is financially capable of operating in the future.  Again, the Debtor expects to file a consensual Plan with the Committee on or before April 10, 2017.  Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures (except for requested fees for February 2017 which MWYZ expects to receive on or around April 7, 2017), feasibility of the requested interim distribution does not appear to be an issue.

N.      11278.015 – Employment and Fee Applications

43.     In regard to the Application Period, MWYZ incurred fees totaling $17,295.00 for services relating to various fee applications (no expenses were incurred under this billing category).  These fees are set forth in greater detail in the billing records attached hereto as Exhibit 1-5. These fees were largely incurred relative to MWYZ's efforts surrounding the drafting of the First MWYZ Fee Application, and MWYZ's compliance with the Interim Compensation Procedures. Time was also dedicated to reviewing interim fee applications submitted by counsel to the Committee.

44.     Said services were essential to the Debtor's efforts to reorganize because the Interim Compensation Procedures allow the Debtor to streamline the payment of professional fees with the least amount of disruption to the Debtor's monthly cash flows. At this point it is difficult to determine what additional work remains to be done with

respect to this particular project category.   Undoubtedly, work will continue to be performed by MWYZ in order to comply with the Interim Compensation Procedures. Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures (except for requested fees for February 2017 which MWYZ expects to receive on or around April 7, 2017), feasibility of the requested interim distribution does not appear to be an issue.

O.   11278.016 – Extension of Stay AP

45.   In regard to the Application Period, MWYZ incurred fees totaling $2,329.50 for services relating to the filing of the Debtor's *Complaint for Declaratory Judgment and for Injunction Relief* [Doc. 1; Adv. No. 16-02033] (no expenses were incurred under this billing category).   These fees are set forth in greater detail in the billing records attached hereto as Exhibits 1-5. Fees under this project category are minimal and were largely incurred to address procedural matters related to the adversary proceeding (*i.e.*, the scheduling conference, discovery report, and continuances related thereto).

46.   Said services were essential to stay the Lawsuits, which in turn has allowed the Debtor to continue to operate post-petition with little to no interference to its day-to-day operations.   At this point it is difficult to determine what additional work remains to be done with respect to this particular project category.   Undoubtedly, work will continue to be performed by MWYZ in assisting the Debtor with its efforts to stay the Lawsuits while the Debtor attempts to file a consensual Chapter 11 Plan.   Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim

Compensation Procedures (except for requested fees for February 2017 which MWYZ expects to receive on or around April 7, 2017), feasibility of the requested interim distribution does not appear to be an issue.

## VI.   REQUEST FOR RELIEF

47.   In total, professionals at MWYZ have expended approximately 513 hours in assisting and advising the Debtor in this matter.  As explained previously, MWYZ seeks to have its fees and expenses allowed in the total amount of $169,480.36, representing fees incurred of $162,389.00 and costs and expenses incurred of $7,091.36. Last, considering that 75% of the requested fees have already been satisfied pursuant to the approved Interim Compensation Procedures (except for requested fees for February 2017 which MWYZ expects to receive on or around April 7, 2017) and that MWYZ continues to hold a retainer of $159,533.19, feasibility of the requested interim distribution does not appear to be an issue.

**WHEREFORE**, MWYZ respectfully requests that this Court enter an order:

A.   Awarding interim compensation and reimbursement to MWYZ in the total amount of $169,480.36, which includes $162,389.00 for professional services rendered and $7,091.36 for expenses incurred during the Application Period;

B.   Declaring such amounts be allowed as priority administrative expenses of the estate pursuant to 11 U.S.C. §§ 503(b)(2) and 507(a)(2);

C.   Authorizing the Debtor, pursuant to 11 U.S.C. §§ 330 and 331, to immediately pay such amounts from the Debtor's estate (after crediting

for those amounts previously paid to MWYZ in accordance with the

Interim Compensation Procedures); and,

D. Granting such other and further relief as this Court deems just and

appropriate.

Dated:  Cheyenne, Wyoming
        March 30, 2017

MARKUS WILLIAMS YOUNG AND
ZIMMERMANN LLC

By:  */s/  Bradley T. Hunsicker*_____
Bradley T. Hunsicker (WY Bar No 7-4579)

106 East Lincolnway Suite 300
Cheyenne, WY 82001
Telephone: 307-778-8178
Facsimile: 307-638-1975
Email: bhunsicker@markuswilliams.com;

Counsel for the Debtor and Debtor-in-Possession