Bradley T. Hunsicker (WY Bar No. 7-4579)
Jennifer Salisbury (WY Bar No. 7-5218)
John F. Young (Pro Hac Vice)
Markus Williams Young & Zimmermann LLC
106 E. Lincolnway, Suite 300
Cheyenne, WY  82001
Telephone (307) 778-8178
Facsimile (307) 778-8953
bhunsicker@MarkusWilliams.com
jsalisbury@MarkusWilliams.com
jyoung@MarkusWilliams.com
*Attorneys for Debtor*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 16-20326 |
| POWELL VALLEY HEALTH CARE, INC. | ) | |
| | ) | Chapter 11 |
| Debtor-in-Possession. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## CHAPTER 11 PLAN OF REORGANIZATION FOR
## POWELL VALLEY HEALTH CARE, INC.

Dated this 24th day of April, 2017.

MARKUS WILLIAMS YOUNG &
ZIMMERMANN LLC

By: */s/ Bradley T. Hunsicker*
Bradley T. Hunsicker (WY Bar No. 7-4579)
Jennifer Salisbury (WY Bar No. 7-5218)
John F. Young (Pro Hac Vice)
106 E. Lincolnway, Suite 300
Cheyenne, WY  82001
Telephone (307) 778-8178
Facsimile (307) 778-8953
**Attorneys for Debtor**

Powell Valley Health Care, Inc. (the "Debtor"), the debtor in the above captioned chapter 11 case, hereby proposes the following chapter 11 plan of reorganization:

## ARTICLE I.
## DEFINITIONS AND INTERPRETATION

### 1.1.    Definitions.

The capitalized terms used herein shall have the respective meanings set forth in the Glossary of Defined Terms attached hereto as **Exhibit 1**.

### 1.2.    Interpretation.

Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. Words denoting the singular number shall include the plural number and vice versa, as appropriate, and words denoting one gender shall include the other gender. The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

### 1.3.    Application of Definitions and Rules of Construction Set Forth in the Bankruptcy Code.

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan, unless a different definition is given in the Glossary of Defined Terms. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

### 1.4.    Other Terms.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

### 1.5.    Appendices and Plan Documents.

All appendices to the Plan and the Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein.  Unless otherwise ordered by the Bankruptcy Court, all Plan Documents (which are not attached hereto or are in draft form) shall be filed with the clerk of the Bankruptcy Court not less than twenty (20) days prior to the commencement of the Confirmation Hearing, including, without limitation, the following:

- A notice identifying the proposed Personal Injury Trustee, including (a) a resume setting forth the qualifications of such proposed Personal Injury Trustee; and (b) a statement of all connections between the proposed Personal Injury Trustee, on the one hand, and (i) the holders of Trust Personal Injury Claims (each a "Tort Claimant"), (ii) counsel to the Tort Claimants, (iii) the Debtor, (iv) the members of the proposed Personal Injury Claims Committee, (vi) the Creditors Committee,

its members, and its counsel, and (vi) any insiders of any of the foregoing as defined in section 101(31) of the Bankruptcy Code, on the other hand;

- A notice identifying the Persons proposed as members of the Personal Injury Claims Committee, including each such Person's previous role in the Chapter 11 Case;

- Any document establishing the governance mechanism of the Personal Injury Claims Committee;

- A description of the proposed mechanism for the valuation and Allowance of the Claims of each holder of a Trust Personal Injury Claim, for purposes of receiving distributions from the Personal Injury Trust, as well as a statement of how the Debtor believes such proposed mechanism will result in such claimants receiving their fair share of the Personal Injury Trust Assets;

- Schedule of Assumed Executory Contracts and Unexpired Leases; and

- Schedule of Rejected Executory Contracts and Unexpired Leases.

Holders of Claims may obtain a copy of the Plan Documents, once filed, by mailing, emailing or faxing a written request to:

> Markus Williams Young & Zimmermann LLC
> 106 E. Lincolnway, Suite 300
> Cheyenne, WY 82001
> Attention: Bradley T. Hunsicker
> Telephone: (307) 778-8178
> Facsimile: (307) 779-8953
> Email: bhunsicker@markuswilliams.com

## ARTICLE II.
## CLASSIFICATION OF CLAIMS

For the purposes of organization, voting and all confirmation matters, except as otherwise provided herein, all Claims against the Debtor shall be classified as set forth in this Article II.

### 2.1.    Administrative Claims and Tax Claims.

As provided by section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Tax Claims shall not be classified under the Plan, and shall instead be treated separately as unclassified Claims on the terms set forth in Article VI.

### 2.2.    Classification of Claims.

The classes of Claims against the Debtor shall be classified under the Plan as follows:

Class 1 – Priority Claims. Class 1 shall consist of all Priority Claims against the Debtor.

Class 2 – First Bank of Wyoming Secured Claims. Class 2 shall consist of the Secured Claims of First Bank of Wyoming against the Debtor.

Class 3 – Trust Personal Injury Claims. Class 3 shall consist of all Trust Personal Injury Claims against the Debtor.

Class 4 – Trade Claims. Class 4 shall consist of all Trade Claims against the Debtor.

Class 5 – Reimbursement, Contribution and Indemnity Claims. Class 5 shall consist of all Reimbursement, Contribution and Indemnity Claims against the Debtor.

Class 6 – Subordinated Claims. Class 6 shall consist of all Subordinated Claims against the Debtor.

Class 7 – Non-Hansen Personal Injury Claims. Class 7 shall consist of all Non-Hansen Personal Injury Claims against the Debtor.

Class 8 – Other Unsecured Claims. Class 8 shall consist of all Other Unsecured Claims against the Debtor.

## ARTICLE III.
## IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS

### 3.1.    **Unimpaired Classes of Claims.**

Class 1 – Priority Claims are not impaired under the Plan.

### 3.2.    **Impaired Classes of Claims.**

Except as provided in Section 3.1, all classes of Claims are impaired under the Plan.

### 3.3.    **Impairment Controversies.**

If a controversy arises as to whether any Claim or any class of Claims is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE IV.
## PROVISIONS FOR TREATMENT OF CLAIMS UNDER THE PLAN

### 4.1.    **Treatment of Claims.**

The classes of Claims against the Debtor shall be treated under the Plan as follows:

(a)    Class 1 – Priority Claims.

Each holder of an Allowed Priority Claim against the Debtor shall receive, on the later to occur of thirty (30) days after the Effective Date (or as soon as reasonably practicable thereafter) and the date upon which such Claim becomes an Allowed Claim, either (i) Cash in the amount of

such holder's Allowed Priority Claim; or (ii) such other treatment as may be agreed upon by the Debtor and such holder; provided, however, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of the amount of such holder's Allowed Priority Claim.

  (b)  Class 2 – First Bank of Wyoming Secured Claims.

First Bank of Wyoming, as a holder of Allowed Secured Claims against the Debtor, shall receive, in full satisfaction of its Allowed Secured Claims, deferred Cash payments in accordance with the following terms:

- Loan # 120000084, with a current balance of approximately $260,505.86, shall continue to bear interest at the interest rate of 4.24%. The monthly payments due thereunder shall equal $12,207.26. The maturity date of this loan shall be May 10, 2019.

- Loan # 920120181, with a current balance of $900,000.00, shall continue to bear interest at the interest rate of 4.00% (fully variable at prime rate (currently 3.75%) with a floor of 4.00%). The monthly (interest only) payments due thereunder shall equal $3,000.00. The maturity date of this loan shall be May 10, 2019, at which time this loan will be fully amortized at an approximate monthly payment of $15,237.74, until the loan is paid in full (approximately November, 2024).

- First Bank of Wyoming and the Debtor shall execute agreed upon loan documents prior the Effective Date (copies of which shall be filed with Bankruptcy Court in accordance with Section 1.5 above) to memorialize the terms above. The loan documents shall include, but not be limited to, language indicating that: (i) First Bank of Wyoming's security position as it existed prior to the Petition Date in certain of the Debtor's Assets shall remain unaffected and unimpaired, it being the intent of the parties that First Bank of Wyoming shall remain in first priority position on the Debtor's Accounts (as that term is defined in the Uniform Commercial Code) until the loans of First Bank of Wyoming are paid in full; (ii) First Bank of Wyoming shall be notified by the Debtor and the Personal Injury Trustee within five (5) days of any default by the Debtor under the Personal Injury Trust Note, or any loan documents related thereto; and (iii) any event of default under the Personal Injury Trust Note, or any loan documents related thereto, shall also be an event of default under the loan documents to be executed with First Bank of Wyoming.

  (c)  Class 3 – Trust Personal Injury Claims.

Each holder of a Allowed Trust Personal Injury Claim shall receive, in full satisfaction of its Trust Personal Injury Claim, each of the following: (i) its allocation of the Personal Injury Trust Assets in accordance with Section 7.2 of the Plan; (ii) the Debtor shall release any claims for outstanding medical bills owed as of the Petition Date by the individual Tort Claimants to the Debtor, and/or over which the Debtor has control; (iii) the Debtor shall release any claims for outstanding medical bills owed as of the Effective Date by the individual Tort Claimants to the

Debtor and/or any person or entity over which the Debtor has control relating to medical services provided to a Tort Claimant by Hansen (for the avoidance of doubt, subsections (ii) and (iii) above shall not apply to any family members of the individual Tort Claimants); and, (iv) the Debtor shall support the Trust Personal Injury Claimants' motion regarding remand of the HealthTech related cases so they may be tried in a forum of the Trust Personal Injury Claimants' choosing.

For Plan voting purposes only, the total Claims of the Tort Claimants shall be valued at $19,000,000.00, and each Tort Claimant's collective claim (including claims of spouses, parents, and natural guardians) is $1,000,000.00 for such purposes. There shall be no preclusive, collateral estoppel or res judicata effect to this valuation – $19,000,000.00 is chosen because there are 19 collective Claims held by the Tort Claimants.

(d)     Class 4 – Trade Claims.

Except as otherwise provided in this Plan or the Confirmation Order, each holder of an Allowed Trade Claim against the Debtor will receive payment of its Allowed Trade Claim, in full, and in Cash without interest, in four (4) separate and equal quarterly installments beginning the later of thirty (30) days after the Effective Date or the date such Trade Claim becomes an Allowed Claim. Thereafter, such holder shall receive three additional payments as follows: (i) second payment will be made ninety (90) days after the first payment; (ii) third payment will be made ninety (90) days after the second payment; and (iii) the fourth and final payment will be made ninety (90) days after the third payment. Provided, however, that prior to the Debtor making any such payments, the amount of such holder's Allowed Trade Claim shall be reduced by applying the full amount of any previously unapplied postpetition deposit paid by the Debtor to such holder as adequate assurance of future performance to such holder's Allowed Trade Claim. The Debtor may elect, at its option, to pay Allowed Trade Claims over a shorter period of time than required herein.

(e)     Class 5 – Reimbursement, Contribution and Indemnity Claims.

Debtor does not believe that there are any Allowed Reimbursement, Contribution and Indemnity Claims. As to any such Claim, however, Debtor and the Personal Injury Trustee reserve any and all rights to assert, among other things, objections under 11 U.S.C. § 502(e)(1)(B) and 553 of the Bankruptcy Code. Any such Claim shall be entitled to any rights, if any, as an additional insured, under any policies of insurance, to which any such Claim may be entitled. Other than as set forth herein, each holder of an Allowed Reimbursement, Contribution and Indemnity Claim shall neither receive nor retain under the Plan any property of any kind or nature whatsoever, including, without limitation, Cash, or any interest in any of the Personal Injury Trust Assets.

(f)     Class 6 – Subordinated Claims.

Each holder of an Allowed Subordinated Claim shall neither receive nor retain under the Plan any property of any kind or nature whatsoever, including, without limitation, Cash, or any interest in any of the Personal Injury Trust Assets.

(g)      Class 7 – Non-Hansen Personal Injury Claims

Each holder of an Allowed Non-Hansen Personal Injury Claim shall retain his or her Claim against any applicable insurance policy covering such Claim, but shall neither receive nor retain under the Plan any other property of any kind or nature whatsoever, including, without limitation, Cash, or any interest in any of the Personal Injury Trust Assets. Recovery for holders of the Non-Hansen Personal Injury Claims shall be limited to any insurance coverage available to satisfy any Allowed Claims of the Non-Hansen Personal Injury Claimants. The Debtor shall cooperate with the Class 7 claimants to determine if there is insurance coverage.

(h)      Class 8 – Other Unsecured Claims

Each holder of an Allowed Other Unsecured Claim shall receive its Pro Rata share of $10,000 in Cash within thirty (30) days after final adjudication of all contested Other Unsecured Claims.

### ARTICLE V.
### PROVISIONS FOR TREATMENT
### OF UNCLASSIFIED CLAIMS UNDER THE PLAN

**5.1.**    **Unclassified Claims.**

Administrative Claims and Tax Claims are treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively. Such Claims are not designated as classes of Claims for the purposes of this Plan or for the purposes of sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code.

**5.2.**    **Treatment of Administrative Claims.**

All Administrative Claims shall be treated as follows:

(a)      Time for Filing Administrative Claims.

The holder of an Administrative Claim, other than (i) a Fee Claim; (ii) a liability incurred and payable in the ordinary course of business by the Debtor (and not past due); or (iii) an Administrative Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Debtor and the Office of the United States Trustee, notice of such Administrative Claim within thirty (30) days after service of Notice of Confirmation. Such notice must include at a minimum (A) the name of the holder of the Claim; (B) the amount of the Claim; and (C) the basis of the Claim. **Failure to file and serve such notice timely and properly shall result in the Administrative Claim being forever barred and discharged.**

(b)      Time for Filing Fee Claims.

(i)      Unless otherwise ordered by the Bankruptcy Court, each Professional Person who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within thirty (30) days after the Effective Date. The failure to timely file and serve such Fee Application shall result in the Fee Claim being forever barred and discharged.

(ii)      Notwithstanding the foregoing, all Fee Claims for services after the Effective Date may be paid by the Debtor upon receipt of an invoice for such services, or on such other terms to which the Debtor and the relevant Professional Person may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order.

(c)      Allowance of Administrative Claims/Fee Claims.

An Administrative Claim with respect to which notice has been properly filed and served pursuant to Section 5.2(a) shall become an Allowed Administrative Claim if no objection is filed within sixty (60) days after the later of (i) the Effective Date; and (ii) the date of service of the applicable notice of Administrative Claim or such later date as may approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing. If an objection is filed within such 60-day period (or any extension thereof), the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order. A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 5.2(b) shall become an Allowed Administrative Claim only to the extent allowed by order of the Bankruptcy Court.

(d)      Payment of Allowed Administrative Claims.

Within thirty (30) days after the Effective Date, or within thirty (30) days after becoming an Allowed Claim, whichever is later, each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim in one Cash payment; or (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder; provided, however, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Claim; and provided further that an Administrative Claim representing a liability incurred and payable in the ordinary course of business of the Debtor may be paid at the Debtor's election in the ordinary course of business.

### 5.3.    <u>Treatment of Tax Claims.</u>

At the election of the Debtor, each holder of an Allowed Tax Claim will receive in full satisfaction of such Allowed Tax Claim (a) payments in Cash, in equal quarterly installments over a period ending not later that five (5) years after the Petition Date, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) a lesser amount in one Cash payment as may be agreed upon in writing by such holder; or (c) such other treatment as may be agreed upon in writing by such holder; provided, however, that such agreed upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Tax Claim. The Confirmation Order shall enjoin any holder of an Allowed Tax Claim from commencing or continuing any action or

proceeding against any responsible person, officer or director of the Debtor that otherwise would be liable to such holder for payment of a Tax Claim so long as the Debtor is in compliance with this Section 5.3. So long as the holder of an Allowed Tax Claim is enjoined from commencing or continuing any action or proceeding against any responsible person, officer or director under this Section 5.3 or pursuant to the Confirmation Order, the statute of limitations for commencing or continuing any such action or proceeding shall be tolled.

## ARTICLE VI.
## ACCEPTANCE OR REJECTION OF THE PLAN;
## EFFECT OF REJECTION BY ONE OR MORE
## CLASSES OF CLAIMS

### 6.1.    Classes Entitled to Vote.

Except for Class 1 – Priority Claims, all classes of Claims are entitled to vote on the Plan. Class 1 – Priority Claims are unimpaired and are deemed to have accepted the Plan. Holders of Class 5 – Reimbursement, Contribution and Indemnity Claims, and Class 6 – Subordinated Claims, are not retaining or receiving any property under the Plan on account of their Claims and, therefore, Class 5 – Reimbursement, Contribution and Indemnity Claims, and Class 6 – Subordinated Claims, are deemed to have rejected the Plan.

### 6.2.    Class Acceptance Requirement.

A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted on the Plan.

### 6.3.    Cramdown.

If all applicable requirements for confirmation of the Plan are met as set forth in section 1129(a)(1) through (16) of the Bankruptcy Code, except subsection (8) thereof, then the Plan shall be treated as a request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to each class of Claims that is impaired under, and has not accepted, the Plan.

## ARTICLE VII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 7.1.    Operations Between the Confirmation Date and the Effective Date.

During the period from the Confirmation Date through and until the Effective Date, the Debtor shall continue to operate its businesses as a debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court that are then in full force and effect.

### 7.2.    The Personal Injury Trust.

Pursuant to 11 U.S.C. §§ 1123(a)(5) and (b)(2)(B) of the Bankruptcy Code, the Personal Injury Trust shall be created in substantially the same form as the document attached hereto as **Exhibit 2**, which shall govern, among other things, the liquidation and distribution of the Allowed Trust Personal Injury Claims, and which shall hold, among other things, the Personal Injury Note attached hereto as **Exhibit 3** and a security agreement in the form attached hereto as **Exhibit 4**. The terms and provisions of the Personal Injury Trust are incorporated herein as though fully set forth in the Plan.

### 7.3.    <u>RESERVED.</u>

### 7.4.    <u>Certain Provisions Concerning Non-Hansen Personal Injury Claims.</u>

Notwithstanding anything else set forth in the Plan, the Plan Documents, or the Personal Injury Trust, on the Effective Date, all Non-Hansen Personal Injury Claims shall not become Allowed Claims for purposes of receiving a distribution under the Plan, the Plan Documents, or the Personal Injury Trust.  Rather, notwithstanding the automatic stay (to the extent applicable), the discharge provided for in section 1141(d) of the Bankruptcy Code and in the Plan, or any other injunction provided for in the Plan, the holders of Non-Hansen Personal Injury Claims that filed a timely proof of claim in respect of such Claims shall be entitled to liquidate such Claims against the Debtor in the court of their choice, provided, that any such Non-Hansen Personal Injury Claims that  result in judgment or are determined pursuant to an agreement with the Debtor shall only be satisfied and/or paid from any applicable insurance proceeds available to satisfy said Claims.  Holders of Non-Hansen Personal Injury Claims shall not receive any distribution from the Personal Injury Trust.  Holders of Non-Hansen Personal Injury Claims that failed to file a timely proof of claim shall, on the Effective Date, have their Claims disallowed in their entirety and shall be fully subject to the automatic stay (to the extent applicable), the discharge provided for in section 1141(d) of the Bankruptcy Code and in the Plan, and any other injunctions set forth in the Plan.

### 7.5.    <u>RESERVED.</u>

### 7.6.    <u>Corporate Action.</u>

The entry of the Confirmation Order shall constitute authorization for the Debtor to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including, without limitation, any action required by the directors of the Debtor including, among other things, the incurrence of all obligations contemplated by the Plan and the making of Plan Distributions. On the Effective Date, the officers of the Debtor are authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary action required in connection therewith, in the name of and on behalf of the Debtor. Except as otherwise indicated in this Plan, all obligations of the Debtor set forth in the Debtor's corporate documents to indemnify and hold harmless its current and former directors, officers and employees shall be assumed by, and assigned to, the Debtor upon the occurrence of the Effective Date with the same

effect as though such obligations constituted executory contracts that are assumed (or assumed and assigned, as applicable) under section 365 of the Bankruptcy Code, and all such obligations shall be fully enforceable on their terms from and after the Effective Date.

### 7.7. <u>Re-vesting of Assets.</u>

Upon the occurrence of the Effective Date, except as otherwise expressly provided in the Plan, title to all of the Assets of the Debtor shall vest in the Debtor free and clear of all liens, Claims, interests, security interests and other encumbrances and without further order of the Bankruptcy Court. On and after the occurrence of the Effective Date, except as otherwise provided in the Plan, the Debtor may operate its business and may use, acquire and dispose of its Assets free of any restrictions of the Bankruptcy Code.

### 7.8. <u>Management and Officers.</u>

The board of directors and officers of the Debtor shall continue to serve in their current capacity on and after the Effective Date. Subject to applicable law, from and after the Effective Date, the officers of the Debtor shall be selected and appointed, in accordance with, and pursuant to, the provisions of applicable law and the Debtor's constituent documents. In addition to the foregoing, on the Effective Date, the Debtor shall assume the Employee Obligations.

### 7.9. <u>Avoidance Actions.</u>

On the Effective Date, the Debtor shall and hereby does waive the right to seek affirmative recoveries in respect of any Avoidance Actions from any holder of a Class 4 – Trade Claim or Class 8 – Other Unsecured Claim; except, that the Debtor reserves the right to assert an Avoidance Action as an offset to any such holder's Class 4 – Trade Claim or Class 8 – Other Unsecured Claim; except, further, that the Debtor reserves the right to seek to subordinate any Claim pursuant to section 510(c) of the Bankruptcy Code and other applicable law, if appropriate.  For the avoidance of doubt, the Debtor reserves all rights and does not waive any claims against HealthTech and/or Patten with respect, in particular, to any preference payments made within one (1) year before the Debtor's bankruptcy filing and/or any fraudulent transfers under state law or the Bankruptcy Code made within four (4) years before the Debtor's bankruptcy filing.

### 7.10. <u>Causes of Action.</u>

Except for the Transferred Causes of Action and as otherwise set forth in the Plan, all Causes of Action of the Debtor and its Estate shall, upon the occurrence of the Effective Date, be vested in the Debtor. Except as otherwise provided in the Plan, the rights of the Debtor to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

**No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor will not pursue any and all available Causes of Action against it. The Debtor and its Estate expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise provided in the Plan.** Unless any Causes of Action against a Person are

expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), waiver or laches, shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan.

Without limiting the generality of the foregoing, the Transferred Causes of Action are fully preserved under the Plan and shall be transferred to the Personal Injury Trust. The Personal Injury Trust shall be the Estate representative pursuant to 11 U.S.C. § 1123(b)(3)(B) for the purpose of pursuing such Transferred Causes of Action and nothing in the Plan shall in any manner waive, release or modify the Transferred Causes of Action.

**7.11. District Participation.**

In return for a full release from all Claims asserted and/or unasserted against the Debtor that arose on or prior to the Petition Date as more particularly described in Section 7.12, the District shall, prior to the Effective Date: (i) refund the Debtor certain lease payments previously made to the District by the Debtor in the amount of $250,000.00 (the "District Refund") which shall be paid to the Personal Injury Trust on the Effective Date; and, (ii) amend its unexpired lease with the Debtor that currently requires monthly payments of $67,500 as follows:

- The monthly rent due thereunder shall be equal to $0.00 per month for the first twelve months (12 months) following the Effective Date of the Plan;

- The monthly rent due thereunder shall be equal to $37,500 per month beginning the thirteenth month following the Effective Date of the Plan, and continuing thereafter for forty eight (48) months;

- The monthly rent due thereunder shall be equal to $47,500 beginning the sixty-first month following the Effective Date of the Plan, and shall remain $47,500 per month for a period of thirty-five months (35 months);

- On a monthly basis, the District shall agree that the Debtor is obligated to satisfy each Initial Monthly Distribution or Subsequent Monthly Distribution prior to satisfying its rental obligation for each applicable month until such time as the Initial Monthly Distributions and Subsequent Monthly Distributions are paid in full (*i.e.*, payments to the Personal Injury Trust shall be satisfied each month prior to rent payments to the District);

- The District shall agree that so long as the Debtor is current on its Initial Monthly Distributions and/or Subsequent Monthly Distributions or has cured any default thereunder, the District may not terminate any lease between the District and the Debtor that was effective on the Petition Date;

- The Debtor may not purposely default on any Initial Monthly Distribution or Subsequent Monthly Distribution for the purposes of creating a default under any lease between the District and the Debtor that was effective on the Petition Date.

In the event that the Debtor believes it may default on any Initial Monthly Distribution or Subsequent Monthly Distribution, the Debtor shall immediately notify the Personal Injury Trustee and First Bank of Wyoming in writing, and provide financial documentation, such as a bank statement, to the Personal Injury Trustee and First Bank of Wyoming demonstrating that the Debtor is unable to make said payment(s);

•    The District shall agree that so long as the Debtor is current on its Initial Monthly Distributions and/or Subsequent Monthly Distributions or has cured any default thereunder, the District may not terminate any lease between the District and the Debtor that was effective on the Petition Date; and,

•    All other provisions of the lease shall remain intact and all leases between the Debtor and the District shall be assumed (collectively, the "Amended Lease Obligations").

**7.12.  District Release.**

Upon the Effective Date, and in consideration for satisfying the District Refund and the Amended Lease Obligations in accordance with Section 7.11 of the Plan, the District, including its officers, directors, employees, agents, insurers, representatives, successors and assigns and Professionals (provided that nothing in this Section 7.12 of the Plan shall be construed to release any party or entity from any Transferred Causes of Action, each of which is preserved as otherwise set forth in the Plan), shall, except for the Amended Lease Obligations set forth in Section 7.11 of the Plan, be unconditionally and forever released from any and all Claims by the Debtor, the Debtor-in-Possession, the Creditors Committee, the Tort Claimants, the Personal Injury Claims Committee, the Personal Injury Trust, the Trust Personal Injury Claimants, the Personal Injury Trustee, the Disbursing Agent, as well as any other Person, and all other creditors holding Claims against the Debtor, whether asserted, unasserted, unmatured, contingent or unknown which arose on or before the Petition Date, including, but not limited to, claims related to alter-ego, piercing the corporate veil, fraudulent transfer, avoidance claims under Chapter 5 of the Bankruptcy Code or otherwise, substantive consolidation or any other Claims which would, could or may seek to impose liability on the District for creditor Claims of the Debtor, including Claims of any Tort Claimants.

## ARTICLE VIII.
## APPOINTMENT OF THE DISBURSING AGENT

Upon the occurrence of the Effective Date, (a) the Debtor shall be appointed to serve as the Disbursing Agent with respect to all Allowed Claims other than Allowed Trust Personal Injury Claims; and (b) the Personal Injury Trustee shall be appointed to serve as the Disbursing Agent with respect to Allowed Trust Personal Injury Claims. Each of the Debtor and the Personal Injury Trustee, in its respective capacity as Disbursing Agent, shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan.

**8.1.    Powers and Duties of the Disbursing Agent.**

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall be empowered and directed to (a) take all steps and execute all instruments and documents necessary to make Plan Distributions to holders of Allowed Claims; (b) comply with the Plan and the obligations thereunder; (c) employ, retain, or replace professionals to represent it with respect to its responsibilities; (d) object to Claims as specified in the Plan, and prosecute such objections; (e) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment, or Allowance of any Claim as provided in the Plan; (f) make annual and other periodic reports regarding the status of distributions under the Plan to the holders of Allowed Claims that are outstanding at such time, with such reports to be made available upon request to the holder of any Contested Claim; and (g) exercise such other powers as may be vested in the Disbursing Agent pursuant to the Plan, the Plan Documents or order of the Bankruptcy Court.

### 8.2. Plan Distributions.

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall make the required Plan Distributions specified under the Plan.

### 8.3. Exculpation of Disbursing Agent.

Except as otherwise provided in this Section 8.3, the Disbursing Agent, together with its officers, directors, employees, agents, attorneys and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and all other parties in interest, from any and all Causes of Action arising out of the discharge of the powers and duties conferred upon the Disbursing Agent (and each of its respective paying agents), by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Disbursing Agent's willful misconduct or gross negligence. No holder of a Claim or representative thereof shall have or pursue any Cause of Action (a) against the Disbursing Agent or its respective officers, directors, employees, agents, and representatives for making Plan Distributions in accordance with the Plan; or (b) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan. Nothing contained in this Section 8.3 shall preclude or impair any holder of an Allowed Claim from bringing an action in the Bankruptcy Court against any Debtor to compel the making of Plan Distributions contemplated by the Plan on account of such Claim.

### 8.4. Sources of Cash for Plan Distributions.

All Cash necessary for the Debtor to make payments and Plan Distributions in its capacity as Disbursing Agent shall be obtained from the Debtor's existing cash balances, operations, and Exit Financing. All Cash necessary for the Personal Injury Trustee to make payments and Plan Distributions in its capacity as Disbursing Agent shall be obtained from the assets of the Personal Injury Trust in accordance with the terms of the Personal Injury Trust.

## ARTICLE IX.
## PLAN DISTRIBUTION PROVISIONS

### 9.1. Plan Distributions.

The Disbursing Agent shall make all Plan Distributions in accordance with the terms of the Plan. In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due. For federal income tax purposes, except to the extent a Plan Distribution is made in connection with reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

### 9.2.    Timing of Plan Distributions.

Each Plan Distribution shall be made pursuant to the terms and provisions of the Plan and shall be deemed to have been timely made if made on the date required under the Plan or within ten (10) days thereafter.

### 9.3.    Address for Delivery of Plan Distributions/Unclaimed Plan Distributions.

Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth (a) in the Debtor's Schedules; (b) on the proof of Claim filed by such holder; (c) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e); or (d) in any notice served by such holder giving details of a change of address. If any Plan Distribution is returned to the Disbursing Agent as undeliverable, no Plan Distributions shall be made to such holder unless the Disbursing Agent is notified of such holder's then current address within ninety (90) days after such Plan Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the undeliverable Plan Distributions shall be returned to the Debtor, or if the Disbursing Agent for the applicable Plan Distribution is the Personal Injury Trustee, to the Personal Injury Trust.

### 9.4.    De Minimis Plan Distributions and Authorization to Make Charitable Contributions.

No Plan Distribution of less than fifty dollars ($50.00) shall be made by the Disbursing Agent to the holder of any Claim unless a request therefore is made in writing to the Disbursing Agent within thirty (30) days of the Effective Date. Each Plan Distribution of less than fifty dollars ($50.00) shall automatically revert to the Debtor.

### 9.5.    Time Bar to Cash Payments.

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued. Any claim in respect of such a voided check shall be made within thirty days (30) days after the date upon which such check was deemed void. If no request is made as provided in the preceding sentence, any claims in respect of such voided check shall be discharged and forever barred and such unclaimed Plan

Distribution shall revert to the Debtor.  This Section 9.5 of the Plan shall only apply to the Disbursing Agent for the Debtor.

### 9.6. Manner of Payment under the Plan.

Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made, at the election of the Disbursing Agent, by check drawn on a domestic bank or by wire transfer from a domestic bank. Cash payments to foreign creditors may, in addition to the foregoing, be made at the option of the Disbursing Agent in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

### 9.7. Fractional Plan Distributions.

Notwithstanding anything to the contrary contained herein, no Plan Distributions of fractions of dollars (whether in Cash or notes) will be made. Fractions of dollars (whether in Cash or notes) shall be rounded to the nearest whole unit (with any amount equal to or less than one-half dollar to be rounded down).

### 9.8. Surrender and Cancellation of Instruments.

As a condition to receiving any Plan Distribution, on or before the Effective Date, the holder of an Allowed Claim evidenced by a certificate, instrument or note other than any such certificate, instrument or note that is being reinstated or being left unimpaired under the Plan, shall (a) surrender such certificate, instrument or note representing such Claim, except to the extent assumed by the Debtor; and (b) execute and deliver such other documents as may be necessary to effectuate the Plan.  Any such certificate, instrument or note shall be deemed as of the Effective Date cancelled, extinguished and of no further force and effect.  The Disbursing Agent shall have the right to withhold any Plan Distribution to be made to or on behalf of any holder of such Claims unless and until (1) such certificates, instruments or notes are surrendered; or (2) any relevant holder provides to the Disbursing Agent an affidavit of loss or such other documents as may be required by the Disbursing Agent together with an appropriate indemnity in the customary form. Any such holder who fails to surrender such certificates, instruments or notes or otherwise fails to deliver an affidavit of loss and indemnity prior to the second anniversary of the Effective Date, shall be deemed to have forfeited its Claims and shall not participate in any Plan Distribution. All property in respect of such forfeited Claims shall revert to the Debtor.

## ARTICLE X.
## PROCEDURES FOR RESOLVING
## AND TREATING CONTESTED CLAIMS

### 10.1. Certain Claims Resolved Pursuant to Special Procedures.

All Trust Personal Injury Claims shall be resolved as provided in Section 7.2 of the Plan and not pursuant to the procedures set forth in this Article X.  All Non-Hansen Personal Injury Claims shall be resolved as set forth in Section 7.4 of the Plan and not pursuant to the procedures set forth in this Article X.  On the Effective Date, the following Claims shall be deemed withdrawn with prejudice: the District, Jim Carlson, R.J. Kost, Mark Olson, Beth Gilb, Nathaniel

M. Reib, William J. Jarvis, Bonita Katz, Michael Tracy, M.D. and Deb Kleinfeldt, and they shall not be entitled to any distribution, or share in any distribution under the Plan.  All other Claims shall be subject to the procedures set forth in this Article X.

### 10.2.   Objection Deadline and Deadline to Value Collateral.

(a)     The Disbursing Agents shall file objections to Claims, if any, with the Bankruptcy Court as soon as practicable, but not later than (a) the date that is one hundred and eighty (180) days after the Effective Date; or (b) such later date as may be established by order of the Bankruptcy Court upon motion of the Disbursing Agents without notice or a hearing. The Disbursing Agents shall serve any objection to a Claim upon the holder of the Claim to which the Debtor objects.

### 10.3.   Exclusive Right of Debtor to Object to Claims.

Only the Debtor, in its capacity as Disbursing Agent, may object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part.  All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 10.4 of the Plan; provided, however, that the Personal Injury Trustee and the Debtor shall jointly have the power and authority to make, prosecute and settle objections to any Claims of insurance companies, Hansen, Patten and/or HealthTech, and assert such rights regarding said objections, including but not limited to rights of set-off under 11 U.S.C. § 553 of the Bankruptcy Code, and including claims for disallowance and/or equitable subordination of such Claims under 11 U.S.C. § 510(c) of the Bankruptcy Code.  Any settlement of Claims asserted by an insurance company, Hansen, Patten or HealthTech shall be agreed upon by the Debtor and the Personal Injury Trustee, and approved by the Bankruptcy Court after notice and hearing.

### 10.4.   Claims Settlement.

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Debtor, in its capacity as Disbursing Agent, shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court; subject, however, to the limitations set forth in Section 10.3 of the Plan regarding any Claims of insurance companies, Hansen, Patten and/or HealthTech.

### 10.5.   Entitlement to Plan Distributions upon Allowance.

Notwithstanding any other provision of the Plan, no Plan Distribution shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim. When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when) the holder of such Allowed Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim, the same as though such Claim had been an Allowed Claim on the Effective Date.

**10.6     Estimations of Claims**

The Disbursing Agent may, at any time, request that the Bankruptcy Court estimate any Contested Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Disbursing Agent has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event the Bankruptcy Court estimates a Contested Claim, that estimated amount will constitute the Allowed amount of such Claim for all purposes under the Plan. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. In the interest of clarity, this provision shall not apply to Trust Personal Injury Claims.

**ARTICLE XI.**
**CONDITIONS PRECEDENT TO CONFIRMATION OF THE**
**PLAN AND THE OCCURRENCE OF THE EFFECTIVE DATE**

**11.1.     Conditions Precedent to Confirmation.**

The following are conditions precedent to confirmation of the Plan:

(a)     The clerk of the Bankruptcy Court shall have entered an order or orders (i) approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) authorizing the solicitation of votes with respect to the Plan; (iii) determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan; (iv) confirming and giving effect to the terms and provisions of the Plan; (v) determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtor and the Plan; (vii) approving the Plan Documents; and (viii) authorizing the Debtor to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to, the transactions and transfer of Assets contemplated by the Plan and the Plan Documents; and

(b)     The Confirmation Order, the Plan Documents and the Plan are each in a form reasonably satisfactory to the Debtor.

**11.2.     Conditions Precedent to the Occurrence of the Effective Date.**

The following are conditions precedent to the occurrence of the Effective Date:

(a)     The Confirmation Order shall have been entered by the clerk of the Bankruptcy Court in a form and substance reasonably satisfactory to the Debtor and shall be in full force and effect and not be subject to any stay or injunction;

(b)     The Debtor shall have executed the Personal Injury Trust Note;

(c)     The Debtor shall have received the District Refund (which shall be paid to the Personal Injury Trust on the Effective Date);

(d)     All necessary consents, authorizations and approvals shall have been given for the transfers of property and the payments provided for or contemplated by the Plan, <u>including</u>, without limitation, satisfaction or waiver of all conditions to the obligations of the Debtor under the Plan and the Plan Documents; and,

(e)     The Personal Injury Trust shall have become effective.

### 11.3.    <u>Waiver of Conditions.</u>

The Debtor may waive any one or more of the conditions set forth in Sections 11.1 or 11.2 of the Plan without notice or order of the Bankruptcy Court and without notice to any parties in interest.

### 11.4.    <u>Effect of Non-Occurrence of the Effective Date.</u>

If the Effective Date shall not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against the Debtor; (b) prejudice in any manner the rights of the Debtor, including, without limitation, any right to seek a further extension of the exclusivity periods under section 1121(d) of the Bankruptcy Code; or (c) constitute an admission, acknowledgement, offer or undertaking by the Debtor.

### 11.5.    <u>Right to Revoke or Withdraw Plan.</u>

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtor revokes or withdraws the Plan, or if Confirmation or consummation does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or (iii) constitute an admission of any sort by the Debtor or any other Person.

**ARTICLE XII.**
**TREATMENT OF EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES**

**12.1.    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases.</u>**

(a)    On the Effective Date, all executory contracts and unexpired leases of the Debtor shall be assumed pursuant to the provisions of section 365 of the Bankruptcy Code, except:  (i) any executory contracts and unexpired leases that are the subject of separate motions to reject, assume, or assume and assign filed pursuant to section 365 of the Bankruptcy Code by the Debtor before the Effective Date; (ii) each contract and lease listed in the Schedule of Rejected Executory Contracts and Unexpired Leases; (iii) all other executory contracts and unexpired leases rejected under this Plan or by order of the Bankruptcy Court entered before the Effective Date; (iv) any executory contract or unexpired lease that is  the subject of a dispute over the amount or manner of cure pursuant to Section 12.2 hereof and for which the Debtor makes a motion to reject such contract or lease based upon the existence of such dispute filed at any time; (v) any agreement, obligation, security interest, transaction or similar undertaking that the Debtor believes is not executory; and, (vi) any and all agreements executed between the Debtor and Hansen prior to the Petition Date.  The Debtor shall file the Schedule of Assumed Executory Contracts and Unexpired Leases at least twenty (20) days prior to the Confirmation Hearing. The Debtor shall use commercially reasonable efforts to identify all executory contracts and unexpired leases subject to assumption in the Schedule of Assumed Executory Contracts and Unexpired Leases. If an executory contract or unexpired lease is omitted from the Schedule of Assumed Executory Contracts and Unexpired Leases (an "Omitted Assumed Contract") and is not included in the Schedule of Rejected Executory Contracts and Unexpired Leases, such executory contract or unexpired lease shall, nonetheless be deemed assumed pursuant to the terms of this Article XII.

(b)    Any non-Debtor counterparty to an agreement not listed on the Schedule of Rejected Executory Contracts or Unexpired Leases that disputes (i) the amount of any cure payments; (ii) the Debtor's ability to provide adequate assurance of future performance; or (iii) any other matter pertaining to the assumption or assignment of such agreement must file with the Bankruptcy Court, and serve upon the Debtor, a written objection (an "Assumption Objection"), which objection shall set forth the basis for the dispute by no later than ten (10) Business Days prior to the Confirmation Hearing. If a non-Debtor counterparty fails to file and serve an Assumption Objection, the non-Debtor counterparty shall be deemed to have waived any and all objections to the assumption of the relevant agreement as proposed by the Debtor, including the lack of any cure obligations. Notwithstanding any of the foregoing, if an assumed executory contract or unexpired lease constitutes an Omitted Assumed Contract at any time after the commencement of the Confirmation Hearing, the Debtor shall, promptly upon the discovery of such Omitted Assumed Contract, provide written notice of such Omitted Assumed Contract to the non-Debtor counterparty identifying the Omitted Assumed Contract and detailing the proposed cure amount. Thereafter, such non-Debtor counterparty shall have twenty (20) days from the issuance of such notice to object to the assumption of such Omitted Assumed Contract or the proposed cure amount. Any objections that are not resolved by agreement shall be resolved by the Bankruptcy Court.

(c)     Entry of the Confirmation Order by the clerk of the Bankruptcy Court shall constitute approval of the assumption of executory contracts and unexpired leases as set forth in Section 12.1(a) pursuant to sections 365(a) and (b) of the Bankruptcy Code without further order of the Bankruptcy Court.

(d)     The Plan shall constitute a motion to reject such executory contracts and unexpired leases set forth in the Schedule of Rejected Executory Contracts and Unexpired Leases, and the Debtor shall have no liability thereunder except as is specifically provided in the Plan.  The Debtor shall file with the Court the Schedule of Rejected Executory Contracts and Unexpired Leases at least twenty (20) days prior to the Confirmation Hearing.  The Debtor reserves the right to amend the Schedule of Rejected Executory Contracts and Unexpired Leases on or prior to the Confirmation Date to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) and unexpired lease(s) shall be deemed to be, respectively, assumed or rejected by the Debtor pursuant to this Article XII. The listing of a document on the Schedule of Rejected Executory Contracts and Unexpired Leases shall not constitute an admission by the Debtor that such document is an executory contract or that the Debtor has any liability thereunder. Entry of the Confirmation Order by the clerk of the Bankruptcy Court shall constitute approval of rejections under this Section 12.1 pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected agreement, executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtor and its Estate.

(e)     Inclusion of a contract, lease or other agreement on the Schedule of Rejected Executory Contracts and Unexpired Leases shall constitute adequate and sufficient notice that (i) any Claims arising thereunder or related thereto shall be treated as Other Unsecured Claims under the Plan; and (ii) the Debtor is no longer bound by, or otherwise obligated to perform, any such obligations, transactions, or undertakings relating thereto or arising thereunder.

(f)     Except with respect to the addition of an Omitted Assumed Contract, the Schedule of Assumed Contracts and Unexpired Leases and Schedule of Rejected Contracts and Unexpired Leases may only be amended on or before the tenth (10th) Business Day prior to the Voting Deadline. Notice of any such amendment to the affected non-Debtor counterparty shall be provided at the time such amendment is made and such non-Debtor counterparty shall have until the Voting Deadline to object to such amendment.

(g)     Notwithstanding Section 12.1(a) or anything else set forth in the Plan, on the Effective Date, the Debtor, with the consent of HealthTech, shall assume the HealthTech Management Contract pursuant to section 365(a) of the Bankruptcy Code, but there shall be no cure amounts required pursuant to section 365(b)(1) of the Bankruptcy Code.  Further, any HealthTech Reimbursement, Contribution and Indemnity Claim shall be treated as provided in Section 4.1(e) of the Plan. For the avoidance of doubt, there shall be no payment to HealthTech under Section 4.1(e) of the Plan, and the Debtor shall have no obligation to pay any cure payments to HealthTech notwithstanding the assumption of the HealthTech Management Contract.  If HealthTech shall not consent to the assumption of the HealthTech Management Contract as set forth herein, the HealthTech Management Contract shall be deemed rejected and HealthTech shall be required to file a proof of Claim for rejection damages as set forth in Section

12.3 of the Plan. All Rejection Claims of HealthTech shall be treated the same as Other Unsecured Claims.

### 12.2. Cure.

Any monetary defaults under each executory contract and unexpired lease to be assumed under this Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the cure amount listed on the Schedule of Assumed Executory Contracts and Unexpired Leases in Cash on the Effective Date; or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease. In the event a non-Debtor counterparty files an Assumption Objection, the cure payments required by section 365(b)(1) of the Bankruptcy Code to such non-Debtor counterparty shall be made following the entry of a Final Order resolving the dispute and approving assumption or assignment, as applicable.

### 12.3. Claims Arising from Rejection, Expiration or Termination.

Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtor: (a) in the case of an executory contract or unexpired lease rejected by the Debtor prior to the Confirmation Date, in accordance with the order rejecting such executory contract or unexpired lease; or (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to the Confirmation Date; or (ii) is rejected pursuant to this Article XII, no later than thirty (30) days after the Confirmation Date. Any such Claims for which a proof of claim is not filed and served by the deadlines set forth in the Bar Date Notice or this Section 12.3, as applicable, will be forever barred from assertion and shall not be enforceable against the Debtor or its Estate. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as Other Unsecured Claims under the Plan subject to objection by the Disbursing Agent.

## ARTICLE XIII.
## RETENTION OF JURISDICTION

### 13.1. Scope of Retention of Jurisdiction.

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall, unless it orders otherwise, retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code; or (b) arising in or related to the Chapter 11 Case or the Plan, including, without limitation, the following:

(i)     To hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XII hereof for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine any and all Claims and any related disputes (including, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination or liquidation of any executory contract or unexpired lease);

(ii)     To determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Disbursing Agent, the Personal Injury Trustee or the Debtor, as applicable, after the Effective Date;

(iii)     Except as provided for in the Plan, to hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

(iv)     To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(v)     To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vi)     To hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(vii)     To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Plan, the Debtor's rights under the Personal Injury Trust, the Plan Documents (to the extent such controversies, suits and disputes involve the Debtor), or their interpretation, implementation, enforcement, or consummation;

(viii)     To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement, or consummation;

(ix)     To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of, or against the Estate;

(x)     To determine such other matters that may be set forth in the Plan, or the Confirmation Order, or that may arise in connection with the Plan, or the Confirmation Order;

(xi)     To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtor, the Debtor in Possession, Personal Injury Trustee or the Disbursing Agent may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xii)     To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtor or any Person under the Plan;

(xiii)   To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with Causes of Action of the Debtor (including Avoidance Actions and Transferred Causes of Action) commenced by the Disbursing Agent, the Personal Injury Trustee, the Debtor or any third parties, as applicable, before or after the Effective Date;

(xiv)   To enter an order or final decree closing the Chapter 11 Case;

(xv)   To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and,

(xvi)   To hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

### 13.2.   Failure of the Bankruptcy Court to Exercise Jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in Section 13.1 of the Plan, the provisions of this Article XIII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

### 14.1.   Payment of Statutory Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtor on or before the Effective Date.

### 14.2.   Satisfaction of Claims.

The rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtor, the Estate, the Debtor in Possession or any of their Assets. Except as otherwise provided herein, on the Effective Date, all Claims against the Debtor and the Debtor in Possession shall be satisfied, discharged, and released in full. Except as otherwise provided herein, all Persons shall be precluded and forever barred from asserting against the Debtor, the Estate and its Assets any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

### 14.3.   Exculpation.

None of the Debtor, the Creditors Committee, the Personal Injury Claims Committee or their respective members (in their capacity as such), the Tort Claimants or any of their respective officers, directors, members, employees, agents, representatives, advisors, attorneys or successors and assigns will have or incur any liability to any Person for any act or omission in connection with, or arising out of, the pursuit of confirmation of the Plan, the consummation of the Plan, or the implementation or administration of the Plan or the property to be distributed under the Plan, except for willful misconduct, breach of fiduciary duty or gross negligence as finally determined by the Bankruptcy Court, and, in all respects shall be entitled to rely upon the advice of counsel and all information provided by other exculpated persons herein without any duty to investigate the veracity or accuracy of such information with respect to their duties and responsibilities under the Plan.

### 14.4.   **Discharge of Liabilities.**

Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, the Debtor shall be discharged from all Claims and Causes of Action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all holders of Claims shall be precluded and enjoined from asserting against the Debtor, its Assets, or any property dealt with under the Plan, any further or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

### 14.5.   **Discharge of Debtor.**

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, without further notice or order, all Claims of any nature whatsoever shall be automatically discharged forever. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtor and its Estate shall be deemed fully discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor and its Estate. As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtor and its Estate to the extent it relates to a discharged Claim, and operates as an injunction against the prosecution of any action against the Debtor, its Estate or its Assets to the extent it relates to a discharged Claim.

### 14.6.   **Notices.**

Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

*If to the Debtor:*                                    *If to the Personal Injury Trustee:*

Terry Odom, CEO
Powell Valley Health Care, Inc.
777 Avenue H
Powell, WY 82435

*With a copy to:*                                      *With a copy to:*

Bradley T. Hunsicker
Markus Williams Young & Zimmermann LLC
106 E. Lincolnway, Suite 300
Cheyenne, WY  82001

### 14.7.  Headings.

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

### 14.8.  Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Wyoming, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

### 14.9.  Expedited Determination.

The Disbursing Agent is hereby authorized to file a request for expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtor.

### 14.10.  Exemption from Transfer Taxes.

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 14.11.  Notice of Entry of Confirmation Order and Relevant Dates.

Promptly upon entry of the Confirmation Order, the Debtor, as directed by the Bankruptcy Court, shall serve on all known parties in interest and holders of Claims, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan,

including, but not limited to, the deadline for filing notice of Administrative Claims, and the
deadline for filing rejection damage Claims.

### 14.12.  Interest and Attorneys' Fees.

Interest accrued after the Petition Date will accrue and be paid on Claims only to the
extent specifically provided for in this Plan, the Confirmation Order or as otherwise required by
the Bankruptcy Court or by applicable law. No award or reimbursement of attorneys' fees or
related expenses or disbursements shall be allowed on, or in connection with, any Claim against
the Debtor, except as set forth in the Plan or as ordered by the Bankruptcy Court.

### 14.13.  Modification of the Plan.

As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be
proposed in writing by the Debtor at any time before confirmation, provided that the Plan, as
modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the
Debtor shall have complied with section 1125 of the Bankruptcy Code. The Debtor may modify
the Plan at any time after confirmation and before substantial consummation, provided that the
Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code
and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under
section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications. A
holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as
modified if the proposed alteration, amendment or modification does not materially and
adversely change the treatment of the Claim of such holder.

### 14.14.  Setoff Rights.

In the event that the Debtor and/or the Personal Injury Trustee has a Claim of any nature
whatsoever against the holder of a Claim against the Debtor, then the Debtor and/or the Personal
Injury Trustee may, but is not required to, set off against the Claim (and any payments or other
Plan Distributions to be made in respect of such Claim hereunder) against the Debtor's and/or
the Personal Injury Trustee's claim against such holder, subject to the provisions of sections 553,
556 and 560 of the Bankruptcy Code. Neither the failure to set off nor the allowance of any
Claim under the Plan shall constitute a waiver or release of any Claims that the Debtor and/or the
Personal Injury Trustee may have against the holder of any Claim.

### 14.15.  Compliance with Tax Requirements.

In connection with the Plan, the Debtor and the Disbursing Agent, as applicable, shall
comply with all withholding and reporting requirements imposed by federal, state, local, and
foreign taxing authorities and all Plan Distributions hereunder shall be subject to such
withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed
Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the
satisfaction and payment of any tax obligations imposed by any government unit, including
income, withholding and other tax obligations, on account of such Plan Distribution. The
Disbursing Agent has the right, but not the obligation, to not make a Plan Distribution until such
holder has made arrangements satisfactory to the Disbursing Agent for payment of any such tax
obligations.

**14.16.  Releases by the Debtor.**

As of the Effective Date, for good and valuable consideration, the Debtor, in its individual capacity and as Debtor in Possession, will be deemed to release and forever waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtor or its Estate against (i) the Debtor's present and former officers and directors and any of its employees; and (ii) the attorneys, accountants, investment bankers, restructuring consultants and financial advisors of the Debtor; provided that nothing in this Section 14.16 of the Plan shall be construed to release any party or entity from (A) willful misconduct or gross negligence as determined by a Final Order; or (B) any Transferred Causes of Action, each of which is preserved as otherwise set forth in the Plan.  For the avoidance of doubt, there shall be no release by the Debtor with respect to all D&O claims, if any, to the extent of any insurance coverage against the Debtor's and/or District's directors, officers, and/or trustees, including but not limited to breach of fiduciary duty claims, breach of the duty of loyalty claims and/or negligence claims which shall not be released.

**14.17.  Injunctions.**

On the Effective Date and except as otherwise provided in the Plan, all Persons who have been, are, or may be holders of Claims against the Debtor shall be permanently enjoined from taking any of the following actions against or affecting the Debtor and/or the District, as determined by the Debtor and/or District in the Debtor's and/or District's sole discretion (as applicable), the Estate, the Assets or the Disbursing Agent, or any of their current or former respective members, directors, managers, officers, employees, agents, and professionals, affiliates, providers, contractors, successors and assigns or their respective assets and property with respect to such Claims (other than actions brought to enforce any rights or obligations under the Plan):

(i)  **commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);**

(ii)  **enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;**

(iii)  **creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and**

(iv)  **asserting any setoff, right of subrogation or recoupment of any kind; provided, that any defenses, offsets or counterclaims which the Debtor may have or assert**

**in respect of the above referenced Claims are fully preserved in accordance with Section 14.14; provided, however, that nothing in this Section 14.17 of the Plan shall prevent the Trust Personal Injury Claimants from obtaining a judgment as provided by the Personal Injury Trust, nor shall it prevent the Personal Injury Trustee from pursuing the Transferred Causes of Action, if any, against, but not limited to, Hansen, HealthTech or Patten.**

### 14.18.   Dissolution of the Creditors Committee.

Upon the Effective Date, the Creditors Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except with respect to (a) Fee Applications for Fee Claims or reimbursement of expenses incurred as a member of the Creditors Committee, and (b) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or Confirmation Order or pending appeals of orders entered in the Chapter 11 Case.

### 14.19.   Certain Administrative Matters.

The Debtor shall be entitled to close the Chapter 11 Case prior to the full administration and dissolution of the Personal Injury Trust; except, that the Chapter 11 Case shall be re-opened, upon the request of the Personal Injury Claims Committee or any holder of a Trust Personal Injury Claim, in the event of a dispute concerning the meaning or administration of the Personal Injury Trust. After the Chapter 11 Case has been closed, nothing in the Plan, including, without limitation, in this Section 14.19, shall prevent the Personal Injury Claims Committee or a holder of a Trust Personal Injury Claim from adjudicating any such disputes in any court of competent jurisdiction.

### 14.20.   Binding Effect.

The Plan shall be binding upon the Debtor, the holders of all Claims and all parties in interest and their respective successors and assigns. To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

### 14.21.   Severability.

IN THE EVENT THE BANKRUPTCY COURT DETERMINES THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR TRANSACTION, THE DEBTOR MAY MODIFY THE PLAN IN ACCORDANCE WITH SECTION 14.13 SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY SUCH CLAIM OR TRANSACTION. SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN; OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.

**14.22. <u>No Admissions.</u>**

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTIONS, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS PLAN SHALL NOT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST THE DEBTOR AND DEBTOR IN POSSESSION IN THIS CHAPTER 11 CASE.

Dated this 24th day of April, 2017

POWELL VALLEY HEALTH CARE, INC.

By: _____

Name: _____

Title: _____

*APPROVED AS TO FORM:*
MARKUS WILLIAMS YOUNG & ZIMMERMANN LLC

By: */s/ Bradley T. Hunsicker*
Bradley T. Hunsicker (WY Bar No. 7-4579)
Jennifer Salisbury (WY Bar No. 7-5218)
John F. Young (Pro Hac Vice)
106 E. Lincolnway, Suite 300
Cheyenne, WY  82001
Telephone (307) 778-8178
Facsimile (307) 778-8953
bhunsicker@MarkusWilliams.com
jsalisbury@MarkusWilliams.com
jyoung@MarkusWilliams.com

Attorneys for Debtor