## POWELL VALLEY HEALTH CARE, INC. PERSONAL INJURY TRUST

## PREAMBLE

This Powell Valley Health Care, Inc. Personal Injury Trust (the "Personal Injury Trust"), dated the date set forth on the signature page hereof and effective as of the Effective Date, is between Powell Valley Health Care, Inc. (the "Debtor"), the individual trustee identified on the signature page hereof and appointed by an order of the Court (the "Personal Injury Trustee") pursuant to the Chapter 11 Plan of Reorganization for Powell Valley Health Care, Inc., dated April 24, 2017, as amended, modified or supplemented from time to time (the "Plan"), and other parties signatory to this Personal Injury Trust, including the Committee of Unsecured Creditors (the "Committee") (collectively, the "Parties"). All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference. All capitalized terms not defined herein or defined in the Plan, but defined in the Bankruptcy Code or Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Rules, and such definitions are incorporated herein by reference.

## RECITALS

WHEREAS, at the time of the entry of the order for relief in the Debtor's voluntary Chapter 11 Case, the Debtor was named as a defendant in numerous personal injury actions seeking recovery for damages allegedly caused by certain procedures that were performed at the Debtor's hospital by Dr. Jeffrey N. Hansen and, at times, other physicians; and

WHEREAS, the Debtor has reorganized under the provisions of Chapter 11 of the Bankruptcy Code in a case pending in the United States Bankruptcy Court for the District of Wyoming, styled as *In re: POWELL VALLEY HEALTH CARE, INC.,* Case No. 16-20326 (the "Bankruptcy Case" or the "Case"); and

WHEREAS, the Plan, filed by the Debtor, has been confirmed by the Bankruptcy Court; and

WHEREAS, the Plan provides, *inter alia,* for the creation of the Personal Injury Trust; and

WHEREAS, pursuant to the Plan, the Personal Injury Trust is to use the Personal Injury Trust Assets (as described herein) to pay personal injury claimants (the "Tort Claimants") on their claims (the "Claims"), which Tort Claimants have filed Proofs of Claim described on Exhibit A attached hereto; and

WHEREAS, pursuant to the Plan, the Personal Injury Trust is intended to qualify as a "liquidating trust" within the meaning of section 301.7701-4(d), of the Treasury Regulations and Revenue Procedure 94-45; and

WHEREAS, it is the intent of the Debtor, the Personal Injury Trustee, the Committee and the Tort Claimants that the Personal Injury Trust be administered, maintained, and operated at all times as a qualified settlement fund through mechanisms that provide reasonable assurance that

1

the Personal Injury Trust will value, and be in a financial position to pay, the holders of Claims, in strict compliance with the terms of this Personal Injury Trust; and,

WHEREAS, the Plan provides, among other things, that the Personal Injury Trustee shall be empowered to liquidate the Claims of Tort Claimants pursuant to the Tort Claimants' Claims and Distribution Procedures (the "TDPs") attached hereto as Exhibit B and incorporated herein by reference, pursue litigation regarding the Personal Injury Trust Assets, and make distributions on the Claims on behalf of, and for the benefit of, the Tort Claimants, who are also the beneficiaries under the Personal Injury Trust (the "Beneficiaries"), and the Debtor.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan and in the Order Confirming the Plan dated _____, 2017 (the "Confirmation Order"), the Parties agree as follows:

## ARTICLE I

## ESTABLISHMENT OF LITIGATION TRUST

1.1.    **Creation and Name**. The Debtor, the Personal Injury Trustee and the other Parties hereto, hereby create a trust known as the "Personal Injury Trust," which is provided for and referred to in the Plan.  For the avoidance of doubt, the personal injury claimants described in Exhibit A are the Tort Claimants and the Beneficiaries of the Personal Injury Trust.  The Debtor is also a contingent beneficiary, and shall maintain a reversionary interest in the Personal Injury Trust Assets as described herein and in the Plan, but it is neither a Trust Personal Injury Claimant nor a Beneficiary as those terms are defined herein.

1.2.    **Purpose**. The primary purpose of the Personal Injury Trust is to liquidate its assets in accordance with Treas. Reg. § 301.7701-4(d) with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Personal Injury Trust. Accordingly, the Personal Injury Trustee shall, in an expeditious but orderly manner, liquidate and convert to cash the non-cash Personal Injury Trust Assets (as described herein), make timely distributions to the Beneficiaries, and not unduly prolong the duration of the Personal Injury Trust. The Personal Injury Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Beneficiaries treated as grantors and owners of the Personal Injury Trust. As soon as practicable after the Effective Date, the Personal Injury Trustee (to the extent that the Personal Injury Trustee deems it necessary or appropriate in his or her sole discretion) shall value the assets of the Personal Injury Trust based on the good faith determination of the Personal Injury Trustee. The valuation shall be used consistently by all parties for all federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding such valuation.

1.3.    **Transfer of Assets**. Pursuant to the Plan and the Confirmation Order, the Debtor has agreed to transfer, assign and deliver to the Personal Injury Trust, on behalf of the Beneficiaries, all of its right, title and interest in the Personal Injury Trust Assets, to the extent assignable under applicable law. The Debtor, the Committee, and the Personal Injury Trustee are authorized and directed to take all necessary actions to effectuate the foregoing. With respect to all Personal Injury Trust Assets, the Personal Injury Trustee shall directly and indirectly be the

representative of Debtor's estate, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, and will have the rights and powers provided for in the Bankruptcy Code, including section 1107 thereof, in addition to any rights and powers granted in this Personal Injury Trust and in the Plan.  The Personal Injury Trust will be the successor-in-interest to the Debtor with respect to any action that was or could have been commenced by the Debtor prior to the Effective Date that constitute Personal Injury Trust Assets and shall be deemed substituted for the same as the party in such litigation.  The Personal Injury Trustee may enforce, sue on, settle or compromise (or decline to do any of the foregoing) all claims, rights or causes of actions, suits and proceedings, whether in law or in equity, whether known or unknown, that Debtor or its estate may hold against any person or entity, that constitute Personal Injury Trust Assets, in accordance with the terms of this Personal Injury Trust.  All actions, claims, rights, or interests constituting Personal Injury Trust Assets are preserved and retained and may be enforced by the Personal Injury Trustee as the representative of Debtor's estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The Personal Injury Trustee shall be a party in interest as to all matters over which the Bankruptcy Court has jurisdiction or retains jurisdiction under the Plan insofar as such matters affect the Personal Injury Trust or the Personal Injury Trust Assets.  Transfers, assignments and delivery of all Personal Injury Trust Assets shall be free and clear of liens, claims and other encumbrances, and shall be administered for the benefit of the Beneficiaries under the Plan and the Debtor, on the terms and conditions set forth in the Plan and the Personal Injury Trust. The "Personal Injury Trust Assets" shall mean the following:

- All rights regarding claims of the Debtor, to the extent assignable by applicable bankruptcy and non-bankruptcy law, against or relating to the following:

  o D&O insurance which may cover claims incurred prior to the Petition Date relating to trustees, officers and directors of the Debtor or District. For the avoidance of doubt: (i) recovery is limited to any available insurance proceeds from any insurance policy that covers said claims; and (ii) all D&O claims, if any, are retained and not released, to the extent of any insurance coverage against the Debtor's and/or District's directors, officers and/or trustees, including but not limited to breach of fiduciary duty claims, breach of the duty of loyalty claims and/or negligence claims. In addition, the Proofs of Claim of the District, Jim Carlson, R. J. Kost, Mark Olson, Beth Gilb, Nathaniel M. Reib, William J. Jarvis, Bonita Katz, Michael Tracy, M.D. and Deb Kleinfeldt shall be withdrawn with prejudice and they shall not be entitled to any distribution, nor share in any distribution under the Plan.

  o HealthTech Management Services, Inc. ("HealthTech"), its officers, directors, employees, and agents, including but not limited to any insurance obtained by HealthTech relating to the Debtor.

  o Dr. Jeffrey N. Hansen ("Hansen").

  o William D. Patten ("Patten").

3

o     Malpractice insurance which may cover claims asserted by the Tort Claimants and incurred prior to the Petition Date, including but not limited to all rights of the Debtor regarding the Declaratory Judgment Action, insurance obtained by the Debtor relating thereto, including but not limited to all rights regarding claims of the Debtor against the Debtor's insurance brokers and agents, to the extent assignable by law, relating to the alleged negligence of Debtor's insurance brokers and agents for, among other things, failing to properly advise the Debtor on proper claims notification practice, and including any extra-contractual claims including bad faith claims relating to the claims asserted by the Tort Claimants, if any, whether arising or relating to pre- or post-petition time periods.

o     All rights are assigned notwithstanding any anti-assignment provisions, if any, in any policies of insurance.

o     Any pre-petition legal malpractice claims to the extent permitted by applicable bankruptcy and non-bankruptcy law (excluding, however, Debtor's bankruptcy counsel who shall receive a release under the Plan), subject to the following conditions which must be met before the Personal Injury Trustee may pursue any such claims: (i) there is a determination by a court of competent jurisdiction that medical malpractice insurance coverage does not exist for the Tort Claimants; and (ii) the Personal Injury Trustee has been advised in writing by counsel that a legal malpractice claim exists subject, however, to a right of the Debtor to file an objection to the pursuit of any such claim (on notice given by the Personal Injury Trustee to the Debtor through the Debtor's member on the Personal Injury Claims Committee (as described herein), for which the Parties agree that the Bankruptcy Court shall retain exclusive jurisdiction.

o     For the avoidance of doubt, the applicable policies of insurance referenced above may include, but are not limited to, the policies of insurance listed below:

| Insurer | Policy No. |
|---|---|
| **D&O Policies** | |
| (Chubb) Executive Risk Indemnity Inc. | 8166-7248 |
| (Allied World) Darwin National Assurance Company | 0309-7656 |
| Travelers Casualty and Surety Company of America | 106097144 |
| **Medical Malpractice** | |
| Homeland Insurance Company of New York, a member of the OneBeacon Insurance Group (PHD) (HealthTech add'l insured) Hospital Professional Liability | MPP-5514-13 |

4

|  |  |
|---|---|
| Homeland Insurance Company of New York, a member of the OneBeacon Insurance Group (PVHC) (PHD) Healthcare Excess Indemnity | MPX-3502-13 |
| UMIA Insurance Inc. (PHD) (PVHC) Professional Liability and Excess coverage | WY920017 |
| Lexington Insurance Company (PVHC) | 6793042<br>6793044 |
| **D&O / E&O -- HealthTech**<br>Lexington Insurance Company (HTMS) | 6796764<br>6797081 |

- All rights under Class 3 of the Plan, and the Assets described in Section 7.2 of the Plan, including but not limited to those set forth below:

    - The Personal Injury Trust Note, payable through the Initial Monthly Distributions and Subsequent Monthly Distributions. The Initial Monthly Distributions and the Subsequent Monthly Distributions shall be secured by a perfected security interest in the Debtor's Accounts (as defined under the Uniform Commercial Code in Wyoming (the "UCC")). Said security interest shall include the following: (i) a security agreement granting the Personal Injury Trust a security interest in the Debtor's Accounts to secure the Personal Injury Trust Note and the payments of the Initial Monthly Distributions and the Subsequent Monthly Distributions; (ii) a provision and acknowledgement in the security agreement that upon a payment default in regard to the Initial Monthly Distributions and/or the Subsequent Monthly Distributions, the Personal Injury Trust, through the Personal Injury Trustee, may exercise the default remedies available to a secured creditor under Article 9 of the UCC; and, (iii) allow for the filing of a UCC-1 financing statement evidencing the Personal Injury Trust's security interest in the Debtor's Accounts to secure the payment of the Personal Injury Trust Note and the Initial Monthly Distributions and the Subsequent Monthly Distributions. For the avoidance of doubt, the security interest granted to the Personal Injury Trustee shall be second only to First Bank of Wyoming (the "Bank"). Said agreements, financing statements and other documents evidencing the security agreement shall be acceptable to the Bank, it being the intent of the Parties to not interfere with the Bank's collateral position or enforcement rights; and,

    - The Initial Plan Payment.

1.4.    **Acceptance of Assets and Obligations**.

(a)    In furtherance of the purposes of the Personal Injury Trust, the Personal Injury Trustee, on behalf of the Personal Injury Trust, hereby expressly accepts the Personal

Injury Trust Assets (to the extent required by the Plan) to the Personal Injury Trust in the time and manner as contemplated in the Plan.

(b)   The Personal Injury Trust shall be solely responsible for paying from the Personal Injury Trust Assets (i) the Claims of the Beneficiaries; and (ii) all costs and expenses as set forth herein.

## ARTICLE II

_____ is hereby appointed to serve as the initial Personal Injury Trustee under the Plan and hereby accepts his appointment and agrees to serve in such capacity, effective upon the date of this Personal Injury Trust. Any successor Personal Injury Trustee shall be appointed as set forth in Section 5.3 in the event the Personal Injury Trustee is removed or resigns pursuant to the Personal Injury Trust, or if such Personal Injury Trustee otherwise vacates the position.

## ARTICLE III

## POWERS AND TRUST ADMINISTRATION

3.1.   **Powers.**

(a)   The Personal Injury Trustee shall at all times be acting solely in his capacity as trustee and not individually, and shall have the power to administer the Personal Injury Trust Assets in a manner consistent with the Personal Injury Trust and shall, as heretofore stated, be the estate representative designated, among other things, to prosecute any and all Personal Injury Trust Assets which constitute causes of action pursuant to 11 U.S.C. § 1123(b)(3)(B). Without limiting the generality of the foregoing, the Personal Injury Trustee shall (i) hold and administer the Personal Injury Trust Assets of the Personal Injury Trust; (ii) evaluate and determine strategy with respect to all Personal Injury Trust Assets, including those which constitute causes of action, including the power of substitution of a party in any existing litigation, and to litigate, settle, transfer, release or abandon any Personal Injury Trust Assets on behalf of the Personal Injury Trust; (iii) have authority to pay all out-of-pocket expenses incurred in connection with the prosecution of the Personal Injury Trust Assets which constitute causes of action from assets of the Personal Injury Trust; (iv) have the power and authority, as set forth in the Plan, to make, prosecute and settle objections to claims made in Debtor's Bankruptcy Case, of insurance companies, Hansen, Patten and HealthTech, and assert such rights regarding said objections, including but not limited to rights of setoff under 11 U.S.C. § 553 of the Bankruptcy Code, and including claims for disallowance and/or equitable subordination of such claims under 11 U.S.C. § 510(c) of the Bankruptcy Code; (v) have the power and authority to retain, as an expense of the Personal Injury Trust, such other attorneys, advisors, other professionals and employees as may be appropriate to perform the duties required of the Personal Injury Trustee under the Personal Injury Trust; (vi) make distributions as provided in the TDPs, the Personal Injury Trust and the Plan; (vii) provide periodic reports and updates regarding the status of the administration of the Personal Injury Trust; (viii) liquidate the Claims of the Beneficiaries in accordance with the TDPs, the Plan and the Personal Injury Trust; and (ix) take any other action as may otherwise be necessary and proper to carry out the provisions of the Plan, the

6

Confirmation Order and the Personal Injury Trust.  Notwithstanding anything herein to the contrary, the Debtor and the Personal Injury Trustee shall cooperatively and jointly review and analyze all proofs of claim filed in the case and determine what claims, if any, should be objected to, including objection to any indemnification claims under, among other sections, 11 U.S.C. §§ 510(c) and 502(e)(1)(B) of the Bankruptcy Code.  As to claims made by HealthTech, any of its current or former representatives (including Patten) and Hansen and/or any other physician that makes any such claim, the Debtor shall (independently and/or in conjunction with the Personal Injury Trustee) object to and support the disallowance of such claims.  For the avoidance of doubt, no creditors other than the Tort Claimants, shall, under any circumstances, have any rights under the Plan to any Personal Injury Trust Assets.

(b)     The Personal Injury Trustee shall act as a fiduciary to the Personal Injury Trust. The Personal Injury Trustee shall, at all times, administer the Personal Injury Trust and the Personal Injury Trust Assets in accordance with Section 1.2 of this Personal Injury Trust and the Plan. Subject to the limitations set forth in the Personal Injury Trust, the Personal Injury Trustee shall have the power to take any and all actions that, in the judgment of the Personal Injury Trustee, are necessary or proper to fulfill the purposes of this Personal Injury Trust, including, without limitation, each power expressly granted in this Section 3.1, any power reasonably incidental thereto, and any trust power now or hereafter permitted under the laws of the State of Wyoming.

(c)     Except as otherwise specified herein or in the Plan, the Personal Injury Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder or in the Plan.

(d)     The Personal Injury Trustee may exercise certain powers without consultation, upon consultation solely with the Debtor member of the Personal Injury Claims Committee and upon consultation and approval of the Personal Injury Claims Committee as set forth herein (except that regarding the TDPs, there must be unanimous approval of the Personal Injury Claims Committee). Without, therefore, limiting the generality of subsection 3.1(a) above, and except as limited below, the Personal Injury Trustee shall have the power to:

(i)     receive and hold the assets of the Personal Injury Trust, and exercise all rights with respect to any or all such Personal Injury Trust Assets;

(ii)     invest the monies held from time to time by the Personal Injury Trust as permitted hereby;

(iii)     following consultation with, and subject to the approval of, the Personal Injury Claims Committee, sell, transfer or exchange any or all of the assets of the Personal Injury Trust at such prices and upon such terms as he or she may consider proper, consistent with the other terms of this Personal Injury Trust and the Plan;

(iv)     following consultation with, and subject to the approval of, the Personal Injury Claims Committee, enter into leasing and financing agreements

7

with third parties to the extent such agreements are reasonably necessary to permit the Personal Injury Trust to operate;

(v)     pay liabilities and expenses of the Personal Injury Trust;

(vi)    establish such funds, reserves and accounts as deemed by the Personal Injury Trustee to be useful in carrying out the purposes of the Personal Injury Trust, including the creation of reserves as shall be necessary or appropriate to pay or reserve for litigation or other Personal Injury Trust expenses;

(vii)   following consultation with, and subject to the approval of, the Personal Injury Claims Committee, sue and be sued, be substituted as a party in place of Debtor, and participate as a party or otherwise, in any judicial, administrative, arbitrative or other proceedings;

(viii)  following consultation with, and subject to the approval of the Personal Injury Claims Committee, administer the TDPs (which shall require unanimous approval of the Personal Injury Claims Committee);

(ix)    following consultation with, and subject to the approval of, the Personal Injury Claims Committee, engage such legal, financial, accounting, investment, auditing and forecasting, and other consultants or alternative dispute resolution panelists and agents as the business of the Personal Injury Trust requires;

(x)     pay legal, financial, accounting, investment, auditing and forecasting, and other consultants, advisors and agents reasonable compensation, including without limitation, compensation at rates approved by the Personal Injury Trustee for services rendered prior to the providing of such services by giving them a reasonable retainer;

(xi)    compensate the Personal Injury Trustee, and his or her agents, and reimburse to them reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(xii)   execute and deliver such instruments as the Personal Injury Trustee considers proper in administering the Personal Injury Trust;

(xiii)  enter into such arrangements with third parties as are deemed by the Personal Injury Trustee to be useful in carrying out the purposes of the Personal Injury Trust, provided such arrangements do not conflict with any other provision of the Personal Injury Trust;

(xiv)   indemnify (and purchase insurance indemnifying) the Personal Injury Trustee, the respective agents of the Personal Injury Trust, and/or the Personal Injury Claims Committee to the fullest extent that a trust organized under the law of the Personal Injury Trust's situs is from time to time entitled to

indemnify and/or insure such agents and/or the Personal Injury Claims Committee; and

(xv)    consult with the Debtor at such times and with respect to such issues relating to the conduct of the Personal Injury Trust as the Personal Injury Trustee considers desirable.

(e)    Notwithstanding anything herein to the contrary, and for the avoidance of doubt, the Personal Injury Trustee, following consultation with the Debtor member of the Personal Injury Claims Committee, shall make the sole decision regarding the liquidation of the Trust Personal Injury Claims, including but not limited to objections to, mediations of, and/or the settlement of any Claim of a Beneficiary hereunder, by agreed settlement, settlement after mediation, or otherwise, in accordance with the Personal Injury Trust, and no member of the Personal Injury Claims Committee who is also a representative of, or counsel to a Beneficiary hereunder, shall be consulted, nor shall their approval be necessary or required, nor shall the Personal Injury Trustee be obligated to seek the approval of the Personal Injury Claims Committee regarding decisions to engage such legal, financial, accounting or consultants as the Personal Injury Trustee in his sole discretion determines is required concerning such objections, mediations or settlements.

3.2.    **General Administration.**

(a)    The Personal Injury Trustee shall act in accordance with the Personal Injury Trust, the TDPs, and the Plan. Without limiting the generality of the foregoing, the Personal Injury Trustee shall make distributions from time to time to the Beneficiaries in a manner consistent with the TDPs.

(b)    The Personal Injury Trustee shall timely file such income tax and other returns and statements and comply with all withholding obligations as required under the applicable provisions of the IRC and of any state law and the regulations promulgated thereunder, including without limitation all requirements necessary to qualify and maintain qualification as a qualified settlement fund, and shall timely pay all taxes required to be paid.

(c)    With regard to the pursuit of the Personal Injury Trust Assets, the attorney-client privileges of the Debtor shall be transferred to the Personal Injury Trustee with respect to all of the Personal Injury Trust Assets. For the avoidance of doubt, to the fullest extent permitted by law, Debtor shall be deemed to irrevocably transfer to the Personal Injury Trustee all rights of Debtor and the estate to exercise or waive any attorney-client privilege, accountant-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) (collectively, the "Privileges"), and Debtor and the Personal Injury Trustee are authorized to take all necessary actions to effectuate the transfer of the Privileges. All such Privileges shall also vest in the Personal Injury Trust and the Personal Injury Trustee, to the fullest extent permitted by law. This transfer is self-executing, provided, however, that the Personal Injury Trustee and Debtor are authorized and directed to take any and all necessary actions to effectuate the transfer of such Privileges. After the Effective Date, the Personal Injury Trustee shall have the exclusive power and authority to waive the

9

Privileges. For the avoidance of doubt, the Privileges relate only to the Personal Injury Trust Assets.

(d)    Debtor's officers, directors and employees shall cooperate with the Personal Injury Trustee and its counsel regarding the Personal Injury Trust Assets, which shall include, but not be limited to providing information and documents Patten and/or HealthTech gave the Debtor regarding Hansen, reporting of potential claims, obtaining insurance, and changing insurance carriers.

(e)    Debtor has agreed to provide, at the Committee's request, information prior to confirmation.  Such information and documents shall be provided within a reasonable period of time following the filing of the Plan, and prior to confirmation thereof, as a condition to the Tort Claimants' agreement to consent to, and vote in favor of, the Plan. Notwithstanding the foregoing, as to the requirement to provide information and documents prior to confirmation only, the Debtor, and its officers, directors and employees, shall not be required to provide information and/or documents that are privileged, subject to any protective order, or that would otherwise subject the Debtor, or its officers, directors and employees, to liability under any laws, including HIPAA, unless the Debtor is authorized to do so pursuant to a non-disclosure agreement, HIPAA release, court order or otherwise.

## ARTICLE IV

## ACCOUNTS, INVESTMENT AND PAYMENTS

4.1.    **Accounts**. The Personal Injury Trustee may, from time to time, create such accounts and reserves within the Personal Injury Trust estate as he or she may deem necessary, prudent, or useful in order to provide for the payment of expenses and Claims and may, with respect to any such account or reserve, restrict the use of monies therein.

4.2.    **Investments**. Investment of monies held in the Personal Injury Trust shall be administered in the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs, subject to the following limitations and provisions:

(a)    The Personal Injury Trust shall not acquire, directly or indirectly, equity in any person or business enterprise.

(b)    The Personal Injury Trust shall not acquire or hold any long-term debt securities unless (i) such securities are rated "Baa" or higher by Moody's, "BBB" or higher by S&P's or have been given an equivalent investment grade rating by another nationally recognized statistical rating agency, or (ii) have been issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof.

(c)    The Personal Injury Trust shall not acquire any commercial paper.

(d)    The Personal Injury Trust shall not acquire or hold any common or preferred stock or convertible securities.

(e)     The Personal Injury Trust shall not acquire or hold any certificates of deposit unless all publicly held, long-term debt securities, if any, of the financial institution issuing the certificate of deposit and the holding company, if any, of which such financial institution is a subsidiary, meet the standards set forth in Subsection 4.2(b).

(f)     The Personal Injury Trust shall not acquire or hold any repurchase obligations.

(g)     The Personal Injury Trust shall not acquire or hold any options.

4.3.    **Source of Payments**. All Personal Injury Trust expenses and all liabilities with respect to Claims of Beneficiaries shall be payable solely by the Personal Injury Trust from the Personal Injury Trust Assets. Except as otherwise set forth in the Plan, neither the Debtor, its subsidiaries, any successor in interest, nor the Personal Injury Trustee, the Personal Injury Claims Committee, or any of their officers, agents, advisors, or employees shall be liable for the payment of any Personal Injury Trust expense or any other liability of the Personal Injury Trust.

## ARTICLE V

## TRUSTEE

5.1.    **Number**. There shall be one Personal Injury Trustee as described herein in Article II. The appointment of the Personal Injury Trustee and the terms of his or her compensation shall be disclosed in the Confirmation Order and are initially subject to approval of the Bankruptcy Court.

5.2.    **Term of Service**.

(a)     The Personal Injury Trustee shall serve from the Effective Date until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Subsection 5.2(c) of this Personal Injury Trust, (iii) his or her removal pursuant to Subsection 5.2(d) of this Personal Injury Trust, or (iv) the termination of the Personal Injury Trust pursuant to Section 11.2 of this Personal Injury Trust, or as otherwise required by the Plan.

(b)     Each successor Personal Injury Trustee shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Subsection 5.2(c) of this Personal Injury Trust, (iii) his or her removal pursuant to Subsection 5.2(d) of this Personal Injury Trust, or (iv) the termination of the Personal Injury Trust pursuant to Section 11.2 of this Personal Injury Trust or as otherwise required by the Plan.

(c)     Any Personal Injury Trustee may resign at any time by written notice to the Personal Injury Claims Committee. Such notice shall specify a date when such resignation shall take effect, which shall not be fewer than ninety (90) days after the date such notice is given, where practicable.

(d)     Any Personal Injury Trustee may be removed in the event that such Personal Injury Trustee becomes unable to discharge his or her duties, or for other good cause. Such removal shall require the unanimous approval of the Personal Injury Claims Committee.

Such removal shall take effect at such time as the Personal Injury Claims Committee shall determine. Any dispute concerning removal shall be resolved by the Bankruptcy Court.

5.3.    **Appointment of Successor Personal Injury Trustee**.

(a)    In the event of a vacancy in the position of the Personal Injury Trustee, the vacancy shall be filled by the unanimous vote of the Personal Injury Claims Committee. If such vacancy has not been filled within ninety (90) days, the matter shall be submitted promptly to the Bankruptcy Court for resolution.

(b)    Immediately upon the appointment of any successor Personal Injury Trustee, all rights, titles, duties, powers and authority of the predecessor Personal Injury Trustee hereunder shall be vested in, and undertaken by, the successor Personal Injury Trustee without any further act. No successor Personal Injury Trustee shall be liable personally for any act or omission of his or her predecessor Personal Injury Trustee.

5.4.    **Liability of Personal Injury Trustee**.  Neither the Personal Injury Trustee, nor any of his or her employees, attorneys, agents or other professionals shall be liable to the Personal Injury Trust, to any person holding a Claim, or to any other person, except for such individual's or entity's own breach of trust committed in bad faith or willful misappropriation. Neither the Personal Injury Trustee, nor any of his respective agents, shall be liable for any act or omission of any agent of the Personal Injury Trust, unless the Personal Injury Trustee acted with bad faith in the selection or retention of such agent.

5.5.    **Compensation and Expenses of Personal Injury Trustee**.

(a)    The Personal Injury Trustee shall receive compensation from the Personal Injury Trust for his or her services as Trustee in the amount of $_____ per hour plus reasonable out-of-pocket expenses. For the avoidance of doubt, subject to any consent or approval requirements of the Personal Injury Claims Committee, the Personal Injury Trustee may employ attorneys and/or other professionals, including paralegals, from his or her law office, if the Personal Injury Trustee is also a lawyer.

(b)    On and after the Effective Date, the Personal Injury Trust will promptly reimburse the Personal Injury Trustee for all reasonable out-of-pocket costs and expenses incurred by the Personal Injury Trustee in connection with the performance of his or her duties hereunder.

(c)    The Personal Injury Trustee will, from time to time, serve a report upon the Tort Claimants detailing the compensation received under this Section 5.5.

5.6.    **Indemnification of the Personal Injury Trustee and Additional Indemnitees**.

(a)    The Personal Injury Trust shall indemnify and defend the Personal Injury Trustee and his or her agents to the fullest extent that a corporation or trust organized under the laws of the Personal Injury Trust's situs is from time to time entitled to indemnify and defend its directors, trustees, officers and employees against any and all liabilities, expenses, claims, damages or losses incurred by them in the performance of their duties hereunder.

Notwithstanding the foregoing, the Personal Injury Trustee shall not be indemnified or defended in any way for any liability, expense, claim, damage or loss for which they are ultimately liable under Section 5.4 of this Personal Injury Trust.

       (b)     Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of a Personal Injury Trustee and his or her agents in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Trust pursuant to Subsection 5.6(a) of this Personal Injury Trust, shall be paid by the Personal Injury Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of such Personal Injury Trustee and his or her agents, to repay such amount in the event that it shall be determined ultimately that such Personal Injury Trustee and his or her professionals, officers and directors is not entitled to be indemnified by the Personal Injury Trust.

       (c)     The Personal Injury Trustee shall have the power, generally or in specific cases, to cause the Personal Injury Trust to indemnify the agents of the Personal Injury Trustee to the same extent as provided in this Section 5.6 of this Personal Injury Trust with respect to the Personal Injury Trustee.

       (d)     Any indemnification under Subsection 5.6(c) of this Personal Injury Trust shall be made by the Personal Injury Trust upon a determination by the Personal Injury Trustee that indemnification of such person is proper in the circumstances.

       (e)     The Personal Injury Trustee may purchase and maintain reasonable amounts and types of insurance on behalf of an individual who is or was a Personal Injury Trustee, an agent of the Personal Injury Trust, and their respective agents against liability asserted against or incurred by such individual in that capacity or arising from his or her status as such.

    5.7.   **Personal Injury Trustee's Lien**. The Personal Injury Trustee and his or her agents shall have a first priority lien upon the Personal Injury Trust Assets to secure the payment of any amounts payable to them pursuant to Sections 5.5 or 5.6 hereof.

    5.8.   **Personal Injury Trustee's Employment of Experts**. The Personal Injury Trustee may, but shall not be required to, retain or consult with counsel, accountants, appraisers, auditors and forecasters, and other parties deemed by the Personal Injury Trustee to be qualified as experts on the matters submitted to them and the opinion of any such parties on any matters submitted to them by the Personal Injury Trustee shall be full and complete authorization and protection in respect of any action taken or not taken by the Personal Injury Trustee hereunder in good faith and in accordance with the written opinion of any such party.

    5.9.   **Personal Injury Trustee's Independence**. No Personal Injury Trustee shall, during the term of his or her service, hold a financial interest in, act as attorney or agent for, or serve as any other professional for the Debtor or any Trust Personal Injury Claimant.

    5.10.   **Bond**. The Personal Injury Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

## ARTICLE VI

## PERSONAL INJURY CLAIMS COMMITTEE

6.1.   **Duties**. The Beneficiaries shall establish a committee of representatives to act as the "Personal Injury Claims Committee" under the Plan. _____, _____, _____, _____, _____, and _____ shall be the initial members of the Personal Injury Claims Committee, and the Debtor representative shall be _____. The Personal Injury Claims Committee shall serve as a liaison between the Beneficiaries and the Personal Injury Trustee, and shall have consult and/or approval rights as set forth in this Personal Injury Trust. The Debtor shall have no responsibility for any costs and expenses incurred by the Personal Injury Claims Committee. The Personal Injury Claims Committee shall serve in a fiduciary capacity representing the Beneficiaries (but not the Debtor in its capacity as a contingent beneficiary with a reversionary interest in the Personal Injury Trust Assets). The Personal Injury Trustee shall either consult with and/or seek the approval of the Personal Injury Claims Committee as set forth herein. The Debtor shall have a seat on the Personal Injury Claims Committee with consult rights only. There shall be an alternate member of the Personal Injury Claims Committee elected by unanimous consent of the Personal Injury Claims Committee, which alternate member shall agree to be available on a case by case basis as follows:  If any decision is one for which any member of the Personal Injury Claims Committee with a right to vote thereon determines he has a conflict as a fiduciary to all Beneficiaries, or any other reason, and cannot participate in a vote, then the alternate Personal Injury Claims Committee member (who shall be independent) shall vote on the matter instead.  The decision to recuse oneself from voting shall be for that matter only and shall be initiated by the recusing member so notifying the Personal Injury Trustee of his decision to do so within _____ (__) days of any vote on the matter.

6.2.   **Term of Office**.

(a)   Each member of the Personal Injury Claims Committee shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Subsection 6.2(b) of this Personal Injury Trust, (iii) his or her removal pursuant to Subsection 6.2(c) of this Personal Injury Trust or (iv) the termination of the Personal Injury Trust pursuant to Section 11.2 of this Personal Injury Trust or as otherwise required by the Plan.

(b)   Any member of the Personal Injury Claims Committee may resign at any time by written notice to the Personal Injury Trustee and the other members of the Personal Injury Claims Committee. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)   Any member of the Personal Injury Claims Committee may be removed in the event that he or she becomes unable to discharge his or her duties. Such removal shall be made by the decision of the Personal Injury Trustee with notice to the other members of the Personal Injury Claims Committee.

6.3.    **Appointment of Successor**. A vacancy caused by resignation shall be filled with an individual nominated by the remaining members of the Personal Injury Claims Committee. A vacancy for any other reason, or in the absence of a nomination by the remaining members of the Personal Injury Claims Committee, shall be filled with an individual selected by the Personal Injury Trustee.

6.4.    **Reimbursement of Personal Injury Claims Committee Expenses**.    The Personal Injury Trust shall promptly reimburse, or pay directly if so instructed, each Personal Injury Claims Committee member for all reasonable out-of-pocket costs and expenses and the procurement and maintenance of insurance incurred by the Personal Injury Claims Committee or any Personal Injury Claims Committee member in connection with the performance of its or his or her duties hereunder. Such reimbursement or direct payment shall be deemed a Personal Injury Trust expense.  The Personal Injury Trust shall not, however, be responsible for costs and expenses of the Debtor representative of the Personal Injury Claims Committee, who may agree to be compensated by the Debtor for his or her service.

6.5.    **Procedure for Obtaining Approval of the Personal Injury Claims Committee**.

(a)    In the event the approval of the Personal Injury Claims Committee is required pursuant to the terms hereof, the Personal Injury Trustee shall promptly provide the Personal Injury Claims Committee notice and necessary information in order to make a decision regarding the matter in question.

(b)    The Personal Injury Claims Committee must consider in good faith and in a timely fashion any request by the Personal Injury Trustee for approval of a matter described herein as one requiring approval. Approval means a majority of the Personal Injury Claims Committee has voted to take the action, or approved the request of the Personal Injury Trustee in writing. In taking or failing to take any action hereunder, the Personal Injury Trustee may rely upon a written statement (including signatures by counterpart facsimile or approval by electronic transmission) by such majority of the Personal Injury Claims Committee. The only decisions which require unanimous approval are set forth in the TDPs which govern the process for liquidating the Claims of the Beneficiaries, and distributions to Beneficiaries.

6.6.    **Lack of Consent of the Personal Injury Claims Committee**. In the event the Personal Injury Trustee is unable to obtain the approval of the Personal Injury Claims Committee for any action or decision for which approval of the Personal Injury Claims Committee is required pursuant to this Personal Injury Trust, then, if the Personal Injury Trustee wishes to proceed with such action or decision despite the lack of approval, the issue shall be submitted to alternative dispute resolution if mutually agreeable to the Personal Injury Trustee and a majority of the members of the Personal Injury Claims Committee. If the disagreement is not resolved by alternative dispute resolution, the Personal Injury Trustee may apply to the Bankruptcy Court on an expedited basis for approval of such action or decision, and only if such approval is given by the Bankruptcy Court by entry of an appropriate order, shall the Personal Injury Trustee have the authority to implement such action or decision without the Personal Injury Claims Committee's approval.

6.7.    **Personal Injury Claims Committee Action Without a Meeting**. Any action required or permitted to be taken by the Personal Injury Claims Committee at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Personal Injury Claims Committee as evidenced by one or more written consents describing the action taken, signed by all members of the Personal Injury Claims Committee and recorded in the minutes or other transcript of proceedings of the Personal Injury Claims Committee and the Personal Injury Trustee.

6.8.    **Dispute Resolution**. In the event of a dispute between the Personal Injury Trustee and the Personal Injury Claims Committee, or between members of the Personal Injury Claims Committee, including involving an allegation that either party has failed to act in a manner consistent with the Plan or this Personal Injury Trust, the parties shall meet and confer and attempt to reach a consensual resolution of the dispute. Should a consensual resolution not be reached, the Personal Injury Trustee or the Personal Injury Claims Committee or any of its members may seek appropriate relief from the Bankruptcy Court, and the Bankruptcy Court shall retain jurisdiction to resolve such disputes.

6.9.    **Limitation of Liability and Indemnification of the Personal Injury Claims Committee**. The members of the Personal Injury Claims Committee shall not be personally liable to the Personal Injury Trust or to any Beneficiary (or any successor of such entities) except for such of their own respective acts as shall constitute willful misconduct, gross negligence or fraud as determined by a court of competent jurisdiction. The members of the Personal Injury Claims Committee shall be defended, held harmless and indemnified and shall be entitled to advancement of their expenses; provided, however, that such member shall be obligated to repay any amounts advanced hereunder if determined by a court of competent jurisdiction that such member violated its standard of care hereunder. The obligation of the Personal Injury Trust to indemnify the members of the Personal Injury Claims Committee, and any such person's rights to be compensated and to be reimbursed for their reasonable out-of-pocket expenses and disbursements, shall constitute indebtedness of the Personal Injury Trust. In acting hereunder, any member of the Personal Injury Claims Committee acts in its representative and not individual capacity. All persons having any claim against any member of the Personal Injury Claims Committee by reason of a transaction contemplated hereby shall look only to the Trust Assists for payment or satisfaction thereof.

## ARTICLE VII

## PROVISIONS REGARDING DISTRIBUTIONS

7.1.    **Timing and Methods of Distributions; Excess Recoveries**. The Personal Injury Trustee, on behalf of the Personal Injury Trust, shall make all distributions to the Beneficiaries as set forth in, and as required by, this Personal Injury Trust, the Plan and the Confirmation Order pursuant to the TDPs. Unless the Beneficiary receiving a payment agrees otherwise, the Personal Injury Trustee, in his sole discretion, will make any payment in cash to be made by the Personal Injury Trust by check drawn on a domestic bank or by wire transfer from a domestic bank.

(a)    Notwithstanding anything to the contrary in the Plan, the Plan Documents or the Personal Injury Trust, under no circumstances shall a holder of a Trust Personal Injury

Claim receive, on account of their respective Allowed Trust Personal Injury Claim, from any source, including, but not limited to, from the Debtor, the Personal Injury Trust Assets or other source, an amount or distribution greater than 100% of their Allowed Trust Personal Injury Claim.  Accordingly, in the event that the total amount of all liquidated Allowed Trust Personal Injury Claims, along with interest at the judgment rate provided under Wyoming law which shall begin accruing from the date that each Allowed Trust Personal Injury Claim is liquidated, is less than the sum of: (i) the total net recovery from the Personal Injury Trust Assets after payment of all fees, costs and attorneys' fees (including recoveries for bad faith related to insurance claims) plus (ii) the amount of the Initial Plan Payment that is paid into the Personal Injury Trust for the benefit of the holders of Trust Personal Injury Claims; plus (iii) any previously paid Initial Monthly Distributions and Subsequent Monthly Distributions, then the excess recovery from the assets identified in (i)-(iii) above shall immediately be turned over to the Debtor, the Personal Injury Trust Note shall be cancelled and the Debtor shall no longer be obligated to make additional Initial Monthly Distributions and/or Subsequent Monthly Distributions, and the security interest identified in Section 7.2 of the Plan shall be released.

### 7.2. Objections to Claims; Prosecution of Disputed Claims

Subject to any limitations set forth in the Plan, the Personal Injury Trustee, following consultation with, and subject to the approval of, the Personal Injury Claims Committee, and on behalf of the Personal Injury Trust, may file objections to claims made and/or proofs of claim filed in Debtor's Bankruptcy Case, even if such claims were scheduled by the Debtor as undisputed, liquidated and non-contingent. The Personal Injury Trustee's deadlines shall be the same as Debtor's deadlines under the Plan.

## ARTICLE VIII

## PROFESSIONALS AND NON-PROFESSIONALS

8.1.    **Retention of Professionals and Non-Professionals**. The Personal Injury Trustee, upon the later to occur of the Effective Date and acceptance by the Personal Injury Trustee of its appointment in accordance with the Plan and this Personal Injury Trust, and subject to consent and/or approval rights as set forth herein, shall have the right to retain its own professionals without any further approval by any court or otherwise including, without limitation, legal counsel, accountants, experts, advisors, consultants, investigators, appraisers, real estate brokers, auctioneers and other professionals as the Personal Injury Trustee deems appropriate.  The professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of any party in the Case for efficiency.

## ARTICLE IX

## TAXES

9.1.    **Tax Returns and Payments**

The Personal Injury Trustee will be responsible for: (a) the preparation and timely filing of all required federal, state and local tax returns for the Personal Injury Trust; (b) the timely payment of any taxes shown on such returns as owing by the Personal Injury Trust (as applicable) from the applicable Personal Injury Trust Assets; and (c) the preparation and timely distribution to the Beneficiaries of any necessary federal, state or local information returns. The Personal Injury Trustee will retain all tax returns and supporting documentation until the expiration of the applicable statute of limitations.

9.2.    **Personal Injury Trust**

The Personal Injury Trustee will file tax returns pursuant on the basis that the Personal Injury Trust is a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d) and related regulations. Pursuant to such provisions, for federal income tax purposes, the Personal Injury Trustee will allocate to the Beneficiaries their applicable shares of any income or loss of the Personal Injury Trust Assets, and such Beneficiaries will be subject to tax on the Personal Injury Trust Assets' taxable income on a current basis. As soon as reasonably practicable after the close of each calendar year, the Personal Injury Trustee will send each affected Beneficiary a statement setting forth such Beneficiary's share of the Personal Injury Trust's income, gain, deduction, loss and credit for the year and will instruct the Beneficiary to report all such items on his, her or its tax return for such year and pay any tax due with respect thereto. Notwithstanding anything herein to the contrary, and for the avoidance of doubt, any payments made to Beneficiaries, including but not limited to payments derived from payments from the Debtor under the Plan, shall be considered payments on account of personal injury claims, and shall be non-taxable.

9.3.    **Tax Withholding and Reporting; Liability for Taxes**

The Personal Injury Trustee will comply with all applicable tax withholding and reporting requirements imposed on it or on the Personal Injury Trust by any governmental unit, and all distributions pursuant to the Plan will be subject to applicable withholding and reporting requirements, if any. The Personal Injury Trustee will be authorized to take any actions that may be necessary or appropriate to comply with such tax withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanism the Personal Injury Trustee believes is reasonable and appropriate, following consultation with the Personal Injury Claims Committee, including requiring Beneficiaries to submit appropriate tax and withholding certifications. Each Person or entity receiving (or deemed to receive) a distribution pursuant to the Plan will have sole responsibility for the payment of any taxes imposed on it, if any.

## ARTICLE X

## GENERAL PROVISIONS

10.1.    **Irrevocability**. The Personal Injury Trust is irrevocable.

18

10.2.    **Termination**.

(a)    The Personal Injury Trust will terminate as soon as practicable, but not later than the fifth (5th) anniversary of the Effective Date; provided, however, that, on or prior to the fifth (5th) anniversary of the Effective Date (or such later date as may be permitted by order of the Bankruptcy Court), the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Personal Injury Trust for a finite period, if such an extension is necessary to liquidate the assets of the Personal Injury Trust or for other good cause. Multiple extensions of the termination of the Personal Injury Trust may be obtained so long as Bankruptcy Court approval is obtained prior to the expiration of each extended term and the Personal Injury Trustee receives an opinion of counsel or a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Personal Injury Trust for federal income tax purposes.

(b)    On the Termination Date, after payment of all the Personal Injury Trust's liabilities have been provided for, all monies remaining in the Personal Injury Trust estate, if any, shall be remitted to the Debtor.

10.3.    **Severability**. Should any provision in this Personal Injury Trust be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Personal Injury Trust.

10.4.    **Notices**. Notices under this Personal Injury Trust in writing and delivered at the address designated below, or sent by telex, telecopy or facsimile pursuant to the instructions listed below, or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed as follows, or to such other address or addresses as may hereafter be furnished by any of the Personal Injury Trustee, the Personal Injury Claims Committee or the Debtor, to the other notice recipients in compliance with the terms hereof.

To the Personal Injury Trust through the Personal Injury Trustee:

[TO BE INSERTED]

To the Personal Injury Claims Committee:

[TO BE INSERTED]

To the Debtor:

[TO BE INSERTED]

All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return electronic transmission.

10.5.    **Limitation on Claim Interests for Securities Laws Purposes**. Except as otherwise permitted under the Plan, Claims and any interests therein: (a) shall not be assigned, conveyed, hypothecated, pledged or otherwise transferred, voluntarily or involuntarily, directly

or indirectly, except by will or under the laws of descent and distribution; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest.

10.6.    **Entire Agreement; No Waiver**. The entire agreement of the parties relating to the subject matter of this Personal Injury Trust is contained herein and in the documents referred to herein, and this Personal Injury Trust and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

10.7.    **Headings**. The headings used in this Personal Injury Trust are inserted for convenience only and do not constitute a portion of this Personal Injury Trust, nor in any manner affect the construction of the provisions of this Personal Injury Trust.

10.8.    **Governing Law**. This Personal Injury Trust shall be governed by, and construed in accordance with, the laws of the State of Wyoming without regard to the conflict of laws principles of the State so selected. The Personal Injury Trust is subject to the continuing jurisdiction of the Bankruptcy Court.

10.9.    **Effectiveness**. This Personal Injury Trust shall not become effective until it has been executed and delivered by all the parties hereto.

10.10.    **Counterpart Signatures**. This Personal Injury Trust may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument.

(a)    **Access; Cooperation**. Pursuant to the Plan, Confirmation Order and Personal Injury Trust, the Debtor shall provide the Personal Injury Trustee with access to or copies of such of the Debtor's books and records as the Personal Injury Trustee shall reasonably require for the purpose of performing its duties and exercising its powers under this Personal Injury Trust, the Plan or the Confirmation Order (including documents or information maintained in electronic format or original documents), whether held by Debtor, or its respective agents, advisors, attorneys, accountants or other professionals.  All third parties in possession of the Debtor's books and records shall provide the Personal Injury Trustee with similar cooperation, and the Personal Injury Trustee shall have the right to seek appropriate relief from the Bankruptcy Court or any other court with jurisdiction over the matter to the extent that a third party unreasonably refuses to cooperate with the Personal Injury Trustee's requests.  As heretofore stated, and for the avoidance of doubt, Debtor's officers, directors and employees shall cooperate with the Personal Injury Trustee and its counsel regarding the Personal Injury Trust Assets, which shall include, but not be limited to providing information and documents Patten and/or HealthTech gave the Debtor regarding Hansen reporting the potential claims, obtaining insurance, and changing insurance carriers. The foregoing shall include, but not be limited to access to individuals needed to prosecute or defend any claims, including making available for interviews, depositions and/or trial Debtor's employees, advisors, attorneys,

accountants and professionals employed, retained or consulted by Debtor who have knowledge of matters relevant to the pursuit of the claims which constitute Personal Injury Trust Assets.

10.11. **Confidentiality**. The Personal Injury Trustee, its employees, professionals and non-professionals, and each member of the Personal Injury Claims Committee (each a "*Confidential Party*" and collectively the "*Confidential Parties*") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any entity to which any of the Personal Injury Trust Assets relate; provided, however, that such information may be disclosed if: (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties; (b) was available to the Confidential Parties on a non-confidential basis prior to its disclosure to the Confidential Parties pursuant to this Personal Injury Trust; (c) becomes available to the Confidential Parties on a non-confidential basis from a source other than their work in connection with the Debtor or the Personal Injury Trust, provided that the source is not also bound by a confidentiality agreement with the Debtor or the Personal Injury Trust; or (d) such disclosure is required of the Confidential Parties pursuant to legal process including but not limited to subpoena or other court order or other applicable laws or regulations. In the event that any Confidential Party is requested to divulge confidential information pursuant to subparagraph (d), such Confidential Party shall promptly, in advance of making such disclosure, provide reasonable notice of such required disclosure to the Personal Injury Trustee to allow the Personal Injury Trustee sufficient time to object to or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Personal Injury Trustee in making any such objection, including, but not limited to, appearing in any judicial or administrative proceeding in support of the Personal Injury Trustee's objection to such disclosure.

10.12. **Submission to Jurisdiction; Service of Process**. The Bankruptcy Court will have exclusive jurisdiction over any dispute arising out of or in connection with the transactions contemplated by this Personal Injury Trust. The parties to this Personal Injury Trust consent to the exclusive jurisdiction of the Bankruptcy Court (and of the appropriate appellate courts therefrom) and irrevocably waive, to the fullest extent permitted by law, any objection that they may now or hereafter have to the laying of the venue of any such dispute in the Bankruptcy Court or that any such dispute brought in the Bankruptcy Court has been brought in an inconvenient forum. This Personal Injury Trust is subject to any order or act of the Bankruptcy Court applicable hereto. Process may be served on any party anywhere in the world, whether within or without the jurisdiction of the Bankruptcy Court. Without limiting the foregoing, each party to this Personal Injury Trust agrees that service of process on that party may be made upon the designated Person or entity at the address provided in Section 11.4 hereof and will be deemed to be effective service of process on that party.

10.13. **Compliance with Laws**. Any and all distributions of Personal Injury Trust Assets shall comply with all applicable laws and regulations, including, but not limited to, applicable federal and state tax and securities laws.

IN WITNESS WHEREOF, the parties have executed this Personal Injury Trust this ____day of _____, 2017.

**DEBTOR:**

**POWELL VALLEY HEALTH CARE, INC.**

By: _____

Name: _____

Title: _____


**LITIGATION TRUSTEE:**

By: _____

Name: _____

**OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**


By:_____
Larry Heiser, UCC Member


By:_____
Joetta Johnson, UCC Member


By:_____
Michelle Oliver, UCC Member


By:_____
Veronica Sommerville, UCC Member


By:_____
Shane Wilson, UCC Member


By:_____
Susan Stambaugh, UCC Member

**OVERSIGHT COMMITTEE**

By: _____

By: _____

By: _____

By: _____
Name:
    Debtor representative

## EXHIBIT A

### Hansen Tort Claimants

Nathaniel Bates
Sheena Bates
Nathaniel Bates and Sheena Bates, as the
parents and natural guardians of I.S.B.
Jan Brinkerhoff
Bart Brinkerhoff
Nancy Crawford
Earl Crawford III
Anthony DiPilla
Laurie DiPilla
Shannon Eller
Nancy Heiser
Larry Heiser
Sheryl Henderson
Darin Henderson
Joetta Johnson
Martha McMillen
Richard McMillen
Keela Meier
Brock Meier
Kanan Nicholson
Michelle Oliver
Darcy Ronne
Jody Sessions
Jerry Sessions
Lynn Snell
Janet Snell
Veronica  and William Sommerville, as the
parents and natural guardians of A.L.S.
Susan Stambaugh
Scot Stambaugh
Shane Wilson
Jayme Wilson
Mark Bonamarte

# **EXHIBIT B**

## **TRUST DISTRIBUTION PROCEDURES**