**DRAFT - April 24, 2017**

# SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "Agreement"), dated as of **[_____]**, 2017, is made by and between Powell Valley Health Care, Inc. ("Debtor"), and Powell Valley Health Care, Inc. Personal Injury Litigation Trust dated the ___ day of _____, 2017 ("Secured Party").

## RECITALS

A.  Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on May 16, 2016. On June 21, 2016, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee"). Since the appointment of the Committee, Debtor has been in extensive negotiations with the Committee, the Powell Hospital District (the "District"), counsel representing the Tort Claimants (as such term is defined in the Plan) and other creditors and parties in interest regarding a consensual reorganization process and plan.

B.  On _____, 2017, Debtor filed its Chapter 11 Plan of Reorganization for Powell Valley Heath Care, Inc. (the "Plan").

C.  Pursuant to and as a condition to the effectiveness of the Plan, Debtor has executed and delivered the Personal Injury Trust Note of even date herewith in the original principal amount of $2,500,000, payable to the order of Secured Party (as amended, modified, supplemented or restated from time to time, the "Note").

NOW THEREFORE, in consideration of the mutual covenants contained in the Note and the Plan and herein, the parties hereby agree as follows:

1.  <u>Definitions</u>. All capitalized terms defined in the recitals hereto, the Note and the Plan that are not otherwise defined herein shall have the meanings given them in the recitals, the Note and the Plan, as applicable. All terms defined in the Uniform Commercial Code (the "UCC") and not otherwise defined herein have the meanings assigned to them in the UCC. In addition, the following terms have the meanings set forth below or in the referenced Section of this Agreement:

"Accounts" means all of Debtor's Accounts, as such term is defined in the UCC.

"Collateral" means all of Debtor's now owned or hereafter acquired right, title and interest in and to all Accounts and all products and Proceeds thereof.

"Event of Default" has the meaning given in Section 5.

"Lien" means any mortgage, deed of trust, pledge, hypothecation, assignment, charge or deposit arrangement, encumbrance, lien (statutory or other) or preference, priority or other security interest or preferential arrangement of any kind or nature whatsoever (including those created by, arising under or evidenced by any conditional sale or other title retention

{Z0165286/1 }

agreement, the interest of a lessor under a capital lease, any financing lease having substantially the same economic effect as any of the foregoing, or the filing of any financing statement naming the owner of the property to which such lien relates as debtor, under the UCC or any comparable law), and any contingent or other agreement to provide any of the foregoing, but not including the interest of a lessor under a lease which is not a capital lease.

"Obligations" means any and all of Debtor's liabilities, indebtedness and obligations to Secured Party under or in respect of the Note.

"Permitted Liens" means (a) the Security Interest, and (b) Liens securing obligations of Debtor owing to First Bank of Wyoming as of the date of this Agreement.

"Security Interest" has the meaning given in Section 2.

"UCC" means the Uniform Commercial Code in effect in the state designated in this Agreement as the state whose laws shall govern this Agreement, or in any other state whose laws are held to govern this Agreement or any portion of this Agreement.

2. <u>Security Interest</u>. Debtor hereby pledges, assigns and grants to Secured Party a second priority Lien and security interest (the "Security Interest") in the Collateral, as security for the payment and performance of all Obligations.

3. <u>Representations, Warranties and Agreements</u>. Debtor hereby represents warrants and agrees as follows:

(a) <u>Existence; Authorization; Execution; Delivery</u>. (i) Debtor is a non-profit corporation, duly incorporated, validly existing and in good standing under the laws of the State of Wyoming and has the corporate power and authority to make and deliver this Agreement; (ii) the execution, delivery and performance of this Agreement by Debtor have been duly authorized by all necessary corporate action; (iii) this Agreement has been duly executed and delivered by Debtor.

(b) <u>Title</u>. Debtor has absolute title to each item of Collateral in existence on the date hereof, free and clear of all Liens except the Permitted Liens. Debtor will not sell or otherwise dispose of the Collateral or any interest therein, outside the ordinary course of business, without the prior written consent of Secured Party. Upon any sale, exchange or other disposition of any Collateral, Secured Party's Security Interest and Lien on such Collateral shall, without break in continuity and without further formality or act, continue in and attach to the gross Proceeds of such sale, exchange or disposition. As to any such sale, exchange or disposition, Secured Party shall have all the rights of an unpaid seller.

(c) <u>Chief Executive Office; Identification Number; Exact Name</u>. Debtor's chief executive office and principal place of business is located at the address set forth under its signature below. Debtor's name in which it has executed this Agreement is the exact name as it appears in Debtor's articles of incorporation, as filed with Debtor's jurisdiction of organization.

(d) <u>Miscellaneous Covenants</u>. Debtor will:

(i) keep accurate and complete records pertaining to the Collateral;

(ii) from time to time authorize or execute such financing statements as Secured Party may reasonably require in order to perfect the Security Interest; and

(iii) authorize, execute, deliver or endorse any and all instruments, documents, assignments, security agreements and other agreements and writings which Secured Party may at any time reasonably request in order to secure, protect, perfect or enforce the Security Interest and Secured Party's rights under this Agreement.

(e) <u>Authorization of Financing Statement</u>. Debtor authorizes Secured Party to file from time to time where permitted by law, such financing statements as Secured Party deems necessary or useful naming Debtor as debtor and Secured Party as secured party and describing the collateral as "all of Debtor's now owned or hereafter acquired right, title and interest in and to all Accounts and all products and Proceeds thereof". Debtor will not amend any financing statements in favor of Secured Party except as permitted by law. All financing statements filed before the date of this Agreement to perfect Secured Party's Security Interest in the Collateral were authorized by Debtor and are hereby re-authorized.

4. <u>Rights of Secured Party</u>. At any time after the occurrence and during the continuation of an Event of Default which is not timely cured by the Debtor, and subject to all rights of First Bank of Wyoming as the result of its first priority Lien on the same Accounts, Secured Party may take any or all of the following actions:

(a) <u>Account Verification</u>. Secured Party may send or require Debtor to send requests for verification of Accounts or notices of assignment to account debtors and other obligors. Secured Party may also at any time and from time to time telephone account debtors and other obligors to verify Accounts.

(b) <u>Direct Collection</u>. Subject to all rights of First Bank of Wyoming as the result of its first priority Lien on the same Accounts, Secured Party may notify any account debtor, or any other Person obligated to pay any amount due, that such Account has been assigned or transferred to Secured Party for security and shall be paid directly to Secured Party. At any time after Secured Party or Debtor gives such notice to an account debtor or other obligor, Secured Party may (but need not), in its own name or in Debtor's name, demand, sue for, collect or receive any money or property at any time payable or receivable on account of, or securing, any such Account, or grant any extension to, make any compromise or settlement with or otherwise agree to waive, modify, amend or change the obligations (including collateral obligations) of any such account debtor or other obligor.

5. <u>Events of Default</u>. Each of the following occurrences shall constitute an event of default under this Agreement (herein called "Event of Default"): (a) a default shall occur under the Note which remains uncured beyond any applicable notice or cure periods; or (b) Debtor shall fail to observe or perform any covenant or agreement herein binding on it and such failure

is not cured within thirty (30) days after receipt by Debtor and First Bank of Wyoming of written notice from Secured Party that such failure has occurred.

6. <u>Remedies upon Event of Default</u>.  Subject to the rights of First Bank of Wyoming as the result of its first priority Lien on the same Accounts, after the occurrence of an Event of Default which continues and remains uncured after the expiration of any applicable notice or cure periods, Secured Party, through the Personal Injury Trustee (as defined in the Plan), may exercise any one or more of the following rights and remedies: (a) exercise and enforce any or all rights and remedies available upon default to a secured party under the UCC, including the right to take possession of any Collateral, proceeding without judicial process or by judicial process, and the right to sell, lease or otherwise dispose of any or all of the Collateral, and in connection therewith, Secured Party may require Debtor to make the Collateral available to Secured Party at a place to be designated by Secured Party which is reasonably convenient to both parties, and if notice to Debtor of any intended disposition of Collateral or any other intended action is required by law in a particular instance, such notice shall be deemed commercially reasonable if given (in the manner specified in Section 7) at least ten (10) days prior to the date of intended disposition or other action; or (b) exercise or enforce any or all other rights or remedies available to Secured Party by law or agreement against the Collateral, against Debtor or against any other Person or property.

7. <u>Notices</u>.  All notices required to be given to any party under this Agreement shall be deemed given upon the first to occur of (a) three (3) days after deposit thereof in a receptacle under the control of the United States Postal Service; (b) transmittal by electronic means, including facsimile or email, to a receiver under the control of such party; (c) one (1) business day after deposit with a reputable overnight courier with all charges prepaid; or (d) actual receipt by such party or an employee or agent of such party, in each case addressed, emailed or telecopied to the address, email address or telecopier number as set forth below its signature or at such other address, email address or telecopier number as may hereafter be designated by such party in a written notice to the other party complying as to delivery with the terms of this Section.  If notice to Debtor of any intended disposition of Collateral or any other intended action is required by applicable law in a particular situation, such notice will be deemed commercially reasonable if given in the manner specified in this Section 7 at least ten (10) days before the date of intended disposition or other action.

8. <u>Miscellaneous</u>.  This Agreement does not contemplate a sale of Accounts, except as set forth in Paragraph 6.  This Agreement can be waived, modified, amended, terminated or discharged, and the Security Interest can be released, only explicitly in a writing signed by Secured Party, and, in the case of amendment or modification, in a writing signed by Debtor and Secured Party.  A waiver signed by Secured Party shall be effective only in the specific instance and for the specific purpose given.  Mere delay or failure to act shall not preclude the exercise or enforcement of any of Secured Party's rights or remedies.  The rights and remedies herein conferred are cumulative and not exclusive of any other rights or remedies, and shall be in addition to every other right, power, and remedy that Secured Party may have, whether specifically granted herein or hereafter existing at law, in equity, or by statute.  Any and all such rights and remedies may be exercised from time to time and as often and in such order as Secured Party may deem expedient in its sole discretion.  This Agreement shall take effect when signed by Debtor and delivered to Secured Party, and Debtor waives notice of Secured Party's

acceptance hereof. Debtor may not assign or transfer this Agreement without consent of Secured Party, and any such purported assignment or transfer shall be void. Whenever in this Agreement reference is made to Secured Party or Debtor, such reference shall be deemed to include, as applicable, a reference to their respective permitted successors, assigns, heirs, executors and beneficiaries, and the provisions of this Agreement shall be binding upon and shall inure to the benefit of such permitted successors and assigns, heirs, executors and beneficiaries, including, without limitation, a receiver, trustee or debtor in possession of or for Debtor. Two or more duplicate originals of this Agreement may be signed by the parties, each duplicate of which shall be an original but all of which together shall constitute one and the same instrument. This Agreement may be executed in several counterparts, without the requirement that all parties sign each counterpart. Each of such counterparts shall be an original, but all counterparts together shall constitute one and the same instrument. The delivery of an executed counterpart of a signature page to this Agreement by telecopier or other electronic means shall be effective as delivery of a manually executed counterpart of this Agreement. Debtor shall promptly send an original of each counterpart to Secured Party, but Debtor's failure to do so shall not affect the validity, enforceability, and binding effect of this Agreement. This Agreement shall be governed by and construed in accordance with the laws of the State of Wyoming (other than conflict laws). Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction only, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Agreement, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation". Unless the context in which used herein otherwise clearly requires, "or" has the inclusive meaning represented by the phrase "and/or".

9. <u>Jury Trial Waiver</u>. EACH OF DEBTOR AND SECURED PARTY HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM, WHETHER IN CONTRACT OR TORT, AT LAW OR IN EQUITY, ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT.

**[This Space Intentionally Left Blank]**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

SECURED PARTY:   DEBTOR:

**POWELL VALLEY HEALTH CARE, INC. PERSONAL INJURY TRUST**   **POWELL VALLEY HEALTH CARE, INC.**

By: _____   By: _____
Name: _____   Name: _____
Title: _____   Title: _____

Address:   Address:

_____   _____
_____   _____

Attention: _____   Attention: _____
Fax Number: (___) _____   Fax Number: (___) _____
Email: _____   Email: _____