Bradley T. Hunsicker (Wyo. Bar 7-4579)
Jennifer Salisbury (Wyo. Bar 7-5218)
**MARKUS WILLIAMS YOUNG & ZIMMERMANN LLC**
106 East Lincolnway, Suite 300
Cheyenne, WY  82001
Telephone: 307-778-8178
bhunsicker@markuswilliams.com

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF WYOMING

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| POWELL VALLEY HEALTH CARE, INC., | ) Case No. 16-20326 |
| | ) |
| Debtor-in-Possession. | ) |

### JOINT OBJECTION TO MOTION BY HEALTHTECH MANAGEMENT SERVICES, INC. AND WILLIAM D. PATTEN FOR ORDER AUTHORIZING RULE 2004 EXAMINATIONS AND PRODUCTION OF DOCUMENTS

Powell Valley Health Care, Inc., debtor and debtor-in-possession (the "**Debtor**"), and the Official Unsecured Creditors Committee ("**Committee**"), through their respective undersigned counsel, hereby submit this Objection to Motion by Healthtech Management Services, Inc. and William D. Patten (collectively "**HealthTech**") for 2004 Examination and Production of Documents.  In support of this objection, the Debtor and the Committee respectfully state as follows:

### I.  PRELIMINARY STATEMENT

As further explained below, HealthTech's Motion for a 2004 Examination is largely being employed for purposes of harassment and to unfairly leverage the Debtor

{Z0170140/1 }

and the Committee in an effort to extract a release under the Debtor's proposed Chapter 11 Plan of claims held by the Debtor, and other non-debtor parties (i.e., the Tort Claimants) against HealthTech. Specifically, HealthTech seeks to examine 17 persons: every member of the Debtor's Board of Directors and every member of the Committee as well as a representative of the District. Unsatisfied with its proposed 17 examinations, HealthTech also seeks to require the turnover of over 70 categories of documents from the 17 proposed deponents. In fact, the only person HealthTech fails to subject to deposition requests is its own employee and acting Interim Chief Executive Officer of the Debtor, who ultimately recommended, and supported, that the Debtor file for bankruptcy protection. Allowing these 17 examinations to go forward would impose unnecessary and substantial administrative costs and expenses on the estate and divert estate resources with little or no corresponding benefit to anyone but HealthTech.

Importantly, HealthTech has only asserted unsecured contingent indemnification claims against the Debtor, and those claims are subject to disallowance under the Bankruptcy Code.[1] As the holder of disallowed claims, HealthTech would no longer be considered a party-in-interest in this case with the ability to conduct any examination under Rule 2004. Indeed, HealthTech's request is so overly broad and so unduly burdensome that it lacks any good faith attempt to reasonably discover facts and circumstances relevant to the Debtor's proposed Plan or HealthTech's claims. Instead, the request must be recognized as an attempt to improperly leverage the 2004

---

[1] Debtor anticipates filing an objection to said claims pursuant to, among other things, 11 U.S.C. § 502(e)(1)(B).

examination process to reach a more favorable resolution of any claims existing *against* HealthTech and held by the Tort Claimants and the Debtor. As a matter of law, this Court should not permit this abuse of the discovery process contemplated by Rule 2004.

## II. HEALTHTECH'S RELATIONSHIP TO THIS BANKRUPTCY PROCEEDING

In 1992, the Debtor entered into a management contract with HealthTech (f/k/a Brim Healthcare). Pursuant to various contracts and amendments thereto, HealthTech provides the Debtor with, among other things, managers at the chief executive officer position, including, at one point, Mr. William D. Patten (who is no longer associated with the Debtor), group purchasing privileges, and access to training opportunities and administrative resources.

Since 2011, the Debtor, along with HealthTech has been subject to personal injury lawsuits stemming from a series of procedures performed at the Hospital between 2011 and 2013 (the "**Lawsuits**"). In total, 19 individuals who underwent such procedures (collectively, the "**Tort Claimants**") have filed the Lawsuits against the Debtor and their treating physician, Dr. Hansen. The Debtor voluntarily filed its petition under chapter 11 with the objective of resolving the Lawsuits in a fair, reasonable, and efficient manner while ensuring its long-term stability for the benefit of the community it serves.

The Debtor's efforts in this regard resulted in the proposed Plan described in the Disclosure Statement recently filed with this Court (Docket No.'s 498, 499, 526, 530-533). The Debtor has been in constant negotiations with the Tort Claimants and others

during the Chapter 11 Case. The result of these extensive negotiations is the Debtor's proposed Plan. Specifically, the Plan provides that any claims existing against HealthTech flow through the Debtor's bankruptcy unaffected. Futhermore, to the extent that the Debtor has any claims against HealthTech related to the events underlying the Lawsuits, those claims are transferred/assigned to the proposed plan trustee for the benefit of the Tort Claimants.

HealthTech has alleged unsecured and unliquidated claims against the Debtor for indemnification. However, these are contingent claims based upon the contractual agreement between the Debtor and HealthTech. Contingent indemnification claims are subject to mandatory disallowance under the Bankruptcy Code pursuant to 11 U.S.C. § 502(e)(1)(B). For this reason, the Plan provides no payout on either HealthTech's or Mr. Patten's indemnification claims.[2] (Docket No. 499; see pp 6, 21)

Simply stated, HealthTech's 2004 examination is not based upon the allowance or disallowance of HealthTech's indemnification claims, but instead on the fact that the Tort Claimants and the Debtor retain their claims against HealthTech. HealthTech is obviously unhappy with the fact that the claims against it will not be released under the Plan. Therefore, HealthTech is utilizing the 2004 examination process with the hopes of throwing a "monkey-wrench" in the Debtor's Plan and thereby forcing the Tort Claimants and the Debtor to enter into a one-sided settlement with HealthTech that will

---

[2] HealthTech is also currently operating under a contract with the Debtor; because that contract terminates per its terms in June of this year, no issues and claims will arise between HealthTech and the Debtor as to the assumption or rejection of that agreement.

relieve HealthTech of *its* liability *to the Tort Claimants* and to the Debtor, if any. This is an improper purpose and it should not be legitimized by this Court.

### III.    ARGUMENT AND AUTHORITIES

####    A.    **Rule 2004 Cannot Be Used to Abuse and Harass.**

Federal Rule of Bankruptcy Procedure 2004 by its terms gives the Court discretion to limit examination as justice requires. Specifically, the Rule provides that: "On motion of any party in interest, the court *may* order the examination of any entity." (emphasis added). Subsection (b) then provides in pertinent part:

> The examination of an entity under this rule . . . *may* relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a . . . reorganization case under chapter 11 of the Code . . . the examination *may* also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

Fed.R.Bankr.P. 2004 (emphasis added). Courts routinely use this permissive, conditional language to restrict discovery that appears unduly intrusive or burdensome. *See, e.g., In re Drexell Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (although Rule 2004 examination can be compared to a fishing expedition, "the net, in the discretion of the Court, can be carefully stitched to limit its catch"). Furthermore, courts "limit, condition or even forbid the use of Rule 2004 where it is used to abuse or

{Z0170140/1 }    5

harass[]. . . ." *Martin v. Schaap Moving Sys., Inc.*, 152 F.3d 919 (2d Cir. 1998) (unpublished), quoting *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984).

The breadth of HealthTech's proposed 2004 examination is *so* broad, burdensome, abusive and intrusive that if the Debtor were forced to comply with it the Debtor will necessarily incur substantial and unwarranted financial burdens. *See generally In re Georgetown of Kettering*, 17 B.R. 73, 75 (Bankr. S.D. Ohio 1981) (referring to the predecessors of Rule 2004, the court stated: "Obviously, the breadth of the language employed in the Rules is so all encompassing as semantically to include and encourage harassment on every human subject. Nevertheless, abuse of propriety and the judicial process certainly was never contemplated."); *Buckner v. Okla. Tax Comm'n (In re Buckner)*, 2001 Bankr.LEXIS 1053 *12 (B.A.P. 10th Cir. 2001) (Rule 2004 examination may not be used "for the purpose of abuse or harassment.")

For example, the Debtor would face the costs inherent in preparing for 17 separate depositions. And in most instances, the estate would bear the fees and costs for both counsel for the Debtor and counsel for the Committee to attend these examinations. The parties whom HealthTech seek to depose reside all across the state of Wyoming. The fees and costs of attending these examinations would be augmented by the fees and costs incurred in responding to HealthTech's 27 separate requests for documents. Indeed, the fees and costs of responding to HealthTech's proposed examinations could easily double the administrative expenses that the estate has incurred to date.

Simply stated, if the purpose behind HealthTech's motion was truly to seek information regarding the Debtor's Plan, HealthTech would have sought only to take *one*

deposition of the Debtor and *one* deposition of the Committee on topics for which the parties could designate the appropriate representative to respond. Indeed, given that HealthTech only has contingent claims for indemnification which are subject to automatic disallowance under 11 U.S.C. § 502(e)(1)(B), the obvious motive behind HealthTech's unduly harassing requests is not to evaluate the feasibility of payment on its claim against the estate, but to leverage the Debtor and the Committee into a settlement of the claims held by the Tort Claimants and the Debtor *against* HealthTech. *See In re Strecker*, 251 B.R. 878, 883 (Bank. D. Colo. 2000) (refusing to permit a 2004 examination for the purpose of harassing, intimidating and/or coercing the debtor into unwise or forced settlements).

The best evidence of HealthTech's improper motivations with respect to its discovery requests is that it has raised the now stale issue of the Debtor's eligibility to file a petition under the Bankruptcy Code. HealthTech raises the issue of eligibility even though the Debtor has been under this Court's protection for over a year with nary a peep from HealthTech on this issue. HealthTech raises the issue of eligibility even though the Debtor filed bankruptcy upon *HealthTech's* recommendation. HealthTech raises the issue of eligibility even though HealthTech has a fiduciary duty to the current employees and patients of the Debtor. The Debtor requests the Court to recognize what HealthTech is doing. It is pointing a gun to the Debtor's head: accede to my demands or I will attempt try to destroy you through excessive litigation and the threat of dismissing your effort to reorganize under the Bankruptcy Code. The only purpose of HealthTech's proposed 2004 examination is to harass and gain leverage in a bad faith attempt to extort

from the Debtor and Tort Claimants a release of their claims against HealthTech; the Court should deny HealthTech's motion.

### B.     The Benefit to the Estate of the 2004 Examination Must Exceed Its Costs to the Examinee.

Although the scope of a Rule 2004 examination is broad, "there are important limits to the scope of the examination." *In re Express One Int'l, Inc.*, 217 B.R. 215, 216 (Bankr. E.D. Tex. 1998); *see also In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (same).

> The one seeking to conduct a Rule 2004 examination has the burden of showing good cause for the examination it seeks. . . Generally, good cause requires a showing that the examination sought is necessary to establish the claim of the party seeking the examination, or the denial of such request would cause the proposed examiner undue hardship or injustice. . . Furthermore, if the cost and disruption to the examinee attendant to a requested examination outweigh the benefits to the examiner, the request should be denied.

*In re Express One Int'l, Inc.*, 217 B.R. at 216 (citing *In re Eagle-Picher Industries, Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) and *In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1993)). To establish whether "good cause" exists, a court must consider the totality of the circumstances, taking into account all relevant factors. *Bank of Am. v. Landis*, 2011 WL 6104495, at *5 (D. Nev. Dec. 7, 2011). In this instance, HealthTech cannot show good cause because the proposed examinations would yield little to no benefit and the costs to the estate could cripple the Debtor.

HealthTech attempts to justify its burdensome, harassing and duplicative discovery on the purported basis that the information is necessary for HealthTech to

evaluate whether the Debtor is a proper debtor under the Bankruptcy Code. HealthTech's action begs the question: this bankruptcy case has been pending for over a year, why is HealthTech raising the issue of the Debtor's eligibility at this late date?[3] Tellingly, HealthTech only questions the Debtor's eligibility for bankruptcy relief after the Debtor files a proposed plan of reorganization and disclosure statement which does not provide a release to HealthTech.

Any eligibility motion filed by HealthTech at this late stage would be subject to the Debtor's defense of laches. Furthermore, given that an employee of HealthTech, working as the Debtor's Interim Chief Executive Officer, recommended to the Debtor, in consultation with bankruptcy and general counsel, that it seek bankruptcy relief, HealthTech should be estopped from now asserting that the Debtor is ineligible for bankruptcy relief. Simply stated, the Court should not permit HealthTech to conduct discovery on eligibility. The Debtor should not be required to provide HealthTech with every communication that it has had with any and every federal or state agency or regulator during the past four years before the issue of eligibility has even been properly placed at issue. *See e.g., In re Countrywide Home Loans, Inc*., 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008)("Inquires that seek far-reaching information . . . will require a correspondingly higher showing of good cause because they are inherently more intrusive and present a greater potential for abuse."). Also, HealthTech should not be permitted to leverage a threat to "blow up" the Debtor's reorganization efforts given that fact that: (i)

---

[3] HealthTech has certainly benefitted from the Debtor's petition as the litigation against it by certain of the Tort Claimants has been effectively stayed.

HealthTech fails to hold an allowable claim herein; (ii) HealthTech is barred by the doctrine of laches from questioning the Debtor's eligibility after a year of participating in this bankruptcy case without ever raising the issue of eligibilty; and (iii) HealthTech is estopped from questioning the Debtor's eligibility for bankruptcy relief because an employee of HealthTech advocated for and recommended to the Debtor's board of directors, in consultation with bankruptcy and general counsel, that the Debtor seek bankruptcy protection.

HealthTech also claims that the discovery is necessary so that it can "understand" the Debtor's proposed disclosure statement and plan of reorganization. If the Disclosure Statement does not contain adequate information, the Disclosure Statement is subject to an objection on that basis. 11 U.S.C. § 1125. There is no reason to burden the Debtor and the Committee with duplicative and burdensome discovery in the form of 17 depositions and over fifty separate document requests when a few additional sentences and paragraphs in the Disclosure Statement would solve HealthTech's concerns. *See In re Georgetown Kettering*, 17 B.R. 73, 75 (Bankr.S.Ohio 1981) (discovery under Bankruptcy Rule 205 "is an unnecessary and expensive burden" to resolve whether a disclosure statement contains adequate information).

Disingenuously, HealthTech also contends that it needs to "understand" whether or not the Committee has consented to the Plan. The parties have been very upfront with the Court and HealthTech that they are still in the midst of negotiating few remaining issues. If at the end of the day, the Committee does not consent the terms of the Plan, the Debtor will amend the Disclosure Statement to remove those provisions stating the

Committee supports the Plan and the disclosure statement. HealthTech's requests to pore over every communication between the Committee, the Tort Claimants, the Debtor and the District and to take the deposition of every party in those negotiations are overly broad, intrusive and absurd. Moreover, HealthTech's attempts to delve into the nuances of settlement discussions and negotiations would most likely be counterproductive to the Debtor and the Committee's efforts to finally reach a global settlement on the few remaining issues between them.

Additionally, many of the topics on which HealthTech seeks to examine the Debtor and the Committee are purely legal questions. For example, HealthTech states that it seeks discovery as to why the Plan proposes "different, disparate treatment for similarly situated creditors" and "why releases of third parties are appropriate." The issue of whether a plan properly classifies creditors and whether the releases are appropriate are issues of law. None of the discovery requested will resolve these purely legal issues.

Finally, HealthTech asks why certain claimants may pursue claims in other forums while HealthTech cannot. Again, this is an issue of law: whether certain forums have jurisdiction to hear claims between the Tort Claimants and HealthTech is not a proper subject for a 2004 examination of the Debtor and/or the Committee. Further, none of the documents requested or the persons to be deposed will shed any light on whether the bankruptcy court, the federal courts or the state courts have jurisdiction to hear the claims between HealthTech and the Tort Claimants.

In conclusion, Rule 2004 is primarily designed to enhance creditor recoveries by affording interested parties the opportunity to investigate claims against the estate,

undisclosed assets, or potential improper acts by the Debtor. *See, e.g.. In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002)("Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate, and for discovering assets, examining transactions, and determining whether wrongdoing has occurred.")  It is not a device for parties to pre-litigate issues or to leverage the costs of discovery to force a settlement.   HealthTech's motion is a bald-faced attempt to leverage the 2004 examination process for its own purposes; the Court should not permit it do so.

**WHEREFORE**, the Debtor and the Committee respectfully request the Court deny HealthTech's Motion for Order Authorizing Rule 2004 Examinations and Production of Documents and for such other and further relief as the Court deems proper.

Dated: May 25, 2017.

**MARKUS WILLIAMS YOUNG & ZIMMERMANN LLC**

By: */s/ Bradley T. Hunsicker*
Bradley T. Hunsicker (WY Bar No 7-4579)
Jennifer Salisbury (WY Bar No. 7-5218)
106 East Lincolnway, Suite 300
Cheyenne, WY 82001
Telephone: 307-778-8178
Facsimile: 307-638-1975
Email: bhunsicker@markuswilliams.com

Counsel for the Debtor and Debtor-in-Possession

And

**SPENCER FANE LLP**

By: */s/ Jamie N. Cotter*
Jamie N. Cotter (WY Bar No 74721)
Philip A. Pearlman (CO Bar No. 11426)
Scott J. Goldstein (MO Bar No. 28698)
1700 Lincoln Street, Suite 2000
Denver, CO 80203
Telephone: 303-839-3800
Facsimile: 303-839-3838
Email: jcotter@spencerfane.com


Counsel to the Official Committee of
Unsecured Creditors

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 25, 2017, a copy of the foregoing was served *electronically* upon those parties indicated below:

**Attorneys for HealthTech Management Services, Inc. and William D. Patten:**
John C. Smiley
Ethan J. Birnberg
LINDQUIST & VENNUM LLP
600 17th Street, Suite 1800-S
Denver, Colorado 80202
Phone: (303) 573-5900
Facsimile: (303) 573-1956
jsmiley@lindquist.com
ebirnberg@lindquist.com

          */s/Bradley T. Hunsicker*
          Bradley T. Hunsicker