Deborah M. Kellam | Special Counsel
Hall & Evans, LLC
866 N. 4th Street, Suite 3
Laramie, WY 82072
kellamd@hallevans.com
Tel: 307-514-2567
Fax: 307-514-2568

Michael S. Davis (pro hac vice)
Zeichner Ellman & Krause LLP
1211 Avenue of the Americas
New York, NY 10036
mdavis@zeklaw.com
Tel:  212-223-0400
Fax:  212-753-0396

Counsel for Lexington Insurance Company

UNITED STATES BANKRUPTCY COURT
DISTRICT OF WYOMING

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| POWELL VALLEY HEALTH CARE, INC. | ) Case No. 16-20326 |
| | ) |
| Debtor-in-Possession | ) |

**LEXINGTON INSURANCE COMPANY'S MOTION FOR RELEIF FROM THE AUTOMATIC STAY TO PERMIT LEXINGTON TO PROSECUTE A MOTION FOR SUMMARY JUDGMENT IN AN ACTION PENDING IN UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WYOMING**

COMES NOW Lexington Insurance Company ("Lexington") on behalf of itself, a party in interest in the Debtor's Chapter 11 case, for its Motion for Relief From Automatic Stay to Permit Lexington to Prosecute a Motion for Summary Judgment in an Action Pending in the United States District Court for the District of Wyoming (the "Motion").  In support of its Motion, Lexington states as follows:

1. On October 31, 2016, Lexington, UMIA Insurance, Inc. and Homeland Insurance Company (collectively, "Insurance Companies") made a Joint Motion for Relief From Automatic Stay to Permit Prepetition Litigation to Continue in the United States District Court for the District of Wyoming. (the "Joint Motion") (Docket No. 354). By the Joint Motion, the Insurance Companies seek relief from the automatic stay so that the parties to the an action styled as *Homeland Insurance Company of New York, et al., v. Powell Hospital District, et al.*, No. 15-CV-00031-ABJ (the "District Court Action") may proceed with "Phase I" of the bifurcated case in order to determine whether insurance coverage exists under insurance policies issued to the Debtor. See Joint Motion at 4, 8-12. The Joint Motion is scheduled for a preliminary hearing by teleconference on September 26, 2017 at 10:30 (Docket No. 602).

2. Lexington still joins in the Joint Motion and seeks relief from the automatic stay for the reasons set forth therein. However, as set forth below, in the event the court does not grant the Joint Motion in its entirety, Lexington asks the Court to grant this Motion for relief from stay *as to Lexington, only,* for the limited purpose of allowing Lexington to file a motion for summary judgment in the District Court Action, and to allow the District Court to set a briefing schedule and fully adjudicate that summary judgment motion.

3. Lexington submits that this Motion should not require an evidentiary hearing because Lexington is not aware of any factual issues in dispute relating to Lexington's limited request for relief from the automatic stay.[1] Moreover, while not for this court to resolve, Lexington's proposed summary judgment motion should not be a material burden for the

---

[1] The lack of disputed issues of fact does not refer to issues to be determined in the District Court Action, as the District Court will need to make its own independent determination whether Lexington is entitled to summary judgment under Fed. R. Civ. Pro. 56 and applicable law.

Debtor or other parties-in-interest because that motion will be limited to contract interpretation principles, for which Lexington does not intend to pursue additional discovery.

4. This is unlike the other Insurance Companies in the District Court Action (UMIA and Homeland), in that they intend to pursue defenses including rescission for which additional discovery is probably needed.

5. A judicial determination of the existence or non-existence of coverage under the Lexington Professional Liability Policies is in the interest of justice for all parties to the District Court Action and the instant Chapter 11 case.

### A. BACKGROUND OF COVERAGE ISSUES AS THEY PERTAIN TO LEXINGTON

The District Court Action relates to availability of coverage for certain underlying medical malpractice claims brought against Powell Hospital District, PVHC, HealthTech and Mr. Patten as a result of the conduct of one of PVHC's physicians, Dr. Hansen. The first claims involving Dr. Hansen (*Durose* and *Harris*) were made during Lexington's policy period (August 1, 2012 to August 1, 2013) and Lexington defended and indemnified PVHC for those claims. These two claims are resolved and are not at issue in the District Court Action.

Following the *Durose* and *Harris* claims, a number of other claims were made. Lexington's summary judgment motion in the District Court Action will show the simple fact that each such claim was "*first made*" **after** *the expiration of the pertinent Lexington policy period*. Lexington Policy issued policy Nos. 6793042 (8/1/12 to 8/1/13) and 6793044 (8/1/12 to 8/1/13) to PVHC ("Subject PVHC Policies"). As a condition to coverage, the Subject PVHC Policies require that a claim be "first made" during the policy period or an extended reporting

3

period. A "[c]laim" is defined under the Subject PVHC Policies as "a written demand against an insured for monetary damages, including a suit." The policy period of the Subject PVHC Policies ran from August 1, 2012 to August 1, 2013. The following underlying malpractice claims were not "first made" during the policy period of the Subject PVHC Policies, nor were these underlying claims "first made" during an extended reporting period: the *Bates*, *Brinkeroff*, *Crawford*, *DiPilla*, *Eller*, *Heiser*, *Henderson*, *Johnson*, *McMillan*, *Meier*, *Nicholson*, *Oliver*, *Ronne*, *Sessions*, *Snell*, *Sommerville*, *Stambaugh*, and *Wilson* claims made were against Powell Valley HealthCare, HealthTech, William Patten, and/or Jeffrey Hansen ("Underlying Claims").

Additionally, Lexington maintains that the Underlying Claims are not "related" to the *DuRose* and *Harris* claims because the Subject PVHC Policies limit related medical incidents "to any one patient." Specifically, the Subject PVHC Policies state:

> All **claims** arising from one **medical incident** or a series of related **medical incidents** *to any one patient* shall be treated and shall be deemed to have occurred at the time of the first **medical incident** regardless of the number of claimants, or the number of **Insureds** against whom such **claims** are made. (*Id.*, Exhibit 1, Section IV.D.) (bold in original, italics added.)

Accordingly, Lexington has declined coverage for the Underlying Claims because none of the Underlying Claims were first made during the Subject PVHC Policies' policy period or any extended reporting period, and the Underlying Claims do not relate back because they do not arise out of a single patient.

4

**ARGUMENT**

B.  **IF THE COURT DOES NOT GRANT THE JOINT MOTION IN ITS ENTIRETY, IT SHOULD MODIFY THE STAY FOR THE LIMITED PURPOSE OF ALLOWING LEXINGTON TO PROSECUTE A MOTION FOR SUMMARY JUDGMENT IN THE DISTRICT COURT ACTION**

Lexington continues to join in the Joint Motion (Docket No. 354), which seeks relief from the automatic stay to allow the Insurance Companies to prosecute the District Court Action. However, if the Court does not grant the Joint Motion in its entirety, Lexington requests relief from the automatic stay in this Motion *as to Lexington only* for the limited purpose of allowing Lexington to file a motion for summary judgment in the District Court Action, and to allow the District Court to set a briefing schedule and fully adjudicate that summary judgment motion.

Under Section 362(d) of the Bankruptcy Code, a Court may "grant relief from" the automatic stay by "terminating, annulling, modifying, or conditioning such stay." As stated in Collier on Bankruptcy:

> The effect is to permit the court to fashion the relief to the particular circumstances of the case. In some cases, modification or conditioning of the stay may be sufficient to protect the nondebtor party by permitting the exercise of some but not all of the party's rights. (3 Collier on Bankruptcy ¶ 362.07[1] (16th ed. 2015))

The Court may grant such modification or conditioning without an evidentiary hearing where, as here, there are no issues of fact in dispute relating to the request for relief from the automatic stay.

Here, in the event that the Joint Motion is not fully granted, Lexington seeks modification or conditioning of the automatic stay to allow **Lexington** to make a motion for summary judgment in the District Court Action and for the District Court to set a briefing schedule and fully adjudicate that summary judgment motion. In its proposed summary judgment motion, Lexington

5

will argue that summary judgment should be granted dismissing all claims against Lexington because the insurance claims at issue were all tendered after the policy period for the Subject PVHC Primary Policies. As set forth above, the motion will show the documented facts that (i) the Underlying Claims were tendered to Lexington after the policy periods for the Subject PVHC Primary Policies, which ran from August 1, 2012 to August 1, 2013, (ii) PVHC did not report any "medical incident" giving rise to the Underlying Claims to Lexington before the expiration of the Subject PVHC Policies or the automatic extended reporting period, and (iii) the Applications for Claim Review submitted to the Wyoming Medical Review Panel and each Complaint setting forth the Underlying Claims were filed after the expiration of the Subject PVHC Policies. Accordingly, the District Court will be asked to determine, on a documentary record, that the Underlying Claims were not "first made" during the Subject PVHC Policies' policy period and thus, because the "medical incidents" giving rise to the Underlying Claims were not reported to Lexington and no "claims" were made until after the expiration of the Subject PVHC Policies or any extended reporting period, the Underlying Claims are not covered by the Subject PVHC Policies.

Allowing Lexington to make its limited summary judgment motion in the District Court would satisfy many of the Curtis factors. In re Curtis, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) (identifying factors to consider in deciding "whether or not to modify the stay to permit litigation against the debtor to proceed in another forum."); In re Busch, 294 B.R. 137, 141 (10th Cir. 2003) (Curtis factors "widely adopted by bankruptcy courts"). First, allowing a limited stay modification for Lexington's summary judgment motion would provide all parties with the benefit of prompt resolution of one third of the controversy and thus serves the important Curtis factor of judiciary economy. Curtis, 40 B.R. at 800 (identifying "[t]he impact of the stay on the parties and the 'balance of hurt'" and "[t]he interest of judicial economy" as a Curtis factors). Specifically,

Lexington's proposed summary judgment motion would require minimal time and resources from the Debtor because, as set forth above, Lexington's proposed summary judgment motion only requires a review of Lexington's insurance policies and the written demands for monetary damages submitted by the Underlying Claimants. Indeed, all evidence in support of Lexington's proposed summary judgment motion was identified in Lexington's Initial Disclosures in the District Court Action. These documents will be produced to Debtor's counsel, to all the parties to the District Court Action, and to counsel for the Unsecured Creditors Committee upon execution of a satisfactory confidentiality agreement. No further discovery is needed. The motion would only call for a targeted documentary response and an appearance at a hearing, if scheduled.

Granting Lexington's limited relief is would also serve the interests of judicial economy because Lexington's coverage dispute with the Debtor's is factually different than the disputes between the Debtor and UMIA or Homeland. Lexington's coverage dispute in the District Court Action is limited to interpretation of the written demands for monetary damages, in conjunction with the policies issued by Lexington. Conversely, UMIA and Homeland advance coverage defenses based on rescission and are tied to an assessment of the underwriting of their respective policies, in that Homeland and UMIA contend that the insured knew of a potential claim and/or claims and failed to disclose such a risk during the application process, thus potentially voiding the contract of insurance. While discovery may be necessary to establish UMIA and Homeland's defenses, Lexington's proposed summary judgment motion is based upon documents that have been identified in Lexington's Initial Disclosures in the District Court Action, and thus, no discovery is needed for a final determination of Lexington's proposed motion.

Moreover, unlike UMIA and Homeland, there are no bad faith claims asserted against Lexington in the District Court Action, which may also require discovery.[2]

Second, allowing stay relief for Lexington's limited summary judgment motion will "result in a partial or complete resolution of" issues relating to the Debtor's insurance coverage. The existence of insurance coverage directly bears on the ability of the Debtor to propose a confirmable plan of reorganization to pay creditors.

Unlike Homeland and UMIA, a determination of coverage under the Lexington policies will not require additional discovery. In that regard, the estate could obtain a coverage determination with respect to Lexington's insurance policies with limited additional cost. Furthermore, to wait and lift the stay as to all insurers at once could potentially delay a determination of coverage under Lexington's policies if the District Court hears all Motions for Summary Judgement together, and only once Homeland and UMIA have conducted the requisite discovery relevant to their respective coverage defenses. In short, to lift the stay for Lexington only and solely for the limited purpose of filing a Motion for Summary Judgment would provide the estate with necessary answers with respect to coverage under the Lexington policies at minimal costs to the estate.

The Debtor's Objection to the Joint Motion [Doc. No. 373] is largely inapplicable to Lexington's more limited request. The Debtor argues, among other things, that the Debtor's lacks the financial resources to conduct discovery and prosecute the District Court Action "over years" while trying to propose and confirm a plan of reorganization. See Debtor Objection at 7-8.

---

[2] And no bad faith claim is anticipated, as the Debtor represented that it did not intend to assert any bad faith claim against Lexington in the Joint Case Management Plan filed in the District Court Action.

While Lexington disputes the Debtor's contention, defending Lexington's limited summary judgment motion could not constitute an unreasonable interference with the Debtor's efforts to reorganize.  Indeed, the Debtor would only need to file an opposition to Lexington's summary judgment motion and attend a single hearing, if scheduled.  Moreover, the proposed summary judgment motion would not hinder the bankruptcy proceedings in any way because the Debtor has separate counsel of record in the District Court Action, which is not the Debtor's bankruptcy counsel and is already familiar with the facts and procedural history of that case.  Thus, Lexington's limited stay relief would cause virtually no interference with the bankruptcy case, and prompt resolution of the Lexington issue may help narrow bankruptcy issues.  Curtis, 40 B.R. at 800 (identifying "[t]he lack of any connection with or interference with the bankruptcy case" as a *Curtis* factor).

For each of these reasons, if the Court does not grant the Joint Motion entirely, Lexington ask the Court to grant limited stay relief to allow Lexington to make a prosecute its proposed summary judgment motion.

## V. **RELIEF REQUESTED**

Lexington respectfully requests, pursuant to Section 362(d)(1) of the Bankruptcy Code, that this Court grant relief from the automatic stay so that the Lexington may file a Motion for Summary Judgment to determine whether insurance coverage exists under the Lexington policies issued to the Debtor.

Dated:   New York, New York
         September 1, 2017

>   **HALL & EVANS, LLC**
>   Deborah M. Kellam | Special Counsel
>   866 N. 4th Street, Suite 3
>   Laramie, WY 82072
>   kellamd@hallevans.com
>   Tel: 307-514-2567
>   Fax: 307-514-2568
>
>   **ZEICHNER ELLMAN & KRAUSE LLP**
>   /s/ Michael S. Davis
>   Michael S. Davis (pro hac vice)
>   1211 Avenue of the Americas
>   New York, New York 10036
>   mdavis@zeklaw.com
>   Tel:  212-223-0400
>   Fax:  212-753-0396
>
>   Attorneys for Lexington Insurance Company

**CERTIFICATE OF SERVICE**

The undersigned certifies that on September 1, 2017, a copy of the foregoing was served *electronically* upon those parties indicated below:

| **Homeland Insurance Company of NY:**<br><br>Judith Studer<br>Patrick T. Holscher<br>Schwartz, Bon, Walker & Studer, LLC<br>141 S. Center St., Suite 500<br>Casper, WY 82601<br>(307) 235-6681<br>(307) 234-5099 Fax<br>jstuder@schwartzon.com<br>pat@schwartzbon.com<br><br>Charles E. Spevacek<br>Tiffany M. Brown<br>Meagher & Geer, P.L.L.P.<br>33 S. Sixth Street, Suite 4400<br>Minneapolis, MN 55402<br>Ph: (612) 371-1324<br>Fax: (612) 877-3015<br>cspevacek@meagher.com<br>tbrown@meagher.com | **UMIA Insurance, Inc.:**<br><br>James T. Burghardt<br>Timothy M. Swanson<br>Moye White LLP<br>1400 16th St., 6th Floor<br>Denver, CO 80202<br>jim.burghardt@moyewhite.com<br>tim.swanson@moyewhite.com<br><br><br>Julie Nye Tiedeken<br>McKellar, Tiedeken & Scoggin, LLC<br>702 Randall Avenue<br>P.O. Box 748<br>Cheyenne, WY 82003<br>jtiedeken@mtslegal.net |
| --- | --- |
| **Debtor:**<br><br>Bradley T. Hunsicker (Wyo. Bar 7-4579)<br>Markus Williams Young & Zimmermann LLC<br>106 East Lincoln way, Suite 300<br>Cheyenne, WY 82001<br>Telephone: 307-778-8178<br>bhunsicker@markuswilliams.com | **Attorneys for Official Committee of Unsecured Creditors:**<br><br>Scott J. Goldstein<br>Philip A. Pearlman<br>Jamie N. Cotter<br>Spencer Fane<br>1000 Walnut Street, Suite 1400<br>Kansas City, MO 64106<br>1700 Lincoln Street, Suite 2000<br>Denver, CO 80203<br>sgoldstein@spencerfane.com<br>jcotter@spencerfane.com<br>ppearlman@spencerfane.com |

/s/ Michael S. Davis
Michael S. Davis