Bradley T. Hunsicker (Wyo. Bar 7-4579)
Jennifer Salisbury (Wyo. Bar 7-5218)
**Markus Williams Young & Zimmermann LLC**
106 East Lincolnway, Suite 300
Cheyenne, WY 82001
Telephone: 307-778-8178
bhunsicker@markuswilliams.com

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF WYOMING

| | |
|---|---|
| In re: | ) Case No. 16-20326 |
| | ) |
| POWELL VALLEY HEALTH CARE, INC. | ) Chapter 11 |
| | ) |
| Debtor-in-Possession. | ) |
| | ) |
| | ) |

### DEBTOR'S OBJECTION TO LEXINGTON INSURANCE COMPANY'S MOTION FOR RELIEF FROM STAY

Powell Valley Health Care, Inc. (the "Debtor"), through its undersigned counsel, hereby submits its objection to the *Lexington Insurance Company's Motion for Relief from Automatic Stay to Permit Prepetition Litigation to Continue in the United States District Court for the District of Wyoming, and Notice of Opportunity to Object* [Doc. 354] filed by Lexington Insurance Company ("**Lexington**") (the "**Lexington Motion**"). In support thereof, the Debtor states as follows:

## BACKGROUND

Since 2011, the Debtor has been subject to an onslaught of personal injury lawsuits stemming from a series of procedures performed at the Hospital between 2011 and 2014 (the "**Lawsuits**") brought by over twenty plaintiffs (the "**Tort Claimants**"). The financial burden of the Lawsuits on the Debtor was greatly amplified by the fact the

Debtor's insurers, Lexington, UMIA Insurance, Inc. and Homeland Insurance Company of New York (the "**Insurance Companies**"), commenced litigation against the Debtor (the "**Carrier Litigation**") in the United States District Court for the District of Wyoming (the "**District Court**"), claiming they have no obligation to defend or cover the underlying Lawsuits notwithstanding the fact that they issued insurance policies which were in force and effect when the underlying claims were filed.

The District Court designated the Carrier Litigation a "complex case" based upon "the number of parties, the number of issues, the sensitive discovery problems, and the diversity of claims asserted in the pleadings." Indeed, the reasons that the Insurance Companies denied coverage vary from claim to claim; and the Insurance Companies disagree amongst each other whether one or the other should ultimately be responsible for various claims related to the Lawsuits.

After the Debtor filed bankruptcy, the Insurance Companies filed a motion to lift the automatic stay to permit the Carrier Litigation to proceed. The Debtor and filed an Objection to that motion (the "**First Objection**"). The Official Committee of Unsecured Creditors (the "**Committee**") also objected to the Insurance Companies' motion. The resolution of that motion and the First Objection has been continued to permit the Debtor, the Committee and other parties negotiate a consensual plan of reorganization.

The Debtor filed its Plan of Reorganization on April 24, 2017 (the "**Plan**"). The basic outline of the Plan is as follows:

- Debtor will establish a "Personal Injury Trust" for which the Tort Claimants will be the primary beneficiaries;

- Debtor will assign to the trustee of the Personal Injury Trust certain of its rights under its insurance policies, which would include the right to defend the Carrier Litigation and to prosecute the bad faith denial claims against the Insurance Companies;

- Following confirmation of the Plan, the automatic stay will be lifted and the claims of the Tort Claimants will be liquidated; and,

- Once liability, if any, of each Tort Claimant is determined via the procedures set forth in the Plan, the Tort Claimant shall receive its recovery from the pro rata share of funds available to it from the Personal Injury Trust, including his or her recovery, if any, under the Insurance Policies.

The original hearing on the Debtor's Disclosure Statement (originally scheduled for early July) and the potential confirmation of the Plan were continued to permit the Debtor, the Committee, the Tort Claimants and the Insurance Companies, and others, to participate in three-day mediation to resolve the issues between the various parties. With respect to the Insurance Companies, the mediation was not successful.

At this time, the Debtor is working diligently to resolve a few outstanding issues related to its Plan and prepare for the hearing on the Debtor's Disclosure Statement which is (expected) to be held on October 10, 2017. The Committee, the Tort Claimants and the Debtor anticipate plan confirmation before the end of the year. The Committee and the Tort Claimants appear ready, willing and able to defend the Carrier Litigation once the Plan is confirmed.

But now, in the waning days of this bankruptcy case, when the Debtor has a plan on file, and a hearing is set for the approval of its Disclosure Statement within the month, Lexington has filed an additional motion to lift the stay seeking permission to file a motion for summary judgment in the Carrier Litigation. The timing of Lexington's

motion is unfortunate. At a critical juncture in this case, Lexington wants to force the Debtor to divert time and resources away from the confirmation process to defend a motion for summary judgment on a complex legal issue related to pre-petition litigation, the rights in which the Debtor intends to transfer to a third-party. For this and for the reasons stated below, the Lexington Motion should be denied.

## OBJECTION

### A. Introduction

"The overriding theme in determining whether to grant relief from the stay to permit litigation against Debtor in another forum is the effect of such litigation on the administration of the estate." *In re Danzik*, 549 B.R. 804, 810 (Bankr. D. Wyo. 2016). Even "slight interference with the administration of the estate may be enough to preclude relief in the absence of a commensurate benefit." *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984). Thus, in cases in which permitting litigation to go forward would "involve an expenditure or energy and money and detract from the reorganization effort," bankruptcy courts deny requests for relief from the stay. *Id.* "Interference by creditors in the administration of the estate, no matter how small, through the continuance of a preliminary skirmish in a suit outside the Bankruptcy Court is prohibited." *In re Penn-Dixie Inds., Inc.*, 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980); *see also In re Mego Int'l Inc.*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the automatic stay where the action impacted the "property and administration of [the debtor's] estate.")

The *Curtis* factors are the relevant factors for this Court's determination. In order to minimize legal expenses and to conserve paper and the court's time, the Debtor adopts

and incorporates its analysis of the *Curtis* factors set forth in its First Objection. In this second objection, the Debtor will discuss only those *Curtis* factors in which the analysis has changed from the First Objection.

    **B.**    **Application of the *Curtis* Factors**

    *1.*    *Allowing Lexington to Proceed in the Carrier Litigation Will Interfere with the Bankruptcy Case.*

Lifting the stay will interfere with this bankruptcy case. As discussed above, the Debtor has filed a plan of reorganization and the hearing on the Disclosure Statement is set within the month. The Debtor has been working with the Committee on an almost daily basis trying to resolve all remaining issues between the parties. In other words, the Debtor truly believes that the end is in sight. Accordingly, it is absolutely critical that the Debtor's resources, its management and its counsel be laser focused on confirmation its plan of reorganization. There is simply no reason to lift the stay to permit the diversion of any of the Debtor's resources to defending Lexington's Motion.

Lexington contends that its motion involves a relatively simple issue of law. While the legal simplicity or complexity of Lexington's as yet unseen motion for summary judgment cannot be determined at this time (and once seen will most likely be a matter of debate), Lexington's argument misses the point. As recognized by the District Court, the Carrier Litigation is a "complex case:" it involves multiple issues, multiple parties with millions of dollars at stake. Accordingly, even a response to a "simple" motion for summary judgment will require an in-depth analysis of not only the issues arising within the motion but also of how any legal position taken will preclude or effect

the Debtor's position going forward. The Debtor has scarce financial resources and limited legal resources; its management is already dividing its time between operating and managing a hospital and this bankruptcy case. In summary, any response to Lexington's motion for summary judgment will necessarily interfere with this bankruptcy case.

2.      *Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors, the Creditors' Committee, and Other Interested Parties.*

The Debtor's creditors would be prejudiced to have the Debtor proceed with any portion of the Carrier Litigation prior to confirmation. First, the Debtor's creditors have an interest in having the Debtor devote all of its energy and efforts to confirming a plan of reorganization. The majority of the Debtor's creditors have no interest in the outcome of Carrier Litigation; its resolution only benefits the Tort Claimants and the other parties to that action. Accordingly, if the stay were lifted, the dollars spent by the Debtor in defending Lexington's Motion could only benefit the Tort Claimants; there would be no concomitant benefit to the creditors of the Debtor's estate as a whole.

Second, given that the Debtor plans to turn over responsibility for the Carrier Litigation to the proposed trust, the Tort Claimants have an interest in exercising control of the Carrier Litigation going forward. They most likely will want to employ their own counsel to control motion practice, scheduling and litigation strategy. If the stay is lifted, the Tort Claimants could be prejudiced by not having their own professionals representing their interests; indeed, counsel for the anticipated trustee may have an entirely different legal strategy for responding to Lexington's motion for summary

{Z0186089/1 }                                                       6

judgment than the Debtor. For the foregoing reasons, permitting the Carrier Litigation to continue in any fashion would prejudice the interests of the Debtor's creditors.

### 3. *The Impact of the Stay on the Parties and the Balance of the Hurt.*

This *Curtis* factor also weighs in favor of maintaining the stay because the time, cost, and attention that would be necessary to defend the Debtor in response to Lexington's motion for summary judgment would detract from the resources directed to the chapter 11 proceedings. *See, e.g., In re Northwest Airlines Corp.*, No. 05–17930, 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 3, 2006) (stating that "[t]o allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and ... [t]he distraction and expense of defending such litigation would interfere with judicial economy and the Debtors' process of reorganization") (*citing Shugrue v. Air Lines Pilots Assn. (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2nd Cir. 1990)); *In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 623 (stating that "allowing the actions to proceed would distract the Debtors' management from the bankruptcy proceeding ... thereby affecting the interests of other creditors").

Lexington alleges that permitting its motion for summary judgment to proceed will have minimal effect on the Debtor or its estate. The Debtor disagrees. As stated above, this case is at a critical juncture; the Debtor has a plan on file and the Debtor anticipates that it will be soliciting votes to have a plan confirmed within the next months. There is simply no reason for any of the estate's resources to be diverted to defend a motion for summary judgment in collateral litigation at this time.

Moreover, Lexington is not harmed by waiting these further weeks to see how the plan confirmation process unfolds. To the extent that Lexington complains of delay, Lexington, in part, *caused* the delay. The Debtor continued its hearing on its Disclosure Statement at the request of the Insurance Companies (and others) to allow those parties to focus on the mediation. Now that the mediation has concluded, the Debtor is moving forward with confirming its Plan. Accordingly, the last *Curtis* factor weighs heavily against lifting the stay.

## CONCLUSION

In summary, as this Court recognized in the *Danzik* case, the concern overriding all of the *Curtis* factors is the effect that lifting the stay will have on the administration of the Debtor's estate. In the instant case, where the Debtor, the creditors, and the Debtor's estate would be harmed by permitting the litigation to go forward, and where the proponents of lifting the stay would suffer no harm if the stay remains in place, there is simply no reason to deprive the Debtor of one of the fundamental protections provided by the Bankruptcy Code, *ie*., the breathing room from litigation afforded by the automatic stay. In summary, Lexington will have its day in court, but that day should not occur while the Debtor is attempting to confirm a plan.

**WHEREFORE**, the Debtor requests that the Court deny Lexington Insurance Company's motion and for such other and further relief to which it is entitled.

Dated: Cheyenne, Wyoming
September 18, 2017

        MARKUS WILLIAMS YOUNG AND ZIMMERMANN LLC

        By: /s/ *Jennifer Salisbury*
        Bradley T. Hunsicker (WY Bar No. 7-4579)
        Jennifer Salisbury (WY Bar No. 7-5218)
        106 East Lincolnway Suite 300
        Cheyenne, WY 82001
        Telephone: 307-778-8178
        Facsimile: 307-638-1975
        Email: bhunsicker@markuswilliams.com;
              jsalisbury@markuswilliams.com

        Counsel for the Debtor and Debtor-in-Possession

# CERTIFICATE OF SERVICE

The undersigned certifies that on September 18, 2017, a copy of the foregoing was served via U.S. Mail, postage prepaid, upon those parties indicated below:

**Lexington Insurance Company, Inc.:**

Deborah M. Kellam
Hall & Evans, L.L.C.
866 N. 4th Street, Suite 3
Laramie, WY 82072


Michael S. Davis
Bryan D. Leinbach
ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 223-0400
Fax: (212) 753-0396
mdavis@zeklaw.com
bleinbach@zeklaw.com


/s/Serina Schaefer
Serina Schaefer