FILED

4:14 pm, 1/10/18

Tim J. Ellis
Clerk of Court

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re: ) | |
| ) | Case No.: 16-20326 |
| POWELL VALLEY HEALTH CARE, INC., ) | Chapter 11 |
| ) | |
| Debtor-in-Possession. ) | |

**ORDER GRANTING JOINT MOTION OF UMIA INSURANCE, INC., DEBTOR AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS REQUESTING APPROVAL OF: (I) GLOBAL SETTLEMENT AGREEMENT PURSUANT TO FED. R. BANKR. P. 9019; AND (II) UMIA'S BUYBACK OF UMIA INSURANCE POLICIES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(B) AND (F) OF THE BANKRUPTCY CODE**

Upon the Joint Motion of UMIA Insurance, Inc., Debtor and Official Committee of Unsecured Creditors Requesting Approval of: (I) Global Settlement Agreement (the "Agreement") Pursuant to Fed. R. Bankr. P. 9019; and (II) UMIA's Buyback of UMIA Insurance Policies Free and Clear of Liens, Claims, Encumbrances and Interests Pursuant to Section 363(b) and (f) of the Bankruptcy Code (Docket No. 775) (the "Motion");[1] and upon adequate and sufficient notice of the Motion, the Agreement, and all other related transactions and relief contemplated thereunder; and all interested parties having been afforded an opportunity to be heard with respect to the Motion and all relief related thereto; and the Court having reviewed and considered (i) the Motion, (ii) the objections thereto and (iii) statements of counsel and the evidence presented in support of the relief requested by the Movants in the Motion at a hearing

---

[1] Capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Motion and the Agreement.

{Z0198088/1 }

before the Court on January 23, 2018 (the "Hearing"); and the Court having jurisdiction over this matter; and it appearing that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief requested; and it appearing that the relief requested is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest; and upon the record of the Hearing and all other pleadings and proceedings in this Bankruptcy Case, including the Motion; and after due deliberation thereon; and good and sufficient cause appearing therefor,

THE COURT HEREBY FINDS AND DETERMINES THAT:[2]

**Jurisdiction; Statutory and Rule Predicates; Final Order**

A.     This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(b)(l) and 1334(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (N) and (O).  Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The predicates for the relief requested in the Motion are Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9007, and 9019.

C.     This Settlement Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rule 6004(h), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure (as made applicable herein by Bankruptcy Rule 7054), the Court expressly finds that there is no just reason for delay in the implementation of this Settlement Order, waives any stay and expressly directs entry of judgment as set forth herein.

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

{Z0198088/1 }                                    2

**Notice of the Motion**

D.     Actual written notice of the Motion, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, have been afforded to the following entities and parties (the "Notice Parties"): (i) the Office of the United States Trustee for the District of Wyoming; (ii) the Insureds (and their counsel to the extent known); (iii) the Tort Claimants (and their counsel to the extent known); (iv) all Persons who have made any Claim or provided notice of any potential Claim to the Debtor that is subject to either the UMIA Policies or the UMIA Tail Policy; (v) Homeland; (vi) Lexington; (vii) all creditors and parties in interest who have filed appearances in the Bankruptcy Case; (viii) the proposed trustee for the PIT; (ix) all members of the PIT claims committee; (x) all governmental units responsible for administering Medicare or Medicaid benefits for any of the Tort Claimants; and (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002.

E.     Notice of the Motion, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, was also provided to the general public when the Notice of Publication was published twice in the regular edition of the Casper Star Tribune and Powell Tribune. The Notice of Publication was reasonably calculated to provide interested parties an opportunity to object to the Motion.

F.     As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, including the releases, transactions, and other relief contemplated under the Agreement, has been provided in accordance with the Agreement and Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9007, and 9008. The notices described herein were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion is or shall be required.

{Z0198088/1 }                                              3

G. The disclosures made by the Debtor at the Hearing concerning the Motion, the Agreement and the transactions to take place under the Agreement were good, complete, and adequate.

H. A reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including the Notice Parties.

### Good Faith of UMIA

I. The Agreement was negotiated, proposed, and entered into by the Debtor, Committee, the Tort Claimants, Hansen, Jarvis, the District, HealthTech, Patten, and UMIA without collusion, in good faith, and from arms' length bargaining positions.

J. None of the Parties have engaged in any conduct that would cause or permit the Agreement and/or Buyback to be avoided under Section 363(n) of the Bankruptcy Code.

K. UMIA is purchasing the UMIA Policies in good faith and is a good faith buyer within the meaning of Section 363(m) of the Bankruptcy Code. UMIA has proceeded in good faith in all respects in connection with the Buyback, and therefore is entitled to all of the protections afforded under Section 363(m) of the Bankruptcy Code.

### No Fraudulent Transfer

L. The consideration provided by UMIA pursuant to the Agreement (i) is fair and reasonable, and (ii) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and Section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States.

**Validity of Transfer**

M. Debtor has, to the extent necessary or applicable, (i) full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, (ii) all corporate authority necessary to consummate the transactions contemplated by the Agreement, and (iii) taken all corporate action necessary to authorize and approve the Agreement and the consummation of the transactions contemplated thereby. The Buyback has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtor to consummate the Buyback, the Agreement, or the transactions contemplated thereby.

N. Subject to Section 363(f) of the Bankruptcy Code, the transfer of the UMIA Policies to UMIA will be, as of the Effective Date, a legal, valid, and effective transfer of the UMIA Policies, which transfer vests or will vest UMIA with all right, title, and interest of the Debtor in and to the UMIA Policies, free and clear of all liens, Claims, encumbrances and interests as provided in the Agreement.

**Section 363(f) is Satisfied**

O.    The conditions of Section 363(f) of the Bankruptcy Code have been satisfied; therefore, the Debtor may sell the UMIA Policies free and clear of any, liens, Claims, encumbrances and interests against the UMIA Policies.

P.    UMIA would not have entered into the Agreement and would not consummate the transactions contemplated thereby if the Buyback of the UMIA Policies was not free and clear of all liens, encumbrances, interests and Claims, or if UMIA would, or in the future could, be liable for any such liens, encumbrances, interests and Claims.

Q.    The Debtor may sell the UMIA Policies free and clear of all liens, encumbrances, interests and Claims against the UMIA Policies because, in each case, one or more of the standards

set forth in Section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. Those holders of Claims against the Debtor, the Insureds, or UMIA who did not object, or who withdrew their objections, to the Buyback or the Motion are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code. To the extent the Tort Claimants have rights against the Insureds, thereby triggering coverage under the UMIA Policies, those Claims are in *bona fide* dispute satisfying Section 363(f)(4) of the Bankruptcy Code. Additionally, the Tort Claimants and all other holders of Claims under the UMIA Policies are adequately protected by having their Claims, if any, administered through the Amended Plan and TDPs, subject to any claims and defenses the Debtor, PIT or the estate may possess with respect thereto.

**Preservation of Specific Claims**

R. Neither this Settlement Order nor the Agreement shall: (i) settle or impair any claims, including Patient Claims, Tort Claims, or any other Claims for which any Person other than UMIA (including but not limited to Homeland and/or Lexington) may have liability except as otherwise provided in the Agreement, and including but not limited to liabilities pursuant to which Homeland and/or Lexington may be found to have provided insurance coverage relating to any Patient Claims; or (ii) affect in any manner the Insurance Coverage Litigation, except as to any claims relating to UMIA; (iii) affect, impair, or alter the Tort Claimants' and Insureds' rights, claims, allegations and defenses against Homeland and Lexington in the Insurance Coverage Litigation, arising under or related to any insurance policies issued by Homeland or Lexington, or otherwise arising at law or in equity; or (iv) affect, impair, settle or alter any claim for which UMIA may have liability under the UMIA Tail Policy.

**Section 363(b) is Satisfied**

S. Good and sufficient reasons for approval of the Agreement and the Buyback have been articulated. The Debtor has demonstrated both (i) good, sufficient, and sound business purposes and justifications for approving the Agreement and (ii) compelling circumstances for the Buyback outside the ordinary course of business, pursuant to Section 363(b) of the Bankruptcy Code in that, among other things, the immediate consummation of the Buyback to UMIA is necessary and appropriate to resolve substantial litigation involving the Debtor and numerous other constituencies of the estate. The consummation of the Buyback is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Sections 105(a), 363(b), 363(f), and 363(m), and all of the applicable requirements of such Sections have been complied with in respect of the Buyback.

**Compelling Circumstances for Settlement**

T. The Debtor has demonstrated that the Agreement is fair and equitable and in the best interests of its estate for purposes of a settlement under Bankruptcy Rule 9019. The Agreement: (i) resolves substantial litigation in this and other courts involving the Debtor, Insureds, Tort Claimants, and UMIA for which the "probability of success" on the merits of such litigation is unknown at best, (ii) eliminates the difficulties that would be encountered with respect to collection of any judgments obtained in the litigation involving the Parties to the Agreement, (iii) resolves substantial, complex, and protracted litigation between the Parties which eliminates ongoing litigation expenses, inconvenience, and delays attending such litigation; and (iv) satisfies the paramount interests of the Debtor's creditors, including the Tort Claimants who have agreed to and executed the Agreement. The Agreement does not fall below the lowest point of reasonableness for Court approval under Bankruptcy Rule 9019.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### General Provisions

1. The Motion is granted.

2. The Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved in their entirety under Bankruptcy Rule 9019.

3. All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled by announcement to the Court during the Hearing or by stipulation filed with the Court or the terms of this Settlement Order, including any and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice. Those parties who did not object or withdrew their objections to the Motion are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code.

4. Notice of the Motion was fair and proper under the circumstances and afforded all parties in interest an opportunity to object. The Notice of Publication was reasonably calculated to provide all parties in interest an opportunity to object to the relief in the Motion. No further or better notice of the Motion and the relief requested therein could have been provided under the circumstances of this Bankruptcy Case.

### Approval of the Buyback Pursuant to Section 363 of the Bankruptcy Code

5. <u>The Buyback is in the Debtor's Reasonable Business Judgment</u>. The Debtor has exercised its reasonable business judgment and is authorized and ordered to sell, transfer and/or assign all of its right, title, and interest in and to the UMIA Policies back to UMIA, free and clear of all liens, Claims, encumbrances, and interests, pursuant to Section 363(b) of the Bankruptcy Code.

6. <u>The Buyback is Free and Clear of all Liens, Claims, Encumbrances and Interests</u>. The Debtor's transfer of the UMIA Policies back to UMIA will be a legal, valid, and effective transfer of the UMIA Policies, which transfer vests or will vest UMIA with all right, title, and interest of the Debtor to the UMIA Policies free and clear of all liens, Claims, encumbrances and interests, pursuant to Section 363(f) of the Bankruptcy Code.

7. <u>The Buyback Does not Include the UMIA Tail Policy</u>. The rights and obligations of the Insureds and UMIA under the UMIA Tail Policy shall remain unchanged and unaffected with respect to any claims that are subject to the UMIA Tail Policy. To the extent that any claims are asserted under or against the UMIA Tail Policy, nothing in this Settlement Order or the Agreement shall prevent either the Insureds or UMIA from asserting the Amended Plan, Settlement Order, Channeling Injunction, Supplemental Injunction, or Confirmation Order as a defense, to the extent applicable, to any such claims. Notwithstanding the foregoing, any claims Tort Claimant William Haney may hold shall not be subject to the UMIA Tail Policy but instead shall be subject to the Amended Plan, PIT and TDPs.

8. <u>The Buyback Does not Settle, Impair, Affect, or Alter Claims Against Other Persons</u>. Neither this Settlement Order nor the Agreement shall settle, impair, affect or alter any claims, including Patient Claims, Tort Claims, or any other claims for which any Person other than UMIA has liability, except as otherwise provided in the Agreement, including but not limited to Homeland, Lexington and/or any current or future insurance provider to the Debtor, and including but not limited to liabilities pursuant to which Homeland, Lexington and/or any current or future insurance provider to the Debtor may be found to have provided insurance coverage relating to any Patient Claims, or to affect in any manner the Insurance Coverage Litigation except as to any claims relating to UMIA.

9. <u>UMIA is a "Good Faith Purchaser"</u>. UMIA is a good faith buyer within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of Section 363(m) of the Bankruptcy Code, and the transactions contemplated by the Agreement are undertaken by UMIA without collusion and in good faith, as that term is defined in Section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of any provision of this Order and the authorization provided herein to consummate the Buyback shall not, at UMIA's option, affect the validity of the Buyback, unless such authorization and such Buyback are duly stayed pending such appeal.

10. <u>Arm's Length Transaction</u>. The Agreement was negotiated and entered into by the Parties without collusion, in good faith, and from arms' length bargaining positions.

11. <u>Reasonably Equivalent Value</u>. The consideration provided by UMIA pursuant to the Agreement constitutes: (i) reasonably equivalent value (as such term is defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and Section 548 of the Bankruptcy Code) received by the Debtor from UMIA for the UMIA Policies; (ii) a fair and reasonable settlement of the Parties' disputes and of their respective rights and obligations; and (iii) fair consideration under the Bankruptcy Code and under the laws of the United States and the State of Wyoming.

## Channeling Injunction[3]

12. The Channeling Injunction attached to the Agreement is hereby approved.

---

[3] The rights of claimant Curtis are not expanded by virtue of any injunctions set forth herein.

{Z0198088/1}                                    10

13. In consideration of the of the undertakings of UMIA under the Agreement, including payment of the Settlement Amount, and in a manner consistent with the protections afforded to the Insureds and UMIA pursuant to Section 105 of the Bankruptcy Code:

    a.    any and all Claims that have been made or could be made against any Insured under the UMIA Policies; any and all Claims relating to the UMIA Policies; and any and all Claims relating to UMIA's handling of any Claims with respect to any Insured that have been made or could be made under the UMIA Policies, including any and all such Claims that have been assigned, could be assigned, or are purported to be assigned, by any claimant to any other person or entity, are channeled into the PIT and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts as established under the Amended Plan and the TDPs as the sole and exclusive remedy for all holders of such Claims; and

    b.    all Persons who have held or asserted, hold or assert, or may in the future hold or assert, any Claim relating to the UMIA Policies, including Claims against Insureds under the UMIA Policies, and Claims relating to UMIA's handling of any Claim related to the UMIA Policies, including any and all such Claims that have been assigned or purported to be assigned or which could be assigned to others, are hereby permanently stayed, enjoined, barred and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any such Claim relating to UMIA, including:

        i.    commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claim that is channeled to the PIT against any of the Insureds or UMIA or against the property of any of the Insureds or UMIA;

        ii.    enforcing, attaching, collecting, or recovering, by any manner or means, from any of the Insureds, or from the property of any of the Insureds or UMIA, with respect to any such Claim channeled to the PIT, any judgment, award, decree, or order against any of the Insureds or UMIA;

        iii.    creating, perfecting, or enforcing any lien of any kind against any of the Insureds or UMIA, or the property of any of the Insureds or UMIA with respect to any such Claim channeled to the PIT;

        iv.    asserting, implementing, or effectuating any Claim channeled to the PIT of any kind against:

            1.    any obligation due any of the Insureds or UMIA;

            2.    any Insureds or UMIA; or

        3.    the property of any of the Insureds or UMIA.

    v.    taking any act, in any manner, in any place whatsoever that does not conform to, or comply with, the provisions of this Settlement Order; and

    vi.    asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due of the Insureds or UMIA or the property of Insureds or UMIA.

14.    Except as otherwise expressly provided in this Settlement Order, the provisions of the Channeling Injunction will further operate, as between all Insureds and UMIA, as a mutual release of all Claims which any Party may have against any other Party, the foregoing channeling provisions are an integral part of the Agreement and this Settlement Order, and are essential to their implementation.

15.    For the avoidance of doubt, this Channeling Injunction relates only to Claims that have been made or could be made against any Insured under the UMIA Policies, and to all claims relating to the UMIA Policies and/or UMIA's handling of any claims that have been made or could be made under the UMIA Policies, including claims that have been assigned, are purported to be assigned, or could be assigned by any claimant to any other person or entity.  This Channeling Injunction is not intended to, and shall not in any manner whatsoever, impair, alter or prejudice any claims the Insureds or Tort Claimants may hold (other than claims described in the preceding sentence) relating to or against Homeland Insurance Company of New York and/or Lexington Insurance Company.

16.    This Channeling Injunction shall not affect or impair any rights that an Insured or Tort Claimant holds pursuant to any Third Party Agreement, including but not limited to agreements where an Insured voluntarily agrees to confess judgment on any Claim in exchange for a covenant not to execute by the other party.

17. Notwithstanding anything in this Channeling Injunction, and as expressly set forth in Section 13 of the Agreement, any claims that are subject to or covered by the UMIA Tail Policy, rather than the UMIA Policies, shall not be enjoined by this Channeling Injunction. Claims that are asserted pursuant to the UMIA Tail Policy shall be dealt with, resolved, defended, or challenged in accordance with the terms and provisions of the UMIA Tail Policy and the provisions of the Agreement.

### Supplemental Injunction[4]

18. The Supplemental Injunction attached to the Agreement is hereby approved.

19. Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and in consideration of the undertaking of UMIA pursuant to the Agreement, including UMIA's purchase of all of the Debtor's right, title and interest in and to the UMIA Policies from the Debtor free and clear of all liens, Claims, encumbrances and interests, pursuant to Sections 363(b) and (f) of the Bankruptcy Code, any and all Persons who have held, now hold, or who may in the future hold any liens, Claims, encumbrances and interests (including all debt holders, all equity holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, Tort Claimants, Future Tort Claimants, non-settling insurers, and all others holding interests of any kind or nature whatsoever, including those Claims to be released pursuant to the Agreement) against any of the Insureds or against UMIA relating to and/or arising under the UMIA Policies, which, directly or indirectly relate to any Claims or any insurance claims related to such Claims, are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce, or

---

[4] The rights of claimant Curtis are not expanded by virtue of any injunctions set forth herein.

{Z0198088/1}                                13

attempt to assert or enforce any such lien, Claim, encumbrance and interest against UMIA or any of the Insureds relating to or under the UMIA Policies, including:

    a.     commencing or continuing in any manner any action or other proceedings against the Insureds and/or UMIA or the property of the Insureds and/or UMIA;

    b.     enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree, or order against the Insureds or UMIA or the property of the Insureds and/or UMIA;

    c.     creating, perfecting, or enforcing any lien of any kind against the Insureds and/or UMIA or the property of the Insureds and/or UMIA;

    d.     asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due the Insureds and/or UMIA or the property of the Insureds and/or UMIA;

    e.     taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of this Settlement Order.

20.     Any and all Persons holding liens, Claims, encumbrances or interests of any kind under the UMIA Policies shall be permanently enjoined from pursuing such Interests or Claims against the Insureds and/or UMIA.

21.     **Permanent Injunction Against Prosecution of Released and Channeled Claims.** Except as otherwise expressly provided in this Settlement Order, for the consideration described herein, all Persons who have held, hold, or may hold Claims channeled to the PIT or Claims against the Insureds or UMIA relating to and/or arising under the UMIA Policies, whether known or unknown, and their officers, directors, officials, representatives, council members, employees, accountants, agents, attorneys, and all other acting for or on their behalf, will be permanently enjoined on and after the effective date of the Plan from:

    a.     commencing or continuing in any manner, any action or any other proceeding of any kind with respect to any Claim, including, but not limited to, any Tort Claim or any Future Tort Claim against any Insured or against UMIA, or against the property of any Insured or UMIA;

  b.  seeking the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against any Insured or against UMIA, or against the property of any Insured or UMIA, with respect to any Claim channeled to the PIT;

  c.  creating, perfecting, or enforcing any encumbrance of any kind against any Insured or against UMIA or the property of any Insured or UMIA with respect to any Claim channeled to the PIT;

  d.  asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to any Insured or to UMIA, with respect to any Claim channeled to the PIT; and

  e.  taking any act, in any manner, in any place whatsoever, that does not conform to or comply with the provision of the Agreement, the Settlement Order, the order confirming the Amended Plan, or any documents incorporated into the Amended Plan, including the TDPs.

The foregoing injunctive provisions are an integral part of the Agreement and this Settlement Order, and are essential to their implementation.

  22.  **Term of Injunctions or Stays and Confirmation of Settlements.** On the Effective Date of the Agreement, the injunctions provided for in the Agreement shall be deemed issued, entered, valid, and enforceable according to their terms and shall be permanent and irrevocable. All injunctions and/or stays provided for in the Agreement, the injunctive provisions of Sections 524 and 1141 of the Bankruptcy Code, and all injunctions or stays protecting any of the Insureds and UMIA are permanent and will remain in full force and effect following the Effective Date of the Agreement and are not subject to being vacated or modified. For the avoidance of doubt, neither the Agreement nor injunctions affect the PIT or Tort Claimants' rights to pursue certain of the Insureds (which have agreed to release UMIA pursuant to this Agreement) under the Amended Plan, the TDPs or any agreement with Hansen, HealthTech or Patten.

  23.  This Supplemental Injunction is not intended to, and shall not in any manner whatsoever, impair, alter or prejudice any claims the Insureds or Tort Claimants may hold

(excluding claims described above) relating to or against Homeland Insurance Company of New York and/or Lexington Insurance Company.

24. Furthermore, this Supplemental Injunction shall not affect or impair any rights that an Insured or Tort Claimant holds pursuant to any Third Party Agreement, including, but not limited to agreements where an Insured voluntarily agrees to have judgment confessed against such Insured for any Claim in exchange for a covenant not to execute.

25. Notwithstanding anything in this Supplemental Injunction, and as expressly set forth in Section 13 of the Agreement, any claims that are subject to or are covered by the UMIA Tail Policy, rather than the UMIA Policies, shall not be enjoined by this Supplemental Injunction. Claims that are asserted pursuant to the UMIA Tail Policy shall be dealt with, resolved, defended, or challenged in accordance with the terms and provisions of the UMIA Tail Policy and the provisions of the Agreement.

## Miscellaneous

26. Restrictions on the Buyback. To the extent that (a) there are restrictions on the sale, assignment, transfer, conveyance or delivery, or attempted sale, assignment, transfer, conveyance or delivery, to UMIA of any of the UMIA Policies or (b) the same would require the consent, authorization, approval or waiver of a person or entity who is not a party to the Agreement or an affiliate of a party to the Agreement (including any Governmental Authority), then (a) such consent, authorization, approval or waiver is not required and/or (b) the UMIA Policies that are subject to such consent, authorization, approval or waiver shall be assigned or transferred regardless of any such restriction or necessary consent, authorization, approval or waiver and that there shall be no breach or adverse effect on the rights of the Debtor or UMIA for the failure to

obtain any such consent, authorization, approval or waiver or otherwise comply with such restriction.

27. <u>Post Effective Date Actions and Transactions</u>. The Parties, and each of their respective officers, employees, and agents, will be authorized and empowered to take all actions and execute and deliver any and all documents and instruments necessary or appropriate to implement and effectuate the terms of the Agreement and this Settlement Order.

28. <u>Waiver of Stay</u>. For cause shown, pursuant to Bankruptcy Rule 6004(h), this Settlement Order shall not be stayed, shall be effective immediately upon entry, and the Debtor and the Parties are authorized to close the Buyback, according to the terms of the Agreement, immediately upon entry of this Settlement Order.

29. <u>Corporate Authority to Enter into Agreement</u>. The Debtor has, to the extent necessary or applicable, (i) full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, (ii) all corporate authority necessary to consummate the transactions contemplated by the Agreement, and (iii) taken all corporate action necessary to authorize and approve the Agreement and the consummation of the transactions contemplated thereby. The transactions contemplated by the Agreement have been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtor to enter into the Agreement or to consummate the Buyback and the other transactions contemplated thereunder.

30. <u>Omission of Specific Provisions of Agreement</u>. The failure to specifically include any particular provision of the Agreement in this Settlement Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety; *provided* that this Settlement Order shall govern if there is any

inconsistency between the Agreement (including all ancillary documents executed in connection therewith) and this Settlement Order. Likewise, all of the provisions of this Settlement Order are non-severable and mutually dependent.

31. No Waiver. Except as otherwise expressly set forth herein, nothing in this Settlement Order shall modify or waive any closing conditions or termination rights in the Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

32. Binding Nature of Settlement Agreement. This Settlement Order and the Agreement shall be binding in all respects upon the Debtor and its bankruptcy estate; the Committee; the PIT (or any other entity formed pursuant to the Amended Plan or any other confirmed Chapter 11 plan); all creditors of, and holders of equity interests in, the Debtor; any holders of liens or Claims (whether known or unknown) in, against, or on all or any portion of the UMIA Policies; the Tort Claimants; the Insureds; UMIA and all successors and assigns of UMIA; and any trustee subsequently appointed in this Chapter 11 Bankruptcy Case or upon a conversion of this Bankruptcy Case to Chapter 7 under the Bankruptcy Code, or upon dismissal of this Chapter 11 Bankruptcy Case or any Chapter 7 case that is dismissed in the event of conversion. This Settlement Order and the Agreement approved hereby shall inure to the benefit of UMIA.

33. Retention of Jurisdiction. This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Settlement Order and the Agreement approved hereby, all amendments thereto and any waivers and consents thereunder, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to this Settlement Order and the Agreement, including but not limited to retaining jurisdiction to (a) interpret, implement, and enforce the provisions of this Settlement Order; and (b) protect UMIA

against any liens, Claims, or other interests in or against the UMIA Policies of any kind or nature whatsoever.

34. Conflicts. To the extent that the terms of any prior order or pleading entered or filed in the Bankruptcy Case (including but not limited to the Amended Plan and any further amendments thereto) are inconsistent with the terms of this Settlement Order, the terms of the Settlement Order shall govern.

35. Confirmation Order. The terms of this Settlement Order shall be expressly incorporated into the Confirmation Order.

36. Tort Claimant Werbelow. Nothing in this Settlement Order shall impair or otherwise prejudice Tort Claimant Werbelow's rights to become an allowed claimant in the Bankruptcy Case, and all such rights are reserved to their fullest extent. Tort Claimant Werbelow's rights to become an allowed claimant in the Bankruptcy Case shall be determined by the Court. Tort Claimant Werbelow's right, title and interest in, and to, the UMIA Settlement Amount (if any) shall be subject to later determination by the Court.

BY THE COURT

_Cathleen D Parker_  1/10/2018
Honorable Cathleen D. Parker
United States Bankruptcy Judge