Bradley T. Hunsicker (WY Bar No. 7-4579)
Jennifer Salisbury (WY Bar No. 7-5218)
John F. Young (Pro Hac Vice)
Markus Williams Young & Zimmermann LLC
106 E. Lincolnway, Suite 300
Cheyenne, WY  82001
Telephone (307) 778-8178
Facsimile (307) 778-8953
bhunsicker@MarkusWilliams.com
jyoung@MarkusWilliams.com
jsalisbury@MarkusWilliams.com

*Attorneys for Debtor*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No.: 16-20326 |
| POWELL VALLEY HEALTH CARE, INC., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR POWELL VALLEY HEALTH CARE, LLC

---

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ............................................................................................... 1

II.  ARGUMENT ...................................................................................................................... 3

  A.  The Plan Complies with the Applicable Provisions of the Bankruptcy Code and
  Should Be Confirmed ....................................................................................................... 3

    i.     The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code ............. 3

    ii.    The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code ........... 12

    iii.   The Plan Complies with Section 1129(a)(3) of the Bankruptcy Code............ 12

    iv.    The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code ........... 13

    v.     The Plan Complies with Section 1129(a)(5) of the Bankruptcy Code ........... 14

    vi.    The Plan Complies with Section 1129(a)(6) of the Bankruptcy Code ........... 14

    vii.   The Plan Complies with Section 1129(a)(7) of the Bankruptcy Code ........... 14

    viii.  The Plan Complies with Section 1129(a)(8) of the Bankruptcy Code ........... 15

    ix.    The Plan Complies with Section 1129(a)(9) of the Bankruptcy Code ........... 16

    x.     The Plan Complies with Section 1129(a)(10) of the Bankruptcy Code ......... 17

    xi.    The Plan Complies with Section 1129(a)(11) of the Bankruptcy Code ......... 17

    xii.   The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code ......... 18

    xiii.  The Plan Complies with Section 1129(a)(13) of the Bankruptcy Code......... 19

    xiv.   The Plan Complies with Section 1129(a)(14) of the Bankruptcy Code ......... 19

    xv.    The Plan Complies with Section 1129(a)(15) of the Bankruptcy Code ......... 19

    xvi.   The Plan Complies with Section 1129(a)(16) of the Bankruptcy Code ......... 19

    xvii.  The Plan Complies with Section 1129(b) of the Bankruptcy Code................ 19

  B.  Additional Matters ................................................................................................... 21

    i.     Approval of Modifications to the Plan ………………………………………….21

III.  CONCLUSION .............................................................................................................. 23

Powell Valley Health Care, Inc. (the "Debtor") files this memorandum of law (the "Memorandum") in support of confirmation of the *Amended Chapter 11 Plan of Reorganization dated for Powell Valley Health Care, Inc.* (Docket No. 656), as modified and amended (the "Plan"). In further support of confirmation of the Plan, the Debtor submits the *Declaration of Terry Odom in Support of the Amended Chapter 11 Plan of Reorganization for Powell Valley Health Care, Inc.* (the "Odom Declaration"), and the *Declaration of Thomas M. Barry in Support of the Amended Chapter 11 Plan of Reorganization for Powell Valley Health Care, Inc.* (the "H2C Declaration"), attached hereto at "Exhibit A" and "Exhibit B", and respectfully represents as follows.

## I.    PRELIMINARY STATEMENT

1.      On October 25, 2017, the Bankruptcy Court approved the *Second Amended Disclosure Statement for the Amended Chapter 11 Plan of Reorganization dated September 26, 2017 for Powell Valley Health Care, Inc.* (Docket No. 701) (the "Disclosure Statement") and granted the Debtor's *Motion for Entry of an Order (A) Approving Procedure for Solicitation of Votes on Chapter 11 Plan; (B) Setting Deadlines and Procedures for Tardy Claims; and (C) Scheduled Hearing for Confirmation of Chapter 11 Plan* (Docket No. 652) (the "Solicitation Motion")[1] in connection therewith. Thereafter, the Debtor solicited acceptances of the Plan from its creditors entitled to vote. The solicitation period has concluded and voting creditors have overwhelmingly accepted the Plan. In short, there is broad and widespread support for the Plan, as evidenced by the following table summarizing the voting results:

| Plan Class | Accept Amount | Accept Count | Reject Amount | Reject Count |
|---|---|---|---|---|
| **Class 1 – Priority Claims** | N/A | N/A | N/A | N/A |
| **Class 2 – Secured Claims of First Bank of Wyoming** | $1,103,806.79 | 2 | 0 | 0 |
| **Class 3 – Trust Personal Injury Claims** | $31,000,000 | 31 | 1[2] | $2,000,000 |

---

[1]    Terms not defined herein shall be defined as indicated in the Plan.

[2]    The only creditor that voted to reject the Plan is Peggi Jo Werbelow; however, Ms. Werbelow did not timely file a proof of claim and therefore her claim is not allowed pursuant to 11 U.S.C. § 502(b)(9). Accordingly, her vote need not be counted for acceptance or rejection of the Plan pursuant to 11 U.S.C. § 1126(a), which provides that the holder of an *allowed* claim under 11 U.S.C. § 502 may accept or reject a

| | | | |
|---|---|---|---|
| **Class 4 – Trade Claims** | $29,416.93 | 6 | 0 | 0 |
| **Class 5 – Reimbursement, Contribution and Indemnity Claims** | $4.00 | 4 | 0 | 0 |
| **Class 6 – Subordinated Claims** | N/A | N/A | N/A | N/A |
| **Class 7 – Covered Claims** | $3,000,000 | $3^3$ | 0 | 0 |
| **Class 8 – Other Unsecured Claims** | N/A | N/A | N/A | N/A |

2.     Such support reflects the significant achievements made by the Debtor in its lengthy and comprehensive negotiations with the key stakeholders in the above-captioned chapter 11 case (the "Chapter 11 Case"). The Debtor filed the Chapter 11 Case to resolve numerous prepetition lawsuits ("Prepetition Lawsuits") and other claims arising from certain procedures performed by Dr. Hansen at the Debtor's hospital between 2014 and 2015 (collectively, as defined in the Plan, the "Trust Personal Injury Claims"). Without a timely resolution of the Trust Personal Injury Claims, the Debtor feared that its mission of providing high-quality healthcare to the greater Powell, Wyoming community would be jeopardized.

3.     Since the commencement of the Chapter 11 Case, the Debtor has engaged in extensive, arm's-length and good faith negotiations with its major key stakeholders – continued referred to as the Tort Claimants, the Committee, the District, HealthTech and Patten, and the prior insurance carriers of the Debtor. The Plan is a product of such negotiations as well as consensual resolutions of issues with other creditors and stakeholders. Consistent with the primary policies of the Bankruptcy Code, the Plan provides considerable value to the Debtor's creditors, including holders of Trust Personal Injury Claims (*i.e.*, the Tort Claimants"), while permitting the Debtor to continue as a going concern, thereby preserving jobs and an invaluable community resource. Further, the Plan fairly and equitably resolves the issues that necessitated the filing of this Chapter 11 Case.

---

plan.  Because the Class 3 has clearly accepted the Plan regardless of whether or not Ms. Werbelow's vote is counted, the Debtor has included her vote to reject the Plan in this tabulation.

[3]     In light of this Court's recent Order Granting Joint Motion of UMIA Insurance, Inc., Debtor and Official Committee of Unsecured Creditors Requesting Approval of: (I) Global Settlement Agreement Pursuant to Fed.R.Bankr.P. 9019; and (II) UMIA's Buyback of UMIA Insurance Policies Free and Clear of Liens, Claims, Encumbrances and Interests Pursuant to Sections 363(b) and (f) of the Bankruptcy Code [Doc. 792] (the "UMIA Settlement Motion"), certain claims in Class 7 as stated in the Plan will be removed from Class 7 considering that said claimants were parties to the UMIA Settlement Motion and elected to be treated as Class 3 claimants.

Clearly, the Plan is in the best interests of all parties in interest, achieves the goals of chapter 11, and should be confirmed.

4.      Notably, despite the complexity of the Chapter 11 Case, there are no outstanding objections to the Plan, and 52 of the 53 creditors who voted for the Plan voted to accept the Plan.

## II.    ARGUMENT

### A.    The Plan Complies with the Applicable Provisions of the Bankruptcy Code and Should Be Confirmed

#### i.    The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code

5.      Pursuant to section 1129(a)(1) of the Bankruptcy Code, a plan of reorganization must comply with the applicable provisions of chapter 11 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). The legislative history of section 1129(a)(1) indicates that a principal objective of this provision is to assure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a plan of reorganization set forth in sections 1122 and 1123 of the Bankruptcy Code. *See* S. Rep. No. 95-989, at 124-25 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5904-05; H.R. Rep. No. 95-595, at 402 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368. The Plan complies with and satisfies all of these provisions.

##### a.    The Plan Complies with Section 1122 of the Bankruptcy Code

6.      Pursuant to section 1122(a) of the Bankruptcy Code, a plan proponent is afforded significant flexibility in classifying claims, provided there is a reasonable basis for the classification scheme and all claims within a particular class are substantially similar. *See In re City of Colo. Springs Spring Creek Gen. Imp. Dist.*, 187 B.R. 683, 687 (Bankr. D. Colo. 1995) ("The express language of § 1122(a) imposes only one requirement—that claims in a given class be substantially similar to each other."); *In re Dean*, 166 B.R. 949, 952-53 (Bankr. D.N.M. 1994) ("Section 1122 governs classification and provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interest [six] of such class. . . . The Debtor must demonstrate reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims in order to separately classify." (internal quotations and citations omitted)).

7.      Under the Plan, each class of Claims contains only Claims that are substantially similar to the other Claims within such class. *See* Plan, Articles II and IV. In addition, valid business, legal, and factual reasons exist for the separate classification of

each of the classes of Claims created under the Plan, and such classes do not unfairly discriminate between or among holders of Claims. *See* Odom Decl., ¶ 6.

### b.    The Plan Complies with Section 1123 of the Bankruptcy Code

8.    The Plan also complies with section 1123(a) of the Bankruptcy Code, which sets forth certain requirements with which every chapter 11 plan must comply. *See* 11 U.S.C. § 1123(a). First, the Plan designates classes of claims as required by section 1123(a)(1) of the Bankruptcy Code. *See* Plan, Article II. Second, the Plan specifies which classes of Claims are not impaired or are deemed rejecting and sets forth the treatment for all impaired classes of Claims as required by sections 1123(a)(2) and (3) of the Bankruptcy Code. *See id.* at Articles III and IV. Indeed, the Plan specifies the treatment of all of the classes designated under the Plan, whether such classes are impaired or not. *Id.* Third, the Plan provides for the same treatment for each Claim within a particular class as required by section 1123(a)(4) of the Bankruptcy Code. *See id.* at Article IV. Fourth, as described in more detail below, the Plan provides for adequate means of implementation as required by section 1123(a)(5). *See id.* at Article VII. Finally, the Plan contains only provisions that are consistent with the interests of creditors with respect to the manner of selection of any officer, director, or trustee under the Plan, and any successor to such officer, director, or trustee, as required by section 1123(a)(7). *See id.* at §§ 7.2, 7.3 and 7.9.

9.    In addition to the provisions required by section 1123(a) of the Bankruptcy Code, the Plan also contains numerous provisions permitted by section 1123(b) of the Bankruptcy Code. Among other things, the Plan provides for the assumption and rejection of executory contracts and unexpired leases, contains a procedure for the resolution of the Trust Personal Injury Claims, which includes the settlement of the Claims of or against the District, HealthTech, and Patten, and provides for the retention of certain Causes of Action and distribution procedures, as provided for in the Plan. *See id.* at Article XII, and §§ 7.2, 7.7, 7.10, 7.11, 7.12, 7.13, 7.14, 7.15, 7.16 and Articles VIII and IX. All of the provisions of the Plan are consistent with section 1123(b) of the Bankruptcy Code and permissible under applicable law.

### (1)    Executory contracts and unexpired leases

10.    Consistent with section 1123(b)(2) of the Bankruptcy Code, the Plan permits the Debtor to reject or assume executory contracts and unexpired leases, as permitted by section 365 of the Bankruptcy Code. *See* Plan, § 12.1. Under section 365 of the Bankruptcy Code, a debtor may reject executory contracts and unexpired leases that are burdensome to the estate. A debtor may assume an executory contract or unexpired lease if the debtor (i) cures outstanding defaults under the contract or lease under section 365(b)(1) of the Bankruptcy Code, (ii) compensates, or provides adequate assurances that it will promptly compensate, the counterparty to the executory contract or unexpired lease for any actual

pecuniary loss to such counterparty resulting from the debtor's default, and (iii) provides adequate assurances to such counterparty that it can perform under the executory contract or unexpired lease in the future.

11.     A debtor's decision to assume or reject an executory contract or unexpired lease is subject to judicial review under the business judgment standard. *See In re Nat'l. Oil Co.*, 80 B.R. 525, 526 (Bankr. D. Colo. 1987) ("[T]he requirements of notice and opportunity for a hearing under Bankruptcy Rule 9014 provide the creditors and the court with an opportunity to examine the efficacy of a debtor's decision to reject a lease under the guidelines of the business judgment test."). Here, the Debtor has exercised its sound business judgment in all of its decisions regarding the rejection and assumption of executory contracts and unexpired leases under the Plan. Odom Decl., ¶ 8. The Debtor seeks to reject contracts that are burdensome or of inconsequential value to the Estate and assume those with value (related to Dr. Hansen). *Id.*

12.     Moreover, with respect to any executory contracts or unexpired leases being assumed pursuant to the Plan, the Debtor has satisfied the requirements of section 365(b). The Debtor proposes to cure any defaults with respect to the executory contracts or unexpired leases subject to assumption. *See* Plan, § 12.2. and Notice of (I) Schedule of Assumed Executed Contracts and Unexpired Leases; (II) Proposed Cure Amounts Related Thereto; And, (III) Opportunity to Object Filed in Accordance with Sections 12.1 and 1.5 of the Debtor's Amended Chapter 12 Plan of Reorganization Dated September 26, 2017 (Docket No. 735) filed herein on November 22, 2017, which expressly sets forth a proposed cure amount and provided an opportunity for counterparty objections.   *No counterparty objected to the assumption of the assumed executory contracts or the proposed cure amounts.*

13.     Finally, each counterparty to an assumed executory contract or unexpired lease of the Debtor has adequate assurances of future performance because, as more particularly set forth below, the Plan is feasible and the Debtor will be able to perform its post-Effective Date obligations. *See* Odom Decl., ¶ 25; H2C Decl., ¶¶ 8 and 9.

### (2)      Settlements

### a.      *Settlement Between the District, the Debtor, the Tort Claimants and the Committee.*

14.     As discussed above, the Plan represents the consensual resolution of multiple disputes among the Debtor and various of the Debtor's constituencies.  The Debtor leases its facilities (the "Hospital Leases") from the District. On August 18, 2016, the Debtor filed a timely motion requesting that the Bankruptcy Court authorize it to assume the Hospital

Leases. *See* (Docket No. 248). The Committee objected to the motion to assume the Hospital Leases. The Debtor, the District, the Tort Claimants, and the Committee have reached a global resolution, imbedded within the Plan, regarding the assumption of the Hospital Leases and the settlement of any and all claims by and among the Debtor, the Committee, the Tort Claimants, and the District.

15.    In exchange for a release and injunction in the Plan from the pursuit of any and all claims by the Debtor, the Committee, and creditors, including the Tort Claimants, against the District, the Plan provides that the District shall refund to the Debtor $250,000 prior to the Effective Date of the Plan, and the current lease between the District and the Debtor that currently requires monthly payments of $67,500 will be amended as follows:

- The monthly rent due thereunder shall be equal to $0.00 per month for the first twelve months (12 months) following the Effective Date of the Plan;
- The monthly rent due thereunder shall be equal to $37,500 per month beginning the thirteenth month following the Effective Date of the Plan, and continuing thereafter for forty-eight (48) months;
- The monthly rent due thereunder shall be equal to $47,500 beginning the sixty-first month following the Effective Date of the Plan, and shall remain $47,500 per month for a period of thirty-five months (35 months);
- On a monthly basis, the District shall agree that the Debtor is obligated to satisfy each Initial Monthly Distribution or Subsequent Monthly Distribution prior to satisfying its rental obligation for each applicable month until such time as the Initial Monthly Distributions and Subsequent Monthly Distributions are paid in full (i.e., payments to the Personal Injury Trust shall be satisfied each month prior to rent payments to the District);
- The District shall agree that so long as the Debtor is current on its Initial Monthly Distributions and/or Subsequent Monthly Distributions or has cured any default thereunder, the District may not terminate any lease between the District and the Debtor that was effective on the Petition Date;
- The Debtor may not purposely default on any Initial Monthly Distribution or Subsequent Monthly Distribution for the purposes of creating a default under any lease between the District and the Debtor that was effective on the Petition Date. In the event that the Debtor believes it may default on any Initial Monthly Distribution or Subsequent Monthly Distribution, the Debtor shall immediately notify the Personal Injury Trustee and First Bank of Wyoming in writing, and provide financial documentation, such as a bank statement, to the Personal Injury Trustee and First Bank of Wyoming demonstrating that the Debtor is unable to make said payment(s);

- The District shall agree that so long as the Debtor is current on its Initial Monthly Distributions and/or Subsequent Monthly Distributions or has cured any default thereunder, the District may not terminate any of the Hospital Leases; and,

- All other provisions of the Hospital Leases shall remain intact and shall be assumed by the Debtor.

b.    *Settlement between the Debtor, HealthTech, Patten, the Tort Claimants and the Committee*

16.    The Plan also includes a global resolution and settlement of any and all claims against HealthTech and Patten (the "HTMS Settling Parties") by the Debtor, the Committee, and the Tort Claimants.  In exchange for a release and injunction in the Plan from the pursuit of any and all claims by the Debtor, the Committee, and creditors, including the Tort Claimants, against the HTMS Settling Parties, the HTMS Settling Parties shall provide the following consideration:

- The HTMS Settling Parties shall pay a total of $127,500.00, which shall be paid in two (2) installments. The first payment shall be made one (1) year after entry of a final non-appealable Confirmation Order. The first payment shall be $2,500.00 to Tort Claimants Crawfords, and $50,000.00 to be allocated per capita to each Tort Claimant as set forth in the Plan.

- The second payment shall be made two (2) years after entry of a final non-appealable Confirmation Order. The second payment shall be $75,000.00 and shall be paid to the Personal Injury Trust, unless otherwise directed by the Personal Injury Trustee (sometimes, the "HealthTech and Patten Settlement Payment").

- The HTMS Settling Parties shall on the Effective Date assign to the Personal Injury Trust, to the extent assignable by applicable bankruptcy and non-bankruptcy law: (i) all rights and claims as an insured under the Insurance Policies, and all rights and claims set forth in, or arising under the Declaratory Judgment Action, including but not limited to coverage claims and extra-contractual claims, including bad faith claims, without representations or warranties (the "HTMS Settling Parties Transferred Causes of Action"); and, (ii) all rights and claims, if any, arising under or relating to the HPL Coverage provision set forth in Lexington policies 6796764 and 6797081, without representations or warranties (collectively, the claims referred to herein are the "HTMS Settling Parties Transferred Causes of Action").

- With respect to the HTMS Settling Parties Transferred Causes of Action, the HTMS Settling Parties agree to entry of a judgment with a covenant not to execute or enforce against the HTMS Settling Parties. Any judgment shall be

enforceable only against available insurance coverage relating to the Insurance Policies.

- Within three (3) Business Days after the Effective Date, the HTMS Settling Parties shall withdraw with prejudice their Proofs of Claim (Nos. 8 and 9). For the avoidance of doubt, the HTMS Settling Parties shall not be entitled to any distribution, or to share in any distribution, under the Plan.

- The HTMS Settling Parties shall support confirmation of the Plan.

- The HTMS Settling Parties shall cooperate with the Personal Injury Trust in the prosecution of all of its claims acquired under the Plan. The Personal Injury Trust shall pay all costs and legal fees associated with the Declaratory Judgment Action proceeding after assignment. With respect to other litigation and the Declaratory Judgment Action, the Personal Injury Trust shall pay the HTMS Settling Parties' out of pocket costs, excluding legal fees. For the avoidance of doubt, "out of pocket costs" include but are not limited to plane tickets, hotel fees, and other travel expenses.

- The HTMS Settling Parties shall cooperate to achieve the remand of any cases for which they sought removal.

5.      The settlements comply with Bankruptcy Rule 9019 and should be approved in conjunction with confirmation. Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Compromises are favored in bankruptcy because they minimize the costs of litigation and further the parties' interests in expediting administration of a bankruptcy estate. *Korngold v. Loyd* (*In re S. Med. Arts Cos.*), 343 B.R. 250, 255-56 (B.A.P. 10th Cir. 2006); *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996); 10 Alan Resnick & Henry J. Sommer, *Collier on Bankruptcy* 9019.01 (16th ed. rev. 2012). In deciding whether to approve a compromise under Bankruptcy Rule 9019, the Bankruptcy Court must determine if the settlement is "fair, reasonable, and in the interest of the estate." *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (B.A.P. 10th Cir 1997); *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (internal citations omitted). This is known as the "best interests" test.

6.      Under this standard, and as further articulated by courts within the Tenth Circuit and in other jurisdictions, the reasonableness of a proposed compromise and settlement is determined by considering the following four factors:

- the chance of success on the litigation on the merits;
- possible problems in collecting the judgment;
- the expense and complexity of the litigation; and
- the interest of the creditors.

*Korngold*, 343 B.R. at 256; *Kopexa Realty Venture Co.*, 213 B.R. at 1022 (B.A.P. 10th Cir. 1997).

7.      Sections 7.11 through 7.16 of the Plan implement the terms of the settlements described above.  Included within the Plan are the third-party releases of the District, Dr. Jarvis and the HTMS Settlement Parties.  The case law is clear that a plan of reorganization may contain third-party releases in limited circumstances if such release is "appropriate" and not inconsistent with any other provision of the Bankruptcy Code.  *See In re Midway Gold US, Inc.*, 575 B.R. 475, 505-506 (Bankr. D. Colo. 2017).  Specifically, bankruptcy courts look to the following factors, which were first articulated in *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 2012), in determining whether a third-party release is appropriate:

- There is an identity of interests between the debtor and the third-party, usually an indemnity relationship, such that a suit against the non-debtor third party is, in essence a suit against the debtor or will deplete assets of the estate;
- The non-debtor has contributed substantial assets to the reorganization;
- The injunction is essential to the reorganization.  Without it, there is little likelihood of success;
- A substantial majority of the creditors agree to such injunction, specifically the impacted class, or classes, has overwhelmingly voted the accept the proposed plan treatment.
- The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*See In re Mahoney Hawkes, LLP*, 289 B.R. 285, 299-303 (Bankr.D.Mass. 2002) (adopting *Master Mortgage* multi-factor test to determine necessity of third-party releases); *In re US Fidelis, Inc.*, 481 B.R. 503, 519 (Bankr.E.D.Mo. 2012) (finding *Master Mortgage* requirements fulfilled).  The Sixth Circuit has held a bankruptcy court may enjoin a non-consenting creditor's claims against a non-debtor when the *Master Mortgage* factors are present, but added two additional factors to be reviewed by the court: (6) the plan provides an opportunity for those claims who choose not to settle to recover in full; and (7) the bankruptcy court made specific findings to support its conclusion.  *Class Five Nevada Claimants v. Dow Corning Corp. (In re Dow Corning Corp)*, 280 F.3d 648, 658 (6th Cir. 2002); *see also Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 712 (4th Cir. 2011) (same); *In re Munford*, 97 F.3d 449, 455 (11th Cir. 1996).

9.      All of these factors are present in this Chapter 11 Case.  First, the District, Healthtech, Patten, and Jarvis all are parties to agreements with the Debtor in which the Debtor has agreed to indemnify them for claims arising against them in their capacities vis-à-vis the Debtor.  Second, the released parties are contributing substantial assets to the

reorganization.  As set forth above, the District will provide to the Debtor $250,000 in cash on the Effective Date as well as reducing the lease payment owed by the Debtor under its lease of the Facilities thereby freeing $2.5 million which will be contributed directly to the Personal Injury Trust to satisfy the Tort Claimants claims against the Debtor.  Additionally, HealthTech and Patten will contribute $127,500 to the Personal Injury Trust as set forth above.  Third, the release is essential to the reorganization: neither the District, HealthTech nor Patten would have agreed to support the Debtor's reorganization efforts or have agreed to contribute funds to finance the Plan without the release.  Indeed, the reorganization hinges on the Debtor being free from the direct and indirect claims of the Tort Claimants; the reorganization would fail if the Debtor were only able to settle the direct claims against it, but was still subject to any future indemnity and contribution claims from the District, HealthTech and/or Patten with respect to the Tort Claimants' claims against them.

8.    Fourth, the impacted classes have overwhelmingly voted to approve the Plan.  All of the Tort Claimants who voted (except one) voted to accept the Plan.  Equally important, the interests of the Tort Claimants were represented by their personal counsel as well as counsel for the Committee in the settlement discussions.  The settlements and the releases have the support of these individuals.  This is not a case in which creditors are being asked to unknowingly or unwittingly provide a release of claims; each of the Tort Claimants have agreed to their treatment under the Plan and have agreed to the proposed release.

9.    The Tort Claimants have consented in writing to the terms of the Plan, including the releases.  The consent is evidenced by their votes in favor of the Plan *and* by their signatures to the UMIA Settlement Motion and related agreement which incorporates and references the Plan as well as acknowledging and agreeing that their claims shall be liquidated pursuant to the terms of the Plan through the proposed personal injury trust.

10.    Fifth, the Plan not only provides a mechanism for payment of all of the claims of the Tort Claimants (and other creditors), there is additionally a substantial likelihood that those claimants will be paid their claims in full if the asset of the Personal Injury Trust exceed the liquidation value of their claims.  Thus, the sixth factor as set forth in *Dow Corning*, is also satisfied.  Under these circumstances, the third-party releases included within the Plan in conjunction with the settlements may be approved.  *See In re BDS Med. Corp.*, 2016 Bankr. LEXIS 4489 (Bankr.D.Utah 2016) ("In light of the value provided by the Released Parties to the Debtor's Estate and the critical nature of the Third-Party Release to the Plan, the Third-Party Release is approved.")

11.    Simply stated, as set forth throughout this case, the Debtor filed bankruptcy in order to resolve the multitude of medical malpractice tort claims which had been asserted against it based upon a series of procedures provided by one of the Debtor's orthopedic surgeons.  The Plan, which incorporates the terms of the settlements, represents this resolution.  Since the Petition Date, the Debtor has engaged in lengthy, contentious, in

depth, and exhausting negotiations with the Committee, the Tort Claimants, the District, HealthTech, and others.  Without these settlements and the funds being provided by the District, HealthTech and Patten to the Personal Injury Trust, the Debtor would still be facing overwhelming potential liability and its ability to remain an operating medical facility serving the greater Powell, Wyoming area would be in jeopardy.  The settlements between the Debtor, the Tort Claimants, the Committee, the District, HealthTech and Patten are the lynchpin of the Debtor's reorganization; without approval of the settlements, with the accompanying releases, the Debtor's ability to reorganize in any manner (other than a liquidation) would be severely compromised and all of the Debtor's creditors would be faced with receiving little or no recovery on their claims.  For the forgoing reasons, the settlements comply with Rule 9019(a) and 11 U.S.C. § 1123(b)(3)(A).

### c. The Plan Complies with Section 1123(a)(5) of the Bankruptcy Code

12.     Section 1123(a)(5) provides in pertinent part:

> Notwithstanding any otherwise applicable non-bankruptcy law, a plan shall . . . provide adequate means for the plan's implementation, such as
>
>> (A) retention by the debtor of all or any part of the property of the estate;
>>
>> (B) transfer of all of or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan . . . .

11 U.S.C. § 1123(a)(5).

13.     Articles VII, VIII, IX, X and XII of the Plan comply with section 1123(a)(5) of the Bankruptcy Code by providing adequate means for implementation of the Plan through, among other things, the re-vesting of the Debtor's Assets in the Debtor, the implementation of the Personal Injury Trust and the implementation of specific disbursement procedures and procedures for resolving disputed claims. First, on the Effective Date, pursuant to Section 7.8 of the Plan, all the Debtor's Assets will re-vest in the Debtor and the Debtor will continue its operations free of any restrictions of the Bankruptcy Code. Plan, § 7.7. Such re-vesting of assets is a permissible means of implementing a plan under section 1123(a)(5)(A) of the Bankruptcy Code. *See* 11 U.S.C. § 1123(a)(5)(A). Second, the Debtor will establish the Personal Injury Trust to resolve the Trust Personal Injury Claims pursuant to the Plan, § 7.2. The Personal Injury Trust will be administered by the Personal Injury Trustee in a manner consistent with the Personal Injury Trust Declaration. *Id.* at 7.2. Funding of the Personal Injury Trust will be provided, in part, by the Debtor through payments totaling $3,000,000 and the transfer of the Personal Injury

Trust Assets to the Personal Injury Trust. *Id.* at Ex. 3. Additionally, approval of the UMIA Settlement Motion results in an additional $3,000,000 being contributed to the Personal Injury Trust.

### ii.    The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code

14.    Section 1129(a)(2) of the Bankruptcy Code requires that a plan proponent "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). The legislative history to section 1129(a)(2) explains that this provision incorporates the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code. *See* S. Rep. No. 95-989, at 132 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912 ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure"); *see also In re John Kuhni Sons, Inc.*, No. 10-29038, 2011 WL 1343206, at *2 (Bankr. D. Utah Mar. 30, 2011) (discussing compliance with disclosure and solicitation requirements).

15.    The Debtor has complied with all solicitation and disclosure requirements set forth in the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order governing notice, disclosure, and solicitation in connection with the Plan and the Disclosure Statement. Odom Decl., ¶ 19. The Debtor through undersigned counsel and BK Attorney Services, LLC d/b/a certificateofservice.com ("BKAS") transmitted solicitation packages in accordance with the Disclosure Statement Order, as attested to in the BKAS and the Debtors' Declaration of Mailing and Certificates of Service (Docket Nos. 729 and 730).

16.    The Debtor, as plan proponent, has also complied with all other applicable provisions of the Bankruptcy Code. Specifically, (i) the Debtor is a proper debtor under section 109 of the Bankruptcy Code; (ii) the Debtor has complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided by orders of this Court; (iii) the Debtor has also complied with applicable provisions of the Bankruptcy Rules, applicable non-bankruptcy law, the local Bankruptcy Rules throughout this Chapter 11 Case and has fulfilled all of the obligations and duties owed to its estate and creditors as required by and set forth in sections 1107 and 1108 of the Bankruptcy Code. Accordingly, the Debtor has satisfied section 1129(a)(2) of the Bankruptcy Code. *See In re Armstrong World Indus., Inc.*, 348 B.R. 136, 163-64 (D. Del. 2006).

### iii.    The Plan Complies with Section 1129(a)(3) of the Bankruptcy Code

17.    Pursuant to section 1129(a)(3) of the Bankruptcy Code, a chapter 11 plan may be confirmed only if it "has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). In the Tenth Circuit, courts must focus "on

whether a plan is likely to achieve its goals and whether those goals are consistent with the Code's purposes." *In re Paige*, 685 F.3d 1160, 1179 (10th Cir. 2012) (citations omitted); *see also In re Pikes Peak Water Co.*, 779 F.2d 1456, 1459 (10th Cir. 1985) (requiring that a plan "achieve its intended results which are consistent with the purposes of the Bankruptcy Code.").

18.    The Plan has been proposed by the Debtor in good faith and for the legitimate purposes of successfully reorganizing the Debtor's financial affairs, consistent with the requirements of the Bankruptcy Code. *See* Odom Decl., ¶ 3. The goal of chapter 11 is to promote the rehabilitation and reorganization of a debtor's business, through the restructuring of its debt and liabilities. *See Bank of Am. Nat'l. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999) (identifying preserving company as a going concern as one of the two recognized underlying purposes of chapter 11); *In re Mid Region Petrol, Inc.*, 1 F.3d 1130, 1134 (10th Cir. 1993) ("One of the goals of Chapter 11 is to keep administrative costs to a minimum in order to preserve the debtor's scarce resources and thus encourage rehabilitation.").

19.    As the Plan is the consensual result of extensive, arm's-length and good faith negotiations between the Debtor, the Tort Claimants, the Committee, and other parties in interest, the Plan is fundamentally fair to all creditors. Odom Decl., ¶ 17 and 18; H2C Decl. The Plan also provides the Debtor's creditors with the best possible recovery under the circumstances. H2C Decl., ¶ 7. Accordingly, the Plan satisfies the requirements of section 1129(a)(3).

### iv.    The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code

20.    Section 1129(a)(4) of the Bankruptcy Code requires that a payment "for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved, or is subject to approval of the court as reasonable." 11 U.S.C. § 1129(a)(4). This section has been construed to require that all payments of professional fees from estate assets are subject to bankruptcy court review and approval as to their reasonableness. *See, e.g.*, *In re HRAF Holdings, LLC*, 2012 WL 112993, at *3 (Bankr. D. Utah Jan. 12, 2012) ("Pursuant to Orders previously entered by the Court in this Bankruptcy Case approving the retention of professionals, all payments made or to be made by the Debtors for services rendered or for costs and expenses incurred in connection with this case, or in connection with the Plan and incident to this case, are subject to the approval of the Court as reasonable."); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 503 (D.N.J. 2005).

21.    Pursuant to Section 5.2 of the Plan, each Professional Person who holds or asserts a Fee Claim is required to file with the Bankruptcy Court, and serve upon all parties required to receive notice, a Fee Application within thirty (30) days after the Effective Date and any fees requested in a Fee Application are payable only to the extent approved by the

Bankruptcy Court. Plan, § 5.2. This provision is sufficient to comply with section 1129(a)(4) of the Bankruptcy Code.

### v.     The Plan Complies with Section 1129(a)(5) of the Bankruptcy Code

22.     Section 1129(a)(5) of the Bankruptcy Code requires, among other things, that the plan proponent disclose the identity and affiliations of any individuals proposed to serve as a director, officer, or voting trustee of the debtor. *See* 11 U.S.C. § 1129(a)(5). The Plan satisfies such requirements. Plan § 7.8.

23.     Section 7.2(a)(ii) provides for the appointment of the Personal Injury Trustee, whom the Debtor identified as Scott Goldstein in the filing made on November 22, 2017 (Docket No. 733). Both the appointment of the Personal Injury Trustee and the terms of his compensation are subject to the approval of the Bankruptcy Court. Plan, § 7.2(a)(ii). To serve as a liaison between the Personal Injury Trustee and the holders of the Trust Personal Injury Claims, the Plan also provides for the creation of a Personal Injury Claims Committee, pursuant to the terms of the Personal Injury Trust which is attached as Exhibit 2 to the Plan.

### vi.    The Plan Complies with Section 1129(a)(6) of the Bankruptcy Code

24.     Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over the rates charged by the debtor in the operation of its business approve any rate change provided for in a plan of reorganization. *See* 11 U.S.C. § 1129(a)(6). The Debtor asserts that it is not subject to any applicable regulatory commission and, in any event, the Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date. Odom Decl., ¶ 21. Therefore, the provisions of section 1129(a)(6) are inapplicable.

### vii.   The Plan Complies with Section 1129(a)(7) of the Bankruptcy Code

25.     Section 1129(a)(7) of the Bankruptcy Code requires that, with respect to each impaired class of claims or interests, each holder of a claim or interest of such class must either (a) accept the plan, or (b) receive or retain property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor were liquidated in a hypothetical liquidation under chapter 7 of the Bankruptcy Code. *See 203 N. LaSalle St. P'ship*, 526 U.S. at 441-42; *Toibb v. Radloff*, 501 U.S. 157, 164-65 (1991); *In re Ltd. Gaming of Am., Inc.*, 228 B.R. 275, 289-90 (Bankr. N.D. Okla. 1998) ("Section 1129(a)(7)(A) of the Bankruptcy Code requires that each *impaired* class of creditors either accept the plan or receive property of a value 'not less than the amount

that such holder would receive or retain if the debtor were liquidated under chapter 7 of this title on such [effective] date.'" (citing section 1129(a)(7)(A))).

26.     As set forth in the Liquidation Analysis and the accompanying notes thereto, attached as Exhibit E to the Disclosure Statement, recoveries to impaired classes under the Plan greatly exceed the amounts such parties would receive in a liquidation. In short, a liquidation under chapter 7 as set forth in the Liquidation Analysis would profoundly and adversely affect the ultimate proceeds available for distribution to all holders of Allowed Claims in the Chapter 11 Case. Odom Decl., ¶ 23; H2C Decl., ¶ 7. Accordingly, section 1129(a)(7) is satisfied.

**viii.    The Plan Complies with Section 1129(a)(8) of the Bankruptcy Code.**

27.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accept the plan or be unimpaired under the plan. *See* 11 U.S.C. § 1129(a)(8). In determining whether an impaired class of claims has accepted the plan, section 1126(c) of the Bankruptcy Code requires that creditors accepting the plan hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class voting to accept or reject the plan. All impaired classes of creditors have voted overwhelmingly to accept the Plan; indeed, the Debtor received only one vote rejecting the Plan. That one vote is putatively a member of Class 3 which was accepted by 31 of 32 of the number of claims voting and by $31,000,000 of the $33,000,000 in the amount of the claims voting. In other words, Class 3 easily meets the threshold set forth in 11 U.S.C. § 1126(c) for the acceptance of the Plan by the class.

28.     Moreover, in determining whether an impaired class of interests has accepted the plan, section 1126(d) of the Bankruptcy Code requires that interest holders accepting the plan hold at least two-thirds in amount of the allowed interests of such class voting to accept or reject the plan. Section 1126(d), however, is only applicable to holders of equity securities, and because the Debtor is a non-profit corporation, there is no class of interests within the meaning of section 1126(d). *See* Odom Decl., ¶ 18; *see also* H.R. Rep. No. 95-595, at 401 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6366 (explaining that "subsection (d) [of section 1126] provides similar treatment for classes of equity securities . . . ."); *In re Lincoln Ave. & Crawford's Home for the Aged, Inc.*, 164 B.R. 600, 601 (Bankr. S.D. Ohio 1994) ("It is well understood that in a for-profit corporation, the usual class of interests is the stockholders of the corporation. Debtor is contending, in effect, that in a nonprofit corporation there must be some class which holds the equivalent interest of a stockholder in a for-profit corporation, and the Board represents that class. This court is unwilling to make that assumption. It is the very essence of a nonprofit corporation that there not exist any interest in it equivalent to a stockholder in a for-profit corporation who stands to profit from the success of the enterprise.").

29.     All impaired classes of Claims have voted overwhelmingly to accept the Plan.[4]  Accordingly, section 1129(a)(8) has been satisfied.

30.     However, even if Class 5 is deemed to have rejected the Plan[5], the Plan, however, is still confirmable because it also satisfies the nonconsensual confirmation provisions of section 1129(b), as set forth in section xvii below.

### ix.      The Plan Complies with Section 1129(a)(9) of the Bankruptcy Code

31.     Section 1129(a)(9) of the Bankruptcy Code requires that, unless the holder of a particular claim agrees to a different treatment of such claim, persons holding claims entitled to priority under section 507(a) of the Bankruptcy Code shall receive specified cash payments under a plan as set forth in 11 U.S.C. § 1129(a)(9).

38.     Article V of the Plan treats the Administrative Claims and Tax Claims in a manner consistent with the Bankruptcy Code. Among other things, on the applicable date set forth in § 5.2(d) of the Plan, each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Administrative Claim in one Cash payment thirty (30) days after, or (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder; *provided*, that such treatment will not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Claim; *provided*, *further*, that an Administrative Claim representing a liability incurred and payable in the ordinary course of business may be paid at the Debtor's election in the ordinary course of business. *See* Plan, § 5.2(d). Finally, Priority Claims are unimpaired and will be paid in full and in Cash on the later of (i) thirty (30) days after the Effective Date and (ii) thirty (30) days after the date upon which such Claim becomes an Allowed Claim, as required by section 1129(a)(9)(B) of the Bankruptcy Code. *See id.* at Article IV.

39.     With respect to Tax Claims, Allowed Tax Claims will not be treated in a manner less favorable than the most favored nonpriority unsecured claim provided for in the Plan. Section 5.3 of the Plan provides that, at the election of the Debtor, each holder of

---

[4]      To the best of the Debtor's knowledge, no creditors exist which would be included in either Class 6 or Class 8.  These classes were created in an abundance of caution to cover any such creditor claims if such a creditor had filed a motion for the allowance of its claim in this case.  For example, Class 8 includes potential claims for rejection damages.  The Debtor does not expect any party to file such a claim considering the Debtor's treatment of executory contracts.

[5]      The Plan provides that the holders of Class 5 claims may retain and exercise any and all rights they may have against the Debtor's insurance policies.  Accordingly, the holders of Class 5 "retain" property under the Plan on account of their claims.  *See* 11 U.S.C. § 1126(g).  If, however, the retention of their property interests in the insurance policies is not considered the "retention" of property for purposes of 11 U.S.C. § 1126(g), the holders of Class 5 claims would be deemed to have rejected the Plan.

an Allowed Tax Claim will receive, in full satisfaction of such Allowed Tax Claim: (a) payments in Cash, in equal quarterly installments over a period ending not later than five (5) years after the Petition Date, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) a lesser amount in one Cash payment as may be agreed upon in writing by such holder; or (c) such other treatment as may be agreed upon in writing by such holder; *provided*, however, that such agreed upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Tax Claim. *See* Plan, § 5.3. This treatment is consistent with the requirements of section 1129(a)(9)(C), and therefore section 1129(a)(9) is satisfied.

### x.     The Plan Complies with Section 1129(a)(10) of the Bankruptcy Code

40.     Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of a plan by at least one class of impaired claims, which is "determined without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10). The Plan clearly satisfies section 1129(a)(10) of the Bankruptcy Code, as multiple impaired classes of Claims have voted to accept the Plan: Class 2, Class 3, Class 4, Class 5 and Class 7 are impaired and each class voted overwhelmingly (and in the case of Classes 2, 4, 5, and 7 unanimously) to accept the Plan.

### xi.     The Plan Complies with Section 1129(a)(11) of the Bankruptcy Code

41.     Section 1129(a)(11) of the Bankruptcy Code requires a specific finding that the plan is "feasible" as a condition precedent to confirmation. *Paige*, 685 F.3d. at 1187 ("A Chapter 11 plan cannot be confirmed unless it is feasible . . . ."). Specifically, the statute requires the Bankruptcy Court to determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).

42.     The feasibility test requires this Court to make an independent determination as to whether the Plan is workable and has a reasonable prospect of success. *Paige*, 685 F.3d. at 1187 ("The bankruptcy court has an obligation to scrutinize [a] plan carefully to determine whether it offers a reasonable prospect of success and is workable. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts of the case." (internal quotations, modifications and citations omitted)). A guarantee of success is not required:

> To be confirmed by a court, a Chapter 11 Plan must be feasible.
> A plan is feasible when it is not likely to be followed by
> liquidation or further financial reorganization.  Put differently,
> a feasible plan is not a guarantee of success but rather offers a
> reasonable assurance of success.

*FB Acquisitions Prop. I, LLC v. Gentry (In re Gentry)*, 807 F.3d 1222, 1225-26 (10th Cir.
2015) (internal citations omitted and emphasis added); *see also Coones v. Mut. Life Ins.
Co.*, 168 B.R. 247, 255-56 (D. Wyo. 1994) ("Section 1129(a)(11) requires the plan
proponent to show concrete evidence of a sufficient cash flow to fund and maintain both
its operations and obligations under the plan. . . . Section 1129(a)(11) does not, however,
require a plan to guarantee success.").

43.     To establish the feasibility of a plan, the debtor must present proof through
reasonable projections that there will be sufficient cash flow to fund the plan, and such
projections cannot be speculative, conjectural or unrealistic. *In re Sea Garden Motel &
Apartments*, 195 B.R. 294, 304-05 (D.N.J. 1996); *see also Coones*, 168 B.R. at 255.

44.     Here, the projections and unaudited financial statements attached as Exhibit
B and D to the Disclosure Statement, the Odom Declaration, the H2C Declaration, and the
monthly operating reports filed herein demonstrate that the Debtor will have sufficient cash
flow to meet its obligations under the Plan; and that the Plan is otherwise feasible. Odom
Decl., ¶ 25; H2C Decl., ¶¶ 8 and 9. Further, the unaudited financial statements filed by the
Debtor as of September 1, 2017 (Docket No. 699) and its monthly operating reports filed
herein demonstrate that the Debtor will be solvent and viable upon its emergence from
chapter 11.

### xii.     The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code

45.     Section 1129(a)(12) of the Bankruptcy Code requires that either all fees
payable pursuant to section 1930 of title 28 of the United States Code have been paid or
that the plan provides for the payment of all such fees on the effective date of the plan.
*Armstrong World*, 348 B.R. at 167; *see In re CF & I Fabricators of Utah, Inc.*, 150 F.3d
1233, 1240 (10th Cir. 1998) ("[Section] 1129(a)(12) . . . requires UST fees be addressed in
the plan prior to confirmation."); *Ltd. Gaming*, 228 B.R. at 292 ("Section 1129(a)(12) of
the Bankruptcy Code requires that all fees owed to the Office of the United States Trustee
be paid as of the effective date of the plan.").

46.     Section 14.1 of the Plan provides for the payment of all statutory fees by the
Debtor on or before the Effective Date. Odom Decl., ¶ 26. The Plan accordingly satisfies
section 1129(a)(12) of the Bankruptcy Code.

{Z0202510/1 }                              18

### xiii.    The Plan Complies with Section 1129(a)(13) of the Bankruptcy Code

47.    Section 1129(a)(13) provides that a plan shall provide for the "continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of [the Bankruptcy Code], . . . for the duration of the period the debtor has obligated itself to provide such benefits." 11 U.S.C. § 1129(a)(13); *Armstrong World*, 348 B.R. at 168. The Debtor has no retiree benefit obligations. Odom Decl., ¶ 27. Therefore, section 1129(a)(13) is inapplicable. *See HRAF Holdings*, 2012 WL 112993, at *5 ("The Debtors have no retiree benefits subject to § 1114 of the Bankruptcy Code. Therefore § 1129(a)(13) of the Bankruptcy Code is inapplicable.").

### xiv.    The Plan Complies with Section 1129(a)(14) of the Bankruptcy Code

48.    Section 1129(a)(14) of the Bankruptcy Code provides that a debtor must pay all domestic support obligations as required under judicial or administrative order or by statute. *See* 11 U.S.C. § 1129(a)(14). The Debtor has no domestic support obligations, and therefore section 1129(a)(14) is inapplicable.

### xv.    The Plan Complies with Section 1129(a)(15) of the Bankruptcy Code

49.    Section 1129(a)(15) of the Bankruptcy Code only applies to cases in which the debtor is an individual, and therefore is inapplicable to the Debtor. *See* 11 U.S.C. § 1129(a)(15).

### xvi.    The Plan Complies with Section 1129(a)(16) of the Bankruptcy Code

50.    Section 1129(a)(16) of the Bankruptcy Code requires that all transfers of property of the plan shall be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust. 11 U.S.C. § 1129(a)(16). The Debtor is a non-profit business corporation, and therefore section 1129(a)(16) applies. Any such transfers under the Plan will be made in accordance with applicable non-bankruptcy law.

### xvii.    The Plan Complies with Section 1129(b) of the Bankruptcy Code

51.    Sections 4.1(e) and (f) provide that Class 5 – Reimbursement, Contribution and Indemnity Claims will retain its rights in any of the Debtor's insurance policies on account of the Class 5 Claims. Plan, § 4.1(e).  It is the Debtor's position that the holders of Class 5 claims are retaining property under the Plan, and thus they are entitled to vote, and as an impaired class, Class 5 has voted to accept the Plan.  If, however, the retention of

their rights under the Debtor's insurance policies is not deemed a retention of property pursuant to 11 U.S.C. § 1126(g), Class 5 would be deemed to have rejected the Plan. Nonetheless the Plan is still confirmable under 11 U.S.C. § 1129(b).

52.     Under section 1129(b), the Bankruptcy Court may "cramdown" a plan over a dissenting impaired class or classes of claims or interests so long as the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to the dissenting class or classes. *See Paige*, 685 F.3d at 1183 (discussing the application of section 1129(a)(8) of the Bankruptcy Code); *Unruh v. Rushville State Bank of Rushville, Mo.*, 987 F.2d 1506, 1507 (10th Cir. 1993) (same). The Plan does not "discriminate unfairly" and is "fair and equitable" with respect to all Classes of unsecured Claims.

53.     Section 1129(b)(2)(B)(ii) of the Bankruptcy Code defines the phrase "fair and equitable" as to holders of unsecured claims to include that the holders of any claim or interest that is junior to the claims of such crammed down class will not receive or retain any property under the Plan. *See Paige*, 685 F.3d. at 1183 (10th Cir. 2012) ("The Code explains that the condition that a plan be fair and equitable with respect to a class includes the requirement that [w]ith respect to a class of interests . . . the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property." (internal citations omitted)). The Plan meets this requirement as there are no classes junior to Class 5.

54.     Further, the Plan does not discriminate unfairly with respect to Class 5.  Class 5 encompasses all claims for reimbursement, contribution and indemnification.  Under the Plan, the holders of these Claims retain their rights against the Debtor's insurance policies for payment on their Claims unless they have agreed to other treatment.  Claimants with different legal rights with respect to their claims may be classified separately.  *See In re Bryson Props. XVIII*, 129 B.R. 440, 445 (M.D.N.C. 1991) ("Where legal claims are sufficiently different as to justify a difference in treatment under a reorganization plan, reasonable differences in treatment are permissible.").

55.     Further, all claims asserted against the Debtor for indemnification are subject to disallowance subject to 11 U.S.C. 502(e)(1)(B), which provides:

. . . the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor to the extent that—
such claim for reimbursement or contribution is contingent as of the time of the allowance or disallowance of such claim for reimbursement or contribution.

11. U.S.C. § 502(e)(1)(B); *see also In re APCO Liquidating Trust*, 370 B.R. 625, 631 (8th Cir. 2007) (quoting *In re Provincetown–Boston Airlines, Inc.*, 72 B.R. 307, 309 (Bankr. M.D. Fla. 1987)); *see also In re Chemtura Corp.*, 443 B.R. 601, 612 (Bankr. S.D.N.Y.

2011).  In this case, the claims for contribution/indemnification asserted against the Debtor arise from entities that are liable with the Debtor based upon alleged malpractice that occurred at the Debtor's facilities, and the claims are contingent as no liability has yet been assessed against either the Debtor or the holder on these claims.  Accordingly, these claims are subject to disallowance pursuant to 11 U.S.C. § 502(e)(1)(B).

56.     Further, to the extent the indemnification claim arises from claims which are being paid through the Personal Injury Trust, every dollar being contributed through the Plan to the Personal Injury Trust will ultimately reduce indemnitee's direct liability, if any, on those claims.

57.     Accordingly, because the holders of Class 5 claims retain their rights to proceeds from the Debtor's insurance policies, because the Claims are subject to disallowance pursuant to 11 U.S.C. § 502, and because they may directly benefit from any and all distributions being made to the Tort Claimants from the Personal Injury Trust, the Plan does not "unfairly" discriminate against these claims by placing them in a separate class from other unsecured creditors.  Finally, no member of Class 5 has objected to the Plan.  Their silence can be taken as a good indication that the Plan does not treat their claims "unfairly."  Thus, under section 1129(b), the Bankruptcy Court may "cramdown" a plan over Class 5's deemed dissent, as the Plan does not "discriminate unfairly" and is "fair and equitable" with respect Class 5.

## B.     Additional Matters

### i.     Approval of Modifications to the Plan

58.     Prior to the hearing on the confirmation of the Plan, the Debtor anticipates filing a modification to the Plan (the "Modification") to incorporate agreed upon, and non-substantive, revisions to the Plan.  Section 1127(a) provides that "[t]he proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan." 11 U.S.C. § 1127(a). Bankruptcy Rule 3019(a) governs plan modification during the period between acceptance and confirmation. Bankruptcy Rule 3019(a) provides that "after a plan has been accepted and before its confirmation, the proponent may file a modification of the plan. If the court finds after hearing on notice to the trustee, any committee appointed under the Code, and any entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan." Fed. R. Bankr. P. 3019(a). Further, the proponent

of such modification must comply with section 1125 of the Bankruptcy Code with respect to the modified Plan. 11 U.S.C. § 1127(c).

59.    Here, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Modification should be incorporated into the Plan without any additional disclosure under section 1125 of the Bankruptcy Code. Further, there is no need for the holders of Claims to be afforded an opportunity to change previously cast acceptances or rejections of the Plan as a result of the Modification. Among other things, the Modification (a) does not adversely affect any class of claims, and (b) was consensual and agreed upon by all affected parties. *See In re Fashion Place Dental, Inc.*, 2012 Bankr. LEXIS 2888 *13 (Bankr. D. Utah 2012) ("All modifications to the Plan or to documents incorporated as part of the Plan, if any, announced prior to the conclusion of the Confirmation Hearing constitute technical changes and/or changes that have either been consented to by the affected party or which do not adversely affect or change the treatment of any other Claims or Equity Interests. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications, if any, do not require additional disclosure under 11 U.S.C. §§ 1125 or 1127(a), or re-solicitation of votes under 11 U.S.C. § 1126, nor do they require that Holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. The Plan if so modified meets the requirements of 11 U.S.C. §§ 1122 and 1123. Such modifications shall be deemed accepted by each Holder of a Claim or Equity Interest who has previously voted to accept the Plan.").

60.    As an initial matter, the Modification does not affect the treatment of any class under the Plan.  Instead, the Modification accomplishes three goals:

    a.  The first set of modifications reflects the Stipulation between the Debtor and two of its insurers, Homeland and Lexington.  These modifications clarify that nothing in the Plan or its attachments in any way prejudices Homeland's and Lexington's rights in the Insurance Carrier Litigation pending before the District Court of Wyoming.  As the Debtor stated at the hearing on the Second Amended Disclosure Statement, the procedures proposed to liquidate the Tort Claimants' claims against the Debtor were never intended to alter the Insurers' legal rights.  The proposed clarifications were negotiated by and between the Debtor, the Committee, the Tort Claimants and Homeland/Lexington, and they do not adversely affect any creditor who has voted to accept the Plan.

    b.  The second set of modifications incorporates the Committee's requested clarifications to the Plan as set forth in the Committee's Comment/Limited Objection to Confirmation of Amended Plan (Docket No. 759).  Again, none of the revisions changes or in any way alters the treatment of any of the classes and they will not, in any way, impede the Debtor's ability to meet its obligations under the Plan.  Furthermore, the Tort Claimants' ballots

accepting the Plan were conditioned upon these revisions ultimately being made to the Plan.

    c.   The third set of modifications incorporate revisions to the creditors included in Class 7.  Class 7 only included four creditors.  The modification provides that three of these creditors (Nofzinger, Haney, and Bonamarte) will instead be a part of Class 3.  Each of these creditors have agreed in writing to accept the revised treatment of their claims and to have their claims liquidated and paid through the TDPs. *See* (Docket No. 775-1).  Fed.R.Bankr.P. 3019(a).

In short, no re-solicitation or additional disclosure is required for any such classes as none of the changes are of such a nature that they would cause a creditor who had already accepted the Plan to reconsider its acceptance.  As such, the Modification is "immaterial" and no re-solicitation or additional disclosure is required.  *In re Camperworld Business Trust*, 2015 Bankr. LEXIS 2937 *19-20 (Bankr.D. Utah 2015).

61.    In addition, the Modification has been negotiated with the active involvement of the creditors falling within Class 3—Trust Personal Injury Claims and has been approved by them. The Plan always contemplated that the Personal Injury Trust would be responsible for the payment of the Class 3 Claims via a settlement or litigation, and the Modification accomplishes exactly this result, just prior to the confirmation of the Plan. Put another way, the Trust Personal Injury Claimants are getting exactly what they bargained for under their lengthy negotiating with the Debtor resulting in the Plan.

62.    Further, any modification of the treatment of Class 3 that does occur as a result of the Modification (if any) is consensual and has been accepted in writing as required by Bankruptcy Rule 3019(a) by all affected parties. Indeed, counsel for the Tort Claimants, which constitutes the overwhelming bulk of Class 3 and clearly controls Class 3, will agree to the Modification prior to its filing, as will counsel for the Committee.

63.    Finally, the Debtor will serve the Modification on its limited service list which includes all parties entering an appearance in this Chapter 11 Case, including counsel for the Tort Claimants, the Insurers and the Committee.   Under these circumstances, the Plan should be approved as modified by the Modification without the need for further solicitation or disclosure.

## III.   CONCLUSION

64.    For the reasons set forth herein, the Debtor submits that the Plan fully complies with and satisfies all applicable requirements of the Bankruptcy Code necessary for the Plan to be confirmed. The Debtor, therefore, respectfully requests that this Court confirm the Plan.

Dated: January 12, 2018.

MARKUS WILLIAMS YOUNG AND
ZIMMERMANN LLC

By: */s/ Bradley T. Hunsicker*
Bradley T. Hunsicker (WY Bar No 7-4579)
Jennifer Salisbury (WY Bar No. 7-5218)
John F. Young (Pro Hac Vice)
106 East Lincolnway, Suite 300
Cheyenne, WY 82001
Telephone: 307-778-8178
Facsimile: 307-638-1975
Email: bhunsicker@markuswilliams.com
        jyoung@MarkusWilliams.com
        jsalisbury@MarkusWilliams.com

*Counsel for Powell Valley Health Care, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 12th day of January, 2018, by placing a copy in the U.S. mail, first class postage prepaid upon those parties identified on the mailing matrix attached hereto at Exhibit C.

*/s/ Bradley T. Hunsicker*
Bradley T. Hunsicker