Scott J. Goldstein (MO #28698)
Jamie N. Cotter (WY #74721)
Spencer Fane LLP
1000 Walnut, Suite 1400
Kansas City, MO 64106
Telephone: (816) 474-8100
Facsimile: (816) 474-3216
sgoldstein@spencerfane.com
*Trustee for Powell Valley Healthcare, Inc.,*
*Personal Injury Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF WYOMING**
**CHEYENNE DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | Case No. 16-20326 |
| POWELL VALLEY HEALTH CARE, INC., | ) | |
| | ) | |
| Debtor. | ) | |

**PERSONAL INJURY TRUSTEE'S MOTION TO**
**COMPROMISE AND SETTLE CLAIMS**

Scott J. Goldstein, the Personal Injury Trustee (the "Trustee") of the Powell Valley

Health Care, Inc. Personal Injury Trust (the "PVHC Trust"), submits this motion (the "Motion"),

pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

and Rule 9019-1 of the Local Rules of the United States Bankruptcy Court for the District of

Wyoming (the "Local Rules"), for entry of an order approving the Trustee's compromise and

settlement of the tort claims in the amounts set forth herein.  In support of this Motion, the

Trustee respectfully states as follows:

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and the

Modified Amended Chapter 11 Plan of Reorganization for Powell Valley Health Care, Inc., all

exhibits thereto (collectively, the "Plan"), and this Court's Order Confirming Modified Amended

Chapter 11 Plan of Reorganization for Powell Valley Health Care, Inc. [Doc. 826] (collectively,

WA 11658749.1

the "Plan Documents"), including but not limited to the Trust Distribution Procedures (the "TDPs") **(Exhibit A)**, and in particular Article XIII—Retention of Jurisdiction—13.1—Scope of Retention of Jurisdiction, sections (ii), (iii), (iv), (v), (vii), (viii), (ix), (x) and (xix). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). The procedural predicates for the relief sought herein are Bankruptcy Rule 9019 and Local Rule 9019-1.[1]

## **RELEVANT BACKGROUND**

2.       On May 16, 2016, Powell Valley Health Care, Inc. (the "Reorganized Debtor") filed Chapter 11.

3.       On January 24, 2018, the Court approved the Order Confirming Modified Amended Chapter 11 Plan of Reorganization for Powell Valley Health Care, Inc. [Doc. 656] (the "Order").

4.       The Plan Effective Date was March 2, 2018.

5.       The TDPs provided that the Mediator (retired Federal District Court Judge William F. Downes) (the "Mediator") set the mediation process after consultation with the tort claimants and the insurers. The Mediator did so and established mediation procedures **(Exhibit B)**.

6.       The Trustee employed well-respected insurance defense counsel Monty L. Barnett, Esq., of the firm of White and Steele, P.C., to represent the Trustee in the Mediations described in the TDPs.

7.       Thereafter, the Mediations were conducted over a four (4) month period (March, 2018 through June, 2018). The Mediations were completed and a report issued on July 20, 2018,

---

[1] Unless otherwise stated, terms used in the Motion have the meanings as defined in the Plan Documents.

with a brief supplement thereto provided on August 7, 2018 (collectively, the "Mediation Report") **(Exhibit C)**.

8.      The Insurers were provided the Mediation Report by the Trustee's counsel on August 3, 2018 and on August 7, 2018.

9.      The TDPs in relevant part stated:

The Personal Injury Trustee shall give the insurance companies (collectively, the "Insurers") (OneBeacon, UMIA and Lexington) reasonable prior notice of each Mediation and an opportunity to participate in the Mediation by notifying the Insurers that any and/or all of them that wish to do so, shall be provided the opportunity to submit materials they deem relevant to the Mediator for each Mediation and a procedure to do so.

The Mediation process shall be set by the Mediator after consultation with the Parties.  For the avoidance of doubt, however, the Mediation shall consist, among other requirements which may be imposed by the Mediator, of the following:

- The submission of Mediation Statements by the Parties;

- An approximate one half-day Mediation;

- The opportunity by the Mediator to question the Parties (including the Tort Claimant if desired), and the opportunity for the Parties to provide additional information to the Mediator (there shall, however, be no examination and/or cross-examination of Parties or witnesses permitted). Any Party may submit a videotaped statement; and

- After all Mediations are concluded, the Mediator shall then set a value for each Tort Claim and the Tort Claimant and the Personal Injury Trustee shall agree to be bound by such determination.

The Mediator's determination shall constitute final and binding determinations of the liquidation of the Trust Personal Injury Claims subject to approval by the Bankruptcy Court.  Following the determinations, the Personal Injury Trustee shall file motions to compromise and settle under Rule 9019 of the Rules of Bankruptcy Procedure, obtain orders from the Bankruptcy Court approving a compromise and settlement and entering a judgment that the claim is an Allowed Claim under the Plan (the "9019 Order") for the full amount of the Mediator's determinations…   The Personal Injury Trustee agrees to give all Insurers reasonable prior notice of any hearings relating to any motions to compromise and settle under Rule 9019, and to any proceedings in which judgments in state court shall be obtained.

WA 11658749.1

10.     Judge Downes' Mediation Report speaks for itself, but stated, "As I began this challenging assignment I sought to establish a mediation process that would ensure a fair and equitable evaluation of each claim. . . . Upon conclusion of all mediations I conducted a thorough review of all information which had been submitted in each claim, to include lawyers' mediation statements, financial information, medical reports and expert witness reports. . . . Mindful that the TDP contemplates that my findings will "constitute final and binding determinations of liquidation of the Trust Personal Injury Claims subject to approval by the Bankruptcy Court," I have endeavored to be faithful to my obligations to the Binding Mediation Procedure."

11.     The chart attached to the Mediation Report sets out the individual findings for each claim.

## RELIEF REQUESTED

12.     The Trustee requests that this Court approve the Motion pursuant to Fed. R. Bankr. P. 9019 pursuant to the TDPs and find that the tort claims are Allowed Claims under the Plan for the full amount of the Mediator's determination, and any other relief incidental thereto.

## ARGUMENT

13.     Rule 9019(a) of the Bankruptcy Rules, in relevant part, provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." *See* Fed. R. Bankr. P. 9019(a).   "[A] court's general charge is 'to determine whether the settlement is fair and equitable and in the best interests of the estate.'" *In re US Bentonite, Inc.,* 536 B.R. 948, 960 (Bankr. D. Wyo. 2015).

14.     To determine whether a settlement agreement is "fair and equitable and in the best interest of the estate" Bankruptcy Courts in Wyoming consider the following factors: (1) the probability of success on the merits in the litigation; (2) the difficulties, if any, to be encountered

WA 11658749.1

in collection of any judgment that might be obtained; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interests of creditors and the proper deference to their reasonable views in the premises. *In re Rich Glob., LLC,* 2013 Bankr. LEXIS 2834, at *4 (Bankr. D. Wyo. 2013) (citing *In re Christie*, 2013 Bankr. LEXIS 2016 (Bankr. D. Kan. 2013)).

15.     In evaluating a proposed settlement, the Bankruptcy Court should not substitute its judgment for the Debtor's "but rather, should without conducting a trial or deciding the numerous questions of law and fact, canvass the issues and see whether the settlement fall(s) below the lowest point in the range of reasonableness." *In re Rich Glob.,* at *4-5 (internal quotations omitted).  The Trustee asserts that each of the *Rich Global* factors is either not applicable, or weighs in favor of approval of the Motion.

16.     In considering those factors that are relevant to the Motion, the Trustee notes that the Mediation process was determined by a well-respected retired Federal District Court Judge for the District of Wyoming, with substantial experience in dealing with medical malpractice claims, assisted by well-respected insurance defense counsel with a substantial practice in the State of Wyoming, and the valuations were made in accordance with Wyoming law with which both are substantially familiar.

17.     The valuation of the claims was a difficult and complex matter, but one which was agreed by all parties in this case pursuant to the Plan and the TDPs and approved by this Court.   A major factor in such consideration is, "the paramount interest of creditors and deference to their reasonable views."   Here, that view was plainly expressed in the TDPs which were the product of substantial negotiations with the tort claimants and which were ultimately approved by this Court as an integral part of the Plan.

WA 11658749.1

WHEREFORE, the Trustee respectfully requests that the Court enter the proposed order attached hereto as **Exhibit D** which approves the Motion pursuant to Fed. R. Bankr. P. 9019 pursuant to the TDPs and finds that the tort claims set forth in the Mediation Report are Allowed Claims under the Plan for the full amount of the Mediator's determination, and any other relief incidental thereto.

## **CONCLUSION**

18.     For the foregoing reasons, the Trustee respectfully requests the entry of an order approving the Motion, and requests such other and further equitable relief as the Court deems just and appropriate.

Dated:  August ___ 2018

Respectfully submitted,

SPENCER FANE LLP

/s/ Jamie N. Cotter
Scott J. Goldstein          MO #28698
Jamie N. Cotter          WY #74721
sgoldstein@spencerfane.com
jcotter@spencerfane.com
1000 Walnut, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216– Fax
TRUSTEE FOR POWELL VALLEY HEALTH
CARE, INC. PERSONAL INJURY TRUST

WA 11658749.1

Case 16-20326   Doc 894-1   Filed 08/14/18   Entered 08/14/18 16:16:03   Desc Exhibit
(1) Motion to Compromise and Settle Claims   Page 7 of 24
Case 16-20326   Doc 807-3   Filed 01/19/18   Entered 01/19/18 15:43:22   Desc Exhibit
EX B to Trust (TDPs)   Page 1 of 8

## TRUST DISTRIBUTION PROCEDURES

### ARTICLE I
### GENERAL STATEMENT

These Trust Distribution Procedures (the "TDPs") describe the allowance and distribution of Tort Claimants' claims and shall be implemented by the Personal Injury Trustee for the purposes of processing, liquidating, allocating and paying distributions to the Beneficiaries with Allowed Claims.

Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Personal Injury Trust. If there is a conflict as to the meaning of any particular term, the meaning of the terms in the Personal Injury Trust shall govern.

### ARTICLE II
### CLAIM VALUATION PROCEDURES

2.1   Purpose

The TDPs set forth herein are intended to establish a reasonable, good faith and non-collusive process by which claims shall be valued for purposes of allowance and distribution. The "Parties" described herein shall be the Personal Injury Trustee and the Tort Claimants (sometimes, a Tort Claimant is described as a "Claimant" and their claim is described as "Tort Claim(s)" or "Claim(s)"), and for certain purposes, the Insurers (as described herein) to the extent they participate in a mediation. The Personal Injury Trustee shall be the representative of the Debtor's estate as set forth in the Personal Injury Trust.

2.2   Claims

The Claims subject to the TDPs are as follows:

a)   All timely filed Claims that are "Non-Covered Claimant(s)" as defined herein.

b)   "Covered Claimant(s)" as defined herein are excluded, except to the extent a Covered Claimant becomes a Non-Covered Claimant.

c)   The claim of Peggie Jo Werbelow was not timely filed (the "Werbelow Claim"). The Personal Injury Trustee shall have the authority to object to the Werbelow Claim. To the extent the Bankruptcy Court determines that said claim should be entitled to a distribution from any Personal Injury Trust Assets of any kind or nature, the Personal Injury Trustee shall require this Claimant to comply with the TDPs.

2.3   Binding Mediation Procedure

a)   Each Claim subject to the TDPs shall proceed to a binding mediation (the "Mediation"). The chosen mediator shall be retired Judge William F. Downes (the

{Z0203707/1 }

1                                    WA 9630096.9

EXHBIT A

Case 16-20326   Doc 894-1   Filed 08/14/18   Entered 08/14/18 16:16:03   Desc Exhibit
(1) Motion to Compromise and Settle Claims   Page 8 of 24
Case 16-20326   Doc 807-3   Filed 01/19/18   Entered 01/19/18 15:43:22   Desc Exhibit
EX B to Trust (TDPs)   Page 2 of 8

"Mediator") unless he is unable to mediate all of the Claims, in which case the Tort Claimants and the Personal Injury Trustee shall mutually agree on another mediator. The place of Mediation may be in Cody, Wyoming, Denver, Colorado, or at a mutually agreeable location in the State of Wyoming, unless the parties agree otherwise.

b) The Personal Injury Trustee shall give the insurance companies (collectively, the "Insurers") (Homeland Insurance Company of New York, a member of the One Beacon Insurance Group ("Homeland") and Lexington Insurance Company ("Lexington")) reasonable prior notice of each Mediation and an opportunity to participate in the Mediation by notifying the Insurers that any and/or all of them that wish to do so, shall be provided the opportunity to submit materials they deem relevant to the Mediator for each Mediation and a procedure to do so.

The Mediation process shall be set by the Mediator after consultation with the Parties. For the avoidance of doubt, however, the Mediation shall consist, among other requirements which may be imposed by the Mediator, of the following:

- The submission of Mediation Statements by the Parties;

- An approximate one half-day Mediation per Claim;

- The opportunity by the Mediator to question the Parties (including the Tort Claimant if desired), and the opportunity for the Parties to provide additional information to the Mediator (there shall, however, be no examination and/or cross-examination of Parties or witnesses permitted).  Any Party may submit a videotaped statement; and,

- After all Mediations are concluded, the Mediator shall then set a value for each Tort Claim and the Tort Claimant and the Personal Injury Trustee shall agree to be bound by such determination.

The Mediator's determination shall constitute final and binding determinations of the liquidation of the Trust Personal Injury Claims subject to approval by the Bankruptcy Court. Following the determinations, the Personal Injury Trustee shall file motions to compromise and settle under Rule 9019 of the Rules of Bankruptcy Procedure, obtain orders from the Bankruptcy Court approving a compromise and settlement and entering a judgment that the Tort Claim is an Allowed Claim under the Plan (the "9019 Order") for the full amount of the Mediator's determinations. The Personal Injury Trustee, as successor-in-interest to the Debtor, shall agree to entries of judgments in state court following the 9019 Order for the full amount of the 9019 Order, subject to the Plan. The Personal Injury Trustee agrees to give all Insurers reasonable prior notice of any hearings relating to any motions to compromise and settle under Rule 9019, and to any proceedings in which judgments in state court shall be obtained.

2.4   <u>Claim Valuations Not Binding on Insurance Companies</u>

{Z0203707/1 }

WA 9630096.9

Case 16-20326    Doc 894-1    Filed 08/14/18    Entered 08/14/18 16:16:03    Desc Exhibit
(1) Motion to Compromise and Settle Claims    Page 9 of 24
Case 16-20326    Doc 807-3    Filed 01/19/18    Entered 01/19/18 15:43:22    Desc Exhibit
EX B to Trust (TDPs)    Page 3 of 8

Notwithstanding anything in the Plan, the Plan Documents or the Confirmation Order: (1) the TDPs (including any amendments thereto) and the Claim values determined through the TDPs shall not be binding on the Insurance Companies; (2) the Insurance Companies remain free to challenge the reasonableness of any Claim values determined through the TDPs; and (3) no deference shall be given the Declaratory Judgment Action to the Claim values determined through the TDPs because the Claim values were determined and the TDPs were approved by the Bankruptcy Court – said Claim values may be used and disputed in the Declaratory Judgment Action by any party as allowed by law. For the avoidance of doubt, the Insurance Companies are not required to participate in the TDPs, including but not limited to the Binding Mediation Procedure set forth in paragraph 2.3 herein, and the refusal of any insurer to participate in the TDPs shall not be a waiver of the insurer's right to challenge the reasonableness of any Claim values determined through the TDPs.

## ARTICLE III
## TRUST ASSET & EXPENSE DISTRIBUTION

3.1    <u>Distributions</u>

Amounts to be distributed are presently unknown.  Accordingly, distributions on account of Allowed Tort Claims shall take into account (to the extent reasonably foreseeable and practicable at the time of each distribution), incurred but unpaid expenses, projected costs and expenses (including litigation costs), reserves for expenses and the uncertainly regarding the number and amount of aggregate liquidated Allowed Tort Claims. Notwithstanding the same, no less than on a quarterly basis or as necessary (which meetings may be by telephone), the Personal Injury Trustee and the Personal Injury Claims Committee shall meet to discuss distributions.  Nothing prevents a distribution from being made to any particular Beneficiary with an Allowed Tort Claim without making distributions to all Tort Claimants, as long as the decision to do so is in accordance with the Personal Injury Trust.

Unless otherwise instructed, distributions by the Personal Injury Trustee shall be made to a Beneficiary, who shall be responsible for any liens or charges against the distribution as determined under Wyoming law.

Anything herein to the contrary notwithstanding, it is the duty of each Beneficiary and his or her counsel to determine any liens or charges against distributions.

3.2    <u>Agreement for Distribution of Trust Assets</u>

All Personal Injury Trust Assets (defined herein as all Transferred Causes of Action as defined in the Plan, all Assigned Claims as defined herein, and all other payments to be paid to the Personal Injury Trust under the Plan) are assigned and/or are to be paid to the

Case 16-20326    Doc 894-1    Filed 08/14/18    Entered 08/14/18 16:16:03    Desc Exhibit
(1) Motion to Compromise and Settle Claims    Page 10 of 24
Case 16-20326    Doc 807-3    Filed 01/19/18    Entered 01/19/18 15:43:22    Desc Exhibit
EX B to Trust (TDPs)    Page 4 of 8

Personal Injury Trust for the benefit of the Tort Claimants.[1] The Personal Injury Trustee agrees to distribute the Trust Assets as follows:

    a.  Covered Claimants and Non-Covered Claimants Defined:

        1.  If any of the Insurers agree to provide coverage for the Tort Claimants' claims as of the Effective Date, those Tort Claimants will be referred to as "Covered Claimants," and shall be placed in Class 7 of the Plan. If any of the Insurers at any time withdraw coverage for a Covered Claimant, they will immediately become a Non-Covered Claimant.

        2.  If any of the Insurers do not agree to provide coverage for the Tort Claimants' claims, those Tort Claimants will be referred to as "Non-Covered Claimants."

    b.  The Trust Assets shall be distributed on a Pro-Rata basis as follows:

        1.  The Trust Assets shall first be distributed to the Non-Covered Claimants on a Pro Rata basis, until the Non-Covered Claimants have received the full value of their Allowed Claim, out of which they shall pay their own attorneys' fees and costs.

            •  For the avoidance of doubt, if the total value of the Allowed Claims of Non-Covered Claimants is $10,000,000, the first $10,000,000 of Trust Assets will be distributed only to the Non-Covered Claimants with Allowed Claims. The Non-Covered Claimants shall then be responsible for their own attorneys' fees and costs (which includes their personal share of attorneys' fees and costs allocated to them for Personal Injury Trust expenses).

        2.  Covered Claimants and Non-Covered Claimants shall share in any "Remaining Trust Assets" to compensate for their attorneys' fees and expenses, to the extent allowed by the Plan.

            •  To illustrate, if the total value of all of the Allowed Claims of Non-Covered Claimants claims is $10,000,000, and the total value of the Trust Assets is $11,000,000, the Non-Covered Claimants shall divide the first $10,000,000 of the Trust Assets on a Pro Rata basis, with their attorneys' fees and costs to be paid out of that amount. Covered Claimants and Non-Covered Claimants with Allowed Claims shall then share in the Remaining Trust Assets on a Pro-Rata basis, based on each Claimant's attorneys' fees and costs. For example, if the total

---

[1] All Tort Claimants shall agree to assign all individual claims, if any, to the Personal Injury Trust, and they shall be referred to as the "Assigned Claims." For the avoidance of doubt, the Claims of Covered Claimants are not initially assigned to the Trust, subject, however, to assignment in the event coverage is withdrawn as set forth in the Plan.

{Z0203707/1}

Case 16-20326    Doc 894-1    Filed 08/14/18    Entered 08/14/18 16:16:03    Desc Exhibit
(1) Motion to Compromise and Settle Claims    Page 11 of 24
Case 16-20326    Doc 807-3    Filed 01/19/18    Entered 01/19/18 15:43:22    Desc Exhibit
EX B to Trust (TDPs)    Page 5 of 8

attorneys' fees and costs of all of the Claimants is $4,000,000 and the attorneys' fees and costs of Claimant A are $500,000, Claimant A shall be entitled to 1/8 of the Remaining Trust Assets (in this example, 1/8 of $1,000,000, which is $125,000). For the avoidance of doubt, nothing contained in these TDPs shall diminish or otherwise impair the Debtor's rights to excess recoveries as detailed in Section 7.1 of the Personal Injury Trust.

3.3    Expenses Identifiable to a Particular Claim

In the event that particular expenses are reasonably identifiable to a specific Tort Claim, the Personal Injury Trustee shall allocate those expenses to a specific Beneficiary, to the extent those expenses do not exceed that Tort Claimant's distribution from the Personal Injury Trust.  Any such determination may be overruled by a unanimous vote of the Personal Injury Claims Committee.

3.4    Personal Injury Trustee Fees and Expenses and Legal Fees and Expenses

The hourly fee of the Personal Injury Trustee is $150.00 per hour as set forth in the Personal Injury Trust.  Fees and monthly expenses shall be submitted to the Personal Injury Claims Committee on a monthly basis, on or before the 20th of the month following the month incurred.  Unless there is a written objection to the payment of the fees and expenses by a majority of the Personal Injury Claims Committee within ten (10) days of receipt of the submission, the fees and expenses shall be paid.  If there is an objection, the Bankruptcy Court shall determine the proper payment which shall be binding on the Personal Injury Trustee and the Personal Injury Claims Committee.

Legal fees and expenses shall be subject to the sole approval of the Personal Injury Trustee and shall be paid pursuant to the agreement of the Personal Injury Trustee and counsel.  If there is any objection by the Personal Injury Trustee to legal fees and/or expenses, any such objection shall be submitted to the Bankruptcy Court, and the Bankruptcy Court shall determine the proper payment which shall be binding on the Personal Injury Trustee and counsel.

3.5    Approvals

The general powers of the Personal Injury Trustee are set forth in paragraph 3.1 of the Personal Injury Trust and either exercisable solely by the Personal Injury Trustee or subject to majority approval or unanimous approval rights of the Personal Injury Claims Committee, which shall be a four (4) member committee, each a Tort Claimant represented by each of William Fix, Esq., Jon Moyers, Esq. and Robert Krause, Esq., and a representative of the Debtor.

For the avoidance of doubt, the following summarizes the nature of the approval(s) required under the Personal Injury Trust and/or the TDPs:

{Z0203707/1 }

WA 9630096.9

Case 16-20326   Doc 894-1   Filed 08/14/18   Entered 08/14/18 16:16:03   Desc Exhibit
(1) Motion to Compromise and Settle Claims   Page 12 of 24
Case 16-20326   Doc 807-3   Filed 01/19/18   Entered 01/19/18 15:43:22   Desc Exhibit
EX B to Trust (TDPs)   Page 6 of 8

(i)     Fees and expenses of the Personal Injury Trustee are subject to approval of a majority of the Personal Injury Claims Committee as set forth in paragraph 3.4 of the TDPs;

(ii)    Legal fees and expenses are subject to the sole approval of the Personal Injury Trustee as set forth in paragraph 3.4 of the TDPs;

(iii)   The following decisions require unanimous approval of the Personal Injury Claims Committee:

- Amendment to the TDPs;

- Distribution to Beneficiaries, including the calculation of expenses according to the TDPs;

- Election of an alternate member of the Personal Injury Claims Committee as set forth in Section 6.1 of the Personal Injury Trust;

- Removal of the Personal Injury Trustee as set forth in Section 5.2(d) of the Personal Injury Trust;

- The commencement of litigation by the Personal Injury Trustee and settlement of any litigation by the Personal Injury Trustee; and

- The choice of legal counsel to represent the Personal Injury Trustee in the Declaratory Judgment Action and any other litigation or lawsuit brought by the Personal Injury Trustee (but not regarding the choice of counsel or other professionals to represent the Personal Injury Trustee in bankruptcy related matters and/or to represent the Personal Injury Trustee regarding the allowance of claims process).

(iv)    The Personal Injury Trustee shall alone have the right to do the following:

- Receive and hold the assets of the Personal Injury Trust and exercise all rights with respect to any or all such Personal Injury Trust Assets;

- Invest the monies held from time to time by the Personal Injury Trust as permitted hereby;

- Establish such funds, reserves and accounts as deemed by the Personal Injury Trustee to be useful in carrying out the purposes of the Personal Injury Trust, including the creation of reserves as shall be necessary or appropriate to pay a reserve for litigation or other Personal Injury Trust expenses;

Case 16-20326   Doc 894-1   Filed 08/14/18   Entered 08/14/18 16:16:03   Desc Exhibit
(1) Motion to Compromise and Settle Claims   Page 13 of 24
Case 16-20326   Doc 807-3   Filed 01/19/18   Entered 01/19/18 15:43:22   Desc Exhibit
EX B to Trust (TDPs)   Page 7 of 8

- Execute and deliver such instruments as the Personal Injury Trustee considers proper in administering the Personal Injury Trust;

- Enter into arrangements with third parties as are deemed by the Personal Injury Trustee to be useful in carrying out the purposes of the Personal Injury Trust, provided such arrangements do not conflict with any other provision of the Personal Injury Trust; and

- Indemnify (and purchase insurance indemnifying) the Personal Injury Trustee, the respective agents of the Personal Injury Trust, and/or the Personal Injury Claims Committee to the fullest extent that a trust organized under the law of the Personal Injury Trust's situs is from time to time entitled to indemnify and/or insure such agents and/or the Personal Injury Claims Committee.

- Consult with the Debtor at such times and with respect to such issues relating to the conduct of the Personal Injury Trust as the Personal Injury Trustee considers desirable.  For the avoidance of doubt, any dispute relating to any approvals shall be submitted for determination to the Bankruptcy Court.

(v)     Notwithstanding anything herein to the contrary, and for the avoidance of doubt, the Personal Injury Trustee, following consultation with the Debtor member of the Personal Injury Claims Committee, shall make all decisions regarding the liquidation of the Trust Personal Injury Claims, and no member of the Personal Injury Claims Committee who is also a representative of, or counsel to a Beneficiary hereunder, shall be consulted, nor shall their approval be necessary or required, nor shall the Personal Injury Trustee be obligated to seek the approval of the Personal Injury Claims Committee regarding decisions to engage such legal, financial, accounting or consultants as the Personal Injury Trustee in his sole discretion determines is required concerning such liquidation.

(vi)    For the avoidance of doubt, any dispute relating to any approvals shall be submitted for determination to the Bankruptcy Court.

## ARTICLE IV
## MISCELLANEOUS PROVISIONS

4.1     No Grouping of Claims

Each Tort Claimant must proceed for purposes only of the Binding Mediation Procedure, individually with all claims that Tort Claimant may have or represent, with the exception of Tort Claimants holding loss of consortium claims, in which case these Tort Claimants

{Z0203707/1}

Case 16-20326    Doc 894-1    Filed 08/14/18    Entered 08/14/18 16:16:03    Desc Exhibit
(1) Motion to Compromise and Settle Claims    Page 14 of 24
Case 16-20326    Doc 807-3    Filed 01/19/18    Entered 01/19/18 15:43:22    Desc Exhibit
EX B to Trust (TDPs)    Page 8 of 8

shall proceed in conjunction with the medical malpractice Tort Claimant. The Personal Injury Trust, however, in its sole discretion, may decide that it would be expeditious to allow dispute resolution proceedings with respect to more than one Tort Claim, provided that each such Tort Claim shall be individually evaluated in accordance with the TDPs. Notwithstanding anything herein to the contrary, to the extent Tort Claimants may proceed directly against any party (for example, Dr. Hansen), this section does not apply.

4.2    [Reserved].

4.3    Serving of Notices and Other Papers

Each party shall be deemed to have consented to service of papers or notices relating to the proceeding as follows:

      a.    By regular U.S. mail or overnight courier addressed to the party or his/her attorney at the party's or the attorney's last known address;

      b.    By facsimile transmission or electronic mail; and/or

      c.    By personal service.

Documents sent via regular U.S. mail shall be deemed received three days after the date of postmark. Documents sent via overnight mail shall be deemed received on the next business day after mailing. Documents sent by facsimile or electronic mail, or by personal service, shall be deemed received on the same business day and at the same time that the documents were sent.

4.4    Exclusion of Liability and Mediator Immunity

The Personal Injury Trustee, Personal Injury Trust, the Debtor and the Mediator shall not be liable to any party for any act or omission in connection with these TDPs except as set forth in the Personal Injury Trust.

4.5    Jurisdiction

The United States Bankruptcy Court for the District of Wyoming shall have exclusive jurisdiction over any disputes arising under the TDPs.



March 12, 2018

Re:    **POWELL VALLEY HEALTH CARE - TRUST DISTRIBUTION PROCEDURES**

Dear Counsel,

Consistent with Article II of the Trust Distribution Procedures, ("TDPs"), this will serve as notice of the mediation process that will be utilized in determining the value of the respective claims that are subject to the TDPs. Consistent with the TDPs, and the bankruptcy requirement that the settlements be fair and equitable, it is my intent to establish a fair, equitable, and consistent process that is in the best interests of the Estate for the valuation of all claims, and in a manner that is as efficient and cost-effective as reasonably possible. This was discussed with each of you and agreed upon during our conference call on February 13, 2018.

The mediation process will provide each claimant the opportunity to present their claim to the Mediator, which will be carried out by video conference. Per agreement, each claimant will be provided a four hour period of time, which will be enforced, in which to present their claim by video conference. As set forth in more detail below, each claimant will be required to deliver a Mediation Statement to the Mediator and Trustee (through counsel Monty Barnett) four weeks prior to the scheduled mediation. Homeland Insurance Company and Lexington Insurance Company will be provided with notice of each mediation, copies of the Mediation Statements, and an opportunity to submit materials they deem relevant to the Mediator and Trustee (through counsel Monty Barnett) for each claim. If Homeland and/or Lexington chooses to participate in the mediation process they will be provided the opportunity to submit their own Mediation Statement to the Mediator for each claim, two weeks prior to the scheduled mediation. Once all claims have been mediated, the Mediator will then notify all claimants and the Personal Injury Trustee ("Trustee") of the value given, if any, to each claim. It is my understanding that my valuations will be considered by the Bankruptcy Court in determining if the settlements are fair and equitable, and in the best interests of the Estate.

The Mediation Statements shall not exceed twenty pages, and will be concise and succinct in nature. Voluminous records shall not be submitted to the Mediator and, instead, it is expected that accurate summaries of pertinent records will be provided in lieu of the records themselves. This includes but is not limited to meaningful deposition testimony, medical records/history, wage/income information, and expert opinions. The Mediation Statement shall provide the Mediator, by way of summaries, with a full history of medical treatment for each claimant for the time period of five years prior to the date of loss to present. Similarly, to the extent income information is relevant, such as in cases where lost wages and/or a loss of earning capacity are at issue, the Mediation Statements shall also provide a full and accurate summary of the claimant's earnings, covering the time period

EXHIBIT B

JAMS

from five years prior to the date of loss to present.  To the extent that certain records themselves have particular significance, it is acceptable to provide those records.  Please keep in mind that the Mediator does not want to be confronted with voluminous records.

If, upon receipt of the Mediation Statement, the Mediator or Trustee feels that copies of supporting records will be helpful, those will be requested from the claimant.  With this in mind, the Mediation Statements shall address the following matters:

- Pertinent background information
- Liability – including a discussion of known defenses to each point (including a summary of opposition expert opinions) and a candid analysis of the same.
  o Identify standard of care
  o Breach of standard of care
  o Causation
- Opinions of expert witnesses – including a discussion of known defenses to each point (including a summary of opposition expert opinions) and a candid analysis of the same.
  o Standard of care
  o Breach of standard of care
  o Causation
- Damages – including a discussion of known defenses to each point (including a summary of opposition expert opinions) and a candid analysis of the same.
  o Economic damages
  o Non-economic damages
- Unique legal and/or factual issues
- Objective statement of strengths and weaknesses of claim
- Written confirmation that it is understood and agreed to by counsel and their respective clients that neither Mediator nor counsel for Trustee will be called to testify in any proceeding (including, but not limited to hearings, trials or depositions)

The claimants are not expected to incur any further expenses associated with the use of expert witnesses in this mediation process, but the Mediation Statements shall include the best documentation, evidence and support available.  With that said, claimants are expected to meet their burden of proof.  To the extent that an expert opinion is required by law but not provided, that will be taken into account. Other factors that are relevant to the probability of ultimate success should the claim be tried to a jury, will be considered in the valuation process as well. Reports of opposition experts should also be provided as an attachment.



The same general format will be required for all wrongful death claims. Mediation Statements pertaining to wrongful death claims shall also include a copy of the Order appointing the Personal Representative of the Decedent. All individuals seeking wrongful death damages shall be identified, along with a description of their relationship to the decedent.

Mediation Statements shall be sent to the Mediator and the Trustee (through counsel Monty Barnett). The Trustee will then provide the Insurers with copies of the Mediation Statements and the Insurers may then submit their own Mediation Statement to the Mediator and Trustee (through counsel Monty Barnett). Any materials submitted by the Insurers will be provided to the claimants by Trustee prior to the mediation.

Once all claims have been mediated the Mediator will notify the claimants and Trustee of the values assigned to each claim by the Mediator.

Sincerely,

*s/ William F. Downes*
William F. Downes

**Supplement to March 12, 2018 letter/Powell Valley Health Care – Trust Distribution
Procedures**

The letter of March 12, 2018, as supplemented herein, will also be provided to Homeland
Insurance Company and Lexington Insurance Company in notifying them of the mediation
process and their opportunity to participate. If they decide to participate, they will be asked to
consider contributing to the costs of the mediation process. They will also be provided with a
copy of the mediation schedule.

The submission of the Mediation Statements will operate to serve as proof and confirmation of
the agreement by counsel and their respective clients that neither Mediator Judge Downes nor
Trustee counsel Monty Barnett will be called to testify in any proceeding (including, but not
limited to hearings, trial or depositions).



July 20, 2018

**VIA EMAIL & US MAIL**

Mr. Scott Goldstein
Spencer Fane
1000 Walnut, Suite 1400
Kansas City, MO 64106
sgoldstein@spencerfane.com

Re:   **POWELL VALLEY HEALTH CARE**

Dear Mr. Goldstein,

In accordance with the provisions of the Trust Distribution Procedures (TDP) of the Powell Valley Health Care, Inc. Personal Injury Trust, I submit my final report as mediator.

At the outset I wish to express my gratitude to you and your attorney, Monty Barnett, for your assistance. As well, I am appreciative of the efforts of the claimants' attorneys for their cooperation and dedication to the claims evaluation process.

As I began this challenging assignment I sought to establish a mediation process that would ensure a fair and equitable evaluation of each claim. You, your attorney and the Committee of Unsecured Claimants were consulted for your input. At the outset, I determined that the integrity of the process would benefit from a strict rule prohibiting *ex parte* communication between the claimants' attorneys and me. That prohibition was observed throughout the proceedings.

An ambitious schedule of mediations was established. I am advised that Mr. Barnett provided notices to insurance carriers which might have an interest in the proceedings, informing them of the mediation schedule and inviting their participation. They were given copies of the claimant's submissions and invited to submit statements and other information for my consideration. Mr. Barnett has reported that no substantive responses were received from these carriers.

I conducted all sessions at the Denver office of Spencer Fane. The claimants, their witnesses, and attorneys participated by video conference from the Park County Courthouse in Cody, Wyoming. Each attorney was permitted to make a brief opening statement. The claimants and witnesses provided testimony under questioning by counsel. I also questioned witnesses. Lawyers were given an opportunity to make closing remarks and, upon request, to submit limited supplemental information.

EXHIBIT C



Upon conclusion of all mediations I conducted a thorough review of all information which had been submitted in each claim, to include lawyers' mediation statements, financial information, medical records and expert witness reports.

Before setting values on the claims, I had to determine whether a claimant could have proved their claim in a court of law. In all but one claim I concluded that the medical provider had breached the applicable standard of care and that the breach was a proximate cause of the claimed injuries.

In no case did I find that a plaintiff was potentially at fault for his or her claimed injuries or that a claimant had failed to mitigate economic losses. If I deemed claimed economic losses to be insufficiently documented I either disallowed the claim or reduced the recovery for that claimed loss.

Evaluation of non-economic losses for pain and suffering, loss of enjoyment of life and for loss of care, comfort and society are most challenging but I was aided in that task by my ability to observe and question each claimant. I also drew upon my experience as a former medical malpractice attorney and judge.

It is important to note that I was not asked to provide an opinion regarding any other legal issue. Moreover, findings of fact and conclusions of law were not sought by you or any claimant.

Mindful that the TDP contemplates that my findings will "constitute final and binding determinations of liquidation of the Trust Personal Injury Claims subject to approval by the Bankruptcy Court," I have endeavored to be faithful to my obligations to the Binding Mediation Procedure.

Attached to this letter is an appendix which establishes values for each claim. I confirm that neither you nor Mr. Barnett gave me any opinion about the value of these claims. If you have any questions regarding this submission please advise.

Again, thank you for your assistance.

Very truly yours,

William F. Downes

WFD/mg
Enclosures
cc:   Monty L. Barnett

| CLAIMENTS | TOTAL AWARD | ECO-LOSS | NON-ECO | CONSORTIUM | NOTES |
|---|---|---|---|---|---|
| 1. Mark Bonamarte | $ 550,000.00 | $ 50,000.00 | $ 500,000.00 | | |
| 2. Michelle Oliver | $ 1,127,000.00 | $ 527,000.00 | $ 600,000.00 | | |
| 3. Kalan Nicholson | $ 1,066,000.00 | $ 66,000.00 | $ 1,000,000.00 | | |
| 4. Anothny & Lori DiPilla | $ 1,240,000.00 | $ 290,000.00 | $ 700,000.00 | $ 250,000.00 | |
| 5. Keela & Brock Meier | $ 1,472,000.00 | $ 72,000.00 | $ 1,000,000.00 | $ 400,000.00 | |
| 6. Martha & Richard McMillen | $ 1,712,000.00 | $ 512,000.00 | $ 1,000,000.00 | $ 200,000.00 | |
| 7. Sheryl & Darin Henderson | $ 1,105,000.00 | $ 205,000.00 | $ 800,000.00 | $ 100,000.00 | |
| 8. Joetta (Johnson) Martin | $ 598,000.00 | $ 98,000.00 | $ 500,000.00 | | |
| 9. Peggi Jo Werbelow | $ 4,200,000.00 | $ 1,200,000.00 | $ 3,000,000.00 | | |
| 10. Nate & Sheena Bates Izabella (daughter) | $ 2,015,000.00 | $ 815,000.00 | $ 800,000.00 | $ 300,000.00 $ 100,000.00 | Sheena Izabella |
| 11. Jan & Bart Brinkerhoff | $ 464,500.00 | $ 14,500.00 | $ 350,000.00 | $ 100,000.00 | |
| 12. William D. Haney | insufficient evidence of medical negligence | | | | |
| 13. Kelly Hatcher | $ 206,500.00 | $ 6,500.00 | $ 200,000.00 | | |
| 14. Nancy & Larry Heiser | $ 1,675,000.00 | $ 175,000.00 | $ 1,000,000.00 | $ 500,000.00 | |
| 15. Harry & JoAnn Knopp | $ 1,200,000.00 | $ - | $ 1,000,000.00 | $ 200,000.00 | |
| 16. Nanette Nofzinger (personal rep) | $ 860,000.00 | $ - | | $ 400,000.00 | (mother) |

| | | | | |
|---|---|---|---|---|
| Ric (father) | | | | $ 400,000.00 |
| Ashley Lucan (sister) | | | | $ 30,000.00 |
| Rachel Nofzinger (sister) | | | | $ 30,000.00 |
| 17. Darcy Ronne | $ 132,000.00 | $ 32,000.00 | $ 100,000.00 | |
| 18. Susan & Doug Scott | $ 1,364,000.00 | $ 164,000.00 | $ 800,000.00 | $ 400,000.00 |
| 19. Jody & Jerry Sessions | $ 1,495,000.00 | $ 445,000.00 | $ 800,000.00 | $ 250,000.00 |
| 20. Lynn & Janet Snell | $ 1,965,000.00 | $ 165,000.00 | $ 1,500,000.00 | $ 300,000.00 |
| 21. Veronica & Billie Sommerville Alison (daughter) | $ 5,096,850.00 | $ 1,896,850.00 | $ 2,500,000.00 | $ 500,000.00 $ 200,000.00 |
| 22. Susan & Scott Stambaush | $ 3,680,000.00 | $ 1,130,000.00 | $ 2,500,000.00 | $ 50,000.00 |
| 23. Shane & Jayne Wilson | $ 7,025,632.00 | $ 2,525,632.00 | $ 4,000,000.00 | $ 500,000.00 |
| 24. Shannon Eller | $ 1,100,000.00 | $ 200,000.00 | $ 900,000.00 | |
| 25. Nancy & Earl Crawford | $ 1,465,000.00 | $ 215,000.00 | $ 1,000,000.00 | $ 250,000.00 |



THE RESOLUTION EXPERTS

August 7, 2018

**VIA EMAIL**

Mr. Scott Goldstein
Spencer Fane
1000 Walnut, Suite 1400
Kansas City, MO 64106
sgoldstein@spencerfane.com

**Re:    POWELL VALLEY HEALTH CARE**

Dear Mr. Goldstein,

This letter will confirm that all witnesses were placed under oath during all the hearings conducted in the Powell Hospital cases. The oaths were administered by the clerk or a deputy clerk of the Park County District Court, Cody, WY.

Very truly yours,

William F. Downes

WFD/mg
Enclosures
cc:    Monty L. Barnett

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF WYOMING
## CHEYENNE DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | Case No. 16-20326 |
| POWELL VALLEY HEALTH CARE, INC., | ) | |
| | ) | |
| Debtor. | ) | |

### ORDER APPROVING MOTION TO COMPROMISE AND SETTLE CLAIMS

Upon the request of Scott J. Goldstein, the Personal Injury Trustee (the "Trustee") of the Powell Valley Health Care, Inc. Personal Injury Trust (the "PVHC Trust"), seeking approval of a compromise and settlement of tort claims pursuant to his Personal Injury Trustee's Motion to Compromise and Settle Claims (the "Motion"); and the Trustee having represented that due and proper notice of the Motion has been provided, and that no other or further notice need be provided, and for good cause shown:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

1.      The Motion is approved pursuant to Fed. R. Bankr. P. 9019 and pursuant to the TDPs.

2.      The tort claims listed in the Mediation Report are Allowed Claims under the Plan for the full amount of the Mediator's determination.

3.      This Order is effective immediately upon entry.

BY THE COURT

_____
Honorable Cynthia D. Parker
United States Bankruptcy Court

EXHIBIT D

WA 11660168.1